## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SZ DJI Technology Co., Ltd. and<br>DJI Europe B.V., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Autel Robotics USA LLC, | ) | |
| Autel Aerial Technology Co., Ltd., and | ) | |
| Autel Intelligent Technology Co., Ltd. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiffs SZ DJI Technology Co., Ltd. and DJI Europe B.V. (collectively, "Plaintiffs" or "DJI") hereby assert this Complaint for Patent Infringement against Defendants Autel Robotics USA LLC, Autel Aerial Technology Co., Ltd., and Autel Intelligent Technology Co., Ltd. (collectively, "Defendants" or "Autel").

## <u>PARTIES</u>

1.      Plaintiff SZ DJI Technology Co., Ltd. ("DJI SZ") is a Chinese corporation with its principal place of business at 14th Floor, West Wing, Skyworth Semiconductor Design Building, No. 18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China. DJI SZ is responsible for the research and development of DJI-branded products sold in the United States.

2.      Plaintiff DJI Europe B.V. ("DJI BV") is a European corporation with its principal place of business at Bijdorp-Oost 6, 2992 LA Barendrecht, Netherlands. DJI BV sells DJI-branded products in the United States.

3.      On information and belief, Defendant Autel Robotics USA LLC ("Autel Robotics USA") is a Delaware limited liability company with a principal place of business at 22522 29th

Dr. SE I101, Bothell, WA.

4.      On information and belief, Defendant Autel Aerial Technology Co., Ltd., which is also known as Autel Aerotech Co. Ltd., ("Autel ATC") is a Chinese corporation with a principal place of business at 9th Floor, Building B1, Zhiyuan, Xueyuan Road, Xili, Nanshan, Shenzhen 518055, China. Upon information and belief, Autel ATC has at times also been referred to as Autel Robotics Co. Ltd.

5.      On information and belief, Defendant Autel Intelligent Technology Co., Ltd. ("Autel ITC") is a Chinese corporation with a principal place of business at 6th-10th Floor, Building B1, Zhiyuan, Xueyuan Road, Xili, Nanshan, Shenzhen 518055, China, and with an office in the United States at 175 Central Ave, Suite 200, Farmingdale, NY.

## JURISDICTION AND VENUE

6.      This Complaint arises under the patent laws of the United States, Title 35 of the United States Code. Thus, this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

7.      The Court has personal jurisdiction over each Defendant because, on information and belief, each Defendant has regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district. Each Defendant has also placed infringing products into the stream of commerce by shipping those products into this district or knowing that the products would be shipped into this district.

8.      On information and belief, this Court has personal jurisdiction over Autel ATC and/or Autel ITC because these corporations have made, used, sold, offered for sale or imported into the United States infringing products, including the Autel X-Star and X-Star Premium

unmanned aerial vehicles ("UAVs"), and/or components thereof. On information and belief, Autel ATC and/or Autel ITC designed and manufactures the infringing Autel X-Star and X-Star Premium UAVs. On information and belief, the infringing Autel X-Star and X-Star Premium UAVs sold in the United States identify that the products are made in China. On information and belief, Autel ATC shares the same website with Autel Robotics USA and identifies the infringing Autel X-Star and X-Star Premium UAVs sold in the United States as its own. On information and belief, Autel ITC identifies on its website the infringing Autel X-Star and X-Star Premium UAVs sold in the United States as its own. Autel ATC and/or Autel ITC has placed these products into the stream of commerce in the United States, including within this district, with the intent to serve the market in this district, and has purposely availed itself of the benefits of the market in this district. The sale of these infringing products in this judicial district has caused harm in this district. Autel ITC and/or Autel ATC has marketed these products in this district under the mark "AUTEL," which Autel ITC applied to register with the U.S. Patent and Trademark Office via Trademark Application Serial No. 86876815 (dated January 15, 2016), for goods described as "Drone, namely, unmanned aircraft or spaceship that can navigate autonomously without human control or beyond line of sight, unmanned aircraft or spaceship that is guided remotely, unmanned aerial vehicle, unmanned aerospace vehicle." In addition, Autel ATC and/or Autel ITC has marketed these products in this district under the mark "X-Star," which Autel ATC applied to register with the U.S. Patent and Trademark Office via Trademark Application Serial No. 86472057 (dated December 5, 2014), for goods described as "Drone, namely, unmanned aircraft that can navigate autonomously without human control or beyond line of sight, unmanned aircraft that is guided remotely, unmanned aerial vehicle, unmanned aerospace vehicle" and "Digital camera." On information and belief, Autel ITC and/or

