# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., <br><br> Plaintiffs, <br><br> v. <br><br> AUTEL ROBOTICS USA LLC and AUTEL AERIAL TECHNOLOGY CO., LTD., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 16-706-LPS <br><br> **REDACTED - PUBLIC VERSION** |

## DEFENDANTS' MOTION TO CONSOLIDATE
## AND AMEND THE CASE SCHEDULE

Of Counsel:

STEPTOE & JOHNSON LLP
Timothy C. Bickham
John Caracappa
Scott M. Richey
Beau M. Goodrick
1330 Connecticut Avenue, NW
Washington DC 20036
(202) 429-3000
tbickham@steptoe.com
jcaracap@steptoe.com
srichey@steptoe.com
bgoodrick@steptoe.com

STEPTOE & JOHNSON LLP
Michael Flynn-O'Brien
One Market Street
Steuart Tower, Suite 1800
San Francisco, CA 94105
(415) 365-6700
mflynnobrien@steptoe.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendants Autel Robotics USA LLC and Autel Aerial Technology Co., Ltd.*

March 2, 2018
Redacted Version: March 9, 2018

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Defendants Autel Robotics USA LLC and Autel Aerial Technology Co., Ltd. (collectively "Autel") respectfully move to consolidate the above-captioned case (the "First Action") with *SZ DJI Technology Co. Ltd., et al. v. Autel Robotics USA LLC, et al.*, C.A. No. 2:17-cv-776-RAJ (W.D. Wash.) (the "Second Action"), which was recently transferred to this District.[1]

As the Honorable Richard A. Jones noted in his Order, Plaintiffs SZ DJI Technology Co., Ltd. and DJI Europe B.V. (collectively, "DJI") admit that the Second Action, which they filed in the Western District of Washington days before this Court held a hearing on DJI's motion for a preliminary injunction, could have been filed in the District of Delaware. And it should have been filed in Delaware as a Related Case. The parties are the same, the accused products are the same, the asserted patents have common inventors, and there are overlapping factual issues.

To prevent burdening the Court and the parties with duplicative proceedings, including two trials, Autel respectfully requests that the First and Second Actions be consolidated. Autel further requests that a revised, consolidated schedule[2] be entered that permits fact discovery to conclude in the Second Action so that all remaining issues in both Actions may then be joined, in an orderly manner, through expert discovery, case dispositive motions, *Daubert* motions, and trial, which Autel proposes take place in June 2019 subject to the Court's availability.[3]

## BACKGROUND

**The First Action**: On August 11, 2016, DJI filed a complaint in this District against

---

[1] Autel's motion to transfer was granted on February 22, 2018, with formal transfer to be undertaken within fifteen (15) days from the transfer order, *i.e.*, by March 9, 2018. (*See* D.I. 211, Ex. B (W. D. Wash. docket).)

[2] Pursuant to D. Del. LR 16.4, counsel for Defendants certifies that the request to extend the case schedule set forth herein has been forwarded to Defendants.

[3] Autel acknowledges that, prior to the transfer of the Second Action to this District, the Court declined to reschedule the trial in the First Action. (D.I. 210) Autel respectfully submits that the subsequent changed circumstances favor extensions of the First Action's schedule.

Autel alleging infringement of U.S. Patent Nos. 9,016,617; 9,284,049; 9,321,530; and D691,514. DJI accused Autel's "X-Star" and "X-Star Premium" (collectively, the "X-Star") unmanned aerial vehicle ("UAV") products. The patents-in-suit are directed to the design of the UAV and placement of certain UAV components.

**The Second Action**: Shortly before this Court denied DJI's request for a preliminary injunction in the First Action, DJI filed a separate suit in the Western District of Washington against the same Autel entities and related to the same accused products as in the First Action. (Complaint, C.A. No. 2:17-cv-776-RAJ ("W.D. Wash"), D.I. 1 at ¶ 23 (identifying the accused products as the "X-Star and X-Star Premium products"))[4] In this Second Action, DJI alleges infringement of U.S. Patent Nos. 9,284,040 and 9,592,744, which, like the patents in the First Action, are also directed to certain components of UAVs. The patents in the Second Action have the same named inventors as the patents in the First Action. Trial counsel representing the parties in the Second Action are the same as in the First Action.

