# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., | :<br>:<br>: |
| Plaintiffs-Counterclaim Defendants, | :<br>: |
| v. | :    C.A. No. 16-706-LPS |
| AUTEL ROBOTICS USA LLC and AUTEL AERIAL TECHNOLOGY CO., LTD., | :<br>:<br>: |
| Defendants-Counterclaim Plaintiffs. | :<br>: |

Jody C. Barillare and Amy M. Dudash, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE

Willard K. Tom, Jon R. Roellke, Ryan Kantor, MORGAN, LEWIS & BOCKIUS LLP, Washington, DC

    Attorneys for Plaintiff-Counterclaim Defendants


Anne Shea Gaza, Robert M. Vrana, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE

Timothy C. Bickham, John Caracappa, Jonathan B. Sallet, Scott M. Richey, Beau M. Goodrick, STEPTOE & JOHNSON LLP, Washington, DC

Michael Flynn-O'Brien, STEPTOE & JOHNSON LLP, San Francisco, CA

    Attorneys for Defendants

# MEMORANDUM OPINION

March 18, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Defendants-Counterclaim Plaintiffs Autel Robotics USA LLC and Autel Aerial Technology Co., Ltd. (collectively, "Autel") assert, in their operative Second Amended Answer ("SAA"), antitrust counterclaims against Plaintiffs-Counterclaim Defendants SZ DJI Technology Co., Ltd. ("SZ DJI"), DJI Europe B.V. ("DJI BV"), and DJI Technology Inc. ("DJI US") (collectively, "DJI"). (D.I. 277) DJI has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Autel has not alleged facts that plausibly support any of its antitrust counterclaims. (D.I. 282) After reviewing the parties' briefing (D.I. 283, 291, 301), the Court will grant DJI's motion.

## I. BACKGROUND

On August 11, 2016, DJI filed suit against Autel for patent infringement relating to drone technology and operation. (D.I. 1) Autel filed an amended answer to DJI's complaint on May 23, 2018, which included counterclaims for monopolization in violation of the Sherman Act, attempted monopolization in violation of the Sherman Act, predatory pricing in violation of sections 17043 and 17044 of the California Unfair Practices Act, and predatory pricing in violation of section 481-3 of the Hawaii Unfair Practices Act. (D.I. 241 at ¶¶ 211-41) DJI moved to dismiss these antitrust counterclaims on June 29, 2018 (D.I. 266), to which Autel responded by filing a second amended answer (D.I. 277) ("SAA"), mooting the earlier motion. DJI filed the present motion on September 14, 2018. (D.I. 282)

Autel describes a drone as an "aircraft without a human pilot aboard, controlled by a ground-based operator, with a system of communications between the two." (D.I. 291 at 2) The parties agree that DJI holds a powerful, if not controlling, position in the drone industry. (*Id.* at 3; D.I. 283 at 6) Autel characterizes its antitrust counterclaims as relating specifically to the market for "prosumer" drones, which are "[m]ore than toys and less than fully-configured

1

professional units," are "easy to use," "and contain certain 'pro' features, like improved cameras, navigation software and growing intelligence." (D.I. 291 at 3) (citing SAA at ¶ 61) Autel alleges that DJI has captured the majority of the growth of this market, fueling its monopoly power. (*Id.*) Autel further alleges that using this market power, "DJI has repeatedly engaged in predatory pricing to blunt the advance of new competitors and ultimately drive them out of the prosumer drone market entirely or, at a minimum, to its fringes." (*Id.*) "[N]early a dozen companies have attempted to bring new and better 'prosumer' drones to American consumers . . . [b]ut each time DJI has perceived a new threat, DJI has used its dominant market share to maintain and extend its monopoly by predatorily cutting its prices, below cost, to undercut the advent of the competitor drone." (*Id.* at 4) Autel describes "a continuing pattern of DJI's anti-competitive conduct," whereby DJI tactically lowers its price below cost to drive out each new competitor that enters. (*Id.* at 4-7)

Conversely, DJI characterizes its success as stemming from "several key advantages over its competitors," namely "the largest research and development team in the industry with a state-of-the-art R&D infrastructure" and a "manufacturing facility in Shenzhen, China . . . with direct access to the best supply chain of electronic components." (D.I. 283 at 6) DJI asserts that, despite its large market share, it does not have monopoly power, as shown by allegations Autel included in its SAA, including that "as many as a dozen companies (including Autel) introduce[ed] new products to the market over the past few years at prices comparable to and often lower than those offered by DJI." (*Id.* at 7) (citing SAA at ¶¶ 62, 70, 100, 112, 115, 124-26, 149) "Thus, according to Autel's own allegations, DJI's years of alleged predatory pricing practices did nothing to deter a steady onslaught of new and persistent competition." (*Id.* at 7) DJI further blames the exit of these competitors on their own "failure and troubles." (*Id.* at 8)

