# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., <br><br><br> Plaintiffs, <br><br> v. <br><br> AUTEL ROBOTICS USA LLC, and AUTEL AERIAL TECHNOLOGY CO., LTD. <br><br><br> Defendants. | C.A. No. 16-706-LPS <br> (Consolidated) |
| AUTEL ROBOTICS USA LLC, and AUTEL AERIAL TECHNOLOGY CO., LTD., <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., and DJI TECHNOLOGY, INC., <br><br> Counterclaim Defendants. | |

## DJI'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDING ................................................................. 1

II.  SUMMARY OF ARGUMENTS ................................................................. 1

III. STATEMENT OF FACTS (DESCRIPTION OF THE DESIGN PATENT AND THE UTILITY PATENTS-IN-SUIT) ................................................................. 2

IV.  LEGAL STANDARD ................................................................. 4

    A.   The Law of Claim Construction ................................................................. 4

    B.   Indefiniteness ................................................................. 6

V.   PERSON OF ORDINARY SKILL AND ORDINARY OBSERVER ................................................................. 7

VI.  DISPUTED CLAIMS/TERMS ................................................................. 8

    A.   U.S. Patent No. D691,514 ................................................................. 8

        1.   "The ornamental design for a rotor aircraft, substantially as shown and described" ... 8

    B.   U.S. Patent Nos. 9,016,617, 9,284,049, and 9,321,530 ................................................................. 11

        1.   "a position sufficiently distal … to effect a reduction of interference" ................................................................. 11

        2.   "at least about 3 cm" ................................................................. 13

        3.   "a central cavity" ................................................................. 14

        4.   "one or more electrical components (1) configured to control the operation of the UAV" ................................................................. 17

        5.   "the one or more branch housing members each comprising an upper branch housing member and a lower branch housing member" ................................................................. 18

        6.   "a branch cavity" ................................................................. 18

        7.   "wherein each actuator assembly is (1) partially within a branch cavity of a corresponding branch housing member, (2) partially extending from the branch cavity of the corresponding branch housing member" ................................................................. 20

        8.   "wherein each actuator assembly … (3) has, beneath the actuator assembly, a portion of the lower branch housing member of the corresponding branch housing member" ........ 22

        9.   "wherein the actuator of each actuator assembly is (1) partially within a branch cavity of a corresponding branch housing member, and (2) partially extending from the branch cavity of the corresponding branch housing member" ................................................................. 24

        10.  "wherein the upper branch housing member and the lower branch housing member have substantially the same length" ................................................................. 24

VII. CONCLUSION ................................................................. 25

i

**TABLE OF AUTHORITIES**

## Cases

*Abbott Laboratories v. Baxter Pharmaceutical Products, Inc.*, 334 F. 3d 1274 (Fed. Cir. 2003) 12

*Affymetrix, Inc. v. Hyseq, Inc.,* 132 F. Supp. 2d 1212 (N.D. Cal. 2001) ..................................... 20

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003)............... 15, 19, 23

*Amgen, Inc. v. Chugai Pharmaceutical, Inc.,* 927 F. 2d 1200 (Fed. Cir. 1991) .......................... 20

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F. 3d 1338 (Fed. Cir. 2008) ............................ 16

*Bell Comm'n Research, Inc. v. Vitalink Comm'n Corp.*, 55 F.3d 615 (Fed. Cir. 1995)........... 4, 19

*Best Lock Corp. v. Ilco Unican Corp.*, 94 F. 3d 1563 (Fed. Cir. 1996)........................................ 11

*BJ Servs. Co. v. Halliburton Energy Servs.*, 338 F. 3d 1368 (Fed. Cir. 2003) ............................ 14

*Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788 (Fed. Cir. 2019) ................................................ 5

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010)............................................... 9

*DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F. 3d 1245 (Fed. Cir. 2014) ................................. 13

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F. 3d 665 (Fed. Cir. 2008) ......................................... 9

*Electro Source, LLC v. Nyko Techs., Inc.,* No. CV 01-10825, 2003 WL 25902415 (C.D. Cal.
   Apr. 7, 2003) ............................................................................................................... 15, 23

*Enzo Biochem, Inc. v. Applera Corp.,* 599 F.3d 1325 (Fed. Cir. 2010)........................................ 21

*Ethicon Endo–Surgery, Inc. v. Covidien, Inc.,* 796 F.3d 1312 (Fed. Cir. 2015)............................ 6

*Hoganas AB v. Dresser Indus., Inc.*, 9 F. 3d 948 (Fed. Cir. 1993)............................................... 17

*In re Maatita*, 900 F.3d 1369 (Fed. Cir. 2018) .......................................................................... 6, 7

*In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) ...................................................... 16, 20, 22

*Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364 (Fed. Cir. 2014)........................................... 6

*Kara Tech. Inc. v. Stamps.com Inc.,* 582 F.3d 1341 (Fed. Cir. 2009) ........................................... 5

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993)............................. 7, 11

*Legacy Separators LLC v. Halliburton Energy Servs. Inc*, No. 4:14-CV-2081, 2016 WL 3017140
   (S.D. Tex. May 26, 2016) .................................................................................................. 21

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ............................................... 4, 19

*Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F. 3d 1364 (Fed. Cir. 2006) ................... 14, 16, 19

*Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120 (2014) ........................................... 6, 12

*NeoMagic Corp. v. Trident Microsystems, Inc.,* 98 F. Supp. 2d 538 (D. Del. 2000) ................. 16

*Pall Corp. v. Micron Separations*, 66 F. 3d 1211 (Fed. Cir. 1995) ............................................. 14

*Phillips v. AWH Corp.*, 415 F. 3d 1303 (Fed. Cir. 2005) ..................................................... passim

*Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F. 3d 1368 (Fed. Cir. 2017) ................................................................................................................................. 6

*ReedHycalog UK, Ltd. v. United Diamond Drilling Servs., Inc.*, No. 6:07-CV-251, 2009 WL 1011730 (E.D. Tex. Apr. 15, 2009) ......................................................................... 13

