# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., | |
| Plaintiffs, | |
| v. | C.A. No. 16-706-LPS |
| AUTEL ROBOTICS USA LLC, and AUTEL AERIAL TECHNOLOGY CO., LTD. | (Consolidated) |
| Defendants. | |
| AUTEL ROBOTICS USA LLC, and AUTEL AERIAL TECHNOLOGY CO., LTD., | |
| Counterclaim Plaintiffs, | |
| v. | |
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., and DJI TECHNOLOGY, INC., | |
| Counterclaim Defendants. | |

## DJI'S ANSWERING CLAIM CONSTRUCTION BRIEF

### TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ........................................................................................................... 2

    A.  D'514 Patent Is Not Indefinite and DJI's Proposed Construction Should Be Adopted ... 2

        1.  Autel Has Failed To Prove By Clear And Convincing Evidence That The Design Claimed Is Primarily Functional Or Ambiguous .................................................. 2

        2.  A Claim Construction With A Detailed Verbal Description Is Unnecessary And Likely To Cause Confusion ......................................................................................... 6

    B.  Autel Has Failed To Prove By Clear And Convincing Evidence That The Asserted Claims Of The Utility Patents-In-Suit Are Indefinite And DJI's Proposed Constructions Should Be Adopted ............................................................................................................. 12

        1.  "a position sufficiently distal … to effect a reduction of interference" ..................... 12

        2.  "at least about 3 cm" ..................................................................................................... 14

        3.  "a central cavity" .......................................................................................................... 15

        4.  "one or more electrical components (1) configured to control the operation of the UAV" ................................................................................................................................. 19

        5.  "a branch cavity" .......................................................................................................... 21

        6.  "wherein [each actuator assembly / the actuator of each actuator assembly] is (1) partially within a branch cavity of a corresponding branch housing member, [and] (2) partially extending from the branch cavity of the corresponding branch housing member" 23

        7.  "wherein each actuator assembly … (3) has, beneath the actuator assembly, a portion of the lower branch housing member of the corresponding branch housing member" ........ 26

III. CONCLUSION ......................................................................................................... 27

## **TABLE OF AUTHORITIES**

### Cases

*3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003) ............... 17

*Am. Beverage Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555 (W.D. Pa. 2013) .............. 8, 12

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F. 3d 1313 (Fed. Cir. 2003).............. 16, 22, 26

*Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*, 543 F. 3d 657  (Fed. Cir. 2008) .......... 6

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No. 2018-1613, 2019 WL 3294047 (Fed. Cir. July 23, 2019)................................................................................................................................ 4

*Bell & Howell Document Management v. Altek Sys.*, 132 F. 3d 701 (Fed. Cir. 1997)................ 14

*Best Lock Corp. v. Ilco Unican Corp.*, 94 F. 3d 1563 (Fed. Cir. 1996)......................................... 4

*Carlini Enterprises, Inc. v. Paul Yaffe Design, Inc.*, No. 8:13-CV-01671, 2014 WL 4060026 (C.D. Cal. Aug. 15, 2014).................................................................................................... 11

*Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*, 526 F. App'x 927 (Fed. Cir. 2013) ........ 16

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010)............................................. 11

*Electro Source, LLC v. Nyko Techs., Inc.*, No. 01-10825, 2003 WL 25902415 (C.D. Cal. Apr. 7, 2003) ........................................................................................................................... 17

*Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325 (Fed. Cir. 2010)........................................ 24

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F. 3d 1312 (Fed. Cir. 2015) ............. 2, 5, 8, 11

*Hogasanas AB v. Dresser Indus., Inc.*, 9 F. 3d 948 (Fed. Cir. 1993) .......................................... 19

*In re Certain Consol. Roflumilast Cases*, No. 15-03375, 2017 WL 2399571 (D.N.J. June 2, 2017) ................................................................................................................................ 14

*In re Maatita*, 900 F.3d 1369 (Fed. Cir. 2018) ............................................................................ 6

*In re Varma*, 816 F. 3d 1352 (Fed. Cir. 2016). ............................................................... 18, 23, 25

*Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328 (Fed. Cir. 2007)................................... 21

*Junker v. Medical Components, Inc.*, No. 13-cv-4606, 2017 WL 4922291 (E.D. Pa. Oct. 31, 2017) .................................................................................................................... 4, 5, 8, 10

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F. 2d 1117 (Fed. Cir. 1993).................................... 4

*Legacy Separators LLC v. Halliburton Energy Servs. Inc.*, No. 4:14-CV-2081, 2016 WL 3017140 (S.D. Tex. May 26, 2016) .............................................................................. 24

*Magnivision, Inc. v. Bonneau Co.*, 115 F. 3d 956 (Fed. Cir. 1997)............................................... 6

*Markman v. Westview Instruments, Inc.*, 52 F. 3d 967 (Fed. Cir. 1995) ..................................... 14

*Merck & Co. v. Teva Phams. USA, Inc.*, 395 F. 3d 1364 (Fed. Cir. 2006)................................... 15

*Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91 (2011) ............................................... 12, 23

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. 3-00-CV-0888, 2001 WL 1012685 (N.D. Tex. Aug. 20, 2001) ......................................................................................................... 11

*Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898 (2014) ..................................... 15

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F. 3d 1396 (Fed. Cir. 1997)......................... 9

*P.S. Prod., Inc. v. Activision Blizzard, Inc.,* 140 F. Supp. 3d 795 (E.D. Ark. 2014) ................... 12

*Pall Corp. v. Micron Separations*, 66 F. 3d 1211 (Fed. Cir. 1995) .............................. 15

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .............................................. 19

*Reddy v. Lowe's Companies, Inc.*, 60 F. Supp. 3d 249 (D. Mass. 2014)...................... 12

*ReedHycalog UK, Ltd. United Diamond Drilling Servs., Inc.*, No. 6:07-cv-251, 2009 WL 1011730 (E.D. Tex. Apr. 15, 2009) .......................................................................... 15

*Richardson v. Stanley Works, Inc.*, 597 F. 3d 1288 (Fed. Cir. 2010) ............................. 9

*Rillito River LLC v. Bamboo Indus. LLC*, No. 2:17-cv-00181, 2018 WL 4350095 (E.D. Cal. Sept. 11, 2018) ......................................................................................................... 24

*Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112 (Fed. Cir. 1996) .......................... 14

*Schultz v. iGPS Co. LLC*, No. 10 C 0071, 2013 WL 212927 (N.D. Ill. Jan. 17, 2013).............. 21

*Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318 (Fed. Cir. 2002).................. 26

*Skechers U.S.A., Inc. v. Eliya, Inc.*, No. 16-cv-02820, 2017 WL 3449594 (C.D. Cal. Mar. 14, 2017) ......................................................................................................... 11

*SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005)............................ 25

*Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372 (Fed. Cir. 2000) ............................ 14

*Sport Dimension, Inc. v. Coleman Co.*, 820 F. 3d 1316 (Fed. Cir. 2016)........................... passim

**Regulations**

37 C.F.R. § 1.84 ......................................................................................................... 5

Plaintiffs SZ DJI Technology Co., Ltd. and DJI Europe B.V. (collectively, "DJI") submit this brief in response to Defendants Autel Robotics USA LLC, Autel Aerial Technology Co., Ltd., and Autel Intelligent Technology Co., Ltd. (collectively, "Autel")'s proposed claim constructions.

