**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V.,<br><br>Plaintiffs,<br><br>v.<br><br>AUTEL ROBOTICS USA LLC and AUTEL AERIAL TECHNOLOGY CO., LTD.,<br><br>Defendants. | C.A. No. 16-706-LPS<br>(Consolidated) |
| AUTEL ROBOTICS USA LLC and AUTEL AERIAL TECHNOLOGY CO., LTD.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., and DJI TECHNOLOGY, INC.,<br><br>Counterclaim Defendants. | |

**MEMORANDUM ORDER**

Having reviewed the proposed pretrial order ("PTO") filed by Plaintiffs SZ DJI Technology Co., Ltd. and DJI Europe B.V. (together, "DJI" or "Plaintiffs") and Defendants Autel Robotics USA LLC and Autel Aerial Technology Co., Ltd. (together, "Autel" or "Defendants") (D.I. 590),

**IT IS HEREBY ORDERED** that:

1. DJI's motion *in limine* ("MIL") No. 1, to preclude trial testimony from Randall

Warnas and Joseph O'Hearn, is **GRANTED**. Exclusion is appropriate because these witnesses were not timely disclosed, and Autel's delay is neither substantially justified nor harmless. *See* Fed. R. Civ. P. 37(c)(1). That Autel refuses to disclose the substance of the anticipated testimony from Mr. Warnas, its current CEO and a former employee of DJI, raises substantial concern that DJI would be surprised and unfairly prejudiced by hearing his testimony for the first time at trial. The *Pennypack* factors[1] fully support the Court's conclusion: (i) the evidence that Autel evidently seeks to present cannot be that important, given how long it took Autel to disclose these witnesses, and there is no indication that other timely-disclosed witnesses could not provide the same evidence; (ii) DJI will be surprised and prejudiced at trial by the testimony, as it has not had an opportunity to depose the new witnesses, which will be disruptive to trial, for reasons including that "DJI will be forced to spend its valuable trial time asking the very questions it would have (and could have) asked in a deposition had these individuals been timely disclosed" (D.I. 590-3 at p. 33 of 136); (iii) there is not sufficient time in the 12 remaining days before trial to cure this prejudice; and (iv) while the Court does not find bad faith, Autel's violation of the Court's deadlines appears to have been willful, and the explanations given are unpersuasive.[2]

2. DJI's MIL No. 2, to preclude reference to other legal proceedings in the United States, Germany, and China in Phase 1 and to limit those references in Phase 2, is **GRANTED**

---

[1] *See generally Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).

[2] For example, Autel states that "***counsel*** only recently learned of its [client's] new CEO." (D.I. 590-3 at p. 28 of 136) (emphasis added) Surely, the client itself had to have known of this new arrival months ago.

**IN PART** and **DENIED IN PART**. With respect to Phase 1, the motion is not contested, so both sides will be precluded in Phase 1 from making any reference to the other legal proceedings.[3] In Phase 2, however, evidence of these other proceedings is relevant to Autel's state of mind and alleged subjective willfulness. *See generally BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1223 (Fed. Cir. 1993) ("[A]lthough it had no bearing on validity proceedings in this country, the invalidation of [the defendant's] British patent served to strengthen further [the plaintiff's] belief that the claimed invention was obvious in light of prior art."). In Phase 2, the Court will not limit the parties' ability to reference and rely on such evidence, although the jury will be properly instructed that different laws apply in other countries and that jurors are not to defer to any other determination in any other proceeding. As the Court previously held, "[D]efendants understandably want to present their evidence that they could not have intended in bad faith to infringe DJI's U.S. patents given, among other things, the results of the litigation . . . against plaintiffs in China. So it seems almost certain that all of this evidence is going to have to come in at trial . . . ." (D.I. 590-3 at p. 52 of 136)

3. DJI's MIL No. 3, to preclude Autel from presenting certain purported prior art evidence and arguments, is **DENIED**. As an initial matter, DJI's motion is best characterized as at least four motions, seeking relief with respect to (i) the Microdrone md4-1000, DJI Spreading Wings S800, and 5iMX references, (ii) the Headrick patent, (iii) the Hugo drone, and (iv) uncharted invalidity arguments and evidence. Altogether, DJI is well over the scheduling

---

[3] Autel states that, "to the extent DJI introduces any testimony or suggestion that Autel has copied and/or is copying DJI's products with a subjective intent, Autel submits it should be allowed to introduce details of the Chinese proceedings in response." (D.I. 590-3 at pp. 42-43 of 136) To the extent this statement is indicative of a dispute (which is currently unclear), the Court will defer resolving it until trial.

