**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SZ DJI TECHNOLOGY CO., LTD. and DJI
EUROPE B.V.,

               Plaintiffs,

v.

AUTEL ROBOTICS USA LLC and AUTEL
AERIAL TECHNOLOGY CO., LTD.,

               Defendants/Counterclaim Plaintiffs,

v.

DJI TECHNOLOGY INC., SZ DJI
TECHNOLOGY CO., LTD., and DJI
EUROPE B.V.,

               Counterclaim Defendants.

C.A. No. 16-706-LPS
(Consolidated)

**<u>PROPOSED FINAL PRETRIAL ORDER</u>**

      This matter comes before the Court at a final pretrial conference held pursuant to Rule 16

of the Federal Rules of Civil Procedure.

Plaintiffs' Counsel:  Plaintiffs SZ DJI Technology Co., Ltd. and DJI Europe B.V.

(collectively, "DJI") are represented by:

| | |
|---|---|
| Michael J. Lyons | Jody C. Barillare (#5107) |
| Ahren Hsu-Hoffman | Amy M. Dudash (#5741) |
| Thomas Y. Nolan | MORGAN, LEWIS & BOCKIUS LLP |
| MORGAN, LEWIS & BOCKIUS LLP | 1201 N. Market Street, Suite 2201 |
| 1400 Page Mill Road | Wilmington, Delaware 19801 |
| Palo Alto, CA  94304 | T. (302) 574-3000 |
| (650) 843-4000 | E. jody.barillare@morganlewis.com |
| michael.lyons@morganlewis.com | E. amy.dudash@morganlewis.com |
| ahren.hsu-hoffman@morganlewis.com | |
| thomas.nolan@morganlewis.com | Kelly E. Farnan (#4395) |
| | Christine D. Haynes (#4697) |
| J. Kevin Fee | RICHARDS, LAYTON & FINGER, P.A. |
| Hang Zheng | 920 N. King Street |
| JiaZhen (Ivon) Guo | Wilmington, Delaware 19801 |
| MORGAN, LEWIS & BOCKIUS LLP | T. (302) 651-7700 |
| 1111 Pennsylvania Ave., NW | E. Farnan@rlf.com |
| Washington, D.C. 2004-2541 | E. Haynes@rlf.com |
| (202) 739-3000 | |
| kevin.fee@morganlewis.com | |
| hang.zheng@morganlewis.com | |
| ivon.guo@morganlewis.com | |

Defendants' Counsel:  Defendants Autel Robotics USA LLC and Autel Aerial

Technology Co., Ltd. (n/k/a Autel Robotics Co., Ltd.) (collectively, "Autel") are represented by:

| | |
|---|---|
| Timothy C. Bickham | Anne Shea Gaza (No. 4093) |
| Hui Shen | Robert M. Vrana (No. 5666) |
| Craig A. Hoovler | Samantha G. Wilson (No. 5816) |
| STEPTOE & JOHNSON LLP | Beth A. Swadley (No. 6331) |
| 1330 Connecticut Avenue, NW | YOUNG CONAWAY STARGATT |
| Washington DC 20036 | & TAYLOR, LLP |
| (202) 429-3000 | Rodney Square |
| tbickham@steptoe.com | 1000 N. King Street |
| hshen@steptoe.com | Wilmington, DE 19801 |
| choovler@steptoe.com | (302) 571.6600 |
| Stephen Yang | agaza@ycst.com |
| STEPTOE & JOHNSON LLP | rvrana@ycst.com |
| 1114 Avenue of the Americas | swilson@ycst.com |
| New York, NY 10036 | bswadley@ycst.com |
| (212) 506 3900 | |

syang@steptoe.com
Anna M. Targowska
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577 1300
atargowska@steptoe.com

## I.    NATURE OF THE CASE[1]

1.     On August 11, 2016, DJI filed this action against Autel asserting infringement of U.S. Patent No. D691,514 (the "'514 patent" or the "Design Patent-in-Suit"), U.S. Patent No. 9,016,617 (the "'617 patent"), U.S. Patent No. 9,284,049 (the "'049 patent"), and U.S. Patent No. 9,321,530 (the "'530 patent") (collectively, the "Utility Patents-in-Suit") ("DJI Patents-in-Suit"). DJI alleges that Autel has infringed and continues to infringe, either literally and/or under the doctrine of equivalents, at least claims 1-11 and 14 of the '617 patent; claims 1-13, 15, 16-24 and 26-30 of the '049 patent; claims 1-13 and 16-28 of the '530 patent; and the claim of the D'514 patent by making, using, selling, offering for sale, and/or importing into the United States its Unmanned Aerial Vehicle ("UAV") products, namely the X-Star and X-Star Premium products.