Autel ATC owns and operates an interactive, English-language website, http://www.autelrobotics.com/, on which it continuously advertises the infringing products identified above, promoting the benefits of using the described products, and offering product support, registration, user fora, training information and downloads of both updated firmware and user manuals. This website is directed at the U.S. market, including this district, and all of the product support, firmware and user manual downloads are accessible from within this district. On information and belief, the firmware and user manuals were prepared and  published by Autel ITC and/or Autel ATC.  On information and belief, Autel ITC and/or ATC provides a warranty to end-user customers on the infringing Autel products.

9.     This Court has personal jurisdiction over Autel Robotics USA by virtue of its being a limited liability company created and existing under the laws of the State of Delaware.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and/or 1400(b) because, among other things, Defendants are subject to personal jurisdiction in this District, have committed acts of patent infringement in this District, and continue to commit acts of infringement in this District. In addition, venue is proper in this Judicial District as to Autel Robotics USA under 28 U.S.C. §§ 1391(c) and 1400(b) by virtue of its being a corporation created and existing under the laws of the State of Delaware.

## FACTUAL BACKGROUND

11.     DJI brings this action to seek injunctive relief and damages arising out of Autel's infringement of U.S. Patent Nos. 9,016,617, 9,284,049, 9,321,530 and D691,514 (collectively "the Patents-in-Suit").

## DJI

12.     DJI is an innovator at the forefront of commercial UAV technology. DJI develops

and manufactures aerial videography and photography systems for commercial and recreational use. DJI's UAVs include, for example, the DJI Phantom 3 (Figure 1, below) and Phantom 4 (Figure 2, below), which bring together DJI's patented technology in easy to use, all-in-one products that provide consumers with access to high quality aerial imaging.



**Figure 1 (DJI Phantom 3)**



**Figure 2 (DJI Phantom 4)**

13.     DJI's operations are global, currently spanning North America, Europe, and Asia.

DJI's commercial UAVs are versatile; they are used each and every day for things such as aerial photography and cinematography, scientific research, geological surveying, and much more. DJI has developed highly sophisticated software applications and interfaces that allow consumers to fully control the flight system and onboard camera.

14.     Since its founding, DJI has invested millions of dollars in research to develop industry leading technology fundamental to the very concept of UAVs. To date, DJI employs over seven hundred engineers that develop cutting-edge and ground-breaking solutions to the many challenging issues facing commercial UAVs in an emerging industry. In order to provide out-of-the-box, ready-to-fly products for both amateur and professional consumers, DJI's UAVs are manufactured and pre-assembled with precision and careful calibration.

15.     DJI's extensive research and development efforts have resulted in more than just the design and development of revolutionary UAVs like the DJI Phantom series; they have also led to DJI's development of supporting applications, such as those used for filming, advertising, construction, firefighting, farming, and many others. For instance, as the *Wall Street Journal* reported in November 2015, DJI has developed applications to help farmers more efficiently spray their crops in plots of land that are difficult for airplanes to reach.

16.     Presently, DJI's products are available for sale online and in retail stores, including Amazon.com, Best Buy, Wal-Mart, eBay, the Apple Store, and hobby shops.

**DJI's Patents-in-Suit**

17.     The Patents-in-Suit go to the heart of DJI's business, represent key achievements in DJI's continuous research and development efforts, and help drive consumer demand for DJI's products.

18.     On April 28, 2015, the United States Patent and Trademark Office duly and

legally issued U.S. Patent No. 9,016,617 ("the '617 patent"), entitled "Unmanned aerial vehicle and operations thereof."  DJI SZ is the owner of the '617 patent. DJI BV is the exclusive licensee of the '617 patent. A true and correct copy of the '617 patent is attached hereto as Exhibit 1.

19.     On March 15, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,284,049 ("the '049 patent"), entitled "Unmanned aerial vehicle and operations thereof."  DJI SZ is the owner of the '049 patent. DJI BV is the exclusive licensee of the '049 patent. A true and correct copy of the '049 patent is attached hereto as Exhibit 2.