**Transfer of the Second Action**: DJI has never disputed that it could have brought the Second Action in Delaware. (*See* Ex. A at 5 ("DJI Transfer Opposition"); W.D. Wash., D.I. 27 ("Transfer Order") at 2.)[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See, e.g.*, Ex. B, Excerpt from DJI's Expert Report on Damages.) Faced with the untenable position of costly, bicoastal litigation against the same company on the same accused products, Autel moved to transfer the Second Action brought by DJI so that it could be consolidated with the First

---

[4] The DJI Plaintiffs are the same in both Actions. In the First Action, DJI initially named Autel Robotics USA LLC, Autel Aerial Technology Co., Ltd., and Autel Intelligent Technology Co. Ltd. ("Autel ITC"). Autel ITC was later dismissed without prejudice. (D.I. 95.) In the Second Action, DJI named the same three Autel entities it initially sued in the First Action, plus a fourth, Autel (USA), Inc., which is a subsidiary of Autel ITC and which it later dismissed.

[5] Filed with the Court at D.I. 211, Ex. C.

2

Action brought by DJI in Delaware.[6] See Ex. C, Autel's Transfer Motion, at 17 ("("The pendency of the related Delaware Action is a particularly strong factor here because the two actions can be consolidated and because the presiding judges in Delaware are already familiar with the parties and Defendants' activities that allegedly give rise to both actions."); Ex. A, DJI's Transfer Opposition, at 2. Contrary to its pleadings in both Actions, in opposing transfer, DJI argued that the accused products were different. (Ex. A, DJI Transfer Opposition at 10.) DJI has made similar representations to this Court. (D.I. 131 (Joint Status Report) at 3).

Ultimately, Judge Jones agreed with Autel that the accused products were identical and, ordered the Second Action transferred to Delaware. Judge Jones found "particularly persuasive . . . the parties' pending case in Delaware dealing with similar allegations of infringement of the same X-Star unmanned air vehicles (UAVs). The court in Delaware is already navigating patent infringement claims regarding the identical UAVs in this matter, and judicial economy favors consolidating these patent cases." Transfer Order at 2 (internal citations omitted).

Now that the Second Action will be transferred to this District, Autel seeks to consolidate the two cases. DJI once again opposes consolidation. Fact discovery has formally closed in the First Action, but discovery disputes remain and will soon be pending before this Court. Expert discovery is scheduled to close on March 30, 2018, but no expert depositions have taken place. A hearing on case dispositive and *Daubert* motions is set for May 31, 2018. A 7-day jury trial is scheduled to begin on July 9, 2018. While the Second Action is not as far along, given the overlap in subject matter, witnesses, and accused products, only a short period of fact discovery should be needed before the Second Action can be at a similar stage as the First Action.

---

[6] In the same motion, Autel also moved to dismiss DJI's Complaint against Autel (USA), Inc. for lack of personal jurisdiction and improper venue. That request was mooted when DJI voluntarily dismissed Autel (USA), Inc. from the Second Action. Transfer Order at 3.

3

## **LEGAL STANDARDS**

Pursuant to Rule 42(a), when actions involve a common issue of law or fact, courts have the authority to consolidate the actions. "The purpose of consolidation is 'to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'" *In re TMI Litig.*, 199 F.3d 613, 724 (3d Cir. 2000) (citations omitted). The court has "broad power" to consolidate cases where consolidation would facilitate the administration of justice. *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 06-514-GMS, 2007 WL 2892707, at * 4 (D. Del. Sept. 30, 2007).

When deciding whether to consolidate, the court must balance "the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated." *Myers v. New Castle Cnty.*, No. 12-1038-LPS, 2013 WL 3853181, at *1 (D. Del. July 24, 2013) (internal quotations omitted)); *see also United States v. Denstply Int'l, Inc.*, 190 F.R.D. 140, 142-43 (D. Del. 1999) (courts balance judicial efficiency with the potential for inconvenience, delay, or expense).