DJI insists that Autel's allegations of below-cost pricing are "nothing more than speculation," pointing out that Autel "does not, for example, identify any of DJI's advertised prices, does not identify any prices offered by DJI resellers, and does not identify any transactions in which a purchaser actually paid the prices alleged." (*Id.* at 8-9) (citing SAA at ¶¶ 69(a), 127(a), 127(c), 69(b), 127(d), 69(c), 128) DJI provides the Court with a DJI accounting document that Autel obtained through discovery (on the pending patent claims) and which forms the basis of Autel's pricing and cost allegations.[1] This accounting document provides DJI's revenue, cost, gross profit, and quantity of drones sold by DJI for each month in 2016. Autel replies to DJI's analysis of its accounting document by asking the Court to deny DJI's motion to allow the parties to ascertain "[t]he real meaning of DJI's internal financial analysis, produced during discovery on DJI's patent claims, which Autel contends demonstrates DJI's predatory pricing." (D.I. 291 at 1) DJI finds further flaws in Autel's counterclaims, including Autel's "measure of cost" and whether DJI had the ability to recoup lost profits.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

---

[1] The Court may properly look to this document (D.I. 284-6; D.I. 284-8) in evaluating the motion to dismiss, even though it is not cited in the SAA, because it is plainly integral to and a basis for Autel's counterclaims. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that party "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them"); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); D.I. 291 at 10 (Autel acknowledging its counterclaims rely on "facts derived from [this] document, among other sources"))

3

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported

4

conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B. Predatory Pricing

The Supreme Court has described a two-part framework for analyzing price-based monopolization under the Sherman Act:

> First a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs . . . . The second prerequisite to holding a competitor liable under the antitrust laws for charging low prices is a demonstration that the competitor had a reasonable prospect, or, under § 2 of the Sherman Act, a dangerous probability, of recouping its investment in below-cost prices.

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222-24 (1993); *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007) ("A claim of attempted monopolization under § 2 of the Sherman Act must allege (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.") (internal quotation marks omitted). Similarly, California and Hawaii predatory pricing statutes require Plaintiff to plead (and ultimately prove) below-cost pricing coupled with an intent to destroy competition. *See* Cal. Bus. & Prof. Code § 17043; Haw. Rev. Stat. § 481-3; *see also generally Varentec, Inc. v. Gridco, Inc.*, 2017 WL 2438846, at *9 (D. Del. June 6, 2017) ("Each of defendant's state law claims is based on the same below-cost pricing allegations underlying its federal predatory pricing claims.").

## III. DISCUSSION

**Autel Does Not Sufficiently and Plausibly Allege Below-Cost Pricing**

Autel does not sufficiently and plausibly plead that DJI priced its prosumer drones below costs. As DJI argues, Autel's allegations "are not based on the prices DJI actually charged for the drones it sold in a given month." (D.I. 283 at 12) In fact, "Autel does not identify any of DJI's advertised prices, nor any of the prices advertised by any of DJI's many resellers, nor any actual transaction prices." (*Id.* at 14) Instead, Autel merely takes the DJI accounting document it obtained in patent-related discovery, divides revenue by quantity, and alleges the resulting figure to be the monthly price. Autel alleges nothing to plausibly show that this is the method DJI uses to determine price or that Autel's resulting figures are in any way representative of DJI's actual prices. As DJI points out, Autel's method does not account for "among other things, refunds and returns on products that were sold in other months." (*Id.* at 14 n.16) As DJI also argues, "the document records negative 'revenue' in numerous months, which implies – using the math that Autel uses to derive 'price' – that DJI in those months must have paid its customers to take its drones." (D.I. 301 at 6)

Also, unlike the other cases involving allegations of below-cost pricing (on information and belief) and without factual basis and purely speculative. It is insufficient to plead "conclusory allegations in support of . . . predatory pricing claims." *Varentec*, 2017 WL 2438846, at *5.

Finally, the Supreme Court has expressly cautioned against allowing antitrust claims like the ones pled by Autel from proceeding where the allegations are inadequate, as they are here. "[C]utting prices in order to increase business often is the very essence of competition. Thus, mistaken inferences in cases such as this one are especially costly, because they chill the very

6

conduct the antitrust laws are designed to protect." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986). Even if DJI's pricing drove out competitors, this does not constitute a plausible allegation that it was DJU's ***below-cost*** predatory pricing that caused others to fail.

In short, the Court agrees with DJI: "[A]ll of the ***facts*** alleged in the Counterclaim (as opposed to Autel's conclusory assertions) are fully consistent with robust competition in a growing market, including allegedly declining prices, increasing output, product innovation, and repeated new entry. Because there is no plausibly alleged ***anticompetitive*** conduct, Autel cannot satisfy the requirements for stating a predatory pricing claim under federal or state antitrust law." (D.I. 301 at 1)

Having failed to allege a below-cost price,[2] or other facts demonstrating that DJI sold prosumer drones in a predatory manner, Autel's antitrust counterclaims, both federal and state, will be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Plaintiffs' motion to dismiss.

---

[2] Given the Court's conclusions, it is not necessary to address DJI's separate contention that Autel's claims fail also because of the meaning of "cost" as used in the DJI accounting sheet. (*See* D.I. 283 at 12-14; D.I. 291 at 15-19) Nor will the Court reach DJI's identification of deficiencies in Autel's pleading of intent to monopolize, likelihood of recoupment, or the relevant market.