*Richardson v. Stanely Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) ............................................. 9

*SanDisk Corp. v. Kingston Tech. Co.*, 695 F. 3d 1348 (Fed. Cir. 2012) ...................................... 16

*Schwing GmbH v. Putzmeister Aktiengesellschaft,* 305 F.3d 1318 (Fed. Cir. 2002)................... 23

*Sport Dimension Inc. v. Coleman Co.*, 820 F.3d 1316 (Fed. Cir. 2016)........................................ 9

*Teleflex, Inc. v. Ficosa N.A. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)............................................. 5

*Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 789 F.3d 1335 (Fed. Cir. 2015) ...................................... 6

## I.    NATURE AND STAGE OF PROCEEDING

On August 11, 2016, Plaintiffs SZ DJI Technology Co., Ltd. and DJI Europe B.V. (collectively, "DJI") filed a patent infringement action against Defendants Autel Robotics USA LLC, Autel Aerial Technology Co., Ltd., and Autel Intelligent Technology Co., Ltd. (collectively, "Autel") asserting U.S. Patent No. D691,514 (the "D'514 Patent" or "Design Patent") and U.S. Patent Nos. 9,016,617 ("the '617 Patent"), 9,284,049 ("the '049 Patent"), and 9,321,530 ("the '530 Patent") (collectively, "Utility Patents-in-Suit"). Pursuant to the Court's Third Amended Scheduling Order (D.I. 352), on May 10, 2019, the parties filed a Joint Claim Construction Chart identifying the disputed claim terms, the constructions of which are addressed herein.

## II.    SUMMARY OF ARGUMENTS

While the Utility Patents-in-Suit describe and claim novel and innovative inventions, the technology involved is straightforward. The claims of the Utility Patents-in-Suit do not rely on terms or phrases that have complex, specialized technical meanings. Rather, the claims use plain English words that even lay people can easily understand. DJI's proposed constructions apply the plain and ordinary meaning of the disputed terms and align with the claim language, specification and prosecution history of the Utility Patents-in-Suit. By contrast, Autel's proposed constructions are unnecessarily complex and are at odds with the intrinsic evidence and the plain meaning of each disputed term. Autel's proposed constructions further import limitations from the specifications into the claims and/or import limitations from one claim into another against the bedrock principles of claim construction. Therefore, this Court should reject Autel's attempts to artificially narrow the scope of the claims and adopt DJI's proposed constructions.

The language of the claim of the Design Patent is consistent with thousands of other design patent claims that came before it. There is no ambiguity in the claim of the Design Patent that would render it indefinite. In addition, Autel's proposed alternative construction is unnecessary

and fails to capture all of the ornamental aspects of the claimed design.  Moreover, Autel cannot overcome the presumption that design is best represented by figures rather than a verbal or written description.

## III.  STATEMENT OF FACTS (DESCRIPTION OF THE DESIGN PATENT AND THE UTILITY PATENTS-IN-SUIT)

The Design Patent and Utility Patents-in-Suit generally relate to unmanned aerial vehicles ("UAVs") or drones.




Fig. 7 of D'514                                    Fig. 3 of the Utility Patents-in-Suit

Specifically, the D'514 patent is directed to an ornamental design of an UAV, or "a rotor aircraft."  D'514 patent, Cl.  The Utility Patents-in-Suit are directed to UAVs and methods that improve the reliability of operation of the UAVs.  *See* '617 patent, 1:16-33; '049 patent, 1:22-39; '530 patent, 1:23:39.  The three Utility Patents-in-Suit are related to each other; specifically, the '530 and '049 patents are both continuations of the '617 patent.  *See* '530 patent at p. 1 (Related U.S. Application Data (63)); '049 patent at p. 1 (Related U.S. Application Data (63)).  Thus, the Utility Patents-in-Suit are generally directed to similar technologies and share the same disclosure.

Typically, "UAVs carry onboard a variety of electrical components used to control various aspects of the operation of the UAVs."  *See* '617 patent, 1:19-21; '049 patent, 1:25-27; '530 patent, 1:25-27.  UAVs also carry one or more sensors, the operation of which can be affected by

2

interference from the electrical components.  *See* '617 patent, 1:21-23("the UAVs sometimes also need to carry one or more sensors for navigational, surveillance or remote sensing purposes."); '049 patent, 1:27-29; '530 patent, 1:27-29.  When such an interference occurs, the reliability of the UAVs is reduced.  *See* '617 patent, 1:23-26 ("However, the operation of some of such sensors can be affected by interference from the electrical components, thereby reducing the reliability of such UAVs."); '049 patent, 1:29-32; '530 patent, 1:29-32.  The reliability of the UAVs is also reduced where a user makes an error in assembling the UAV or configuring the sensors.  *See* '617 patent, 1:27-32 (Furthermore, assembly of the UAV and configuration/calibration of the sensors are typically required for the UAVs to function properly. When such assembly, configuration or calibration is performed by untrained users, user mis-configuration or assembly errors can lead to malfunction or damage to the UAVs."); '049 patent, 1:33-38; '530 patent, 1:33-38.  The Utility Patents-in-Suit solve the aforementioned problems by providing multi-rotor UAVs with improved reliability.