## I.      INTRODUCTION

Autel's opening claim construction brief (D.I. 361) and declaration (D.I. 362) confirm that its claim construction positions are overreaching and unsupported by the intrinsic evidence as understood by a person of ordinary skill in the art ("POSITA").   Its overreaching claim construction is compounded by its mischaracterization and cherry-picking of the intrinsic evidence.   Moreover, Autel falters on the basic principles of claim construction.   With respect to construing the Design Patent-In-Suit, Autel improperly focuses on individual elements instead of the overall appearance of the claimed design and attempts to exclude certain features of the claimed design even though they are not dictated by function.   With respect to the Utility Patents-In-Suit, Autel repeatedly attempts to improperly import limitations from other claims and sets forth inconsistent constructions for the same term used in different claims.   In contrast, DJI's claim construction is consistent with the claim language, specification, and the law of claim construction. DJI acknowledges the importance of the intrinsic record whereas Autel either ignores portions of the intrinsic record that do not benefit its positions or fabricates support.   Consequently, this Court should reject Autel's assertions of indefiniteness and proposed constructions and instead, adopt DJI's proposed constructions.

## II.     ARGUMENT

###     A.     D'514 Patent Is Not Indefinite and DJI's Proposed Construction Should Be Adopted

####         1.     Autel Has Failed To Prove By Clear And Convincing Evidence That The Design Claimed Is Primarily Functional Or Ambiguous

Autel incorrectly asserts that the "aggregate effect" of certain features of the UAV being allegedly functional renders the entire design claimed in the D'514 patent "dictated by its function" and therefore invalid.  Autel Br. at 12.  Such an argument fails as the Federal Circuit has made clear that "design patents protect the overall ornamentation of a design, not an aggregation of separable elements."  *Sport Dimension, Inc. v. Coleman Co.*, 820 F. 3d 1316, 1321 (Fed. Cir. 2016).  Indeed, in determining whether a design patent is invalid, "the overall appearance of the article—the claimed design viewed in its entirety—is the basis of the relevant inquiry, not the functionality of elements of the claimed design viewed in isolation."  *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F. 3d 1312, 1329 (Fed. Cir. 2015).  "[T]he design claim is not invalid, even if certain elements have functional purposes" because "a design patent's claim protects an article of manufacture, which 'necessarily serves a utilitarian purpose.'"  *Sport Dimension*, 820 F. 3d at 1320 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F. 2d 1117, 1123 (Fed. Cir. 1993)).

Critically, Autel has failed to establish that the overall appearance claimed in the D'514 patent is dictated by function or is primarily functional.  *Ethicon*, 796 F. 3d at 1329 ("For purposes of validity, . . . a design patent is invalid if its overall appearance is dictated by function, and therefore primarily functional.").  Rather than discuss the claimed design as a whole, Autel improperly focuses on certain individual elements—such as the quadcopter design, taper of the arms, cooling vents, battery cover, undercarriage, indicator lights and dual stripes—and their alleged functions.  Barret Decl. at ¶¶ 22-31.  Indeed, Autel's expert, Professor Barrett ("Prof. Barrett"), discusses in detail the alleged functions carried out by these features, however, he never

2

opines that the claimed design of each of these features or the overall claimed design of the UAV is the only way to perform a particular function.  *See* Barrett Decl. at ¶¶ 22-29; Ex. A[1], Braasch Rebuttal Decl. at ¶ 28.  His silence on whether the overall claimed design is dictated by function is telling—and not all that surprising since it was never his opinion that the D'514 patent is indefinite or otherwise invalid for being primarily functional.  Ex. B, Expert Reply Brief of Professor Ron Barrett (Feb. 16, 2018) at ¶ 34 ("I have not argued that the D'514 patent is invalid due to being [sic] primarily functional.").

In any event, even if the alleged functional aspects of certain individual elements were somehow to be taken into account, Autel's indefiniteness argument fails because, as shown by DJI's expert, the functions allegedly performed by each of the aforementioned features can be, and actually are, achieved through designs that are different from the ones claimed in the D'514 patent. Braasch Initial Decl. at ¶¶ 29-39; Braasch Rebuttal Decl. at ¶¶ 13-26.  In fact, Autel's own product, the EVO, demonstrates that these functions can be achieved by an alternative design.  As explained by Dr. Braasch and shown below, almost everything that Prof. Barratt identifies as functional in the D'514 is shown differently in the EVO, which has not been accused of infringing the D'514 patent.  Braasch Rebuttal Decl. at ¶ 25.  Specifically, the arms of the aircraft attach to the central body differently and are of a different shape.  *Id.*  The cooling vents of the EVO are not located on the arms.  *Id.*  The battery abuts the central body rather than being located in a separate compartment in the bottom portion of the central body and having a battery cover.  *Id.*  The legs of the EVO are not attached to the body of the quadcopter, but rather are attached at the end of each arm.  *Id.*  There are no dual stripes.  *Id.*

---

[1] All exhibits referenced herein are exhibits to the Declaration of Amy M. Dudash in support of Plaintiffs' Answering Claim Construction Brief filed contemporaneously herewith.



Figures 1 and 2 of D'514 patent

The existence of alternative designs clearly shows that these features contribute to the ornamentation of the overall design claimed and that the overall claimed design is not dictated by function. *See, e.g.*, *Junker v. Medical Components, Inc.*, No. 13-cv-4606, 2017 WL 4922291, at *6 (E.D. Pa. Oct. 31, 2017) (finding a feature not purely functional where evidence of alternative designs for the feature was presented); *Best Lock Corp. v. Ilco Unican Corp.*, 94 F. 3d 1563, 1566 (Fed. Cir. 1996) ("A design is not dictated solely by its function when alternative designs for the article of manufacture are available"); *L.A. Gear*, 988 F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."); *see also Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No. 2018-1613, 2019 WL 3294047, at *3 (Fed. Cir. July 23, 2019) ("We have often emphasized . . . that the existence of 'several ways to achieve the function of an article of manufacture,' . . . increases the likelihood that a design serves a primarily ornamental purpose.") (internal citation omitted). DJI's 30(b)(6) deposition testimony that allegedly concedes that **certain** features of the

D'514 are "primarily functional" does not help Autel to reach a conclusion to the contrary, because again, "the utility of each of the various elements that comprise the design is not the relevant inquiry with respect to [validity of] a design patent." *Ethicon*, 796 F. 3d at 1329. It is the overall appearance of the claimed design that matters. *Id.* Moreover, even if the testimony was about the overall design—which it is not—it would still be irrelevant as "such testimony is not dispositive on the question of whether or not the design . . . is dictated by its function, because claim construction is a matter of law for the Court to decide." *Junker*, 2017 WL 4922291, at *6 n.5. In sum, Autel has failed to prove that the design claimed in the D'514 patent is invalid by clear and convincing evidence, which is a "stringent" standard "as it applies to invalidating design patents on grounds of functionality." *Ethicon*, 796 F. 3d at 1328 (citing *Rosco, Inc. v. Mirror Lite Co.,* 304 F. 3d 1373, 1378 (Fed. Cir. 2002)).