order's limit of three MILs.[4] In any event, on the merits, DJI has failed to persuade the Court on any of these issues. Autel appears to have produced admissible evidence sufficient to permit a reasonable factfinder to find that the so-called "unsubstantiated prior art references" (D.I. 590-3 at p. 57 of 136) are prior art (*see id.* at p. 63 of 136) (citing evidence).[5] The same is true with respect to the Headrick patent: the record reveals a genuine dispute of material fact as to whether Headrick antedates the priority date for DJI's D'514 patent-in-suit.[6] Hugo may be found to be "associated" with the Headrick patent and is relevant to what would have been known to a person having ordinary skill in the art ("POSA"). Finally, Autel represents that it will not attempt to present invalidity theories that were never charted (*see id.* at p. 65 of 136) and, as DJI elsewhere argues (*see* D.I. 590-4 at p. 199 of 328), some invalidity evidence (at least evidence that does not require technical analysis) need not be presented in the form of expert testimony.

4. Autel's MIL No. 1, to preclude Lexie Ma and Richard Dissmann from testifying at trial, is **GRANTED**. Like Autel with respect to its challenged witnesses (*see supra* ¶ 1), DJI

---

[4] This conclusion is based on the charitable assumption that none of the "additional unresolved issues" that DJI raises at the end of the PTO should have instead been presented as MILs. (*See generally* PTO ¶ 87)

[5] According to DJI (but not addressed by Autel), the authenticity declaration relating to certain of the disputed references was not produced to DJI until July 29, 2021, which was two weeks after Autel served its exhibit list. (D.I. 590-3 at p. 135 of 136) While unfortunate timing, the parties have agreed to permit each other to supplement their respective exhibit lists through August 8. (PTO ¶ 43) DJI has not shown that the *Pennypack* factors or any other authorities justify the Court exercising its discretion to exclude this particular late-produced evidence.

[6] Autel's experts, as well as DJI's, will not be permitted to testify to opinions that were not fairly disclosed in expert reports and/or deposition testimony. If, as DJI insists, Autel's experts did not previously and timely disclose opinions of simultaneous invention or secondary considerations (*see* D.I. 590-3 at p. 135 of 136), those experts will be precluded from offering such opinions to the jury.

also failed to timely disclose these two witnesses. DJI fares no better than Autel in attempting to show that its failures were substantially justified or harmless. Ms. Ma, DJI's Head of Consumer Marketing, was not disclosed as a witness until April 2021, far past the conclusion of fact discovery in September 2019, notwithstanding that she had worked at DJI for at least several years prior to 2019. Moreover, the witness she is purportedly replacing (Michael Perry) left DJI a year before fact discovery closed, yet "DJI waited ***three years*** to inform Autel of this change in circumstance." (D.I. 590-4 at p. 109 of 328; *see also id.* at pp. 4, 101 of 328) Mr. Dissmann, DJI's patent counsel in a German proceeding, was not disclosed until the end of June 2021. As with the Autel witnesses challenged by DJI (*see supra* ¶ 1), the evidence that DJI seeks to adduce through these witnesses does not appear to be very important (or uniquely held by such witnesses),[7] given how long it took DJI to disclose them. Autel is prejudiced by not having deposed these witnesses and facing the prospect of being surprised at trial by only then first learning what they have to say. There is not sufficient time to fairly alleviate this prejudice without disrupting trial, and DJI has not provided any persuasive reason for its seemingly willful violation of the scheduling order deadlines. Accordingly, pursuant to Rule 37(c)(1) and the *Pennypack* factors, these two witnesses will not be permitted to testify at trial.

5. Autel's MIL No. 2, to exclude supposedly unsupported expert opinions and evidence supposedly not relied on by the experts, is **DENIED**. As DJI argues, Autel's motion is fairly characterized as an untimely *Daubert* motion and may be denied on that ground alone.

[7] "DJI intends to present Lexie Ma to testify at trial to introduce DJI as a company, introduce the products at issue in this case that DJI makes and sells, and describe the market conditions for DJI's products and competing products from Autel and others." (D.I. 590-4 at p. 100 of 328) There is no indication in the record, nor any plausible reason to suspect, that DJI lacks any timely-disclosed witness who could provide such testimony.

(*See* D.I. 590-4 at p. 199 of 328) On the merits, the Court further agrees with DJI that it has produced sufficient expert and fact evidence to present its arguments regarding secondary considerations of nonobviousness to the jury.