2.     Subsequently, in March of 2019, the Court granted DJI's request to add infringement contentions against a new Autel product, the EVO. DJI alleges that Autel's EVO has infringed and continues to infringe, either literally and/or under the doctrine of equivalents, at least claims 16-18, 21-24, 26-28, and 30 of the '049 patent.

3.     DJI alleges that Autel is liable for direct, induced, and contributory infringement and that its infringement is willful.

4.     Autel presently asserts that the claims of the Design Patent-in-Suit and the Utility Patents-in-Suit are invalid. Autel also contends that it does not infringe, whether directly, by inducement, contributorily, or willfully, any of the claims of the Design Patent-in-Suit and the

---

[1] By Order dated March 18, 2019 (D.I. 344), the Court stayed adjudication of Autel's patent infringement counterclaims. Accordingly, the parties have not included in this submission their positions with respect to those counterclaims.

Utility Patents-in-Suit and that DJI is not entitled to damages or any other relief it seeks, including, but not limited to, a permanent injunction.

## II.    JURISDICTION

5.    This is an action for patent infringement and damages under 35 U.S.C. § 271, *et seq.*

6.    The subject matter jurisdiction of this Court is not disputed and is based on 28 U.S.C. §§ 1331 and 1338(a).

7.    The parties do not dispute personal jurisdiction or venue for the purpose of this action.

8.    SZ DJI Technology Co., Ltd. is the owner of the DJI Patents-in-Suit and has standing to bring suit.  DJI Europe B.V., as an exclusive licensee of SZ DJI Technology Co., Ltd., has standing to bring suit.

## III.    FACTS

### A.    Uncontested Facts

9.    Any party, with prior notice to all other parties and with the consent of the Court, subject to the Court's ruling on any relevant motions *in limine*, may read any or all of the uncontested facts to the jury or Court, and will be charged for the time used to do so.

10.    The parties' Statement of Uncontested Facts, which are not disputed and/or have been agreed to by the parties, is attached as **Exhibit 1**.

    a.  **Autel's Position:** Autel believes that DJI is improperly limited the appropriate scope of uncontested facts.  *See infra*, Additional Issues.

    b.  **DJI's Position:** DJI believes that Autel has improperly limited the appropriate scope of uncontested facts.  *See infra,* Additional Issues.

B.     **Contested Facts**

11.     DJI's Statement of Contested Facts is attached as **Exhibit 2**.

12.     Autel's Statement of Contested Facts setting forth the facts in issue that it contends remain to be litigated, including brief statements of what it intends to provide in support of its claims and defenses is attached as **Exhibit 3**.

13.     If the Court determines that any issue identified in the statements of contested facts is more properly considered an issue of law, it should be so considered.

14.     The parties reserve the right to modify or supplement their statements of contested fact to the extent necessary to fairly reflect any subsequent Court order or ruling or subsequent agreement of the parties.

IV.     **ISSUES OF LAW**

15.     DJI's Statement of Issues of Law that remain to be litigated is attached as Exhibit 4.

16.     Autel's Statement of the Issues of Law that remain to be litigated is attached as Exhibit 5.

17.     If the Court determines that any issue identified in the statements of the issues of law is more properly considered an issue of law, it should be so considered.

18.     The parties reserve the right to modify or supplement their statements of issues of law to the extent necessary to fairly reflect any subsequent Court order or ruling or subsequent agreement of the parties.

V.     **WITNESSES**

19.     Any witness not listed in the parties' witness lists filed with the Court on August 1, 2021 will be precluded from testifying, absent good cause shown.  Such good cause shall

include, but is not limited to, testimony required to authenticate any documents subject to an authenticity objection.  Subject to the notice requirements addressed herein, the listing of a witness on a party's witness list does not require that party to call that witness to testify, and does not necessarily mean that the listing party has the power to compel the live testimony of that witness.

20.     The parties agree that fact witnesses will be sequestered.  The parties agree that expert witnesses need not be sequestered.  Notwithstanding the foregoing, the parties agree that any corporate representative attending the trial as the party's representative need not be sequestered because they will not be testifying.  Any such agreement is not intended to abrogate or alter D. Del. LR 43.1.  For clarity, in keeping with D. Del. LR 43.1, an offering party may discuss with a witness his or her testimony while on direct examination, including during adjournments in the trial, breaks during the trial day, and overnight.  An offering party may not, however, discuss with a witness his or her testimony while the witness is on cross-examination, including during adjournments in the trial, breaks during the trial day, and overnight.  Once cross-examination of a witness is concluded and the witness is passed for re-direct examination, the offering party may discuss with the witness his or her testimony on re-direct examination.

21.     Each party will identify the witnesses that it intends to call at trial (whether live or by deposition) and the order of those witnesses by 6:30 p.m.[2] the day before those witnesses will be called (*e.g.*, if a witness is to be called on a Tuesday, the party calling that witness must disclose that witness by 6:30 p.m. on Monday).  If circumstances arise that require a change, then the party will make its disclosure to the other party as soon as practical upon learning of the

---

[2] All times are Eastern Standard Time.

7

change and provide an explanation of the circumstances that required the change.  The receiving party shall notify the other side of any objection to the disclosed witness(es) by 8:30 p.m. the day before the witness testifies. The parties shall meet and confer on any objections to the disclosed witness(es) by 9:30 p.m. the evening before the witness(es) are expected to testify.   Any dispute as to witnesses shall be raised with the Court as appropriate before trial resumes on the day of the disputed witness's anticipated testimony.

22.     Absent a showing of good cause, a party must provide at least 48 hours' notice of any witness who changes from "may call" to "will call" status, and vice versa, once the parties have identified "may call" and "will call" witnesses.

23.     The parties will promptly raise any witness availability issues as they arise.  To the extent that any witness availability issue arises, the parties will work in good faith to resolve any such issue.  Consent to any request by a party to present a witness out of order or make other adjustments to the presentation of witnesses due to the availability of a witness will not be unreasonably withheld.

24.     DJI proposes that the order of the presentation of evidence for the jury trial will follow the burden of proof as follows:

     a.     Phase 1

         i.     DJI's case-in-chief on infringement and secondary indicia of non-obviousness

        ii.     Autel's response on infringement and case-in-chief on invalidity

      iii.     DJI's rebuttal on infringement and response on invalidity, including rebuttal on secondary indicia of non-obviousness

      iv.     Autel's rebuttal on invalidity

8

      b.    Phase 2

          i.    DJI's case-in-chief on damages and willful infringement

          ii.    Autel's response on damages and willful infringement

          iii.    DJI's rebuttal on damages and willful infringement

25.    Autel proposes that the order of the presentation of evidence for the jury trial will follow the burden of proof as follows:

      c.    Phase 1

          i.    DJI's case-in-chief on infringement

          ii.    Autel's response on infringement and case-in-chief on invalidity

          iii.    DJI's rebuttal on infringement and response on invalidity, including rebuttal on secondary indicia of non-obviousness

          iv.    Autel's rebuttal on invalidity

      d.    Phase 2

          i.    DJI's case-in-chief on damages and willful infringement

          ii.    Autel's response on damages and willful infringement

**A.**    **List of Witnesses the Plaintiffs Expect to Call**

26.    DJI's witness list is attached as Exhibit 6.  It identifies the names of the witnesses DJI will or may call to testify at trial and also identifies whether the witness will testify in person (including remotely) or by deposition, if presently known.  For expert witnesses, the subject matter on which DJI will ask the Court to recognize the witness's expertise is indicated.  Autel's objections are included in Exhibit 6.

**B.**     <u>List of Witnesses the Defendants Expect to Call</u>

27.     Autel's witness list is attached as Exhibit 7.  It identifies the names of the witnesses Autel will or may call to testify at trial and also identifies whether the witness will testify in person or by deposition, if presently known.  For expert witnesses, the subject matter on which Autel will ask the Court to recognize the witness's expertise is indicated.  The parties agree that experts will be called live.  DJI's objections are included in Exhibit 7.

**C.**     <u>Testimony by Deposition</u>

28.     Use of deposition testimony shall be governed by Fed. R. Civ. P. 32 and the Federal Rules of Evidence.

29.     Notwithstanding the foregoing, no party will object to another party calling a witness who resides outside of the United States by deposition on the basis that the witness is not unavailable under Fed. R. Civ. P. 32 and the Federal Rules of Evidence.  The parties reserve all other objections to such witnesses.

30.     DJI's list of witnesses it may or will call by deposition is included in Exhibit 6. The deposition testimony that DJI may offer into evidence is identified in Exhibit 8.

31.     Autel's list of witnesses it may or will call by deposition is included in Exhibit 7. Autel's affirmative deposition designations are attached as Exhibit 9.

32.     The parties agree that any party may revise, add to, or delete any portion of their deposition designations, counter-designations, counter-counter designations, counter-counter-counter designations or objections to admission of deposition testimony until August 9, 2021 in accordance with the parties' agreement for further deposition designation exchanges set forth in their e-mail correspondence to date.  After August 9, 2021, this pretrial order, as amended/supplemented pursuant to this Paragraph, together with any of the foregoing

10

amendments or supplements, contain the maximum universe of the deposition designations, counter-designations, counter-counter designations, counter-counter-counter designations and objections to admission of deposition testimony contemplated by the parties.  None of the foregoing shall be further supplemented without approval of all parties or leave of the Court, on good cause shown.  The parties further agree that they may use each other's designated testimony so long as such testimony was designated by one party on Exhibits 8 or 9, or any amendments or supplements thereto as permitted by this pretrial order even if the party originally designating the testimony withdraws or otherwise deletes the deposition designation sought to be used by the non-designating party.

33.    Unless otherwise agreed to between the parties, the party offering deposition testimony (other than for the purpose of impeachment or cross examination) shall identify the deposition testimony intended to be offered from previously-exchanged designations by 6:30 p.m. four calendar days prior to the testimony being offered into the record.  The party receiving the designations shall inform the opposing party of any objections and counter-designations by 6:30 p.m. three calendar days prior to the testimony being offered into the record.  The party offering the deposition testimony shall inform the opposing party of any objections to counter-designations and of any counter-counter designations by 6:30 p.m. two calendar days prior to the testimony being offered into the record.  The opposing party shall inform the party offering the deposition testimony of any objections to counter-counter designations and of any counter-counter-counter designations by 8:30 p.m. two calendar days prior to the testimony being offered into the record, and the parties will meet-and-confer by 9:30 p.m. that same day.

34.    The party calling the witness by deposition shall, no later than two (2) calendar days before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the

entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; (ii) a cover letter clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

35.     If applicable, a party's designation of a page and line from a particular transcript shall be automatically deemed to include any errata indicated for that page and line in the attached errata sheets.

36.     All irrelevant material, including colloquy between counsel and objections, will be eliminated when the deposition is played at trial.

37.     The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony, any counter-designations, counter-counter designations, and counter-counter-counter designations.

38.     When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two (2) copies of the transcript of the parties' collective designations from that deposition that will be played.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

39.     For those witnesses whose deposition or prior testimony will be played or read, the parties shall be permitted to make brief transition statements to introduce the witness by name, position, or title, and/or the company to which he or she is associated, the time for which shall be charged to the party offering the witness's testimony, unless otherwise agreed to by the

parties.  However, counsel shall not be permitted to argue or comment on the evidence during transition statements.

40.     Deposition designations, counter-designations, counter-counter designations, and counter-counter-counter designations from a single deposition will be introduced at trial together in the sequence in which the testimony originally occurred.  If there are designations from more than one deposition of a witness, the designations will be played in chronological order.

### D.     Impeachment with Prior Inconsistent Testimony

41.     The parties agree that any exhibit or prior testimony used only for purposes of impeachment need not be disclosed on the list of exhibits or deposition designations contained in this pretrial order.  Any deposition and other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose.  The parties agree that they may object to the use of deposition and other prior testimony for impeachment purposes, including objections based on lack of completeness and/or lack of inconsistency.

### E.     Objections to Expert Testimony

42.     The parties request that the Court should rule at trial on any objections to expert testimony as beyond the scope of prior expert disclosures, and that a failure to object to expert testimony as beyond the scope of prior expert disclosures waives the objection as to that testimony.  The parties agree that the time taken to argue and decide such objections will be charged to the losing party on such objections.

## VI.     EXHIBITS

### A.     Exhibits

43.     This pretrial order contains the parties' good faith efforts to identify the maximum universe of exhibits to be offered at trial by the parties.  The parties have agreed that the deadline to supplement their respective exhibit lists is August 8, 2021, in accordance with the parties' agreement for further exhibit list exchanges set forth in their e-mail correspondence to date. Thereafter, the exhibits lists shall not be supplemented without approval of the parties or leave of Court, on good cause shown.

44.     DJI's list of trial exhibits that it intends to offer at trial, including Autel's objections, is attached as Exhibit 10.  DJI reserves the right to use any exhibit identified by Autel, and to use exhibits not listed solely for impeachment.  DJI reserved the right to amend its exhibit list up and until the time of submission of the instant Pretrial Order to the Court.

45.     Autel's list of trial exhibits that it intends to offer at trial, including DJI's objections, is attached as Exhibit 11.  Autel reserves the right to use any exhibit identified by DJI, and to use exhibits not listed solely for impeachment.  Autel reserved the right to amend its exhibit list at least up to and until the time of submission of the instant Pretrial Order to the Court

46.     The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

47.     Subject to the provisions herein, this pretrial order contains the entire universe of exhibits to be used by a party, as well as all objections to the admission of such exhibits, neither of which shall be amended or supplemented after August 6, 2021 without approval of all parties or leave of the Court, on good cause shown.  Subject to the provisions herein, exhibits not listed will not be admitted unless good cause is shown.

48.     Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by each party, subject to the Federal Rules of Evidence.  The parties agree that the listing of an exhibit by a party does not waive any objections that such party may have to the use of the same exhibit by another party.  If a party deletes an exhibit from its list, another party may add that exhibit to its own exhibit list.

49.     The parties agree that exhibits to be used solely for impeachment and Rule 1006 exhibits,[3] need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

50.     No exhibit will be admitted unless offered into evidence through a witness, who must be at least shown the exhibit.  At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.  Except as provided below with respect to opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.  Once admitted, counsel may publish exhibits to the jury without requesting to do so.

51.     Should a party inadvertently fail to move an exhibit into evidence at the close of the witness' testimony, the parties agree that such exhibits may be moved into evidence at any point before the completion of trial.

---

[3] The parties agree that Rule 1006 exhibits need not be included on a party's exhibit list and will be disclosed with sufficient and reasonable notice for review and/or objection, but at least one day in advance of its anticipated use (as provided herein), provided that any exhibits from which a particular Rule 1006 exhibit is derived have been disclosed on the parties' exhibit lists (including any supplements thereto).  The parties will include any such Rule 1006 exhibits on the final exhibit list provided to the Court after trial.

52.     The parties stipulate that all exhibits produced by any party or third party by subpoena are deemed authentic under Federal Rule of Evidence 901 in this case to the extent the documents were created by the producing party and/or the documents are accompanied by a statement of authenticity made under penalty of perjury by the producing party or a person or entity authorized to make such a statement, that attests to the fact that such documents were maintained as business records under Federal Rule of Evidence 803.  Furthermore, any website exhibits from either party are also deemed authentic in this case.

53.     A party will provide exhibits to be used in connection with direct examination, including Rule 1006 exhibits, by 6:30 p.m. the day before their intended use, and objections will be provided no later than 8:30 p.m. the night before their intended use.  The parties shall meet and confer on any objections to the disclosed exhibits by 9:30 p.m. the evening before the exhibits are expected to be offered into evidence.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the jury being seated the morning of the day the witness with whom the exhibit is expected to be used is called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

54.     The previous paragraph's procedures regarding disclosure of exhibits do not apply to exhibits used for impeachment or cross-examination of a witness.  Exhibits not objected to will be received into evidence by the operation of the pretrial order without the need for additional foundation testimony, provided they are shown to a witness and moved into evidence as provided above.

16

55.     The parties shall make available for inspection any physical exhibits (with the exception of exhibits to be used solely for impeachment or cross examination) to be used at trial, labeled with the trial exhibit number. Access to the opposing party's physical exhibits shall be made at such time and place and under such circumstances as are reasonable and mutually agreed to.

56.     On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

**B.     Demonstrative Exhibits**

57.     **Autel's Proposal:** The parties will exchange demonstratives to be used in opening statements by 6:30 p.m. on the day before opening statements. The parties will provide any objections to such demonstratives by 8:30 p.m on the day before opening statements.  The parties shall meet and confer on any objections to the disclosed demonstratives by 9:30 p.m

58.     If a party intends to use an exhibit during its opening statement to which the other party has objected, the party shall disclose the exhibit(s) by 6:30 p.m. two days before opening statements.  If the opposing party continues to object to any such exhibit(s), it will provide those objections by 8:30 p.m. the evening before opening statements so that the Court can resolve those objections before opening statements.

59.     The parties shall meet and confer on any objections to cited exhibits by 9:30 p.m. the evening before opening statements.

60.     A party will provide demonstrative exhibits to be used in connection with direct examination by 6:30 p.m. the night before their intended use, and objections will be provided no later than 8:30 p.m. the night before their intended use.  If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party

17

of the change(s).  The parties shall meet and confer on any objections to the disclosed demonstratives by 9:30 p.m. the evening before the demonstratives are expected to be presented.

61.     If good faith efforts to resolve objections to demonstratives fail, the objecting party shall bring its objections to the Court's attention prior to the jury being seated in the morning, before the opening statements or in the morning on the day the witness with whom such demonstratives are expected to be used is intended to be called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of demonstrative or waiver of objection to the demonstrative.

62.     The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF or other electronic form labeled with the exhibit or demonstrative number.  However, for videos, animations, flash files, or similar moving images, the party seeking to use the demonstrative will provide it to the other side electronically via a video or similar file, or on a DVD or CD.  For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

63.     This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross-examination or impeachment of a witness, none of which need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

VII.    **DAMAGES**

64.     DJI intends to seek the following relief:

      a.      Either, (i) a reasonable royalty from Autel for all DJI Patents-in-Suit, or (ii) lost profits from Autel and reasonable royalties on remaining sales not eligible for lost profits, in the amounts set out below (35 U.S.C. § 284), which cover the damages period through July 2019:



      b.      Enhanced damages for Autel's willful infringement.  35 U.S.C. § 284.

      c.      Pre-judgment and post-judgment interest, costs, and attorneys' fees. 35 U.S.C. §§ 284-285.  A more complete description of damages DJI seeks is set forth in the expert reports of Michele M. Riley, which have been served in the instant action.  DJI reserves the right to update its damages figures to encompass post-close of fact discovery damages information, which is forthcoming from both parties.

65. **Autel Position**:

    d.  DJI will be unable to prove infringement of any valid and enforceable patent and therefore DJI may not recover damages or any other remedy.

    e.  DJI will also not be able to show that Autel's alleged infringement was willful because, among other reasons, the Chinese counterparts of the Asserted Patents were invalidated or otherwise determined not to cover Autel's products.

      f.   DJI is limited to seeking damages, if any, solely on the accused X-Star and EVO products, and not on Autel's EVO II, which is not an accused product in this case.

      g.   DJI is not entitled to an ongoing royalty of injunctive relief because Autel is no longer selling the Accused Products in the United States [in any meaningful way].

## VIII.  <u>BIFURCATED TRIAL</u>

66.     Per the Court's May 8, 2020 Oral Order (D.I. 521), the trial in this matter will be phased, with liability to be decided in the first phase, and—if the jury returns a verdict of infringement of at least one valid claim—damages and willfulness to be decided in the second phase, with the same jury.  The Court and the parties shall discuss at the pretrial conference what evidence or argument, if any, relevant to phase 2 will be permitted in phase 1 of the trial.  The parties agree that no evidence or argument that is solely relevant to phase 2 should be permitted in phase 1 of the trial.

## IX.  <u>MOTIONS IN LIMINE</u>

67.     Motions *in limine* shall not be separately filed.  All *in limine* requests and responses thereto are set forth in the proposed pretrial order.  Each side shall be limited to three (3) *in limine* requests, unless otherwise permitted by the Court.  The *in limine* requests and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three (3) pages of argument and may be opposed by a maximum of three (3) pages of argument, and the side making the *in limine* request may add a maximum of one (1) additional page in reply in support of its request.  If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single three (3) page submission (and, if the moving party, a single one (1) page reply), unless otherwise ordered by

the Court.  No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

68.    DJI's contested motions in limine, Autel's oppositions, and DJI's replies are attached as Exhibit A, B. and C to Exhibit 12.

69.    Autel's contested motions in limine, DJI's oppositions, and Autel's replies are attached as Exhibits A, B, and C to Exhibit 13.

## X.    DISCOVERY

70.    Each party has completed discovery.

## XI.    NUMBER OF JURORS

71.    There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

## XII.    NON-JURY TRIAL

72.    To the extent DJI seeks a permanent injunction, Autel objects to any presentation of facts to the jury that pertain only to such a request.  Furthermore, this pretrial order may not address all issues solely related to any request from DJI for a permanent injunction.  While Autel disagrees that DJI has any basis to seek a permanent injunction (*see, e.g.*, *infra* Section VII), to the extent that proceedings related to any such request become necessary, Autel reserves the right to supplement this pretrial order to include evidence that may be relevant solely to such proceedings.

XIII.   **LENGTH OF TRIAL**

73.     The trial will be timed.  Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, and its argument on any motions for judgment as a matter of law.  With respect to  argument on objections a party raises (outside the presence of the jury) to another party's witnesses, exhibits, or demonstrative exhibits, time shall be charged according to the amount of time each party spends making its arguments.

74.     The Courtroom Deputy will keep a running total of trial time used by counsel.  If a party uses all of its allotted trial time, the Court may terminate that party's trial presentation.

75.     Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request twenty (20) hours each for their trial presentations.  Of the 20 total hours allocated to each side, the parties will be further limited to [12.5] hours for their respective presentations during the liability phase of the trial and [6.5 ] hours for their respective presentations during the damages and willfulness phase of the trial. Following the liability phase, any time that a party has remaining from the first phase may be used in the second phase of the case by that party.

XIV.   **MOTIONS FOR JUDGMENT AS A MATTER OF LAW**

76.     The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.  The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

22

77.     If, and only if, the Court does wish to receive briefing on the issue raised, the parties agree that the party moving for judgment as a matter of law shall submit a written motion not to exceed five (5) pages supporting any oral motions filed within 24 hours.

### XV.     AMENDMENTS OF THE PLEADINGS

78.     The parties do not seek to amend the pleadings.

### XVI.    ADDITIONAL MATTERS

79.     Plaintiffs' renewed motion for summary judgement that Defendants' X-Star Products infringe claims 1-13, 15-24, and 26-30 of the '049 patent remains pending.

80.     **DJI's position:** The parties expect that certain discovery materials subject to the U.S. export control laws and regulations ("Export Controlled Information") to be disclosed to the Court, including at any hearing or at trial, that certain corporate representatives and/or outside counsels attending trial will be non-U.S. Persons (i.e. foreign persons who are not U.S. citizens or permanent residents), and that certain non-U.S. Persons may obtain access to Export Controlled Information.  Because Export Controlled Information shall only be accessed by U.S. Persons or otherwise permitted access to such information under U.S. export control laws and regulations, the parties jointly request that the Court enter amendments to the existing Protective Order (Dkt. #87) to establish a process to provide enhanced protections to ensure compliance of each party, expert, counsel, consultant or other individual who obtain access to Export Controlled Information with the applicable requirements under the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730, et seq., and/or the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120, et seq.  The parties agree to confer and, if necessary, to discuss with the Court the proper safeguards to avoid an export violation.

81.   **Autel's position:** The fact that DJI is on the so-called "Entity List" has no impact on whether the courtroom should be open or restricted for this trial.  DJI's argument that the Entity List prohibits disclosure of discovery materials at trial is wrong.  The impact of DJI being on the Entity List is that DJI-China is prohibited from receiving technology that is subject to the Export Administration Restrictions.  There is no impact on the ability of Autel or other entities to receive and use the same technology, so long as they to not transmit it to DJI-China.  The Entity List also has no bearing on the Protective Order governing the use of confidential information in this case.  Autel has informed DJI of its position.  Autel is open to discussing with DJI whether certain confidential information will be disclosed and, if so, whether the parties should approach the Court.  But DJI's placement on the Entity List is by no means a basis to restrict the courtroom.

82.   The parties anticipate that they may seek to use certain model UAVs during trial. The parties will coordinate any use of these physical samples with the Court and the United States Marshalls to ensure that such samples will be safely transported into and maintained in the courthouse.

83.   The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed.  If a party makes such a request, they will do so at the beginning of the trial day identifying which witness will be testifying to sensitive information and explaining the basis for sealing the courtroom.  If a party makes such a request, subject to the Court's approval, the courtroom shall be cleared of those individuals not qualified to hear such confidential information under the Protective Order entered in this case, except that each party's corporate representative(s) may

24

remain in the courtroom throughout the entirety of trial.  The parties may show particular circumstances as appropriate to exclude party representatives.

84.    Unless the Court orders otherwise, the parties agree that the Federal Judiciary Center video, found at https://www.fjc.gov/publications/patent-process-overview-jurors, will be played in full and unabbreviated as part of the Court's preliminary jury instructions.

85.    The parties respectfully request that the Court grant access to the Courtroom on the business day before trial begins for purposes of setting up and testing electronic and computer devices.

86.    The parties would like to discuss at the pre-trial conference the fact that each contends the other has improperly limited the scope of what should be deemed uncontested facts in this case.

87.    **<u>DJI's Statement of Additional Unresolved Issues</u>**:  In the process of meeting and conferring with Autel regarding proposed motions *in limine*, a number of disputes between the parties were identified which DJI separately notes here.  DJI anticipates that the Court may be asked to resolve these issues, either at the pre-trial conference or before trial.

     a.    Whether Autel should be precluded from making reference to or relying on alleged prior art references and invalidity theories which were the subject of DJI's motion for summary judgment or were resolved during claim construction. Although it is DJI's understanding that these references and theories are no longer part of this case, Autel's counsel indicated that it has not yet decided whether it will ask the Court to revisit its previous rulings.  DJI would object to such a request as untimely and prejudicial.

**Autel's Position:** Autel objects to this "additional issue" from DJI because it is a fourth motion in *limine*.  DJI did not seek leave to file additional motions in *limine* nor did it meet and confer with Autel regarding these additional motions in *limine*.  Also, Autel is not planning on introducing art ruled on during summary judgment.

> b. Whether Autel should be precluded from making reference to the "entity list," DJI's status on said list, and bans on sales to the United States government.  It is DJI's position that any such references are highly prejudicial and devoid of any probative value.

**Autel's Position:** If DJI seeks to introduce evidence that its Phantom and Mavic products are the source of secondary indicia of non-obviousness.  DJI also seeks to portray DJI as being a good corporate citizen who sells products to governments, first-responders and charities – not only are these arguments not relevant, they are highly prejudicial and more importantly, these arguments are misleading, one-sided, and deceptive.  If DJI is to characterize itself as a good citizen to influence the jury, the jurors should be informed of the full set of facts.  For example, beginning in 2017, Government agencies starting with the Air Force and Department of Homeland Security began banning the use of DJI's Phantom and Mavic products due to aspects of how the drones operate during flight.  For example, during autonomous flight, the DJI products send data to China without the users being aware.  In addition to the 2017 bans, on which there was discovery in this case, multiple government agencies at the Federal, State and local levels have banned the use of the DJI products.  DJI donations to disaster relief efforts and charities have been rejected.

Additionally, these restrictions impact DJI's sales of the same drones for which DJI seeks lost profits from Autel, and are relevant to the amount of damages in question should this trial

proceed to Phase 2.  Furthermore, the investigations, which have been widely publicized, also squarely counter any "praise" for the Phantom and Mavic that DJI intends to introduce into evidence.  Again, DJI cannot unilaterally introduce evidence supporting its case, especially misleading evidence, and forbid Autel from responding or correcting the record.

Regarding the Entity List, on December 20, 2020, the Department of Commerce Bureau of Industry and Security placed DJI on the Entity List.  Placement on the Entity List restricts the ability of an entity to export or receive information that is subject to the Export Administration Regulations ("EAR").  The EAR require that licenses be obtained before technology may be sent to or received by the listed entity.  DJI was placed on the Entity List because DJI has "enabled wide-scale human rights abuses within China through abusive genetic collection and analysis or high-technology surveillance, and/or facilitated the export of items by China that aid repressive regimes around the world, contrary to U.S. foreign policy interests." 85 Fed. Reg. 246, page 83417.  This also makes DJI ineligible to sell its drones to many entities within the U.S.  Being on the Entity List has a significant impact on DJI's sales and, thereby, the lost profits damages DJI seeks from Autel.

88.    **Autel's Statement of Additional Unresolved Issues:**  Autel anticipates that the Court may be asked to resolve these issues, either at the pre-trial conference or before trial.

c.    Whether DJI should be required to narrow the issue in the case and limit the number of asserted claims.  Autel has requested narrowing on multiple occasions including several limes leading to the date of the filing.  DJI proposes to simply issues presented to the jury by not asking the jury to determine infringement on a claim by claim basis.  This is highly improper and is subject of several disputes between the parties elated, *inter alia*, to the verdict form and jury instructions.  It

27

is also impossible to try this case with this many claims in the time allotted. DJI has proposed some narrowing amendments less than two hours before the filing of this cover documents.  Autel has not had an opportunity to fully review. However, the proposal does not look sufficiently narrow.

     i. **DJI's Position**: DJI has made specific proposals to both parties to narrow the case, including sending Autel a list of reduced asserted claims.  DJI has also requested Autel identify the prior art references, combinations, and theories it will rely on at trial.  DJI will continue to work to narrow our case and work with Autel to do the same with theirs.

## XVII.  SETTLEMENT

89.    The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement.  Counsel for the parties most recently conferred on June 11, 2021 regarding the prospects for settlement.  They agreed that settlement is unlikely. As of the filing date of this Order, the parties still intend to proceed to trial.

*** 

IT IS HEREBY ORDERED that this Final Pretrial Order shall control the subsequent course of the action as to the DJI Patents-in Suit, unless modified by the Court to prevent manifest injustice.

Dated:

/s/ Amy M. Dudash
Jody C. Barillare (#5107)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
T. (302) 574-3000
E. jody.barillare@morganlewis.com
E. amy.dudash@morganlewis.com

Michael J. Lyons
Ahren Hsu-Hoffman
Thomas Y. Nolan
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
(650) 843-4000
michael.lyons@morganlewis.com
ahren.hsu-hoffman@morganlewis.com

J. Kevin Fee
Hang Zheng
JiaZhen (Ivon) Guo
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 2004-2541
(202) 739-3000
kevin.fee@morganlewis.com
hang.zheng@morganlewis.com
ivon.guo@morganlewis.com

Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
T. (302) 651-7700
E. Farnan@rlf.com
E. Haynes@rlf.com

*Attorneys for Plaintiffs SZ DJI Technology
Co., Ltd. and DJI Europe B.V.*

/s/ Samantha G. Wilson
Anne Shea Gaza (#4093)
Robert M. Vrana (#5666)
Samantha G. Wilson (#5816)
Beth A. Swadley (#6331)
Rodney Square
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 N. King Street
Wilmington, DE 19801
302.571.6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
bswadley@ycst.com

Timothy C. Bickham
Hui Shen
Craig A. HoovlerSteptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington DC 20036
(202) 429-3000
tbickham@steptoe.com
hshen@steptoe.com
choovler@steptoe.com
Stephen Yang
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506 3900
syang@steptoe.com

Anna M. Targowska
Steptoe & Johnson LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577 1300
atargowska@steptoe.com

*Attorneys for Defendants*