20.     On April 26, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,321,530 ("the '530 patent"), entitled "Unmanned aerial vehicle and operations thereof."  DJI SZ is the owner of the '530 patent. DJI BV is the exclusive licensee of the '530 patent. A true and correct copy of the '530 patent is attached hereto as Exhibit 3.

21.     On October 15, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Design Patent No. D691,514 ("the '514 patent"), entitled "Rotor aircraft." DJI SZ is the owner of the '514 patent. DJI BV is the exclusive licensee of the '514 patent. A true and correct copy of the '514 patent is attached hereto as Exhibit 4.

<u>**Autel**</u>

22.     On information and belief, Autel ITC is headquartered in Shenzhen, China. On information and belief, Autel ATC is headquartered in Shenzhen, China at the same location as Autel ITC, and is a subsidiary of Autel ITC.

23.     On information and belief, Autel Robotics USA is a subsidiary of Autel ITC and/or Autel ATC. Autel Robotics USA was formed in Delaware in November 2015. On information and belief, Autel Robotics USA is a U.S. branch of Autel ITC and/or Autel ATC responsible for marketing and sales of the infringing products.

24.     On information and belief, Autel has made, used, imported, offered to sell, and sold UAVs in the United States since at least as early as January 2016, including the Autel X-Star and Autel X-Star Premium (collectively the "X-Stars") (Figures 3 and 4, below).



**Figure 3 (Autel X-Star)**



**Figure 4 (Autel X-Star Premium)**

25.     On January 6, 2016, Autel announced its "American debut … at CES 2016,

LVCC 25202 with its first line of consumer drones, the X-Star series."

26.     The X-Stars are multi-rotor UAVs that contain a variety of electrical components used to control various aspects of the operation of the UAVs and sensors for navigational, surveillance, or remote sensing purposes. The X-Stars are assembled with pre-configured electrical components and have pre-configured flight modes.

27.     As seen in Figures 3 and 4, above, the X-Stars consist of a housing that forms a central body of the UAV. The housing has outer and inner surfaces.

28.     The inner surface of the X-Star's housing creates a cavity that contains some of the electrical components used to control operation of the X-Star UAV. The electrical components within the cavity include a power source, flight control module, inertial measurement unit (IMU), and/or GPS receiver.

29.     The X-Stars have extension members that extend away from the central body of the UAV and that function as a landing stand. Attached to one of these members is a magnetometer, which is housed sufficiently distant from the central body to reduce the interference effects from the one or more electrical components contained within the cavity of the central body. The magnetometer is located more than 3 centimeters but less than 0.5 meters away from one or more electrical components in the central body.

30.     The X-Stars have four branch housings that extend out from the central body housing. Each of the branch housings has an upper and a lower branch housing member.

31.     Each of the branch housings has an actuator assembly that is partially within and partially extending from the branch housing. Each actuator assembly has beneath it a portion of its respective lower branch housing member. The actuator assemblies consist of an actuator and a rotor blade and enable the UAV to move in response to signals from a flight control module.

32.    On information and belief, Autel copied the look and feel of DJI's UAVs when it designed its X-Stars. Further, on information and belief, Autel knew of DJI's design patents and deliberately and willfully copied DJI's patented designs (see Table 1, below).



| TABLE 1: Exemplary Infringement | |
|:---:|:---:|
| **The '514 Patent Figures** | **X-Star** |

## TABLE 1: Exemplary Infringement





TABLE 1: Exemplary Infringement

FIG. 6

FIG. 7

33.     The design of the X-Stars is the same or substantially the same as the design of the '514 patent. The UAV designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase an X-Star believing it to be substantially the same as the design protected by the '514 patent.

## The Commercial UAV Market

34.     The commercial UAV industry is young and fast-growing. According to one market report, "the total Commercial UAV Market was valued at $15.22 Million in 2014, and is expected to reach $1.27 Billion by 2020, at an estimated CAGR (Compound Annual Growth Rate) of 109.31% between 2014 and 2020."

35.     Customers in the UAV market include, for example, photographers, cinematographers, hobbyists, geological surveyors, first responders, energy equipment inspectors, and technology enthusiasts. Popular sales channels include direct consumer sales, consumer electronics retail, and online retail sales.

36.     According to an April 2015 *Economist* article, DJI is a leading player and "a pioneer in the nascent market." The *Wall Street Journal* calls DJI the company that "kick started the global craze" for UAVs. *CKGSB Knowledge* noted in late 2015 that "DJI was the first drone maker to put together a turnkey package that doesn't require any special knowledge to use."

## Competition Between DJI and Autel

37.     DJI and Autel are competitors in the UAV market.

38.     On information and belief, Autel markets the X-Stars as competitors to DJI's UAVs, including the DJI Phantom models.

39.     On information and belief, in August 2014, Autel hired a former engineer of DJI, Mr. Fazhan Chen. Mr. Chen worked extensively on the research and development for DJI's UAV products, including the DJI Phantom models. Upon information and belief, Mr. Chen provided material information to Autel regarding the development and functioning of DJI's UAVs. In addition, upon information and belief, Mr. Chen had knowledge of DJI's patent portfolio and the features of DJI's UAVs that were patent protected.

40.     On information and belief, Autel introduced its X-Star UAV products at CES 2016. At CES, Autel announced its pricing as $799 for the X-Star and $999 for the X-Star Premium. On information and belief, as of the date of this Compliant, Autel sells its X-Stars for even less at $699 for the X-Star and $899 for the X-Star Premium. On information and belief, Autel priced its X-Star UAV products in order to compete with and undercut the pricing of DJI's UAVs, including the DJI Phantom models.

41.     On information and belief, Autel either had actual knowledge of the Patents-in-Suit and/or their respective applications prior to this action, or willfully blinded itself to the existence of the Patents-in-Suit. In any event, Autel had actual knowledge of the Patents-in-Suit no later than the filing of the original Complaint in this action.

42.     On information and belief, Autel had knowledge of DJI's patent portfolio, including the Patents-in-Suit based on information provided by Mr. Chen. In addition, on information and belief, Autel monitors DJI's patent portfolio by, for example, monitoring press releases, articles, and websites regarding DJI's patent portfolio, and had knowledge of DJI's patent portfolio as a result.

43.     On information and belief, Autel had knowledge of DJI's patent portfolio, including the Patents-in-Suit, based on previous lawsuits between DJI and Autel involving foreign counterparts to the '514 patent.

44.     On information and belief, Autel had knowledge of DJI's patent portfolio, including the Patents-in-Suit, based on the lawsuit filed by DJI against Yuneec International Co. Ltd. and Yuneec USA Inc. in the Central District of California earlier this year, which was covered by numerous press and news sources that Autel monitors for information regarding DJI. Upon information and belief, Autel had knowledge of the contents of DJI's complaint against

Yuneec, which specifically mentions the '617 patent and its disclosure of a magnetometer positioned on the landing stand of a UAV.

45.     On information and belief, Autel willfully blinded itself to the Patents-in-Suit to the extent it lacked affirmative knowledge of the Patents-in-Suit prior this suit and/or failed to investigate DJI, the company that "kick started the global craze" for UAVs.

46.     On information and belief, Autel has known about the Patents-in-Suit and/or their respective claims since before the filing of this lawsuit. Despite having full knowledge of these claims, Autel continues its infringing conduct to this day.

## COUNT I
## (Infringement of U.S. Patent No. 9,016,617)

47.     DJI hereby restates and re-alleges the allegations of paragraphs 1 through 46 and incorporates them by reference.

48.     Autel has infringed and continues to infringe, either literally and/or under the doctrine of equivalents, at least claims 1-11 and 14 of the '617 patent by making, using, selling, offering for sale, and/or importing into the United States products including, but not limited to, its X-Star and X-Star Premium products, without the permission of DJI. Autel, is thus liable for direct infringement of the '617 patent pursuant to 35 U.S.C. § 271(a).

49.     On information and belief, Autel had knowledge of the '617 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified herein infringe, either literally and/or under the doctrine of equivalents, at least claims 1-11 and 14 of the '617 patent. Autel has induced and encouraged the direct infringement of the '617 patent by Autel's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more products that embody the patented invention. On information

and belief, Autel provides user guides, video tutorials, and customer support to instruct its customers on how to use the infringing technology. Autel is therefore liable for indirect infringement of the '617 patent pursuant to 35 U.S.C. § 271(b).

50.     On information and belief, Autel had knowledge of the '617 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified infringe, either literally and/or under the doctrine of equivalents, at least claims 1-11 and 14 of the '617 patent. Autel has and continues to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '617 patent. Autel has contributorily infringed the '617 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '617 patent, knowing the same to be made or adapted specially for use in the infringement of the '617 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. Autel is therefore liable for indirect infringement of the '617 patent pursuant to 35 U.S.C. § 271(c).

51.     Unless enjoined by this Court, Autel will continue to infringe the '617 patent, and DJI will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, DJI is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

52.     As a result of Autel's infringement of the '617 patent, DJI has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

**COUNT II**
**(Infringement of U.S. Patent No. 9,284,049)**

53.     DJI hereby restates and re-alleges the allegations of paragraphs 1 through 46 and

incorporates them by reference.

54.     Autel has infringed and continues to infringe, either literally and/or under the doctrine of equivalents, at least claims 1-13, 15, 16-24 and 26-30 of the '049 patent by making, using, selling, offering for sale, and/or importing into the United States products including, but not limited to, its X-Star and X-Star Premium products, without the permission of DJI. Autel is thus liable for direct infringement of the '049 patent pursuant to 35 U.S.C. § 271(a).

55.     On information and belief, Autel had knowledge of the '049 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified herein infringe, either literally and/or under the doctrine of equivalents, at least claims 1-13, 15, 16-24 and 26-30 of the '049 patent. Autel has induced and encouraged the direct infringement of the '049 patent by Autel's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more products that embody the patented invention. On information and belief, Autel provides user guides, video tutorials, and customer support to instruct its customers on how to use the infringing technology. Autel is therefore liable for indirect infringement of the '049 patent pursuant to 35 U.S.C. § 271(b).

56.     On information and belief, Autel had knowledge of the '049 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified infringe, either literally and/or under the doctrine of equivalents, at least claims 1-13, 15, 16-24 and 26-30 of the '049 patent. Autel has and continues to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '049 patent. Autel has contributorily infringed the '049 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the

invention disclosed in the '049 patent, knowing the same to be made or adapted specially for use in the infringement of the '049 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. Autel is therefore liable for indirect infringement of the '049 patent pursuant to 35 U.S.C. § 271(c).

57.     Unless enjoined by this Court, Autel will continue to infringe the '049 patent, and DJI will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, DJI is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

58.     As a result of Autel's infringement of the '049 patent, DJI has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## COUNT III
## (Infringement of U.S. Patent No. 9,321,530)

59.     DJI hereby restates and re-alleges the allegations of paragraphs 1 through 46 and incorporates them by reference.

60.     Autel has infringed and continues to infringe, either literally and/or under the doctrine of equivalents, at least claims 1-13 and 16-28 of the '530 patent by making, using, selling, offering for sale, and/or importing into the United States products including, but not limited to, its X-Star and X-Star Premium products, without the permission of DJI. Autel is thus liable for direct infringement of the '530 patent pursuant to 35 U.S.C. § 271(a).

61.     On information and belief, Autel had knowledge of the '530 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified herein infringe, either literally and/or under the doctrine of equivalents, at least claims 1-13 and 16-28 of the '530 patent. Autel has induced and encouraged the direct infringement of the '530 patent

by Autel's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more products that embody the patented invention. On information and belief, Autel provides user guides, video tutorials, and customer support to instruct its customers on how to use the infringing technology. Autel is therefore liable for indirect infringement of the '530 patent pursuant to 35 U.S.C. § 271(b).

62.     On information and belief, Autel had knowledge of the '530 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified infringe, either literally and/or under the doctrine of equivalents, at least claims 1-13 and 16-28 of the '530 patent. Autel has and continues to contributorily infringe, and will continue to contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '530 patent. Autel has contributorily infringed the '530 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '530 patent, knowing the same to be made or adapted specially for use in the infringement of the '530 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. Autel is therefore liable for indirect infringement of the '530 patent pursuant to 35 U.S.C. § 271(c).

63.     Unless enjoined by this Court, Autel will continue to infringe the '530 patent, and DJI will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, DJI is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

64.     As a result of Autel's infringement of the '530 patent, DJI has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for

such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

**COUNT IV**
**(Infringement of U.S. Patent No. D691,514)**

65.    DJI hereby restates and re-alleges the allegations of paragraphs 1 through 46 and incorporates them by reference.

66.    Autel has infringed and continues to infringe, either literally and/or under the doctrine of equivalents, at least the claim and Figures 1-7 of the '514 patent by making, using, selling, offering for sale, and/or importing into the United States products including, but not limited to, its X-Star and X-Star Premium products, without the permission of DJI. Autel is thus liable for direct infringement of the '514 patent pursuant to 35 U.S.C. § 271(a).

67.    On information and belief, Autel had knowledge of the '514 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified herein infringe, either literally and/or under the doctrine of equivalents, at least the claim and Figures 1-7 of the '514 patent. Autel has induced and encouraged the direct infringement of the '514 patent by Autel's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more products that embody the patented invention. On information and belief, Autel provides user guides, video tutorials, and customer support to instruct its customers on how to use the infringing technology. Autel is therefore liable for indirect infringement of the '514 patent pursuant to 35 U.S.C. § 271(b).

68.    On information and belief, Autel had knowledge of the '514 patent prior to, or at least as of, the filing of this Complaint and had knowledge that the products identified infringe, either literally and/or under the doctrine of equivalents, at least the claim and Figures 1-7 of the '514 patent. Autel has and continues to contributorily infringe, and will continue to

contributorily infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '514 patent. Autel has contributorily infringed the '514 patent by offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '514 patent, knowing the same to be made or adapted specially for use in the infringement of the '514 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. Autel is therefore liable for indirect infringement of the '514 patent pursuant to 35 U.S.C. § 271(c).

69.     Unless enjoined by this Court, Autel will continue to infringe the '514 patent, and DJI will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, DJI is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

70.     As a result of Autel's infringement of the '514 patent, DJI has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 and/or § 289 in an amount to be determined at trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), DJI demands a trial by jury as to all claims, defenses, and other issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, DJI respectfully requests that the Court, upon final hearing of this matter, grant the following relief against Autel:

A.     That Defendants are liable for infringement, contributing to the infringement, and/or inducing the infringement of one or more claims of the Patents-in-Suit, as alleged herein;

B.     That Defendants and their parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants, and employees of each of the foregoing, customers and/or licensees and those persons acting in concert or participation with any of them, are enjoined and restrained from continued infringement, including but not limited to using, making, importing, offering for sale and/or selling products that infringe, and from contributorily and/or inducing the infringement of the Patents-in-Suit prior to their expiration, including any extensions;

C.     An Order directing Defendants to file with this Court and serve upon Plaintiffs' counsel within 30 days after the entry of the Order of Injunction a report setting forth the manner and form in which Defendants have complied with the injunction;

D.     An award of damages adequate to compensate Plaintiffs for the infringement that has occurred, in accordance with 35 U.S.C. § 284 and/or § 289, in lost profits, price erosion and/or reasonable royalty, including prejudgment and post-judgment interest at the highest rates allowed by law;

E.     An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction;

F.     An award of attorneys' fees based on this being an exceptional case pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

G.     Costs and expenses in this action;

H.     Such other and further relief, in law and in equity, as this Court may deem just and appropriate.

Respectfully submitted this 11th day of August, 2016

/s/ George Pazuniak

George Pazuniak (DE Bar No. 00478)
O'Kelly & Ernst, LLC
901 N. Market St. Suite 1000
Wilmington, DE 19801
D. 302 478-4230
E. GP@del-iplaw.com

*Of Counsel*

David M. Farnum, Esq.
Sherry X. Wu, Esq.
ANOVA LAW GROUP, PLLC
21351 Gentry Drive Ste 150
Sterling, VA 20166
M. 703 801-1084
E. david.farnum@anovalaw.com
M. 703 622-0573
E. sherry.wu@anovalaw.com

Jonathan M. James, Esq.
PERKINS COIE LLP
2901 North Central Avenue Ste 2000
Phoenix, AZ 85012-2788
D. 602.351.8440
M. 602.502.7990
E. JJames@perkinscoie.com

*Attorneys for SZ DJI Technology Co.,
Ltd. and DJI Europe B.V.*