Duplicative cases involving the same parties, witnesses, experts, attorneys, documents, and subject matter are ripe for consolidation to promote judicial economy and reduce party expenditure. *See Project Lifesaver Int'l v. JJCK, LLC*, No. 10-1143-LPS, 2011 WL 2619073, at *1 (D. Del. July 1, 2011); *see also Waste Distillation Tech. v. Pan Am. Res.*, 775 F. Supp. 759, 761 (D. Del. 1991) ("Consolidation will encourage orderly pretrial discovery, save witness time and expense, avoid duplicitous filings, and eliminate the risk of inconsistent results ...").

If the Court consolidates the First and Second Actions, as further set forth below, good cause exists to modify the scheduling order in the First Action to allow the orderly coordination

of expert discovery, pretrial motion practice, and trial. A scheduling order may be modified upon "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

## ARGUMENT

**There is Substantial Overlap in Discovery Between the Two Actions.**

Consolidation is warranted because there is substantial overlap between the two Actions. First, the patents in the First and Second Action all relate to UAV technology that engineers at SZ DJI Technology Co., Ltd. allegedly invented during the development of the DJI Phantom in the 2012-2013 time period. As such, the patents in the Second Action are very similar to those in the First Action. Indeed, as the table below shows, the patents share the same applicant and the same inventors, relate to the same research and development efforts, contain figures of the same UAV, and claim priority to the same time period. Therefore, the party witnesses, documents, and exhibits directed to DJI's patents, as well as the relevant state of the art, will be the same for both cases. *See also* Goodrick Declaration in W.D. Wash. ¶¶ 30-31; Autel Motion to Transfer at 19.

| District of Delaware ("First Action") | Western District of Washington ("Second Action") |
|---|---|
| **Patent 1: D'514 Patent**<br>Applicant: SZ DJI Technology Co., Ltd.<br>Inventors: Tao Wang<br>Shaojie Chen<br>Priority: Sep. 6, 2012<br><br>Figure 1. D'514 Patent, Fig. 1 | **Patent 5: '744 Patent**<br>Applicant: SZ DJI Technology Co., Ltd.<br>Inventors: Tao Zhao<br>Priority: Dec. 6, 2013<br><br><br>Figure 3. '744 Patent, Fig. 9 |

| **Patents 2-4: '617, '049, '530 Patents**<br>Applicant: SZ DJI Technology Co., Ltd.<br>Inventors: Tao Wang<br>　　　　　Tao Zhao<br>　　　　　Zhi Gang Ou<br>　　　　　Zhigang Ou<br>Priority: Nov. 15, 2012<br><br>Figure 2. '617, '049, '530 Patents, Fig. 3 | **Patent 6: '040 Patent**<br>Applicant: SZ DJI Technology Co., Ltd.<br>Inventors: Tao Wang<br>　　　　　Tao Zhao<br>　　　　　Zhi Gang Ou<br>Priority: May 31, 2013<br><br>Figure 4. '040 Patent, Fig. 13 |

Second, in both the First and Second Actions, DJI contends that the DJI Phantom UAVs practice the asserted patents. As shown in the table below, DJI goes so far as to use the exact same photos of the Phantom in both complaints. Thus, the party witnesses, documents, and exhibits directed to DJI's UAV products and related issues, will also be the same for both cases.

| **District of Delaware**<br>("First Action") | **Western District of Washington**<br>("Second Action") |
|---|---|
| Figure 5. First Action Compl., ¶ 12 Fig. 1 | Figure 6. Section Action Compl., ¶ 13 Fig. 2 |

There are additional reasons to assume that DJI's witnesses are going to be the same in the Second Action as in the First. In the First Action, DJI put up in-house counsel, Philip Wang,

6

for 14 of 21 30(b)(6) Topics, including the Phantom, pre-suit analysis, licenses and damages. It put up inventor Tao Zhao for conception, reduction to practice, and development of the patents. And it put Michael Perry for DJI's marketing efforts and its market share. After the Court ruled that Mr. Zhao and Mr. Perry were unprepared, DJI put up Mr. Wang to cover their topics..

There is no reason to expect those witnesses to change. Mr. Zhao is an inventor on both of the patents in the Second Action. Mr. Perry does not even work for one of the DJI plaintiffs—he is the head of a separate U.S. entity called DJI Creative Studio LLC. But when asked why he was designated to cover the marketing topics for DJI, Mr. Perry testified that ███████████████████████████████████████████████████████████████ Perry Tr. at 100-101. And Mr. Wang is obviously DJI's preferred witness on every topic.

Third, as explained by Judge Jones, the First and Second Actions involve "identical" accused products. Transfer Order at 2 (emphasis added). As shown in the table below, DJI goes so far as to use the exact same photos of the accused Autel X-Star products in both complaints.



| District of Delaware ("First Action") | Western District of Washington ("Second Action") |
|---|---|
| 7. First Action Compl., ¶ 24 Fig. 4 | 8. Second Action Compl., ¶ 23 Fig. 5 |

DJI may attempt, as it did in Washington, to draw distinctions between the patents at issue between the two Actions. Ex A, DJI Transfer Opposition at 10-11. But even if were true

that the patents in the Second Action are directed to different components of the accused Autel products, that does not change the fact that the products on the market, and the Autel employees who design, market, and sell them, are the same in both Actions. Furthermore, DJI's allegations in each Action draw no such distinctions. The Complaints simply allege that the entirety of the X-Star infringe the patents asserted. *See* W.D. Wash, D.I. 1 (Complaint) ¶¶ 41, 47; D.I. 1 ¶¶ 48, 54. DJI's hair-splitting was not accepted (or cited) by Judge Jones, and should be rejected here.

Furthermore, DJI's position is undermined by its own arguments in another case, again involving its UAV patent portfolio, *DJI Technology Co., Ltd., et al. v. Yuneec International Co. Ltd., et al.*, Civil Case No. 5:16-595 (C.D. Cal.). There, DJI sought to amend its Complaint to add, *inter alia*, one patent at issue in the First Action (U.S. Patent No. 9,284,049) and one at issue in the Second Action (U.S. Patent No. 9,284,040). DJI claimed that such amendment would "avoid duplicating efforts, such as duplicative discovery, involving the same parties, overlapping inventors, *similar technology*, and *the same products*." Ex. E, Memorandum in support of Motion to for Leave to File First Amended Complaint, at 6, *DJI Technology Co., Ltd., et al. v. Yuneec International Co. Ltd., et al.*, Civil Case No. 5:16-595, D.I. 68-1 (C.D. Cal. Oct. 31, 2016) (emphases added). DJI should not be permitted to take contrary positions here.

**Consolidation Will Facilitate the Administration of Justice.**

In light of the evidentiary overlap between the Actions, consolidation will prevent the wasteful and unnecessary exercise of two case dispositive/*Daubert* hearings and two trials, and eliminate the risk of inconsistent results. Judge Jones has already reached this very conclusion. Transfer Order at 2. Autel respectfully submits that this Court should make the same finding.

In this regard, it is critical to note that ████████████████████████
████████████████████████████████████████████████████████████████

8

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████, DJI asks this Court to devote the resources necessary for two separate trials on the same accused Autel products.

The prospect of two separate trials also raises significant concerns over duplication and double recovery in damages. For example, DJI seeks lost profits damages in the First and Second Actions. In the First Action, DJI's expert Ms. Riley calculated ████████████████ ████████████████████████████. *See* Ex. B, Riley Rpt. at 27-29, Exs. 3, 9. This measure is unrelated to the patents in the First Action and is the same measure—and same amount—that would apply in the Second Action. It would be wasteful to force two separate juries to consider DJI's damages theory, and difficult to police the risk of double recovery—*e.g.*, any instructions to the jury in the Second Action that acknowledged a prior award of lost profits (and thus infringement) would be unduly prejudicial. And, in the case of reasonable royalty damages, the prospect of two trials on the same products raises the specter of royalty-stacking. This is particularly true here where DJI seeks a ████████ ██████████████████████████████████████████████████████████ Ex. B, Riley Rpt. at 4-5 & Exs. 1, 4. These risks could be avoided with a consolidated trial.

Aside from damages issues, there is likely to be substantial overlap between the technical contentions and testimony in both cases, as both will necessarily involve consideration of conception and reduction to practice of DJI's Phantom UAV products (which allegedly practice the asserted patents in both Actions), the design and development of Autel's X-Star UAV products (which allegedly infringe the asserted patents in both Actions), and the state of the art of the UAV industry in the 2012-2014 time period (when all of the asserted patents were filed). Accordingly, consolidation will decrease if not eliminate completely the risk of inconsistent decisions, and will lessen the burden on the Court and the expense of duplicative proceedings. Further, there is no risk of juror confusion if the Actions are consolidated. A single jury will not be confused by the premise that different components of a product may infringe different patents.

DJI will not be prejudiced by consolidation and a corresponding extension to the First Action, D.I. 124 at 66-69 (denying DJI a preliminary injunction because no irreparable harm), particularly where Autel ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (*see* D.I. 195 at 2). To the extent DJI nevertheless claims prejudice, such is of DJI's own making. DJI chose to forum-shop by filing the Second Action in a new forum and then chose to oppose transfer and consolidation. At that time, the First Action was in earlier stages and there remained an opportunity to consolidate the cases within the parameters of the schedule for the First Action.

## CONCLUSION

For the foregoing reasons, Autel respectfully requests the Court grant its motion for consolidation of the First and Second Actions for all purposes, including trial, and that the Court enter an Order, substantially similar to the proposed Order attached hereto, entering a consolidated scheduling order that permits the completion of fact discovery in the Second Action before proceeding with consolidated expert discovery, pretrial motion practice, and trial.

Dated: March 2, 2018

Of Counsel:

STEPTOE & JOHNSON LLP
Timothy C. Bickham
John Caracappa
Scott M. Richey
Beau M. Goodrick
1330 Connecticut Avenue, NW
Washington DC 20036
(202) 429-3000
tbickham@steptoe.com
jcaracap@steptoe.com
srichey@steptoe.com
bgoodrick@steptoe.com

STEPTOE & JOHNSON LLP
Michael Flynn-O'Brien
One Market Street
Steuart Tower, Suite 1800
San Francisco, CA 94105
(415) 365-6700
mflynnobrien@steptoe.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

 */s/ Samantha G. Wilson*
Anne Shea Gaza (# 4093)
Robert M. Vrana (# 5666)
Samantha G. Wilson (# 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendants
Autel Robotics USA LLC and
Autel Aerial Technology Co., Ltd.*

01:22948602.1

11

# CERTIFICATE OF SERVICE

I, Samantha G. Wilson, hereby certify that on March 9, 2018, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Kelly E. Farnan, Esquire
>Christine D. Haynes, Esquire
>Richards Layton & Finger, PA
>One Rodney Square
>920 North King Street
>Wilmington, DE 19801
>*farnan@rlf.com*
>*haynes@rlf.com*
>
>*Attorneys for Plaintiffs*

I further certify that on March 9, 2018**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following:

>Sherry X. Wu, Esquire
>David M. Farnum, Esquire
>Anova Law Group, PLLC
>21351 Gentry Drive, Suite 150
>Sterling, VA 20166
>*sherry.wu@anovalaw.com*
>*david.farnum@anovalaw.com*
>
>*Attorneys for Plaintiffs*

2

| | |
|---|---|
| Dated: March 9, 2018 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| | /s/ Samantha G. Wilson |
| | Anne Shea Gaza (No. 4093) |
| | Robert M. Vrana (No. 5666) |
| | Samantha G. Wilson (No. 5816) |
| | Rodney Square |
| | 1000 N. King Street |
| | Wilmington, Delaware 19801 |
| | 302-571-6600 |
| | *agaza@ycst.com* |
| | *rvrana@ycst.com* |
| | *swilson@ycst.com* |
| | |
| | *Attorneys for Defendants* |