In exemplary embodiments, the body portion of the UAV comprises a central housing member and one or more branch housing members.  '049 patent, 7:1-3; '617 patent, 6:60-62; '530 patent, 7:1-3.  The inner surface of the central housing member can form a central cavity.  '049 patent, 7:3-4; '617 patent, 6:62-63; '530 patent, 7:3-4.  Each of the branch housing members, in the shape of a hollow arm or any other suitable shape, can form a branch cavity.  '049 patent, 7:5-8; '617 patent, 6:64-66; '530 patent, 7:5-7.  The actuator assembly can be located partially inside a branch cavity.  '049 patent, 11:61-65; '617 patent, 11:53-55; '530 patent, 11:61-63.  The number of branch housing members is typically equal to the number of rotors or actuator assemblies of the UAV.  '049 patent, 7:31-33; '530 patent, 7:31-33; '617 patent, 7:23-25.  An actuator assembly can include a rotor wing or rotor blade and an actuator that is used to actuate the rotor blade.  '049

3

patent, 7:33-36; '617 patent, 7:25-28; '530 patent, 7:33-36.  For example, a four-rotor quadcopter may have four branch housing members, each corresponding to one of the four rotors or actuator assemblies.  '049 patent, 7:36-39; '530 patent, 7:36-39; '617 patent, 7:28-31.  Some or all of the electrical components of the UAV may be located inside the housing, for example in the central and branch cavities.  '049 patent, 10:5-6, 11:40-42; '617 patent, 9:64-65, 2:53-60; '530 patent, 10:5-6, 2:59-66.  The interference-susceptible sensors can be positioned outside the central cavity, for example on the landing stand of the UAV.  '049 patent, 5:49-53; '530 patent, 5:49-53, '617 patent, 5:41-45.  In other embodiments, the electrical components and the sensor may be both located inside the housing but at a minimum distance of at least about 3 cm.  '049 patent, 13:44-47; '617 patent, 13:38-41; '530 patent, 13:44-47.

## IV.    LEGAL STANDARD

### A.    The Law of Claim Construction

The interpretation of patent claims is an issue of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled [to] the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal citation omitted).

The first and most important step in claim construction is to consider the claim language itself.  *Bell Comm'n Research, Inc. v. Vitalink Comm'n Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995).  The claim terms generally should be given "their ordinary and customary meaning" which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1312-13.  To determine the ordinary meaning of claim terms, "the court starts the decision making process by reviewing the same resources as would that person, viz., the patent specification and the prosecution history."  *Id*. at 1313.

4

The patent specification is "the single best guide to the meaning of a disputed term" and thus, one should look to the specification first to interpret what the patentee intended. *See id.* at 1315. But limitations from the specification should not be read into the claims just because of a disclosure appearing in the specification. *Kara Tech. Inc. v. Stamps.com Inc.,* 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."). Unless the patentee acted as a lexicographer and clearly set forth a definition of the disputed term in either the specification or prosecution history, a claim term will receive its ordinary meaning. *See Teleflex, Inc. v. Ficosa N.A. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning."). To narrow or otherwise alter the claim scope, the specification or prosecution history must contain a clear and unambiguous statement that represents a clear disavowal of scope. *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) ("Similar to disclaimers in the specification, "[t]o operate as a disclaimer, the statement in the prosecution history must be clear and unambiguous, and constitute a clear disavowal of scope.").

Courts also may "rely on extrinsic evidence which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (internal citation omitted). Specifically, dictionaries may be helpful in construing commonly understood terms or phrases. *Id.* at 1314. Expert testimony "can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how the invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish

that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id*. at 1318 (citations omitted).

### B.    Indefiniteness

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2129 (2014).  A claim may be indefinite if the patent does not convey with reasonable certainty how to measure a claimed feature.  *See Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 789 F.3d 1335, 1341 (Fed. Cir. 2015).  But "[i]f such an understanding of how to measure the claimed [feature] was within the scope of knowledge possessed by one of ordinary skill in the art, there is no requirement for the specification to identify a particular measurement technique."  *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.,* 796 F.3d 1312, 1319 (Fed. Cir. 2015); *accord, Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F. 3d 1368, 1376-77 (Fed. Cir. 2017).  Moreover, terms of degree are not necessarily indefinite.  "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) (*citing Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 65-66 (1923) (finding "substantial pitch" sufficiently definite because one skilled in the art "had no difficulty … in determining what was the substantial pitch needed" to practice the invention)).  "As the Supreme Court recognized in *Nautilus*, 'absolute precision' in claim language is 'unattainable.'"  *Id.* (citing *Nautilus*, 134 S.Ct. at 2129).  Indefiniteness must be shown by clear and convincing evidence. *Nautilus,* 134 S. Ct. at 2129.

In certain circumstances, a design patent may be found indefinite "if it includes multiple, internally inconsistent drawings."  *In re Maatita*, 900 F.3d 1369, 1375 (Fed. Cir. 2018).  "Errors

and inconsistencies between drawings do not merit § 112 rejection, however, if they 'do not preclude the overall understanding of the drawing [sic] as a whole.'"  *Id.* at 1375-76 (internal citation omitted).  "Ultimately, a patent is indefinite for § 112 purposes whenever its claim, read in light of the visual disclosure (whether it be a single drawing or multiple drawings), 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'"  *Id.* (citing *Nautilus,* 134 S. Ct. at 2129.  "[A] design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure."  *Id.* at 1377.  One of ordinary skill in the art in the design patent context is "a designer of ordinary skill or capability in the field to which the design pertains."  *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993).

## V.      PERSON OF ORDINARY SKILL AND ORDINARY OBSERVER

With respect to the Design Patent, the ordinary observer is a person who is a purchase of, or sufficiently interested in, commercial/consumer grade UAVs who gives sufficient attention to the relevant product and who is aware of prior art in the field.  Braasch Decl., (Ex.[1] A), ¶ 21. This ordinary observer may be familiar with viewing or purchasing such devices either in a retail environment or online.  Braasch Decl., (Ex. A), ¶ 21.  A designer of ordinary skill in the design of commercial/consumer grade UAVs would likely have a Bachelor degree in Engineering, Physics, or similar disciplines, with two to three years of experience in quadcopter designs.  Braasch Decl., (Ex. A), ¶ 22.

With respect to the Utility Patents-in-Suit, a person of ordinary skill in the art at the time of the inventions would have had at least an undergraduate Bachelor's degree in mechanical,

---

[1] All exhibits referenced herein are exhibits to the Declaration of Amy M. Dudash in support of Plaintiffs' Opening Claim Construction Brief.

aerospace, or electrical engineering, robotics, and/or computer science, or their equivalent, along with at least three years of relevant experience or training in any of the noted disciplines, or a master's or other graduate level degree in any of the noted disciplines, or someone with the equivalent amount (*e.g.*, 7 years) of training or work experience in such disciplines.  Janet Decl., (Ex. E), ¶¶ 20-22.

## VI.    DISPUTED CLAIMS/TERMS

### A.    U.S. Patent No. D691,514

#### 1.    *"The ornamental design for a rotor aircraft, substantially as shown and described"*

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"The ornamental design for a rotor aircraft, substantially as shown and described."* | Indefinite.<br><br>Alternatively,<br><br>"A full monocoque quadcopter having:<br>a cruciform housing having four branches that flare to meet one another to form a central body;<br>the logo depicted in Figure 5;<br>a rectangular battery compartment cover on the front side of the central body of the aircraft;<br>a round light on the back side of the central body of the aircraft;<br>two relatively dark stripes on each of the front branches;<br>indicator lights along the underside of the branches between the rotors and the central body; and<br>four substantially parallel legs that include an inward curve near where they attach to the central body and that include | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"The ornamental design for a rotor aircraft, substantially as shown and described in Figures 1-7." |

| | front-to-rear crossbars at the bottom of the legs." | |
|---|---|---|

The Court should not attempt to convert the design claimed in the D'514 patent into a detailed verbal description.  As the Federal Circuit has made clear, "[w]ords cannot easily describe ornamental designs."  *Sport Dimension Inc. v. Coleman Co.*, 820 F.3d 1316, 1319 (Fed. Cir. 2016).  As a result, "a design is better represented by an illustration 'than it could be by any description.'"  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F. 3d 665, 679 (Fed. Cir. 2008) (citing *Dobson v. Doran*, 118 U.S. 10, 14 (1886)).  "[M]isplaced reliance on a detailed verbal description of the claimed design risks undue emphasis on particular features of the design rather than examination of the design as a whole."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010); *Richardson v. Stanely Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) ("design patents are typically claimed according to their drawings, and claim construction must be adapted to a pictorial setting").  "[A]s a rule, the illustration in the drawing views is its own best description."  *Crocs*, 598 F.3d at 1303.

Autel's alternative proposed construction goes against this established rule by providing a verbal description that selectively focuses on individual elements shown in the figures, such as cruciform housing, logo, rectangular battery compartment cover, etc., thereby directing attention away from considering the design as a whole.  Moreover, even if a verbal or written description of the design were appropriate, Autel's proposed construction misses a number of aspects of the ornamental design.  For example, Autel's proposed construction describes a battery compartment cover, not the battery compartment itself.  Braasch Decl., (Ex. A), ¶ 40.  In addition, Autel's proposed construction describes the rotor aircraft as including "four substantially parallel legs that include an inward curve near where they attach to the central body and that include front-to-rear crossbars at the bottom of the legs," which implies there are six separate pieces that make up this

feature (*i.e.*, four legs and two crossbars).  However, the design actually claimed in the D'514 patent shows that the legs consist of only two parts.  *See, e.g.*, D'514 patent, Fig. 7; Braasch Decl., (Ex. A), ¶ 40.  Moreover, Autel's description of this feature is silent as to whether the legs are partially hollow, solid, etc.  Braasch Decl., (Ex. A), ¶ 40.  Just these few examples illustrate the difficulty of trying to describe every aspect of the design in words and why the claim is best left to refer to the drawings themselves, rather than a description of the drawings.  Accordingly, the Court should find the claim of the D'514 patent to mean the ornamental design of a rotor aircraft as shown and described in Figures 1-7 of the D'514 patent.

In addition, Autel appears to argue that the claim in the D'514 patent is indefinite because it is allegedly unclear "what would constitute 'substantially as shown and described' in [the figures]," and also, the figures in the patent have "no indication as to which features should be considered ornamental" and claim "features that 'serve a functional purpose.'"  Barrett Expert Report, (Ex. B), ¶¶ 109-111, 118.  As an initial matter, it is common practice to use claim language "substantially as shown" in prosecuting design patents.  Indeed, a search on the USPTO website reveals that over 25,600 design patents have been issued that use the exact same language in their claims, including design patents that have issued just this month.  Ex. C.  More importantly, the figures in the D'514 patent are CAD drawings of an aircraft design viewed from various perspectives and show all ornamental features of the overall design.  Braasch Decl., (Ex. A), ¶ 27.  These figures are self-explanatory and consistent with each other in all material aspects.  Braasch Decl., (Ex. A), ¶ 27.  In other words, one skilled in the art, viewing the design as would an ordinary observer, would have no problem understanding what is claimed in the D'514 patent—*i.e.,* the overall visual impression of the design—by simply reviewing these figures.  Braasch Decl., (Ex. A), ¶¶ 27, 39.

Moreover, contrary to Autel's argument, the design claimed in the D'514 patent is not dictated by the functional aspects of the aircraft design.  The D'514 patent unequivocally claims the entire aircraft design, not individual features of that design that are allegedly functional.  Braasch Decl., (Ex. A), ¶ 27, 28; *see L.A. Gear*, 988 F. 2d at 1123 ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.").  In addition, there are multiple alternative designs of both an entire aircraft and of even the specific portions that Autel addresses that can perform the same functions that allegedly render the D'514 patent invalid for being functional.  Braasch Decl., (Ex. A), ¶¶ 29-39.  That there are alternative designs was admitted by Dr. Eby, another expert of Autel.  Eby Decl., (Ex. D,) ¶ 29, dated March 30, 2017.  "A design is not dictated solely by its function when alternative designs for the article of manufacture are available" and therefore, Autel's indefinite argument should be rejected.  *Best Lock Corp. v. Ilco Unican Corp.*, 94 F. 3d 1563, 1566 (Fed. Cir. 1996); *L.A. Gear, 988* F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.").

    **B.**    **U.S. Patent Nos. 9,016,617, 9,284,049, and 9,321,530**

        *1.*    *"a position sufficiently distal … to effect a reduction of interference"*

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"a position sufficiently distal … to effect a reduction of interference"* '617 patent, cl. 1; '530 patent, cl. 1. | Indefinite. | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"a position sufficiently away …to reduce interference" |

The phrase "a position sufficiently distal … to effect a reduction of interference" is not indefinite and should be accorded its plain and ordinary meaning.  As Dr. Janet explains, a person of ordinary skill in the art ("POSITA") would understand that the position of the magnetometer would depend on the relative variable placement of other components that may radiate, conduct,

distort, or otherwise interfere with magnetic fields.  Janet Decl., (Ex. E), ¶¶ 29-33.  In addition, the patents disclose examples of the "sufficiently distal" placement of the magnetometer, as well as examples of how to make this determination by measuring the level of interference experienced by the sensors.  For example, both the '617 and '530 patents teach that the magnetometer can be located between 3 cm and 0.5 m (i.e., 50 cm) away from the electrical components.  *See, e.g.*, '617 patent, 2:1-5, 19:5-7; '530 patent, 2:4-11, 19:8-14.  The patents also teach how to measure the level of interference experienced by the sensors, which varies depending on the distance between the sensor and the electrical components.  *See e.g.*, '617 patent, 17:19-45; '530 patent, 17:26-52 ("the interference experienced by the interference-susceptible sensor may be measured by field heading deviation and/or the field strength of magnetic interference.  Such level of interference may be obtained by comparing readings of the senor when the electrical components are powered off and on, respectively.").  Specification also provides examples of the desired amount of reduction of interference.  *See, e.g.*, '617 patent at 17:31-45 (describing a reduction of heading deviation of "around 15 degrees, 10 degrees, 5 degrees or the like" and reduction of field strength experienced by the magnetometer "around 0.5 gauss, 0.3 gauss, 0.1 gauss, or the like.")  Given the description in the specification, a POSITA would understand how far away a particular electronic component, such as a magnetometer, would need to be to effect a reduction of interference.  Janet Decl., (Ex. E), ¶¶ 32-39.

Accordingly, since a POSITA would understand with reasonable certainty the meaning of "sufficiently distal" in the context of the '617 and '530 patents, this term is not indefinite.  Janet Decl., (Ex. E), ¶ 39; *Nautilus,* 134 S. Ct. at 2129; *Abbott Laboratories v. Baxter Pharmaceutical Products, Inc.*, 334 F. 3d 1274 (Fed. Cir. 2003) (finding the term "amount sufficient" not indefinite because specification taught that the term could vary depending upon conditions and described the

12

term in the functional framework of what it accomplished by being present in that amount); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F. 3d 1245, 1260 (Fed. Cir. 2014) ("For ... terms of degree, specific and unequivocal examples may be sufficient to provide a skilled artisan with clear notice of what is claimed.").

DJI believes that this phrase needs no construction, however, in the event the Court decides to construe it, DJI proposes "a position sufficiently away …to reduce interference," which conforms to the plain meaning of the claim language in view of the intrinsic evidence.  *See* Janet Decl., (Ex. E), ¶ 40.

## 2.  *"at least about 3 cm"*

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"at least about 3 cm"* '617 patent, claim 5; '530 patent, claim 16. | Indefinite. | Plain and ordinary meaning. |

The term "at least about 3 cm" is plain on its face and needs no construction.  It is used throughout the '617 and '530 patents simply to describe the minimum distance between the magnetometer and electrical components.  *See, e.g.*, '617 patent, 2:24-26, 10:46-52, 13:35-45; '530 patent, 2:30-33, 10:50-60, 13:41-52.  In other words, a POSITA, when reviewing the claim as a whole in light of the specifications, would understand with reasonable certainty that the magnetometer needs to be placed at least approximately 3 cm away from the electrical components in order to reduce any interference experienced by the onboard sensors from the electrical components.  Janet Decl., (Ex. E), ¶¶ 41-46; '617 patent, 13:35-61; '530 patent, 13:41-67.  Courts have routinely held that the use of words of approximation is permissible and not indefinite where, as here, a POSITA can understand the application of such terms in relation to the claim.  *See, e.g.*, *ReedHycalog UK, Ltd. v. United Diamond Drilling Servs., Inc.*, No. 6:07-CV-251, 2009 WL 1011730, at *11 (E.D. Tex. Apr. 15, 2009) ("The terms "at least about 0.1 mm" and "at least 0.1

mm" are easily understood terms and do not require construction."); *see also BJ Servs. Co. v. Halliburton Energy Servs.*, 338 F. 3d 1368, 1372 (Fed. Cir. 2003) ("That some claim language may not be precise, however, does not automatically render a claim invalid.").

In addition, Autel seems to have no trouble understanding "at least 3 centimeters," which is recited in claim 17 of the '049 patent, as it does not allege this term indefinite. Therefore, it seems Autel's only issue is with the term "about", which has frequently been upheld by the Federal Circuit as not being indefinite. *See, e.g.*, *Pall Corp. v. Micron Separations*, 66 F. 3d 1211, 1217 (Fed. Cir. 1995) ("The use of the word 'about,' avoids a strict numerical boundary to the specified parameter. Its range must be interpreted in its technologic and stylistic context."); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F. 3d 1364, 1372 (Fed. Cir. 2006) (holding "about" to mean "approximately" in the context of varying ranges).

Therefore, contrary to Autel's assertion, this term is not indefinite and should be accorded its plain and ordinary meaning.

### 3. *"a central cavity"*

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"a central cavity"* '049 patent, claims 1, 9, 12, 13, 16, 24 | "a single space formed by the upper housing member and the lower housing member that is centrally located within the central body" | Plain and ordinary meaning. Alternatively, "a centrally-located space" |

The term "a central cavity" is plain on its face and needs no construction. *See* Janet Decl., (Ex. E), ¶ 47. In the event the Court decides to construe it, DJI proposes "a centrally-located space," which conforms to the plain meaning of the claim language in view of the intrinsic evidence. *See* Janet Decl., (Ex. E), ¶¶ 48-51.

Autel's proposed construction is improper for at least two reasons. First, Autel's proposed construction attempts to import limitations from one independent claim into another independent

claim against the settled law regarding claim construction. *See Electro Source, LLC v. Nyko Techs., Inc.*, No. CV 01-10825, 2003 WL 25902415, at *11 (C.D. Cal. Apr. 7, 2003) ("although Claims 1 and 5 … are both independent claims, the doctrine of claim differentiation still applies") (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003)).  For example, independent claim 1 of the '049 patent recites "a central body comprising an upper housing member and a lower housing member, the upper housing member and the lower housing member forming a central cavity."  By contrast, independent claim 16 makes no reference to an "upper housing member" or a "lower housing member" and simply states that "a central body compris[es] a central cavity."  Therefore, it is inappropriate to add a limitation that the central cavity must be "formed by the upper housing member and the lower housing member."  *See Amgen*, 314 F.3d at 1326 (comparing two independent claims and refusing to import an "exogenous DNA" limitation from one independent claim to the other).

Such a construction also adds ambiguity to claim 16 because Autel's proposed construction refers to "***the*** upper housing and ***the*** lower housing member," and there is no antecedent basis for these housing members.  Accordingly, it is unclear where these housing members are located or even what they are.  Moreover, with respect to independent claim 1, Autel's construction simply adds redundant and superfluous language.  When Autel's proposed construction is placed back into claim 1, it reads as follows:  "a central body comprising an upper housing member and a lower housing member, the upper housing member and the lower housing member forming [a single space formed by the upper housing member and the lower housing member that is centrally located within the central body]."  Accordingly, Autel's references to the housing members forming the central cavity should be rejected.

Second, Autel's proposed construction is improper because it adds the phrase "a single space" which is unsupported by the claim language.  Presumably, Autel believes this addition is warranted because the claim recites "***a*** central cavity."   However, the Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more.'"  *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F. 3d 1338, 1342 (Fed. Cir. 2008) (internal citation omitted); *accord, SanDisk Corp. v. Kingston Tech. Co.*, 695 F. 3d 1348, 1360 (Fed. Cir. 2012).  Moreover, the phrase "a single space" appears nowhere in the specification.  There is no reason, for example, that the central cavity cannot be segregated into multiple cavities.  In fact, the specification actually discloses embodiments with multiple cavities.  *See, e.g.*, '049 patent, 9:7-20 ("the receiving structure may form an addition receiving cavity besides the main cavity").  Thus, Autel's proposed construction should be rejected.  *Merck*, 347 F. 3d at 1371 (claims to be construed consistent with specification); *NeoMagic Corp. v. Trident Microsystems, Inc.*, 98 F. Supp. 2d 538, 553-54 (D. Del. 2000) (rejecting proposed construction that is inconsistent with explanation in the specification).

Finally, the phrase "a single space" is inconsistent with the construction Autel proposed for the same term, "cavity" used in "a branch cavity."  *See infra*, Section B. 6.  Here, Autel proposes the word "cavity" to mean "a single space," even though Autel proposes a different construction, namely "an empty space," for the same term used in "a branch cavity."   Such inconsistent constructions are improper as they go against the "strong" principle that "the same phrase in different claims of the same patent should have the same meaning."  *In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016); *Phillips*, 415 F. 3d at 1314 ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the

meaning of the same term in other claims."). Thus, Autel's proposed construction should be rejected.

> **4.** **"one or more electrical components (1) configured to control the operation of the UAV"**

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"one or more electrical components (1) configured to control the operation of the UAV"* <br> '049 patent, claims 1, 2, 3, 9, 10, 16, 17, 18, 24 | "one or more electrical components designed to detect, maintain, or adjust the movement of the UAV" | Plain and ordinary meaning. <br><br> Alternatively, <br><br> "one or more electrical components designed to control the movement of the UAV" |

This phrase is plain on its face and does not need construction. *See* Janet Decl., (Ex. E), ¶ 52. If the Court is inclined to construe this term, the parties largely agree on the proposed construction. The parties' respective proposed constructions differ only in that Autel seeks to replace the word "control" in this phrase with the terms "detect, maintain, or adjust." DJI disagrees with Autel's proposed construction for the term "control," because it improperly alters the scope of the claim by adding limitations that are not inherent in the claim language. Indeed, the claims do not mention anywhere the terms "detect," "maintain," or "adjust." *See* '049 Patent, 20:35-22:55. Nor do they require controlling of the movement of the UAV to mean detecting, maintaining or adjusting the movement of the UAV. Janet Decl., (Ex. E), ¶¶ 53-55. Accordingly, the Court should reject Autel's proposed construction as it imports limitations not found in the claim. *Hoganas AB v. Dresser Indus., Inc.*, 9 F. 3d 948, 950 (Fed. Cir. 1993) ("It is improper for a court to add 'extraneous' limitations to a claim, that is, limitations added 'wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim.'") (internal citation omitted).

5.      *"the one or more branch housing members each comprising an upper branch housing member and a lower branch housing member"*

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"the one or more branch housing members each comprising an upper branch housing member and a lower branch housing member"*<br><br>'049 patent, claim 1, 16 | "the one or more branch housing members each comprising physically separate and discrete upper and lower pieces" | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"the one or more branch housing members each comprising an upper and a lower branch housing member"[2] |

The parties have come to an agreement that this term should be accorded its plain and ordinary meaning and therefore, no construction is needed.  June 23, 2019 Email from Autel (Ex. K).

6.      *"a branch cavity"*

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"a branch cavity"*<br>'049 patent, claim 7, 16, 21 | "an empty space formed by the interior of the upper branch housing member and the interior of the lower branch housing member" | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"a space formed by a branch housing member" |

The term "a branch cavity" is plain on its face and needs no construction.  *See* Janet Decl., (Ex. E), ¶ 56.  In the event the Court decides to construe it, DJI proposes "a space formed by a branch housing member," which conforms to the plain meaning of the claim language in view of the intrinsic evidence.  *See* Janet Decl., (Ex. E), ¶¶ 56-59.

Similar to Autel's proposed construction of "a central cavity", Autel seeks to add limitations expressly recited in other claims.  Here, dependent claim 7 recites that "the upper branch housing member and the lower branch housing member for a branch cavity within a

---

[2] DJI's alternative proposed construction for this term in the Joint Claim Construction Chart mistakenly pluralizes the last instance of "member."  D.I. 355 at 5.  This error is corrected here.

corresponding branch housing member."  By contrast, independent claim 16 simply recites "a branch cavity" and does not define it in terms of upper branch housing and lower branch housing members let alone that it consists of the interior of both of these members.  It is improper to import limitations from other claims.  *See Amgen*, 314 F.3d at 1326 ("Our court has made clear that when a patent claim 'does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.'") (internal citation omitted).

Moreover, Autel's proposed construction is improper because it is inconsistent with the specification and claim language.  *See Markman*, 52 F. 3d at 979 ("[c]laims must be read in view of the specification, of which they are part"); *Bell Comm'n Research*, 55 F.3d at 619 ("The first and the most important step in claim construction is to consider the claim language itself.").  The '049 patent describes that "[e]ach of the branch housing members, in the shape of a hollow arm or any other suitable shape, can form a branch cavity." '049 Patent, 7:5-7.  Thus, contrary to Autel's proposed construction, forming "a branch cavity" does not require both the upper and lower branch housing members.  Nor does the term "a branch cavity" require "an *empty* space." (emphasis added).  As claim 16 explicitly states, "each actuator assembly" is "partially within a branch cavity" and "partially extending from the branch cavity," ('049 patent, claim 16), meaning that the "cavity" or "space," need not be "empty" as Autel suggests.  Thus, Autel's proposed construction should be rejected as being inconsistent with the intrinsic record.  *Merck*, 347 F. 3d at 1371 (claims to be construed consistent with specification); *see also, Phillips*, 415 F. 3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

19

Finally, Autel's proposed construction for the term "cavity" here is inconsistent with its proposed construction for the same term used in "a central cavity." Here, Autel proposes the word "cavity" to mean "an empty space," even though it proposed a different construction, namely "a single space," for the same term used in the term "a central cavity." Such inconsistent constructions are improper as they go against the "strong" principle that "the same phrase in different claims of the same patent should have the same meaning." *In re Varma*, 816 F.3d at 1363; *Phillips*, 415 F. 3d at 1314. Thus, Autel's proposed construction should be rejected on this basis as well.

> **7.** ***"wherein each actuator assembly is (1) partially within a branch cavity of a corresponding branch housing member, (2) partially extending from the branch cavity of the corresponding branch housing member"***

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"wherein each actuator assembly is (1) partially within a branch cavity of a corresponding branch housing member, (2) partially extending from the branch cavity of the corresponding branch housing member"*<br><br>'049 patent, claim 16 | Indefinite.<br><br>Alternatively,<br><br>"wherein a portion of each actuator assembly is surrounded by walls that are formed by both the upper branch housing member and the lower branch housing member" | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"wherein each actuator assembly is (1) partially within a space formed by a respective branch housing member, (2) partially extending from the space formed by the respective branch housing member" |

Contrary to Autel's assertion, the terms "partially within a branch cavity" and "partially extending from the branch cavity" are not indefinite. Indeed, "[i]t is well settled law that terms of degree such as … 'partially,' and 'substantially' do not automatically brand a claim indefinite." *Affymetrix, Inc. v. Hyseq, Inc.,* 132 F. Supp. 2d 1212, 1229 (N.D. Cal. 2001) (citing *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F. 2d 819, 821 (Fed. Cir. 1988); *Amgen, Inc. v. Chugai Pharmaceutical, Inc.,* 927 F. 2d 1200 (Fed. Cir. 1991). In addition, the '049 Patent explains, for example, that an

electronic speed control (ESC) module can be positioned inside a branch housing member and below the actuator and that in some embodiments, the actuator assembly controlled by the ESC module can be located at least partially inside a branch cavity.  '049 Patent, 11:52-12:1.  Figures 1 and 2 also illustrate how a portion of the actuator can extend at least partially from the cavity to rotatably couple with a rotor blade.  *Id.*  Based on the intrinsic evidence, a POSITA will have no problem understanding the meaning of the terms "partially within" and "partially extending" and determining the scope of the claim.  *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010) ("the intrinsic evidence here provides 'a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine [the scope of the claims]'") (internal citation omitted).  Moreover, the phrase "partially within…" and "partially extend" do not depend "on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention."  *See Legacy Separators LLC v. Halliburton Energy Servs. Inc.*, No. 4:14-CV-2081, 2016 WL 3017140, at *4 (S.D. Tex. May 26, 2016) (holding that term "partially vacate" is not indefinite in view of the specification and noting that the term is not subjective) (citing *DDR Holdings*, 773 F. 3d at 1260).  If any portion—no matter how big or small—of the actuator or actuator assembly is inside the branch cavity, it is "partially within" the branch cavity.  Likewise, if any portion of the actuator or actuator assembly extends from the branch cavity, it is "partially extending from the branch cavity."  Reasonable people could not disagree as to whether the actuator or actuator assembly is "partially within" or "partially extending" from the branch cavity. *See Legacy Separators*, 2016 WL 3017140, at *4.  Thus, Autel's indefiniteness argument must be rejected.

DJI believes that this phrase need no construction, however, in the event the Court decides to construe it, DJI proposes "wherein each actuator assembly is (1) partially within a space formed

by a respective branch housing member, (2) partially extending from the space formed by the respective branch housing member" which conforms to the plain meaning of the claim language in view of the intrinsic evidence.  *See* Janet Decl., (Ex. E), ¶¶ 60-66.  Autel's proposed alternative construction, on the other hand, is improper because it adds a limitation that the actuator assembly is "surrounded by walls that are formed by both the upper . . . and the lower branching member," which is not supported anywhere in the '049 Patent.  Moreover, the "surrounded by walls . . ." language is inconsistent with the construction Autel proposes for the term "a branch cavity" which is "an empty space."  *See supra* Sec. B. 6.  This is improper.  *In re Varma*, 816 F.3d at 1363 ("the same phrase in different claims of the same patent should have the same meaning.").  Thus Autel's proposed construction should be rejected.

> **8.** **"wherein each actuator assembly . . . (3) has, beneath the actuator assembly, a portion of the lower branch housing member of the corresponding branch housing member"**

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"wherein each actuator assembly . . . (3) has, beneath the actuator assembly, a portion of the lower branch housing member of the corresponding branch housing member"*<br><br>'049 patent, claim 16 | "wherein the lower branch housing member of the corresponding branch housing member has a portion that extends directly beneath and supports the weight of each actuator assembly" | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"wherein each actuator assembly . . . (3) has, beneath it, a portion of the lower branch housing member of the respective branch housing member" |

This phrase is plain on its face and needs no construction.  *See* Janet Decl., (Ex. E), ¶ 67.  In the event the Court decides to construe it, DJI proposes "wherein each actuator assembly . . . (3) has, beneath it, a portion of the lower branch housing member of the respective branch housing member" which conforms to the plain meaning of the claim language in view of the intrinsic evidence.  *See* Janet Decl., (Ex. E), ¶¶ 68-71.

Autel's proposed construction arbitrarily narrows the scope of the meaning of the phrase by adding limitations that are not in the claim language.  For example, Autel's proposed construction adds functional requirements to an otherwise structural claim, which is improper. *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002) ("Where a claim uses clear structural language, it is generally improper to interpret it as having functional requirements.").  Specifically, Autel's construction requires that the lower branch housing member has a portion that "supports the weight of each actuator assembly," however, neither the claims nor the specification mention such a requirement.

Moreover, Autel's proposed construction for this term is yet another example of Autel attempting to import limitations from other claims.  Independent claim 1 specifically recites that "one or more branch housing members are configured to support one or more actuator assemblies" and that "the upper branch housing members and the lower branch housing members are configured to extend to a length at least to support the one or more actuator assemblies."  By contrast, there are no such limitations recited in independent claim 16.  It is simply inappropriate to re-write the claims to include limitations from other claims.  *See, e.g.*, *Amgen*, 314 F.3d at 1326; *Electro Source*, 2003 WL 25902415, at *11.

Therefore, this Court should reject Autel's proposed construction as inconsistent with the claim language and the intrinsic evidence.

**9.** ***"wherein the actuator of each actuator assembly is (1) partially within a branch cavity of a corresponding branch housing member, and (2) partially extending from the branch cavity of the corresponding branch housing member"***

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"wherein the actuator of each actuator assembly is (1) partially within a branch cavity of a corresponding branch housing member, and (2) partially extending from the branch cavity of the corresponding branch housing member."* | Indefinite.<br><br>Alternatively,<br><br>"wherein a portion of each actuator is surrounded by walls that are formed by both the upper branch housing member and the lower branch housing member" | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"wherein the actuator of each actuator assembly is (1) partially within a space formed by a respective branch housing member, (2) partially extending from the space formed by the respective branch housing member" |

For the reasons set forth in Sec. B. 7, this phrase is not indefinite and should be accorded its plain and ordinary meaning.  In the event the Court decides to construe it, DJI proposes "wherein the actuator of each actuator assembly is (1) partially within a space formed by a respective branch housing member, (2) partially extending from the space formed by the respective branch housing member" which conforms to the plain meaning of the claim language in view of the intrinsic evidence.  *See* Janet Decl., (Ex. E), ¶ 72.

**10.** ***"wherein the upper branch housing member and the lower branch housing member have substantially the same length"***

| Disputed Term/Phrase | Autel's Construction | DJI's Construction |
|---|---|---|
| *"wherein the upper branch housing member and the lower branch housing member have substantially the same length"*<br><br>'049 patent, claim 23. | "wherein the upper branch housing member and the lower branch housing member have a difference in length less than the width of the actuator" | Plain and ordinary meaning.<br><br>Alternatively,<br><br>"wherein the upper and the lower branch housing members have substantially the same length" |

The parties have come to an agreement that this term should be accorded its plain and ordinary meaning and therefore, no construction is needed.  June 23, 2019 Email from Autel (Ex. K).

## VII.    CONCLUSION

For the foregoing reasons, DJI requests that each of its proposed constructions be adopted by the Court.

Dated: June 24, 2019

*Of Counsel*

David M. Farnum, Esq.
Sherry X. Wu, Esq.
ANOVA LAW GROUP, PLLC
21351 Gentry Drive Ste 150
Sterling, VA 20166
david.farnum@anovalaw.com
sherry.wu@anovalaw.com

Willard K. Tom
Jon R. Roellke
Ryan Kantor
Bradford A. Cangro
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
(202) 739-3000
willard.tom@morganlewis.com
jon.roellke@morganlewis.com
ryan.kantor@morganlewis.com
bradford.cangro@morganlewis.com

Respectfully submitted,

*/s/ Amy M. Dudash*
Jody C. Barillare (#5107)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
1007 Orange Street, Suite 501
Wilmington, Delaware 19801
T. (302) 574-3000
jody.barillare@morganlewis.com
amy.dudash@morganlewis.com

Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
Farnan@rlf.com
Haynes@rlf.com

*Attorneys for Plaintiffs SZ DJI Technology Co. Ltd. and DJI Europe B.V.*