Similarly, Autel's argument that the D'514 patent is ambiguous or otherwise indefinite is baseless. Autel's sole basis for this argument appears to be that DJI, in prosecuting the D'514 patent, did not follow the guidance of the United States Patent and Trademark Office ("USPTO") that recommends utilizing drawings with solid or broken lines and certain claim language. Autel Br. at 12-13. To be clear, the prosecution of the D'514 patent was done by the book, and Autel cannot claim otherwise. DJI's use of CAD drawings (not photographs[2] as Autel asserts with no basis; *see* Braasch Rebuttal Decl. at ¶ 11) is not prohibited by the USPTO and the claim language "substantially shown" was approved by the examiner. The use of broken or dotted lines was not required as Autel asserts (Autel Br. at 12) because the D'514 patent claims ***all*** ornamental aspects

---

[2] Nothing would change even if the figures in the D'514 patent were photographs, because as Autel recognizes, photographs are acceptable medium for illustrating the claimed invention and are not *per se* impermissible. Autel Br. at 12; *see* 37 C.F.R. § 1.84 (setting forth standards for drawings in design patent applications, including photographs).

of the claimed design.  Moreover, Autel's assertion that it would be "impossible" for a POSITA to understand the claimed design because of the use of the word "substantial" is unsurprising, given that Autel failed to use the proper standard of a POSITA.  Prof. Barrett never mentions the ordinary observer standard in his indefiniteness analysis and mistakenly applies the POSITA standard that applies to utility patents.  *See* Barrett Decl. at ¶ 20.  As the Federal Circuit recently confirmed, "a design patent is indefinite under § 112 if one skilled in the art, ***viewing the design as would an ordinary observer***, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure."  *In re Maatita*, 900 F.3d 1369, 1377 (Fed. Cir. 2018) (emphasis added).

In any event, even if there were any "prosecution irregularity" or "procedural lapse," they would not provide grounds of invalidity.  *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*, 543 F. 3d 657, 663 (Fed. Cir. 2008) ("Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued."); *Magnivision, Inc. v. Bonneau Co.*, 115 F. 3d 956 (Fed. Cir. 1997) ("Imperfection in patent examination, whether by the examiner or the applicant, does not create a new defense . . . .").  Therefore, Autel has failed to establish by clear and convincing evidence that the D'514 patent is indefinite.

### 2.    A Claim Construction With A Detailed Verbal Description Is Unnecessary And Likely To Cause Confusion

Autel asks this Court to adopt its detailed verbal construction because it supposedly describes only the ornamental aspects of the claimed design in the D'514 patent.  Autel Br. at 13-14.  Yet, Autel's proposed construction confusingly has both ornamental features and features that its expert identifies as allegedly functional.  It also misses and/or mischaracterizes many other ornamental features claimed in the design.  Further compounding the confusion and error in its

proposed construction is Autel's lack of explanation as to why it chose to include certain elements and not others.

Autel alleges that a verbal description construction is necessary here in order to capture ornamental features "without regard to the functional aspects of the design."  Autel Br. at 13-14. Autel never identified in its brief the features that are functional to warrant exclusion from the claim, but presumably Autel is referring to the elements that its expert, Prof. Barrett identified in his declaration.  Barrett Decl. at ¶¶ 22-30.  However, as shown above, the visual design of the quadcopter, taper of the arms, cooling vents, battery cover, undercarriage, indicator lights and dual stripes are primarily aesthetic and not dictated by function.  *See* Supra Section II. A. 1; Braasch Rebuttal Decl. at ¶¶ 13-26.  This is why there are alternative designs for each of these features that provide the same or similar capabilities, including Autel's own EVO.  Braasch Rebuttal Decl. at ¶¶ 13-26.  Tellingly, Autel never disputed the existence and availability of the alternative designs or demonstrated the absence of such designs.  *See* Ex. B, Expert Reply Report of Professor Barrett (Feb. 16, 2018), at ¶ 35 ("I do not disagree with Dr. Eby that alternative designs are available.").

Again, without much elucidation, Autel states that the *PHG* factors are relevant in construing the claim of a design patent.  Autel Br. at 14.  The *PHG* factors are primarily used in evaluating indefiniteness of a design patent, but "***may*** serve as a useful guide in claim construction" to assess the functionality of a claimed feature.  *Sport Dimension*, 820 F. 3d at 1322 (emphasis added).  We assume that Autel is arguing that the features identified by Prof. Barrett are functional based on the *PHG* factors, such as the existence of the "concomitant utility patents" and the advertisements allegedly touting these features as functional.  Autel Br. at 14.  But these factors cannot discount the existence and availability of alternative designs, which is "an important—if not dispositive—factor in evaluating the legal functionality of a claimed design." *Ethicon*, 796 F.

3d at 1330; *Am. Beverage Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 588 (W.D. Pa. 2013) ("Demonstrating [t]he presence of alternative design can be a significant factor in finding that claimed elements are not functional."). In other words, all Autel may establish based on the *PHG* factors is that certain features of the claimed design have functional aspects in addition to the ornamental aspects. This, however, does not establish that the features are dictated by functions, warranting an exclusion from the claim. *See Ethicon*, 796 F.3d at 1330 (holding that district court erred in determining that the claimed design was primarily functional based on the *PHG* factors because it improperly discounted the existence and availability of alternative designs); *Junker*, 2017 WL 4922291, at *6 (refusing to exclude from claim a particular feature that was not purely functional).

Nonetheless, Autel brazenly leaps to the conclusion that "the only element of the overall design of the D'514 Patent that is 'clearly not dictated by function' is the logo on the top of the UAV." Autel Br. at 15. Not true. Even if the use of four arms with motors and propellers on each end, the use of vents to release heat, or the use of directional stripes to reflect the front of the aircraft is functional in concept, DJI's particular arm shape, its decisions as to where to place vents and the angle of the vents, and its decision to use two directional stripes of the same width are design choices that are primarily ornamental. For example, one or three stripes could be used to identify the front arms, and another party could decide to use one very thick stripe and one thinner stripe. Braasch Rebuttal Decl. at ¶ 14. Similarly, using legs to bear the weight of the UAV when not in flight may be functional, but there is no reason that there needs to be two components in the shape that DJI used in order for legs to bear the weight of the drone. *Id.* Four individual legs also would have borne the weight of the drone. *Id.* Accordingly, DJI clearly made many decisions

about the overall look and feel of its drone that were not dictated by function.  *Id*.  Any attempt by Autel to limit the claim of the design to simply the logo would be inappropriate.

Compounding the confusion, Autel included in its proposed alternative construction many of the same features it identified as allegedly functional.  For example, Prof. Barrett alleges that use of a quadcopter design (¶ 23), battery cover (¶ 27), indicator lights and dual stripes (¶ 29) serve a functional purpose.  Barrett Decl, ¶ 22.  Yet Autel's proposed construction includes these very elements.  *See* Joint Claim Construction Chart (D.I. 355) at 2 ("A full monocoque **quadcopter** having: . . . a rectangular **battery** compartment **cover** on the front side of the central body of the aircraft . . .; **two** relatively dark **stripes** on each of the front braches; . . . ; **indicator lights** along the underside of the branches between the rotors and the central body . . .") (emphasis added).

Additionally, contrary to Autel's assertion, its proposed construction is not supported by *Richardson* or *OddzOn Prods*.  In *Richardson*, the claimed design of the multi-function tool "comprise[d] several elements that are driven purely by utility" such as "the handle, the hammerhead, the jaw, and the crowbar."  *Richardson v. Stanley Works, Inc.*, 597 F. 3d 1288, 1293-94 (Fed. Cir. 2010).  Here, however, Autel has not established let alone allege that each feature it claims is functional is a purely functional element.  *Id.*  In *OddzOn Prods.*, a detailed written construction was necessary because the patentee sought to claim "the broader general design concept of a rocket-like tossing ball."  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F. 3d 1396, 1405 (Fed. Cir. 1997).  But here, DJI is not claiming the general design concept of all quadcopters.  More importantly, both cases disapproved of eliminating features from the claimed design on the basis that they served some functional purpose, which is what Autel is attempting to do here.  *See Sport Dimension*, 820 F.3d at 1321 (in discussing *Richardson* and *OddzOn*, stating "[b]ut in no case did we entirely eliminate a structural element from the claimed ornamental design, even

though that element also served a functional purpose").  There is simply no need to specifically call out allegedly functional aspects of the claimed design and "increase the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  *Id.* at 1320.  Autel's proposed verbal construction should be rejected on this basis alone.

The risk of verbal claim construction is particularly acute here, because Autel's proposed construction, despite its verbosity and alleged efforts to limit the scope of the claim to its ornamental aspects, improperly factors out certain elements of the claimed design thereby ignoring the overall design claimed.  Braasch Rebuttal Decl. at ¶ 12.  For example, as explained in DJI's Opening Brief, Autel's proposed construction describes a battery compartment cover, not the shape of the compartment itself, which is visible from the figures.  DJI Opening Br. at 9-10; Braasch Initial Decl. at ¶ 40.  Autel's proposed construction is silent on the design of the vents, which is also visible from the figures.  Braasch Rebuttal Decl. at ¶ 29.  In addition, Autel's proposed description of the rotor aircraft as having "four substantially parallel legs . . ." misleadingly suggests that there are six separate pieces that make up this feature (*i.e.*, four legs and two crossbars) as opposed to two, while remaining silent on the design of the legs such as whether they are partially hollow, solid, etc.  *See* D'514, Fig. 7; DJI Opening Br. at 9-10; Braasch Initial Decl. at ¶ 40.  Accordingly, construing the design claim as requested by Autel will only cause a jury to "erroneously exclude [certain elements] entirely from the design."  *Junker*, 2017 WL 4922291, at *6.  In addition, Autel's alternative proposed construction fails to reference the figures at all, thereby adding ambiguity to the claim.  For example, without reference to the figures, under Autel's proposed alternative construction, there is no indication as to how much the four

10

branches "flare" and what shape is the "central body" that is formed by the four branches.  Braasch Rebuttal Decl. at ¶ 29.

Furthermore, Autel's proposed claim construction shows exactly why the Federal Circuit has "cautioned . . . trial courts about excessive reliance on a detailed verbal description in a design [patent] infringement case."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).  By describing certain individual elements in excruciating detail, Autel takes the focus away from the claimed "design as a whole" which is what an ordinary observer should be looking at in determining the issue of infringement.  *See Ethicon*, 896 F. 3d at 1335 ("the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation").  Autel may have thought that such detailed description is necessary for the POSITA defined in the Barret Declaration, however, as noted previously, that is not the right standard in the context of design patent.  *See supra* Section II. A. 1.

In contrast, DJI's proposed claim construction heeds the Federal Circuit's repeated instruction that "[w]ords cannot easily describe ornamental designs."  *Sports Dimension*, 920 F. 3d at 1320.  After all, "[u]nlike utility patents, the heart and soul of a design patent is the content of the drawing."  *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. 3-00-CV-0888, 2001 WL 1012685, at *1 (N.D. Tex. Aug. 20, 2001).  Thus, in the context of design patents, "courts should not treat the process of claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents."  *Skechers U.S.A., Inc. v. Eliya, Inc.*, No. 16-cv-02820, 2017 WL 3449594, at *2 (C.D. Cal. Mar. 14, 2017).  DJI's proposed alternative construction is in accordance with recent claim constructions rendered by federal district courts in the design patent context.  *See, e.g.*, *Carlini Enterprises, Inc. v. Paul Yaffe Design, Inc.*, No. 8:13-CV-01671, 2014 WL 4060026, at *4 (C.D. Cal. Aug. 15, 2014) ("'343 Patent – The

ornamental design for motorcycle handlebars, as shown in Figures 1–7"; "'212 Patent – The ornamental design for motorcycle handlebars, as shown in Figures 1–8"); *Reddy v. Lowe's Cos.*, 60 F. Supp. 3d 249, 260 (D. Mass. 2014) ("The ornamental design for a bathroom vanity light shade, as shown and described in Figures 1–5."); *P.S. Prod., Inc. v. Activision Blizzard, Inc.*, 140 F. Supp. 3d 795, 802 (E.D. Ark. 2014) ("[T]he Court construes the '294 patent's claim as the ornamental design for a stun gun as shown and described in figures 1–8 of the '294 patent."); *Am. Beverage Corp.*, 936 F. Supp. 2d at 572 ("The '672 patent claims an ornamental design for a flexible liquid-containing pouch, as shown in Figures 1–8 of Exhibit A.").  Therefore, this Court should adopt DJI's proposed claim construction for the D'514 patent.

**B.    Autel Has Failed To Prove By Clear And Convincing Evidence That The Asserted Claims Of The Utility Patents-In-Suit Are Indefinite And DJI's Proposed Constructions Should Be Adopted**

**1.    "a position sufficiently distal . . . to effect a reduction of interference"**

Autel has failed to meet the heavy burden of proving with clear and convincing evidence that this term is indefinite.  *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 95 (2011). Contrary to Autel's assertion, '617 and '530 patents provide ample guidance as to how to measure and understand the degree to which interference is to be reduced or what distance is sufficiently distal to effect such a reduction.

As explained in the Opening Brief, a POSITA would understand that the position of the magnetometer depends on the relative variable placement of other components that radiate, conduct, distort, or otherwise interfere with magnetic fields.  Janet Initial Decl. at ¶¶ 29-33.  The '617 and '530 patents disclose multiple examples of the "sufficiently distal" placement of the magnetometer as well as examples of how to make this determination by measuring the level of interference experienced by the sensors.  For example, both patents teach that the magnetometer can be located between 3 cm and 0.5 m away from the electrical components.  *See, e.g.*, '617

patent, 2:1-5, 19:5-7; '530 patent, 2:4-11, 19:8-14.  The patents also teach how to measure the level of interference experienced by the sensors, which varies depending on the distance between the sensor and the electrical components.  *See, e.g.*, '617 patent, 17:19-45; '530 patent, 17:26-52 ("[T]he interference experienced by the interference-susceptible sensor may be measured by field heading deviation and/or the field strength of magnetic interference.  Such level of interference may be obtained by comparing readings of the senor when the electrical components are powered off and on, respectively.").  The specification also provides examples of the desired amount of reduction of interference.  *See, e.g.*, '617 patent at 17:31-45 (describing a reduction of heading deviation of "around 15 degrees, 10 degrees, 5 degrees or the like" and reduction of field strength experienced by the magnetometer "around 0.5 gauss, 0.3 gauss, 0.1 gauss, or the like.").  The specific distance for a given UAV might vary based on the UAV performance objectives and the specific electrical components used.  However, a POSITA could readily determine what is sufficiently distal with reasonable certainty based on the technical specifications of the electrical components and normal testing.  Ex. C, Janet Rebuttal Decl. at ¶¶ 14-17.

Thus, Autel's assertion that nothing in the intrinsic evidence provides any guidance as to how much of a reduction is required or what distance is "sufficiently distal" to effect the claimed reduction is incorrect.  To the contrary, based on the ample disclosure in the specification, a POSITA would understand how far away a magnetometer would need to be from electrical components to effect a reduction of interference.  Janet Initial Decl. at ¶¶ 32-39.

Despite the overwhelming intrinsic evidence providing clear boundaries to the meaning of the term, Autel maintains that this term is indefinite, because one of the named inventors and a 30(b)(6) witness of DJI allegedly admitted that they do not understand this term.  Autel Br. at 17. Autel's reliance on their testimony is misplaced.  The law is clear that testimony of the inventor

or 30(b)(6) witness is irrelevant in claim construction.  *See, e.g.*, *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000) ("It is particularly inappropriate to consider inventor testimony obtained in the context of litigation in assessing validity under section 112, paragraph 2"); *Markman v. Westview Instruments, Inc.*, 52 F. 3d 967, 985 (Fed. Cir. 1995) (holding that inventor testimony as to "[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)"); *Bell & Howell Document Mgmt. v. Altek Sys.*, 132 F. 3d 701, 706 (Fed. Cir. 1997) ("The testimony of an inventor and his attorney concerning claim construction is thus entitled to little or no consideration."); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("We have previously stated that an inventor's after-the-fact testimony is of little weight compared to the clear import of the patent disclosure itself."); *see also In re Certain Consol. Roflumilast Cases*, No. 15-03375, 2017 WL 2399571, at *11 (D.N.J. June 2, 2017) (holding that it is inappropriate to use testimony of 30(b)(6) witness to construe claim).

In sum, Autel's indefiniteness argument must be rejected.  DJI maintains that this term needs no construction, however, if the Court decides that construction is necessary, it should adopt DJI's proposed construction which conforms to the plain meaning of the claim language in view of the intrinsic evidence.  Janet Initial Decl. at ¶ 40.

### 2.    "at least about 3 cm"

Autel asserts that due to the word "about," a POSITA cannot understand the term "at least about 3 cm," because neither the claim language nor specification of the '617 and the '530 patents provide "guidance as to how much deviation from 3 cm is permissible."  Autel Br. at 18.  This argument is misplaced as it is based on an incorrect assumption that a strict numerical precision is required for determining the minimum distance between the magnetometer and electrical components.  *See* Autel Br. at 19.  In fact, the word "about" is used simply to "avoid[] a strict

14

numerical boundary to the specified parameter," which is the minimum distance between the magnetometer and electrical components needed to reduce any interference experienced by the sensors from the electrical components.  *See Pall Corp. v. Micron Separations*, 66 F. 3d 1211, 1217 (Fed. Cir. 1995) (holding that the term "about" is not indefinite and noting that "[t]he use of the word "about" avoids a strict numerical boundary to the specified parameter.  Its range must be interpreted in its technologic and stylistic context.").  As explained in DJI's Opening Brief, a POSITA, when reviewing the claim as a whole in light of the specifications, would understand with reasonable certainty that in order to reduce interference from the electrical components, the magnetometer needs to be placed at least approximately 3 cm away from the electrical components, but not necessarily at least exactly 3 cm away.  *Merck & Co. v. Teva Phams. USA, Inc.*, 395 F. 3d 1364, 1372 (Fed. Cir. 2006) (holding "about" to mean "approximately" in the context of varying ranges); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) ("The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable.").  In other words, a POSITA can readily understand the application of the word "about" in relation to the claim and therefore, this term is not indefinite as Autel asserts.  Janet Rebuttal Decl. at ¶¶ 23-28.  To the contrary, the term is easily understood and should be accorded its plain and ordinary meaning.  *See, e.g.*, *ReedHycalog UK, Ltd. United Diamond Drilling Servs., Inc.*, No. 6:07-cv-251, 2009 WL 1011730, at *11 (E.D. Tex. Apr. 15, 2009) ("The terms 'at least about 0.1 mm' and 'at least 0.1cm' are easily understood terms and do not require construction.").

### 3.    "a central cavity"

Contrary to Autel's assertion, its proposed construction is inconsistent with the intrinsic evidence and violates the basic legal principles of claim construction.  Autel asserts that "central cavity" should be construed as formed by both the upper and lower central housing members

because the specification of the '049 patent states that "the central housing member 11 [i.e., a central body] can include an upper central housing member 111 and a corresponding lower central housing member 112 that *collectively form the central cavity*." Autel Br. at 20-21 (emphasis and alterations in original). But Autel ignores that independent claim 16 of the '049 patent merely states that "a central body compris[es] a central cavity" and makes no reference to either an "upper housing member" or a "lower housing member." Again, Autel is attempting to limit the claim to one particular embodiment. *Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*, 526 F. App'x 927, 933–34 (Fed. Cir. 2013) (holding that district court improperly limited the claims to a particular embodiment) (citing *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims.")). The specification describes the body of the UAV comprising a single central housing member 11 where the "inner surface of the central housing member can form a central cavity . . . ." '049 patent, 7:1-4. The part of the specification that Autel quotes appears later in the specification and is preceded by the phrase "[i]n some embodiments . . . ." '049 patent, 8:4. Even the part of the specification quoted by Autel merely states that the central housing member / body "**can**" include an upper and lower central housing member. Autel Br. at 20-21 (citing '049 patent, 8:4-7). There are no statements in the specification or prosecution history that would require limiting the claim to the embodiment that includes the upper and lower housing.

What's more, as explained in DJI's Opening Brief, Autel's requirement of both upper and lower central housing members in forming a "central cavity" is inconsistent with the claims because it essentially seeks to improperly import a limitation from another independent claim. *See* Opening Br. at 14-15 (comparing independent claim 1 and independent claim 16 of the '049 patent); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F. 3d 1313, 1326 (Fed. Cir. 2003)

16

(comparing two independent claims and refusing to import a limitation from one independent claim to the other); *Electro Source, LLC v. Nyko Techs., Inc.*, No. 01-10825, 2003 WL 25902415, at *11 (C.D. Cal. Apr. 7, 2003) ("[A]lthough Claims 1 and 5 . . . are both independent claims, the doctrine of claim differentiation still applies").  Furthermore, such a requirement adds ambiguity to claim 16 and redundancy to claim 1, as explained in detail in DJI's Opening Brief.  *See* Opening Br. at 15.

Autel also asserts that specifying that the central cavity is centrally located within the UAV's central body is necessary because claim 1[3] of the '049 patent recites "a central body comprising a central cavity."  Autel Br. at 20.  This reads too much into the claims.  The word "central" before cavity is merely to distinguish the cavity from other cavities identified in the claim, *i.e.*, that it is the cavity that is part of the central body, rather than the cavity of the branch housing member.  For example, in claim 16 of the '049 patent, there are both a "central" cavity and a "branch" cavity.  The "central" cavity is part of the central body and the "branch" cavity is part of the branch housing member.  It is no different than reciting a "first" cavity and a "second" cavity in order to distinguish between the two—it would not mean that one cavity comes before the other.  *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) ("The use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation.").  Under Autel's logic, the term "branch cavity" should mean that the cavity is shaped as a branch.  There is simply no indication that the descriptor before the word cavity is meant to modify the cavity, rather than describe to which cavity is being referred.

---

[3] This language does not appear as quoted in claim 1 of the '049 patent, but does appear in claim 16.  Presumably, this is an error and Autel meant to refer to claim 16.

Autel erroneously asserts that "DJI concedes as much in its alternative construction, which agrees that the cavity must be 'centrally located.'"  Autel Br. at 20.  To be clear, the cavity need not be centrally located within the central body.  Janet Rebuttal Decl. at ¶ 35.  But to remove any confusion and after receiving Autel's opening brief, DJI proposed a new alternative construction that clarifies its position:  "a space formed by the central body."  "Centrally-located" in DJI's previous proposed construction was referring to the fact that the cavity was part of the central body, and therefore, centrally-located, not that the cavity needs to be centrally located within the central cavity.  *Id.*  DJI's new proposed alternative construction makes clear that the central cavity is formed by the central body and that the reference to "central" in the claim term is to signify that the cavity is related to the central body.  *Id.*  Accordingly, the new alternative construction proposed by DJI, "a space formed by the central body," is consistent with the plain meaning of the term "a central cavity".  *Id.*

By contrast, Autel's proposed construction that the "central cavity" means "a single space" is improper because it is unsupported by the intrinsic evidence.  To the contrary, as explained in DJI's Opening Brief, the specification discloses embodiments with multiple cavities.  Opening Br. at 16; '049 patent, 9:7-20 ("the receiving structure may form an addition receiving cavity besides the main cavity"); *see also* '049 patent, claim 9 ("the central cavity has one or more interior structures formed therein which accommodate the one or more electrical components."); Janet Rebuttal Decl., at ¶ 31.  "A single space" is also an improper construction as it is inconsistent with the construction Autel proposed for the same "cavity" used in "a branch cavity."  Opening Br. at 16 (compare "a single space" with "an empty space").  Such inconsistent constructions go against the "strong" principle that "the same phrase in different claims of the same patent should have the same meaning" and thus should be rejected.  *In re Varma*, 816 F. 3d 1352, 1363 (Fed. Cir. 2016).

18

Accordingly, this Court should reject Autel's proposed construction as it is inconsistent with the intrinsic evidence as well as the basic legal principles of claim construction.  Janet Rebuttal Decl., at ¶¶ 29-35.

### 4.    "one or more electrical components (1) configured to control the operation of the UAV"

Autel's opening brief fails to explain why a construction for this term is necessary.  Autel's assertion that DJI is seeking plain and ordinary meaning to "allow[] DJI flexibility in its infringement analysis depending on future circumstances" (Autel Br. at 21) is not a valid reason to seek construction for a term.  DJI is entitled to the full scope of its claims.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude. . . .  [I]t is unjust to the public, as well as an evasion of the law, to construe [a claim] in a manner different from the plain import of its terms.") (internal quotations omitted).  There is simply no need to construe a term that is plain on its face.  *See* Janet Initial Decl. ¶¶ 52-53 ("the term 'control' is a plain English word, and the '049 patent uses the term in the ordinary sense"); '049 patent, 10:10-14.

Autel's opening brief instead confirms that it is attempting to improperly alter the scope of the claim by adding limitations that are not inherent in the claim language.  *See Hogasanas AB v. Dresser Indus., Inc.*, 9 F. 3d 948, 950 (Fed. Cir. 1993) ("It is improper for a court to add 'extraneous' limitations to a claim, that is, limitations added 'wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim.'") (internal citation omitted).  Citing to a portion of the specification of the '049 patent that lists examples of electrical

components that may be "adapted to control various aspects of the operation of the UAV," [4] ('049

patent, 6:46-57), Autel asserts that the word "control" should be construed to reflect the roles of

each listed component, which are allegedly to "detect," "maintain," or "adjust" the movement of

the UAV.  Autel Br. at 22-23.  However, Autel's interpretation of the roles of the listed components

is arbitrary and unsupported by the intrinsic evidence.  Indeed, the claims do not mention anywhere

at all the terms "detect," "maintain," or "adjust" and neither does the specification.  *See* '049 patent,

20:35-22:55.  Particularly, the words "detect" and "maintain" do not appear anywhere at all in the

patent.  Nor do the claims require controlling the movement of the UAV to be limited to just

detecting, maintaining, or adjusting the movement of the UAV.  Janet Initial Decl. at ¶¶ 53-55;

Janet Rebuttal Decl., at ¶ 37.  Therefore, Autel's proposed construction should be rejected.

In the event this Court decides to construe this term, DJI maintains that the Court should

adopt its proposed construction.  Autel's assertion that DJI's alternative construction renders claim

17 inoperable or is otherwise improper because it excludes components that do not control the

movement of the UAV does not make sense and is unsupported.  *See* Autel Br. at 23-24.  First,

Autel claims that controlling the operation of the UAV cannot be limited to controlling the

movement of the UAV.  Autel Br. at 23.  But curiously, Autel's own proposed construction

replaces the word "operation" with "movement."  The only difference between the Autel's

proposed construction and DJI's alternative proposed construction is the meaning of the word

"control."  Autel wants to replace this plain word with three separate words, namely "detect,"

"maintain," and "adjust," which as explained above, is inappropriate.  Therefore, Autel's

---

[4] The '049 patent merely lists examples of the components that "**can**" control various aspects of
the operation of the UAV, but does state that any of the exemplary components are actually
required.  '049 patent, 6:49.

complaint that inclusion of the word "movement" in the proposed construction somehow renders the claim inoperable or inappropriate is nonsensical.  Janet Rebuttal Decl., at ¶ 37.

Second, Autel's argument that DJI's alternative construction excludes the battery does nothing to save its argument that the proposed construction could render claim 17 inoperable.  Even if it is true that DJI's alternative construction would allow the magnetometer to be placed close to significant sources of electromagnetic interference, it is of no moment.  There is no requirement that the claims be limited to the best solution for solving the problem of the patent.  *See Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1336–37 (Fed. Cir. 2007) ("[A] claim need not cover all embodiments."); *Schultz v. iGPS Co. LLC*, No. 10 C 0071, 2013 WL 212927, at *8 (N.D. Ill. Jan. 17, 2013) (nothing that "a claim need not be strictly coextensive with the preferred embodiments" disclosed in the specification).

In sum, DJI's proposed constructions are the only constructions that are in accordance with the intrinsic evidence as well as the basic principles of claim construction.  Janet Rebuttal Decl., at ¶¶ 36-39.

### 5.   "a branch cavity"

Contrary to Autel's assertion, its proposed construction is not consistent with the intrinsic evidence.  Autel asserts that a POSITA would understand "branch cavity" to mean "an empty space" formed from both "upper branching housing member" and the "lower branch housing member" because the specification of the '049 patent explains that "[e]ach of the branch housing members 12 can include an upper branch housing member 121 and a corresponding lower branch housing member 122 that *collectively form the branch cavity*."  Autel Br. at 24 (emphasis added). However, Autel ignores other portions of the same specification that clearly indicate that forming "a branch cavity" does not require both upper and lower housing branch member.  Indeed, the '049 patent states that "[e]ach of the branch housing members, in the shape of a hollow arm or any other

suitable shape, can form a branch cavity." '049 patent, 7:5-7. As described here, the branch housing members are not described as consisting of two parts. Rather, the specification is describing a single branch housing member in the shape of a hallow arm. Janet Rebuttal Decl. at ¶ 41. Moreover, as with the term "central cavity," even the part of the specification quoted by Autel merely states that the branch housing "**can**" include an upper and lower branch housing member. Autel Br. at 24 (citing '049 patent at 8:7-11)[5]. Autel cannot cherry pick portions of the intrinsic evidence that support its position and ignore parts that do not.

Autel's proposed construction that "branch cavity" be an "empty" space is also inconsistent with the intrinsic evidence. *See* DJI Opening Br. at 19; Janet Rebuttal Decl., at ¶ 42. For example, claim 16 of the '049 patent states that "each actuator assembly" is "partially within a branch cavity" and "partially extending from the branch cavity," which shows that the "cavity" need not be empty as Autel proposes. In addition, the Barrett Declaration explains that various components can be located or installed in the branch cavities, so it is unclear how these cavities are supposed to be "empty". Barrett Declaration, ¶ 48. In sum, the Court should reject Autel's proposed construction as inconsistent with the intrinsic evidence.

Autel's proposed construction not only ignores the intrinsic evidence but also the basic legal principles of claim construction. As explained in detail in DJI's Opening Brief, Autel's proposed construction imports limitations expressly recited in other claims. DJI Opening Br. at 18-19 (comparing language of dependent claim 7 and independent claim 16 of the '049 patent). This is improper. *See Amgen*, 314 F. 3d at 1326 ("Our court has made clear that when a patent claim 'does not contain a certain limitation and another claim does, that limitation cannot be read

---

[5] It is also worth noting that the paragraph in which this sentence appears begins with the phrase "[i]n some embodiments . . . ." '049 patent, 8:4.

into the former claim in determining either validity or infringement.'") (internal citation omitted). Moreover, Autel's proposed construction for the word "cavity" here ("an empty space") is inconsistent with the construction proposed for the same word used in the term "a central cavity" ("a single space").   As explained in DJI's Opening Brief, such inconsistent constructions are improper.  *In re Varma*, 816 F.3d at 1363 ("the same phrase in different claims of the same patent should have the same meaning").

DJI maintains that the term "a branch cavity" should be accorded its plain and ordinary meaning.  Janet Rebuttal Decl. at ¶¶ 44-46.  Autel's bald speculation that doing so "would allow DJI flexibility to cause mischief later in the case" (Autel Br. at 25) does not make construction of this term necessary.  Should the Court decide to construe this term, DJI's alternative proposed construction should be adopted over Autel's as it is the only construction that is consistent with the intrinsic evidence and does not violate any legal principles of claim construction.   Janet Rebuttal Decl. at ¶¶ 40-46.

6.      **"wherein [each actuator assembly / the actuator of each actuator assembly] is (1) partially within a branch cavity of a corresponding branch housing member, [and] (2) partially extending from the branch cavity of the corresponding branch housing member"**

Autel has failed to meet the heavy burden of proving with clear and convincing evidence that these terms are indefinite.  *Microsoft Corp.*, 564 U.S. at 95.  Contrary to Autel's assertion, the '049 patent provides ample guidance as to what "partially within a branch cavity" and "partially extending from the branch cavity" means.  The '049 patent explains that an electronic speed control (ESC) module can be positioned inside a branch housing member and below the actuator and that in some embodiments, the actuator assembly controlled by the ESC module can be located at least partially inside a branch cavity.  '049 Patent, 11:52-12:1; Janet Rebuttal Decl., at ¶ 47.  Figures 1 and 2 also illustrate how a portion of the actuator can extend at least partially from the cavity to

rotatably couple with a rotor blade.  '049 Patent, 11:52-12:1; Janet Rebuttal Decl., at ¶ 49.  As explained in DJI's Opening Brief, based on the intrinsic evidence, a POSITA can understand the meaning of the terms "partially within" and "partially extending" and the scope of the claim.  *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010) ("the intrinsic evidence here provides 'a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine [the scope of the claims]'") (internal citation omitted).  Autel's reliance on *Rillito River* is inapposite.  There, the court found the term "partially surround" indefinite as the specification did not provide objective guidance as to how much surrounding was required.  *Rillito River LLC v. Bamboo Indus. LLC*, No. 2:17-cv-00181, 2018 WL 4350095, at *10 (E.D. Cal. Sept. 11, 2018).  But here, the specification does provide guidance as to what is meant by partially within and partially extending.  Janet Initial Decl. at ¶¶ 61-62 (citing '049 patent, 11:52-12:1, FIGs 1, 2).  Also, unlike the term "partially surround," reasonable people could not disagree as to whether the actuator or actuator assembly is "partially within" or "partially extending" from the branch cavity.  *See* Janet Rebuttal Decl. at ¶¶ 48, 50-51; *see also Legacy Separators LLC v. Halliburton Energy Servs. Inc.*, No. 4:14-CV-2081, 2016 WL 3017140, at *4 (S.D. Tex. May 26, 2016) (holding that term "partially vacate" is not indefinite in view of the specification and noting that the term is not subjective).  As explained in DJI's Opening Brief, if any portion, no matter how big or small, of the actuator or actuator assembly is inside the branch cavity, it is "partially within" the branch cavity.  Opening Br. at 21; Janet Rebuttal Decl. at ¶ 51.  Similarly, if any portion of the actuator or actuator assembly extends from the branch cavity, it is "partially extending from the branch cavity."  *Id.*  Thus, determining how much of the actuator or actuator assembly is actually inside or is extending from the branch cavity is not necessary to understand what "partially within" or

24

"partially extending" means in the context of the '049 patent contrary to Autel's assertion. *See* Autel Br. at 27. Autel's argument that this term is indefinite should be rejected.

Autel's alternative construction should also be rejected for being inconsistent with the intrinsic evidence and the legal principles of claim construction. As explained in DJI's Opening Brief, Autel's alternative construction adds a limitation that the actuator assembly is "surrounded by walls that are formed by both the upper . . . and the lower branching member," which is not supported anywhere in the '049 patent. Opening Br. at 22. At best, Autel's proposed construction limits the claim to a preferred embodiment by describing particular depictions in the patent. Autel's only justification for narrowly defining the term this way is because it is allegedly the only way to "provide guidance as to how to determine whether an actuator/actuator assembly is 'partially within' or 'partially extending from the branch cavity.'" Autel Br. at 27. But as explained above, there is no difficulty in determining whether actuator/actuator assembly is partially within or partially extending from the branch cavity. The real issue Autel has with the claim is its breadth. But, "breadth is not indefiniteness." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005) (internal brackets omitted).

Moreover, the "surrounded by walls . . ." language is inconsistent with the construction Autel proposes for the term "a branch cavity" which is "an empty space." *In re Varma*, 816 F.3d at 1363 ("[T]he same phrase in different claims of the same patent should have the same meaning."). Accordingly, the Court should reject Autel's proposed construction and should the Court decide that construction is necessary for this term, it should adopt DJI's proposed construction as it is the only construction that conforms to the plain meaning of the claim language in view of the intrinsic evidence. *See* Janet Initial Decl. at ¶¶ 60-66, 72; Janet Rebuttal Decl., at ¶¶ 47-53, 55.

25

   7.    **"wherein each actuator assembly . . . (3) has, beneath the actuator assembly, a portion of the lower branch housing member of the corresponding branch housing member"**

Autel's opening brief confirms that its proposed construction is not supported by the intrinsic evidence and violates the basic legal principles of claim construction.  As explained in the DJI's Opening Brief, Autel's construction that requires the lower branch housing member to have a portion that "supports the weight of each actuator assembly" is not supported by either the claims or the specification.  Opening Br. at 23.  Tellingly, Autel does not provide any testimony from its expert on this term.  This is yet another example of Autel's improper attempt to import limitations from other claims.  *Id.* (comparing claim 1 and claim 16); *Amgen*, 314 F. 3d at 1326. This particular construction also violates another legal principle that it is improper to add functional requirements to an otherwise structural claim.  *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002) ("Where a claim uses clear structural language, it is generally improper to interpret it as having functional requirements.").  Such a construction that has no support in the patent or law must be rejected.

Autel asserts that this term should be construed to have the "lower branch housing member extend directly beneath the actuator assembly" primarily based on the prosecution history of the '049 patent.  Autel Br. at 28-30.  However, the Examiner's statement in the prosecution history, even if somehow limiting, merely re-states the language of the claim.  The Examiner and the prosecution history make no reference to the lower branch housing member extending "directly" beneath the actuator assembly.

Accordingly, the Court should reject Autel's proposed construction.  DJI maintains that this term needs no construction, however, should the Court decide that construction is necessary, it should adopt DJI's proposed construction as it is the only construction that conforms to the plain

26

meaning of the claim language in view of the intrinsic evidence. *See* Janet Initial Decl. at ¶¶ 67-71; Janet Rebuttal Decl., at ¶ 54.

## III.    CONCLUSION

For the reasons explained above and in DJI's Opening Claim Construction Brief, DJI respectfully requests that the Court adopt the constructions proposed by DJI for the disputed claim terms.

Dated: July 29, 2019

*Of Counsel*

David M. Farnum, Esq.
Sherry X. Wu, Esq.
ANOVA LAW GROUP, PLLC
21351 Gentry Drive Ste 150
Sterling, VA 20166
david.farnum@anovalaw.com
sherry.wu@anovalaw.com

Willard K. Tom
Jon R. Roellke
Ryan Kantor
Bradford A. Cangro
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
(202) 739-3000
willard.tom@morganlewis.com
jon.roellke@morganlewis.com
ryan.kantor@morganlewis.com
bradford.cangro@morganlewis.com

Respectfully submitted,

*/s/ Amy M. Dudash*
Jody C. Barillare (#5107)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
1007 Orange Street, Suite 501
Wilmington, Delaware 19801
T. (302) 574-3000
jody.barillare@morganlewis.com
amy.dudash@morganlewis.com

Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
Farnan@rlf.com
Haynes@rlf.com

*Attorneys for Plaintiffs SZ DJI Technology Co.*
*Ltd. and DJI Europe B.V.*