6. Autel's MIL No. 3, to exclude evidence and testimony related to DJI's products, is **DENIED**. Autel is right that the infringement inquiry requires asking whether "the accused product . . . contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). However, DJI is free to take on the extra burden of trying to prove that its own products are embodiments of one or more asserted claims and then using a product-to-product comparison as support for its infringement case. *See generally Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1289 (Fed. Cir. 2010) ("[W]hen a commercial product meets all of the claim limitations, then a comparison to that product may support a finding of infringement."); *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 642 (Fed. Cir. 2015) ("If a patentee is able to show that there is no substantial difference between the claimed design and the purported commercial embodiment, a comparison between that embodiment and the accused design is permissible.") (emphasis omitted). The jury will be appropriately instructed that, for infringement purposes, the only comparison that matters is between the asserted claims and the accused products. The Court's instructions will not permit the jury to merely "assume that DJI's products are covered by the patents and that all features are relevant," as Autel fears. (D.I. 590-4 at p. 210 of 328) Moreover, as DJI adds, a product-to-product comparison may be "relevant to both willfulness and secondary considerations of nonobviousness." (D.I. 590-4 at p. 322 of 328) (citing cases) Proper jury instructions will ensure that the risk of jury confusion

and unfair prejudice from whatever product-to-product comparison DJI undertakes will not substantially outweigh the probative value of such evidence.

Having identified additional disputes and issues in the PTO, **IT IS FURTHER ORDERED** that:

7. Phase 1 of the trial will proceed as follows: (i) DJI's case-in-chief on infringement; (ii) Autel's response on infringement and case-in-chief on invalidity; (iii) DJI's rebuttal on infringement and response on invalidity, including secondary indicia of non-obviousness; and (iv) Autel's rebuttal on invalidity. (*See* PTO ¶ 25c)

8. Phase 2 of the trial, if necessary, will proceed as follows: (i) DJI's case-in-chief on damages and willful infringement; (ii) Autel's response on damages and willful infringement; and (iii) DJI's rebuttal on damages and willful infringement. (PTO ¶ 24b)

9. With respect to objections to deposition designations, counter-designations, and counter-counter designations, the party calling the witness by deposition shall, no later than **7:00 p.m. two calendar days** before the witness is to be called at trial, submit, on behalf of all parties, **two copies** of the materials identified by the parties in PTO ¶ 34.

10. "Autel's Proposal" as delineated at PTO ¶ 57, regarding exchange of demonstratives to be used in opening statements, is **ADOPTED**. Accordingly, PTO ¶¶ 58 and 59 are **STRICKEN**.

11. The parties' joint request for 20 hours per side for their trial presentations (PTO ¶ 75) is **DENIED**. Each side will instead be allocated a maximum of **12 hours** at trial, to be divided however a party wishes between Phase 1 and (if necessary) Phase 2. The Court recognizes that there are a lot of issues to be presented to the jury, including infringement (literal

and doctrine of equivalents, direct and indirect) of the asserted claims of four patents (including one design patent) by at least three products, as well as invalidity and (potentially) willful infringement and damages. Nonetheless, the Court is confident that the amount of time it is providing is reasonable and adequate and will allow the parties to make appropriate (and likely more effective) presentations than they would in a longer period. This matter has been scheduled for a five-day trial since May 2021 (*see* D.I. 558), and the parties (represented by regular practitioners in this Court) must have understood that, as concerns the undersigned Judge, a one-week jury trial typically equates to approximately 10-12 hours per side. Additionally, the Court is scheduled to begin a criminal jury trial on August 23, so it will be unavailable to preside over this trial any longer than the scheduled five days.

12. Counsel are required to meet with the Court at 8:30 a.m. each morning of trial.

13. On August 16, jury selection will begin at 9:30 a.m., and trial will end at 5:00 p.m. On each succeeding day, trial will begin at 9:00 a.m. and end at 5:00 p.m. There will be at least one morning break and one afternoon break as well as a lunch break each day.

14. The parties shall be prepared to address the following issues at the pretrial conference later today:

A. The parties' dispute about improper limitations on the scope of uncontested facts. (PTO ¶¶ 10, 86)

B. Whether the EVO II is an accused product in this case (including for purposes of damages). (PTO ¶ 65f)

C. What evidence or argument, if any, that is relevant to Phase 2 will be permitted in Phase 1 of the trial. (PTO ¶ 66)

D. Whether there is any dispute over Autel's position that DJI should not present to the jury any facts that pertain only to a potential request for a permanent injunction. (PTO ¶ 72)

E. The proper safeguards – including, if necessary, any amendment to the existing protective order – to avoid an export violation. (PTO ¶¶ 80-81)

F. Whether the parties have a dispute over whether Autel may make reference to or rely on prior art and invalidity theories that were the subject of DJI's motion for summary judgment or were resolved during claim construction. (PTO ¶ 87a)

G. Whether Autel will be permitted to make reference to the "entity list" and related issues. (PTO ¶ 87b)

H. Whether the Court should order the parties to narrow the issues to be presented to the jury. (PTO ¶ 88c)

August 4, 2021
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE