# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., | |
| Plaintiffs, | |
| v. | |
| AUTEL ROBOTICS USA LLC and AUTEL AERIAL TECHNOLOGY CO., LTD., | C.A. No. 16-706-LPS (Consolidated) |
| Defendants/Counterclaim Plaintiffs, | |
| v. | |
| DJI TECHNOLOGY INC., SZ DJI TECHNOLOGY CO., LTD., and DJI EUROPE B.V., | |
| Counterclaim Defendants. | |

**EXHIBIT 2**

**PLAINTIFFS' STATEMENT OF CONTESTED FACTS**

Exhibit 2
Plaintiffs' Statement of Contested Facts

Plaintiffs identify the following issues of fact that remain to be litigated.  This statement is based on the arguments Plaintiffs expect to make as well as its understanding of the arguments that Defendants are likely to make.  If Defendants seek to introduce different arguments, Plaintiffs reserve the right to supplement this statement.  This statement is based on the current status of the case and the Court's rulings to date.  Plaintiffs may modify or supplement this statement in response to subsequent rulings by the Court, including claim construction.  Should the Court determine that any issue identified herein is more appropriately considered an issue of law, Plaintiffs incorporate that issue by reference into its Statement of Issues of Law That Remain to Be Litigated.  To the extent that Plaintiffs' Statement of Issues of Law That Remain to Be Litigated contains an issue that the Court deems to be an issue of fact, that issue is incorporated herein by reference.

## I.  CONTESTED ISSUES OF FACT PERTAINING TO ISSUES ON WHICH PLAINTIFFS' BEAR THE ULTIMATE BURDEN OF PROOF

1.     Whether Autel's making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products infringe one or more of claims 1-11 and 14 of the '617 patent literally or under the doctrine of equivalents.

2.     Whether Autel's making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products infringe one or more of claims 1-13, 15, 16-24 and 26-30 of the '049 patent literally or under the doctrine of equivalents.

3.     Whether Autel's making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products infringe one or more of claims 1-13 and 16-28 of the '530 patent literally or under the doctrine of equivalents.

Exhibit 2
Plaintiffs' Statement of Contested Facts

4.      Whether Autel's making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products infringe the claim of the 'D514 patent literally or under the doctrine of equivalents.

5.      Whether Autel's making, using, selling, offering for sale, and/or importing into the United States its EVO product infringes one or more of claims 16-18, 21-24, 26-28, and 30 of the '049 patent literally or under the doctrine of equivalents.

6.      Whether Autel has induced and encouraged the direct infringement of the '617 patent by Autel's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more of the accused products by, for example, providing user guides, video tutorials, and customer support to instruct its customers on how to use the infringing technology.

7.      Whether Autel has contributorily infringed, either literally and/or under the doctrine of equivalents, one or more claims of the '617 patent by, for example, offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the '617 patent, knowing the same to be made or adapted specially for use in the infringement of the '617 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

8.      Whether Autel has induced and encouraged the direct infringement of the '049 patent by Autel's customers, resellers, retailers, and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more of the accused products by, for example, providing user

Exhibit 2
Plaintiffs' Statement of Contested Facts

guides, video tutorials, and customer support to instruct its customers on how to use the

infringing technology.

9.      Whether Autel has contributorily infringed, either literally and/or under the

doctrine of equivalents, one or more claims of the '049 patent by, for example, offering to sell,

selling, and/or importing into the United States a component constituting a material part of the

invention disclosed in the '049 patent, knowing the same to be made or adapted specially for use

in the infringement of the '049 patent, and not a staple article or commodity of commerce

suitable for substantial noninfringing use.

10.     Whether Autel has induced and encouraged the direct infringement of the '530

patent by Autel's customers, resellers, retailers, and end users by intentionally directing them and

encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import

into the United States one or more of the accused products by, for example, providing user

guides, video tutorials, and customer support to instruct its customers on how to use the

infringing technology.

11.     Whether Autel has contributorily infringed, either literally and/or under the

doctrine of equivalents, one or more claims of the '530 patent by, for example, offering to sell,

selling, and/or importing into the United States a component constituting a material part of the

invention disclosed in the '530 patent, knowing the same to be made or adapted specially for use

in the infringement of the '530 patent, and not a staple article or commodity of commerce

suitable for substantial noninfringing use.

12.     Whether Autel has induced and encouraged the direct infringement of the 'D514

patent by Autel's customers, resellers, retailers, and end users by intentionally directing them and

encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import

4

Exhibit 2
Plaintiffs' Statement of Contested Facts

into the United States one or more of the accused products by, for example, providing user guides, video tutorials, and customer support to instruct its customers on how to use the infringing technology.

13.     Whether Autel has contributorily infringed, either literally and/or under the doctrine of equivalents, one or more claims of the 'D514 patent by, for example, offering to sell, selling, and/or importing into the United States a component constituting a material part of the invention disclosed in the 'D514 patent, knowing the same to be made or adapted specially for use in the infringement of the 'D514 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

14.     Whether Autel's infringement of any of the Patents-in-Suit was willful, *i.e.*, whether Autel acted despite a risk of infringement that was either known or so obvious that it should have been known to Autel.

15.     Whether DJI's Phantom 3 practices one or more of claims 1-14 of the '617 patent.

16.     Whether DJI's Phantom 4 practices one or more of claims 1-14 of the '617 patent.

17.     Whether DJI's Phantom 1 practices one or more of claims 1-13 and 15-30 of the '049 patent.

18.     Whether DJI's Phantom 2 practices one or more of claims 1-13 and 15-30 of the '049 patent.

19.     Whether DJI's Phantom 3 practices one or more of claims 1-13 and 15-30 of the '049 patent.

20.     Whether DJI's Phantom 4 practices one or more of claims 1-13 and 15-30 of the '049 patent.

Exhibit 2
Plaintiffs' Statement of Contested Facts

21.     Whether DJI's Phantom 3 practices one or more of claims 1-14 and 16-29 of the '530 patent.

22.     Whether DJI's Phantom 4 practices one or more of claims 1-13 and 16-28 of the '530 patent.

23.     Whether DJI's Mavic Pro and Mavic Pro Platinum practices one or more of claims 16, 17, 18, 21, 22, 24, 26-28, and 30 of the '049 patent.

24.     Whether DJI's Mavic 2 Pro and Mavic 2 Zoom practices one or more of claims 16, 17, 18, 21, 22, 24, 26-28, and 30 of the '049 patent.

25.     Whether DJI's Mavic Air practices one or more of claims 16, 17, 18, 21, 22, 24, 26-28, and 30 of the '049 patent.

26.     Whether DJI's Phantom 2 practices the claim of the D'514 patent.

27.     Whether DJI's Phantom 3 practices the claim of the D'514 patent.

28.     Whether DJI's Phantom 4 practices the claim of the D'514 patent.

29.     The amount of damages that DJI is owed from Autel due to Autel's infringement of the Patents-in-Suit.

30.     Whether DJI has established that it is entitled to enhanced damages under 35 U.S.C. § 284 for Autel's willful infringement of the Patents-in-Suit, and if so, what the degree of enhancement should be.

31.     Whether DJI has established that this is an exceptional case and that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285, and if so, the amount.

32.     Whether DJI is entitled to permanent injunctive relief enjoying Autel from further infringement of any of the Patents-in-Suit, or alternatively, whether it is entitled to an on-going royalty, and if so, how much.

Exhibit 2
Plaintiffs' Statement of Contested Facts

33.     Whether Autel is entitled to an award of prejudgment and post-judgment interest, and if so, the amounts.

34.     Who a person of ordinary skill in the art is for the Utility Patents-in-Suit, which DJI contends is: a person with an undergraduate Bachelor's degree in mechanical, aerospace, or electrical engineering, robotics, and/or computer science, or their equivalent, along with at least three years of relevant experience or training in any of the noted disciplines, or a master's or other graduate level degree in any of the noted disciplines, or someone with the equivalent amount (e.g., 7 years) of training or work experience in such disciplines.

35.     Who a designer of ordinary skill is for the D'514 patent, which DJI contends is a designer of ordinary skill in the design of commercial/consumer grade UAVs would likely have a Bachelor degree in Engineering, Physics, or similar disciplines, with two to three years of experience in quadcopter designs.

36.     Who the ordinary observer is for the D'514 patent, which DJI contends is a purchaser of, or sufficiently interested in, commercial/consumer grade UAVs who gives sufficient attention to the relevant product and who is aware of prior art in the field.  The ordinary observer may be familiar with viewing or purchasing such devices either in a retail environment or online.

37.     Whether claims 1-4, 6-8, 10, 11, and 14 of the '617 patent are entitled to a priority date of December 13, 2012.

38.     Whether claims 5 and 9 of the '617 patent are entitled to a priority date of December 13, 2012.

39.     Whether claims 1, 6-13, 15, 16, 21-24, 26-30 of the '049 patent are entitled to a priority date of November 15, 2012.

Exhibit 2
Plaintiffs' Statement of Contested Facts

40.    Whether claims 2-5 and 17-20 of the '049 patent are entitled to a priority date of November 13, 2013.

41.    Whether claims 1-6 and 8-13 of the '530 patent are entitled to a priority date of December 13, 2012.

42.    Whether claims 7 and 16-28 of the '530 patent are entitled to a priority date of November 13, 2013.

43.    Whether the claim of the D'514 patent is entitled to a priority date of September 6, 2012.

44.    Whether the claim of the D'514 patent was conceived and reduced to practice by August 24, 2012.

45.    Whether copying as a secondary consideration supports a finding of non-obviousness regarding the Patents-in-Suit.

46.    Whether unexpected results as a secondary consideration supports a finding of non-obviousness regarding the Patents-in-Suit.

47.    Whether satisfaction of a long-felt need as a secondary consideration supports a finding of non-obviousness regarding the Patents-in-Suit.

48.    Whether commercial success as a secondary consideration supports a finding of non-obviousness regarding the Patents-in-Suit.

49.    Whether skepticism as a secondary consideration supports a finding of non-obviousness regarding the Patents-in-Suit.

50.    Whether industry praise as a secondary consideration supports a finding of non-obviousness regarding the Patents-in-Suit.

Exhibit 2
Plaintiffs' Statement of Contested Facts

51.     Whether failure of others as a secondary consideration supports a finding of non-obviousness regarding the Patents-in-Suit.

52.     Whether secondary considerations of non-obviousness outweigh any showing regarding the alleged obviousness of the asserted claims of the Patents-in-Suit.

## II.    CONTESTED ISSUES OF FACT PERTAINING TO ISSUES ON WHICH DEFENDANTS BEAR THE ULTIMATE BURDEN OF PROOF

53.     Whether any of the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 102 as anticipated.

54.     Whether any of the asserted claims of the '617, '049, or '503 patents are invalid under 35 U.S.C. § 102 by operation of the on-sale bar.

55.     Whether any of the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 102 for improper inventorship.

56.     Whether any of the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious.

    a.     The scope and content of the prior art.

    b.     The differences between the claimed inventions and the prior art.

    c.     The level of ordinary skill in the pertinent art.

    d.     Whether a person of ordinary skill in the art would be motivated to combine references relied upon by Autel in its obviousness combination with a reasonable expectation of success.

    e.     Whether the overall appearance of the design claimed in the D'514 patent is dictated by function.

    f.     Whether the design characteristics of the Microdrone GmbH md4-1000 are basically the same as the design claimed in the D'514 patent.

Exhibit 2
Plaintiffs' Statement of Contested Facts

g.    Whether other prior art references may be used to modify the Microdrone GmbH md4-1000 design to create a design that has the same overall visual appearance as the design claimed in the D'514 patent.

h.    Whether the design characteristics of U.S. Patent Publication No. 2014/0231582 are basically the same as the design claimed in the D'514 patent.

i.    Whether other prior art references may be used to modify the U.S. Patent Publication No. 2014/0231582 design to create a design that has the same overall visual appearance as the design claimed in the D'514 patent.

j.    Whether secondary considerations support a finding of non-obviousness, including whether they outweigh any prima facie showing of obviousness, such considerations including commercial success, copying, long-standing problem or need, prior failure of others, commercial acquiescence of competitors, skepticism, lack of independent development by others, prior litigation, and unexpected results.

57.    Whether any of the asserted claims of the '617, '049, or '503 patents are invalid under 35 U.S.C. § 112 for lack of enablement.

58.    Whether any of the asserted claims of the '617, '049, or '503 patents are invalid under 35 U.S.C. § 112 for lack of written description.

59.    Whether the prior art references or combinations alleged by Autel are enabled.

60.    Whether the Microdrone GmbH md4-1000 is prior art to any of the Patents-in-Suit.

Exhibit 2
Plaintiffs' Statement of Contested Facts

61.   Whether U.S. Patent Publication No. 2014/0231582 to Headrick ("Headrick

Publication") is prior art to any of the Patents-in-Suit and entitled to the filing date of U.S.

Provisional Patent Application No. 61/709,269 ("Headrick Provisional"), which requires findings

of fact regarding:

     a.   Whether one or more claims of the allegedly prior art Headrick

       Publication are supported by the Headrick Provisional, *i.e.* the Headrick

       Publication makes a valid priority claim.

     b.   Whether the Headrick Provisional contains the disclosure relied upon by

       Defendants in the Headrick Publication to claim invalidity.

62.   Whether the 5iMX Article is prior art to any of the Patents-in-Suit.

63.   Whether the DJI Spreading Wings S800 article is prior art to any of the Patents-

in-Suit.

64.   Whether any of the non-patent literature that Autel relies on as secondary

references (*i.e.*, "the magnetometer references") are available as prior art, including:

     a.   Public post on DroneVibes dated Sept. 12, 2012.  RUSA038283 at 289.

       *See also* RUSA0378276 - RUSA0378414.

     b.   Public post on RC Groups dated July 19, 2012 RUSA0378510 at 512. *See*

       *also* RUSA0378510 - RUSA0378514.

     c.   Public post on DIY Drones dated October 19, 2011.  RUSA0378515 at

       524 & RUSA0378536; *see also* RUSA0378515 - RUSA0378541.

     d.   Public post on RC Groups dated June 12, 2012.  RUSA0378415 at 417.

       See also RUSA0378415 at 421 & RUSA0378465-66, at 427, at 432. *See*

       *also* RUSA0378415 - RUSA0378509.

Exhibit 2
Plaintiffs' Statement of Contested Facts

> e.    Public post on DIY Drones dated October 21, 2012.  RUSA0378542 at 543; *see also* RUSA0378542 - RUSA0378553.
>
> f.    Public post on DIY Drones dated October 25, 2012. RUSA0379186 at 188.
>
> g.    Malgoza et al., "Quad-Copter," School of Electrical Engineering and Computer Science, University of Central Florida, dated Fall 2010, available at http://www.eecs.ucf.edu/seniordesign/su2010fa2010/g03/Docs.html RUSA0378572 at 605; RUSA0378657 at 752, at 792. *See also* RUSA0378554 - RUSA0378897.
>
> h.    DJI Spreading Wings S800 article.

65.    Whether there are acceptable non-infringing alternatives to the claimed inventions of each of the Patents-in-Suit.

# EXHIBIT 3

PTO Exhibit 3
Defendants' Statement of Contested Fact

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SZ DJI TECHNOLOGY CO., LTD. AND DJI EUROPE B.V., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. 16-706-LPS **(CONSOLIDATED)** |
| AUTEL ROBOTICS USA LLC AND AUTEL AERIAL TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Defendants. | ) ) | |
| AUTEL ROBOTICS USA LLC AND AUTEL AERIAL TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE B.V., AND DJI TECHNOLOGY INC., | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

## PTO EXHIBIT 3

## AUTEL'S STATEMENT OF CONTESTED FACTS

Defendants Autel Robotics USA LLC and Autel Aerial Technology Co., Ltd. (n/k/a

Autel Robotics Co., Ltd.) (collectively, "Autel") identifies the following issues of fact that

remain to be litigated in this case. Autel's identification of these issues is based on the pleadings,

discovery to date, and its current understanding of the arguments and evidence that Plaintiffs DJI

Technology, Inc., SZ DJI Technology Co., Ltd., and DJI Europe B.V. (collectively, "DJI" or

"Plaintiffs") is likely to present at trial. Autel reserves the right to supplement, amend, or modify

1

PTO Exhibit 3
Defendants' Statement of Contested Fact

this list based upon any pretrial rulings by the Court or to address any additional issues,

arguments, evidence, or other developments in the case, including meet and confers or other

negotiations between the parties, and pending and anticipated motions. Autel further reserves the

right to supplement this statement to rebut or otherwise address DJI's identification of contested

facts. Should the Court determine that any issue identified in this statement is more properly an

issue of law, Autel incorporates those issues by reference into its Statement of Contested Issues

of Law that Remain to Be Litigated. By including a fact in this list, Autel does not assume the

burden of proof with respect to that fact.

PTO Exhibit 3
Defendants' Statement of Contested Fact

# **TABLE OF CONTENTS**

**I.    AUTEL'S STATEMENT OF CONTESTED FACTS**................................................... **1**

    A.     Non-Infringement (Jury) ................................................................ 1

    B.     Invalidity and Related Issues (Jury) .......................................... 2

    C.     Damages/Relief (Jury) ................................................................. 7

    D.     Willfulness (Jury)....................................................................... 11

    E.     Damages/Relief (Court) ............................................................. 11

    F.     Facts Common One or More Issues (Jury) ................................ 12

PTO Exhibit 3
Defendants' Statement of Contested Fact

## I.      AUTEL'S STATEMENT OF CONTESTED FACTS

### A.      Non-Infringement (Jury)[1]

1.      Whether Autel's X-Star infringes claim 1 of the D'514 patent.

2.      Whether Autel's X-Star infringes any, and which, of claims 1-11 and 14 of the '617 patent.

3.      Whether Autel's X-Star infringes any, and which, of claims 1-13, 15-24, and 26-30 of the '049 patent.

4.      Whether Autel's X-Star infringes any, and which, of claims 1-13 and 16-28 of the '530 patent.

5.      Whether Autel's X-Star Premium infringes any, and which, of claim 1 of the D'514 patent.

6.      Whether Autel's X-Star Premium infringes any, and which, of claims 1-11 and 14 of the '617 patent.

7.      Whether Autel's X-Star Premium infringes any, and which, of claims 1-13, 15-24, and 26-30 of the '049 patent.

8.      Whether Autel's X-Star Premium infringes any, and which, of claims 1-13 and 16-28 of the '530 patent.

9.      Whether Autel's EVO infringes any, and which, of claims 16-18, 21-24, 26-28 and 30 of the '049 patent.

10.      Which features of the asserted design of the D'514 are ornamental.

---

[1] Autel has requested that DJI narrow the number of asserted claims. The asserted claims identified per accused products in this section are based on DJI's list of asserted claims to-date. According, Autel reserves the right to amend the listing of contested facts if and when DJI narrows the asserted claims for trial.

PTO Exhibit 3
Defendants' Statement of Contested Fact

11.     Which features of the asserted design of the D'514 are functional.

12.     Which features of the asserted design of the D'514 are entitled to protection.

**B.      Invalidity and Related Issues (Jury)**

1.      Whether a Person of Ordinary Skill in the Art (POSITA) as of September 6, 2012 would have had (1) an advanced degree (Master of Science or Ph.D.) from an accredited aerospace engineering or closely related program with graduate-level coursework in rotorcraft structures, aerodynamics, stability and control, propulsion, configuration and design of rotorcraft, and thesis and/or dissertation work in the area of rotorcraft engineering including the design, research, development, flight test and evaluation of subscale rotorcraft; or (2) a Bachelor of Science degree from an accredited aerospace engineering program or closely related discipline with coursework in aerospace structures, aerodynamics, stability and control, propulsion and design, and a minimum of 5 years working experience, participating directly in the design, research, development, flight test and evaluation of subscale rotorcraft; and (3) basic subscale quadcopter flying proficiency (to support flight tests and design optimization), most definitively indicated by long-standing Academy of Model Aeronautics (AMA) membership (for US technologists); where superior education would compensate for a deficiency in experience, and *vice-versa*.

2.      Whether any of the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 102 for improper inventorship.

3.      Whether the asserted D'514 patent claim is indefinite.

4.      Whether the asserted D'514 patent claim is enabled.

5.      Whether the asserted D'514 patent claim satisfies the written description requirement.

PTO Exhibit 3
Defendants' Statement of Contested Fact

6.　　Whether the asserted D'514 patent claim is invalid as anticipated.

7.　　Whether the asserted D'514 patent claim is invalid because the alleged inventions were obvious to one of ordinary skill in the art at the time of the alleged inventions.

8.　　Whether the asserted D'514 patent claim is invalid because the clamed inventions were patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

9.　　Whether the asserted D'514 patent claim is entitled to a priority date earlier than the filing date of the D'514 patent.

10.　　If the asserted D'514 patent claim is entitled to a priority date earlier than the filing date of the D'514 patent, what is that date.

11.　　Whether the D'514 patent identifies the proper inventors of the claimed invention.

12.　　Whether the asserted '617 patent claims are indefinite.

13.　　Whether the asserted '617 patent claims are enabled.

14.　　Whether the asserted '617 patent claims satisfy the written description requirement.

15.　　Whether the asserted '617 patent claims are invalid as anticipated.

16.　　Whether the asserted '617 patent claims are invalid because the alleged inventions were obvious to one of ordinary skill in the art at the time of the alleged inventions.

17.　　Whether the asserted '617 patent claims are invalid because the inventions were patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

PTO Exhibit 3
Defendants' Statement of Contested Fact

18.     For each asserted claim of the '617 patent separately, whether each  asserted

claim of the '617 patent is entitled to a priority date earlier than the filing date of the '617

patent.

19.     If any asserted claim of the '617 patent is entitled to a priority date earlier than the

filing date of the '617 patent, what is that date.

20.     Whether the '617 patent identifies the proper inventors of the claimed invention.

21.     Whether the asserted '049 patent claims are indefinite.

22.     Whether the asserted '049 patent claims are enabled.

23.     Whether the asserted '049 patent claims satisfy the written description

requirement.

24.     Whether the asserted '049 patent claims are invalid as anticipated.

25.     Whether the asserted '049 patent claims are invalid because the alleged inventions

were obvious to one of ordinary skill in the art at the time of the alleged inventions.

26.     Whether the asserted '049 patent claims are invalid because the claimed

inventions were patented, described in a printed publication, or in public use, on sale, or

otherwise available to the public before the effective filing date of the claimed invention.

27.     For each asserted claim of the '049 patent separately, whether each asserted claim

of the '049 patent is entitled to a priority date earlier than the filing date of the '049 patent.

28.     For each asserted claim of the '049 patent separately, whether any asserted claim

of the '049 patent is entitled to the priority date of Chinese Patent Applications 2012 2

0604396 filed November 15, 2012.

PTO Exhibit 3
Defendants' Statement of Contested Fact

29.    For each asserted claim of the '049 patent separately, whether any asserted claim of the '049 patent is entitled to the priority date of Chinese Patent Application 2012 2 0686731, filed December 13, 2012.

30.    If any asserted claim of the '049 patent is entitled to a priority date earlier than the filing date of the '617 patent, what is that date.

31.    Whether the '049 patent identifies the proper inventors of the claimed invention.

32.    Whether the asserted '530 patent claims are indefinite.

33.    Whether the asserted '530 patent claims are enabled.

34.    Whether the asserted '530 patent claims satisfy the written description requirement.

35.    Whether the asserted '530 patent claims are invalid as anticipated.

36.    Whether the asserted '530 patent claims are invalid because the alleged inventions were obvious to one of ordinary skill in the art at the time of the alleged inventions.

37.    Whether the asserted '530 patent claims are invalid because the claimed inventions were patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

38.    For each asserted claim of the '530 patent separately, whether each asserted claim of the '530 patent claims is entitled to a priority date earlier than the filing date of the '530 patent.

39.    For each asserted claim of the '530 patent separately, whether any asserted claim of the '530 patent is entitled to the priority date of the Chinese Patent Application 2012 2 0604396 filed November 15, 2012.

PTO Exhibit 3
Defendants' Statement of Contested Fact

40.     For each asserted claim of the '530 patent separately, whether any asserted claim of the '530 patent is entitled to the priority date of Chinese Patent Application 2012 2 0686731 filed December 13, 2012.

41.     If any asserted claim of the '530 patent is entitled to a priority date earlier than the filing date of the '530 patent, what is that date.

42.     Whether the '530 patent identifies the proper inventors of the claimed invention.

43.     Whether any alleged secondary considerations weight against a finding of obviousness of any Patent-in-Suit.

44.     Whether simultaneous invention weight in favor of finding obviousness of any Patent-in-Suit.

45.     Whether Attenuating Magnetic Interference in a UAV System by Wells, Matthew was published in 2008.

46.     Whether Magnetic Signature Control Strategies for an Unmanned Aircraft System by Forrester, Robert was published in 2011.

47.     Whether Guided Missiles, Operations, Design and Theory by McGraw-Hill Book Company, Inc. was published in 1958.

48.     Whether Guided Missiles: Operations, Design and Theory by Literary Licensing LLC was published in 2012.

49.     Whether Guided Missiles: Fundamentals by Department of the United States Air Force was published in January 1964 & July 1972.

50.     Whether XQ-138 Convertible Mini-Aerial Vehicle Design Report by Lee, Gary and Barrett, Ronald was published in June 2002.

PTO Exhibit 3
Defendants' Statement of Contested Fact

51.     Whether The Technical University of Delft, Holland Advanced UAV
Technologies and New Inventions for Revolutionary Weapon/Counterweapon Systems
Developed at TU Delft by Barrett, Ronald, was published in November 2003.

52.     Whether Scientific American, Vol. 204, No. 6 Cover Feature: The Airborne
Magnetometer by Jensen, Homer, was published in June 1961.

53.     Whether Microdrones GmbH md4-1000 by Microdrones GmbH is a system
disclosed by publication or use in 2009.

### C.     Damages/Relief (Jury)

1.     If Autel's X-Star is found to have infringed a valid claim(s) of the D'514 patent,
whether lost profits is the appropriate measure of damages to compensate DJI for
infringement.

2.     If Autel's X-Star is found to have infringed a valid claim(s) of the D'514 patent,
and lost profits is the appropriate measure of damages to compensate DJI for that
infringement, what is the amount of DJI's lost profits resulting from Autel's infringement
and attributable to the patented features and thus due to DJI.

3.     If Autel's X-Star is found to have infringed a valid claim(s) of the D'514 patent,
what is a reasonable royalty to compensate DJI for that infringement.

4.     If Autel's X-Star is found to have infringed a valid claim(s) of the '617 patent,
whether lost profits is the appropriate measure of damages to compensate DJI for
infringement.

5.     If Autel's X-Star is found to have infringed a valid claim(s) of the '617 patent,
and lost profits is the appropriate measure of damages to compensate DJI for that

PTO Exhibit 3
Defendants' Statement of Contested Fact

infringement, what is the amount of DJI's lost profits resulting from Autel's infringement

and attributable to the patented features and thus due to DJI.

6.      If Autel's X-Star is found to have infringed a valid claim(s) of the '617 patent,

what is a reasonable royalty to compensate DJI for that infringement.

7.      If Autel's X-Star is found to have infringed a valid claim(s) of the '049 patent,

whether lost profits is the appropriate measure of damages to compensate DJI for

infringement.

8.      If Autel's X-Star is found to have infringed a valid claim(s) of the '049 patent,

and lost profits is the appropriate measure of damages to compensate DJI for that

infringement, what is the amount of DJI's lost profits resulting from Autel's infringement

and attributable to the patented features and thus due to DJI.

9.      If Autel's X-Star is found to have infringed a valid claim(s) of the '049 patent,

what is a reasonable royalty to compensate DJI for that infringement.

10.     If Autel's X-Star is found to have infringed a valid claim(s) of the '530 patent,

whether lost profits is the appropriate measure of damages to compensate DJI for

infringement.

11.     If Autel's X-Star is found to have infringed a valid claim(s) of the '530 patent,

and lost profits is the appropriate measure of damages to compensate DJI for that

infringement, what is the amount of DJI's lost profits resulting from Autel's infringement

and attributable to the patented features and thus due to DJI.

12.     If Autel's X-Star is found to have infringed a valid claim(s) of the '530 patent,

what is a reasonable royalty to compensate DJI for that infringement.

PTO Exhibit 3
Defendants' Statement of Contested Fact

13.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the D'514 patent, whether lost profits is the appropriate measure of damages to compensate DJI for infringement.

14.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the D'514 patent, and lost profits is the appropriate measure of damages to compensate DJI for that infringement, what is the amount of DJI's lost profits resulting from Autel's infringement and attributable to the patented features and thus due to DJI.

15.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the D'514 patent, what is a reasonable royalty to compensate DJI for that infringement.

16.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '617 patent, whether lost profits is the appropriate measure of damages to compensate DJI for infringement.

17.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '617 patent, and lost profits is the appropriate measure of damages to compensate DJI for that infringement, what is the amount of DJI's lost profits resulting from Autel's infringement and attributable to the patented features and thus due to DJI.

18.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '617 patent, what is a reasonable royalty to compensate DJI for that infringement.

19.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '049 patent, whether lost profits is the appropriate measure of damages to compensate DJI for infringement.

20.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '049 patent, and lost profits is the appropriate measure of damages to compensate DJI for that

PTO Exhibit 3
Defendants' Statement of Contested Fact

infringement, what is the amount of DJI's lost profits resulting from Autel's infringement and attributable to the patented features and thus due to DJI.

21.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '049 patent, what is a reasonable royalty to compensate DJI for that infringement.

22.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '530 patent, whether lost profits is the appropriate measure of damages to compensate DJI for infringement.

23.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '530 patent, and lost profits is the appropriate measure of damages to compensate DJI for that infringement, what is the amount of DJI's lost profits resulting from Autel's infringement and attributable to the patented features and thus due to DJI.

24.     If Autel's X-Star Premium is found to have infringed a valid claim(s) of the '530 patent, what is a reasonable royalty to compensate DJI for that infringement.

25.     If Autel's EVO is found to have infringed a valid claim(s) of the '049 patent, whether lost profits is the appropriate measure of damages to compensate DJI for infringement.

26.     If Autel's EVO is found to have infringed a valid claim(s) of the '049 patent, and lost profits is the appropriate measure of damages to compensate DJI for that infringement, what is the amount of DJI's lost profits resulting from Autel's infringement and attributable to the patented features and thus due to DJI.

27.     If Autel's EVO is found to have infringed a valid claim(s) of the '049 patent, what is a reasonable royalty to compensate DJI for that infringement.

PTO Exhibit 3
Defendants' Statement of Contested Fact

28.     Whether there exist any non-infringing alternatives to the alleged inventions of the Patents-in-Suit.

**D.     Willfulness (Jury)**

1.     If Autel is found to have infringed a valid claim of the D'514 patent, whether DJI can show that the infringement was willful.

2.     If Autel is found to have infringed a valid claim of the '617 patent, whether DJI can show that the infringement was willful.

3.     If Autel is found to have infringed a valid claim of the '049 patent, whether DJI can show that the infringement was willful.

4.     If Autel is found to have infringed a valid claim of the '530 patent, whether DJI can show that the infringement was willful.

**E.     Damages/Relief (Court)**

1.     In the event one or more of the asserted claims of a patent-in-suit is found infringed and not invalid, whether DJI has proven it is entitled to an injunction, and if so, the terms of the injunction.

2.     If Autel is found to have infringed a valid claim of a patent-in-suit, and an injunction is not issued, whether relief for future infringement can be awarded.

3.     If DJI is awarded damages for infringement of a valid claim of a patent-in-suit, whether the circumstances can justify awarding enhanced damages and, if so, what amount .

4.     If DJI is awarded damages for infringement of a valid claim of a patent-in-suit, whether DJI may recover, and the amount of, any prejudgment and post-judgment interest.

5.     Whether this is an exceptional case.

6.     Whether either party should be awarded attorneys' fees.

11

PTO Exhibit 3
Defendants' Statement of Contested Fact

7.      The amount of costs for which either party is entitled.

**F.      Facts Common One or More Issues (Jury)**

8.      Whether SZ DJI sells any products in the United States (either for importation or after importation into the United States).

9.      Whether DJI BV sells DJI-branded products in the United States, including DJI's UAV products.

10.     Whether a magnetometer is placed on a leg of any, and which, of Phantom 3 and Phantom 4 Series products.

11.     Whether changes made between Phantom 2 and phantom 3 versions include  (1) changed from a single-axis anti-vibration camera platform (Phantom 2 Vision) to a three-axis anti-vibration camera platform (Phantom 2 Vision Plus and all Phantom 3 models; and (2) Moved the magnetometer inside the landing stand.

12.     Whether, if any, DJI's Phantom 1 series[2] products practice any, and which asserted claims, of the '617 patent.

13.     Whether, if any, DJI's Phantom 1 series products any, and which asserted claims, of the '049 patent.

14.     Whether, if any, DJI's Phantom 1 series products any, and which asserted claims, of the '530 patent.

15.     Whether, if any, DJI's Phantom 1 series products practice the D'514 patent.

---

[2] "Phantom 1 series" includes the models identified in 2017-03-14 DJI's Resp. to PI ROG No. 5, including Phantom and Phantom FC40.

PTO Exhibit 3
Defendants' Statement of Contested Fact

16.     Whether, if any, DJI's Phantom 2[3] series products practice any, and which

asserted claims, of the '617 patent.

17.     Whether, if any, DJI's Phantom 2 series products practice any, and which asserted

claims, of the '049 patent.

18.     Whether, if any, DJI's Phantom 2 series products practice any, and which asserted

claims, of the '530 patent.

19.     Whether, if any, DJI's Phantom 2 series products practice the D514 patent.

20.     Whether, if any, DJI's Phantom 3[4] series products any, and which asserted claims,

of the '617 patent.

21.     Whether, if any, DJI's Phantom 3 series products practice any, and which asserted

claims, of the '049 patent.

22.     Whether, if any, DJI's Phantom 3 series products practice any, and which asserted

claims, of the '530 patent.

23.     Whether, if any, DJI's Phantom 3 series products practice the D514 patent.

24.     Whether, if any, DJI's Phantom 4[5] series products practice any, and which

asserted claims, of the '617 patent.

25.     Whether, if any, DJI's Phantom 4 series products any, and which asserted claims,

of the '049 patent.

---

[3]  "Phantom 2 series" includes the models identified in 2017-03-14 DJI's Resp. to PI ROG No. 5, including Phantom 2 and Phantom 2 Vision, and Phantom 2 Vision Plus.
[4] "Phantom 3 series" includes the models identified in 2017-03-14 DJI's Resp. to PI ROG No. 5, including Phantom 3 Standard, Phantom 3 Professional, Phantom 3 Advanced, and Phantom 3 4K.
[5] "Phantom 4 series" includes the models identified in 2017-03-14 DJI's Resp. to PI ROG No. 5, including Phantom 4 and Phantom 4 PRO.

PTO Exhibit 3
Defendants' Statement of Contested Fact

26.     Whether, if any, DJI's Phantom 4 series products practice any, and which asserted claims, of the '530 patent.

27.     Whether, if any, DJI's Phantom 4 series products practice the D514 patent.

28.     Whether, and which, DJI's Marvic products practice any, and which asserted claims, of the '617 patent.

29.     Whether, and which, DJI's Marvic products practice any, and which asserted claims, of the '049 patent.

30.     Whether, and which, DJI's Marvic products practice any, and which asserted claims, of the '530 patent.

31.     Whether, and which, DJI's Marvic products practice the D514 patent.

32.     Whether, in June and July of 2017, Defendants (or "Autel") filed invalidation proceedings against the two Chinese patents (CN201220686731.2 (the "CN '731 Patent") and CN201220604396.7(the "CN'396 Patent")) to which the Utility Patents (defined as the '617, '049, '530 patents, collectively) claim priority at the State Intellectual Property Office of China.

33.     Whether, in February and April of 2018, the SIPO invalidated both of those patents. (Decisions of the Patent Reexamination Board of the State Intellectual Property Office on February 5, 2018 and April 4, 2018). DJI appealed both decisions to the Beijing IP Court.

34.     Whether, in February and March of 2019, the appellate court affirmed the determinations of invalidity (Administrative Judgments of the Beijing Intellectual Property Court on February 26, 2019 and March 26, 2019), DJI appealed both decisions to the Supreme People's Court of China.

14

PTO Exhibit 3
Defendants' Statement of Contested Fact

35.     Whether, on November 10, 2019, the Supreme People's Court affirmed both determinations of invalidity as the final decisions (Final Administrative Judgments of the Supreme People's Court of China on November 10, 2019).

36.     On February 8, 2015, DJI sued Autel Robotics Co. Ltd. in China for infringing the Chinese counterpart to the D'514 Patent (CN201230425431.4 (the "CN'431 Patent")) with the X-Star[6] products of the X-Star series.

37.     Whether, on December 15, 2015, the Shenzhen Intermediate People's Court (the court of first instance) ruled in favor of Autel on non-infringement, finding that the XStar differed from the CN'431 patent "in the shape of the top of the arms, the shape of rotor, the design of top of the battery cabin, the pattern formed between landing gears, and patterns formed by the landing gears, the body and the arms" (Judgment of the Shenzhen Intermediate People's Court, Dec. 16, 2015 (English Translation)).

38.     Whether DJI appealed the decision referenced in the preceding paragraph.

39.     Whether, on March 20, 2017, the appellate court affirmed the determination of non-infringement for the X-Star products from the X-Star series products. (Written Judgment of the Guangdong High People's Court, March 20, 2017).

# EXHIBIT 4

Exhibit 4

Plaintiffs' Statement of Issues of Law

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD. and DJI EUROPE B.V., | |
| Plaintiffs, | |
| v. | |
| AUTEL ROBOTICS USA LLC and AUTEL AERIAL TECHNOLOGY CO., LTD., | C.A. No. 16-706-LPS (Consolidated) |
| Defendants/Counterclaim Plaintiffs, | |
| v. | |
| DJI TECHNOLOGY INC., SZ DJI TECHNOLOGY CO., LTD., and DJI EUROPE B.V., | |
| Counterclaim Defendants. | |

**EXHIBIT 4**

**PLAINTIFFS' STATEMENT OF THE ISSUES OF LAW**
**THAT REMAIN TO BE LITIGATED**

Exhibit 4

Plaintiffs' Statement of Issues of Law

## TABLE OF CONTENTS

I.   INFRINGEMENT ................................................................................................ 1

  A. Infringement of the Patents-in-Suit ................................................................. 1

  B. Whether Autel Directly Infringes Claims 1-11 and 14 of the '617 Patent ............................ 1

  C. Whether Autel Directly Infringes Claims 1-13, 15, 16-24 and 26-30 of the '049 Patent ..... 1

  D. Whether Autel Directly Infringes Claims 1-13 and 16-28 of the '530 Patent ..................... 1

  E. Whether Autel Directly Infringes the Claim and Figures of the 'D514 Patent ................... 2

  F. Whether Autel Directly Infringes Claims 16-18, 21-24, 26-28 and 30 of the '049 Patent ... 2

  G. Whether Autel Indirectly Infringes Claims 1-11 and 14 of the '617 Patent ....................... 2

  H. Whether Autel Indirectly Infringes Claims 1-13, 15, 16-24 and 26-30 of the '049 Patent... 3

  I. Whether Autel Indirectly Infringes Claims 1-13 and 16-28 of the '530 Patent ................... 3

  J. Whether Autel Indirectly Infringes Claims 16-18, 21-24, 26-28 and 30 of the '049 Patent (EVO) ........................................................................................................ 4

  K. Legal Principles Relevant to Infringement ....................................................... 4

    1. Literal Infringement ................................................................................ 4

    2. Design Patent Infringement – Ordinary Observer ........................................ 4

    3. Induced Infringement ............................................................................. 5

    4. Contributory Infringement ...................................................................... 6

    5. Doctrine of Equivalents .......................................................................... 7

    6. Willful Infringement ............................................................................ 10

II.  VALIDITY ...................................................................................................... 13

  A. Whether Autel Can Overcome the Asserted Claims' Presumption of Validity with Clear and Convincing Evidence ............................................................................... 13

  B. Whether the Asserted Claims Are Invalid As Anticipated ................................ 15

  C. Whether the Asserted Claims Are Invalid As Obvious ..................................... 18

  D. Whether the Asserted Claims Are Invalid For Lack of Enablement ................... 19

  E. Whether the Asserted Claims Are Invalid For Lack of Description ................... 23

  F. Whether the Asserted Claims Are Invalid By Operation of the On-Sale-Bar ..................... 25

  G. Legal Principles Relevant to Validity .............................................................. 26

    1. Obviousness is Determined from the Perspective of the Person of Ordinary Skill in the Art  26

    2. The Obviousness Inquiry Cannot Involve Hindsight .................................. 28

3.      The POSA Must Have Had a Reason to Make the Claimed Invention........................ 31

4.      The POSA Must Have Had a Reasonable Expectation of Success............................... 33

5.      The Obviousness Inquiry Requires Evaluation of the Prior Art as a Whole................. 35

6.      A Patentee May Negate Prima Facie Obviousness ........................................... 37

7.      Objective Indicia of Nonobviousness Must be Considered ........................................... 38

8.      Copying Indicates Non-Obviousness .............................................................. 40

9.      Unexpected Properties Indicate Non-Obviousness ................................................ 41

10.     Satisfaction of a Long-Felt Need Indicates Non-Obviousness.............................. 42

11.     Commercial Success Indicates Non-Obviousness .......................................... 43

12.     Skepticism Indicates Non-Obviousness ............................................................. 44

13.     Industry Praise Indicates Non-Obviousness ........................................................ 45

14.     Failure of Others Indicates Non-Obviousness........................................................ 45

15.     Establishing Prior Art Status, Enablement, and Priority Date... **Error! Bookmark not defined.**

III.    REMEDIES ............................................................................................. 46

A.  Remedies Generally ......................................................................................... 46

B.  Lost Profits ................................................................................................. 48

C.  Reasonable Royalty....................................................................................... 51

D.  Enhanced Damages ......................................................................................... 55

E.  Attorneys' Fees .............................................................................................. 57

F.  Interest ....................................................................................................... 57

G.  Costs .......................................................................................................... 58

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraxis Biosci., Inc. v. Mayne Pharma USA Inc.*,
    467 F.3d 1370 (Fed. Cir. 2006)....................................................................28

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)....................................................................71

*Advanced Display Sys. Inc. v. Kent State Univ.*,
    212 F.3d 1272 (Fed. Cir. 2000)....................................................................34

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    805 F.3d 1368 (Fed. Cir. 2015)....................................................................69

*Alcon Research Ltd. v. Barr Labs., Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014)....................................................................43

*Alcon Research, Ltd. v. Watson Labs., Inc.*,
    No. 15-1159-GMS, 2018 WL 1115090 (D. Del. Mar. 1, 2018) .......................50, 52

*Alcon, Inc. v. Teva Pharm. USA, Inc.*,
    664 F. Supp. 2d 443 (D. Del. 2009)...........................................................38, 49

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
    No. CV 07-8108, 2018 WL 6190604 (C.D. Cal. Nov. 4, 2018)...........................30

*Align Tech., Inc. v. 3Shape A/S*,
    339 F. Supp. 3d 435 (D. Del. 2018)..............................................................30

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
    725 F.2d 1350 (Fed. Cir. 1984), *abrogated on other grounds by Therasense,
    Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011).........................33

*Am-Pro Protective Agency, Inc. v. United States*,
    281 F.3d 1234 (Fed. Cir. 2002)....................................................................32

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)..................................................................39, 41

*Amgen, Inc. v. Chugai Pharm. Co.*,
    927 F.2d 1200 (Fed. Cir. 1991)....................................................................39

*Ansell Healthcare Products LLC v. Reckitt Benckiser LLC*,
    No. 15-CV-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018).........................29

*Apotex USA, Inc. v. Merck & Co.*,
  254 F.3d 1031 (Fed. Cir. 2001)........................................................................35, 36

*Apple Inc. v. Samsung Elecs. Co.*,
  258 F. Supp. 3d 1013 (N.D. Cal. 2017) ..............................................................30, 31

*Apple Inc. v. Samsung Elecs. Co.*,
  839 F.3d 1034 (Fed. Cir. 2016) (en banc)...........................................37, 55, 57, 62

*Apple, Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014)..............................................................................70

*In re Application of Wakefield*,
  422 F.2d 897 (C.C.P.A. 1970) ................................................................................43

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  312 F. App'x 326 (Fed. Cir. 2009) .........................................................................26

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014).................................................................................71

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
  198 F. Supp. 3d 1343 (S.D. Fla. 2016) ...................................................................74

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)..........................................................................29, 30

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc)...........................................................42, 43

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)...............................................................................71

*AstraZeneca LP v. Apotex, Inc.*,
  633 F. 3d 1042 (Fed. Cir. 2010)..............................................................................24

*AstraZeneca Pharm. LP v. Anchen Pharm., Inc.*,
  Nos. 10-cv-1835, 2012 WL 1065458 (D.N.J. Mar. 29, 2012) ...............................59

*Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*,
  750 F.2d 1569 (Fed. Cir. 1984)...............................................................................42

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
  796 F. 2d 443 (Fed. Cir. 1986)................................................................................52

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
  49 F. 3d 1575 (Fed. Cir. 1995)...........................................................................23, 62

iv

*Beckson Marine, Inc. v. NFM Inc.*,
   292 F.3d 718 (Fed. Cir. 2002)......................................................................37

*In re Bigio*,
   381 F.3d 1320 (Fed. Cir. 2004)....................................................................38

*Bilstad v. Wakalopulos*,
   386 F.3d 1116 (Fed. Cir. 2004)....................................................................43

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
   807 F.2d 964 (Fed. Cir. 1986)......................................................................76

*Blue Calypso, LLC v. Groupon, Inc.*,
   815 F. 3d 1331 (Fed. Cir. 2016)...................................................................63

*Boehringer Ingelheim Vetemedica, Inc. v. Schering-Plough Corp.*,
   320 F.3d 1339 (Fed. Cir. 2003)....................................................................28

*Bone Care Int'l, L.L.C. v. Roxane Labs, Inc.*,
   No. 09-cv-285-GMS, 2012 WL 2126896 (D. Del. June 11, 2012) ..............25

*Braintree Labs, Inc. v. Novel Labs, Inc.*,
   No. 11-1341, 2013 WL 211252 (D.N.J. Jan. 18, 2013), *vacated and remanded*
   *on other grounds by* 249 F.3d 1349 (Fed. Cir. 2014) ................................25

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
   707 F. 3d 1342 (Fed. Cir. 2013)...................................................................26

*Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*,
   769 F.3d 1339 (Fed. Cir. 2014) (per curiam)..........................................58, 59

*Bristol-Myers Squibb Co. v. Teva-Pharms. USA, Inc.*,
   752 F.3d 967 (Fed. Cir. 2014)......................................................................49

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*,
   229 F.3d 1120 (Fed. Cir. 2000)....................................................................56

*Buildex, Inc. v. Kason Indus., Inc.*,
   849 F. 2d 1461 (Fed. Cir. 1988)...................................................................32

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*,
   134 F.3d 1085 (Fed. Cir. 1998)....................................................................32

*Carl Schenck, A.G. v. Nortron Corp.*,
   713 F.2d 782 (Fed. Cir. 1983)......................................................................52

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
    807 F.3d 1283 (Fed. Cir. 2015), *reh'g en banc denied in part*, 805 F.3d 1382
    (Fed. Cir. 2015)..........................................................................................................73

*Cephalon, Inc. v. Watson Labs., Inc. (In re Armodafinil Patent Litig.)*,
    939 F. Supp. 2d 456 (D. Del. 2013)........................................................................50

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013)..............................................................39, 40, 41

*In re Clay*,
    966 F.2d 656 (Fed. Cir. 1992)................................................................................38

*Coleman v. Dines*,
    754 F.2d 353 (Fed. Cir. 1985)................................................................................35

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)............................................................................................25

*Cont'l Can Co. USA v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991)..............................................................................35

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010)..............................................................................57

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*,
    430 F. Supp. 2d 346 (D. Del. 2006)........................................................................69

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001)..............................................................................76

*Custom Assocs., Inc. v. Jeffrey Allan Indus, Inc.*,
    807 F.2d 955 (Fed. Cir. 1986)................................................................................57

*Daiichi Sankyo Co. v. Apotex, Inc.*,
    501 F.3d 1254 (Fed. Cir. 2007)..............................................................................45

*Deere & Co. v. AGCO Corp.*,
    No. 18-1827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019).........................30, 31

*DeGeorge v. Bernier*,
    768 F.2d 1318 (Fed. Cir. 1985)..............................................................................40

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
    836 F.2d 1320 (Fed. Cir. 1987)........................................................................66, 70

*Demaco Corp. v. F. von Langsdorff Licensing, Ltd.*,
    851 F.2d 1387,1392 (Fed. Cir. 1998)......................................................................61

*Dentsply Sirona, Inc. v. Edge Endo, LLC*,
   No. 17-1041 WJ/SCY, 2019 WL 1517584 (D.N.M. Apr. 8, 2019)..........................................30

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009)..............................................................................................53

*Discovision Assocs. v. Disc Mfg., Inc.*,
   25 F. Supp. 2d 301 (D. Del. 1998)..........................................................................................52

*Dome Patent, L.P. v. Rea*,
   59 F. Supp. 3d 52 (D.D.C. 2014), *aff'd*, 799 F.3d 1372 (Fed. Cir. 2015) .............................56

*In re Dow Chem. Co.*,
   837 F. 2d 469 (Fed. Cir. 1988)................................................................................................46

*Dow Chem. Co. v. Mee Indus., Inc.*,
   341 F.3d 1370 (Fed. Cir. 2003)..............................................................................................70

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
   800 F. 3d 1375 (Fed. Cir. 2015).............................................................................................64

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*,
   464 F.3d 1356 (Fed. Cir. 2006)..............................................................................................54

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*,
   921 F.3d 1060 (Fed. Cir. 2019)........................................................................................33, 34

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
   485 F. Supp. 3d 505 (D.N.J. 2020) ........................................................................................29

*Ecolochem, Inc. v. S. Cal. Edison Co.*,
   227 F.3d 1361 (Fed. Cir. 2000)..............................................................................................45

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 Fed. Cir. 2008 ..................................................................................................24

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
   689 F.3d 1368 (Fed. Cir. 2012)..............................................................................................49

*Eli Lilly & Co. v. Teva Pharm. USA, Inc.*,
   657 F. Supp. 2d 967 (S.D. Ind. 2009) ....................................................................................41

*Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*,
   471 F.3d 1369 (Fed. Cir. 2006)..............................................................................................48

*Endo Pharm. Sols., Inc. v. Custopharm Inc.*,
   894 F.3d 1374 (Fed. Cir. 2018)..............................................................................................48

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  No. 2:15-cv-00011-RSP, 2018 WL 2149736 (E.D. Tex. May 10, 2018) ...............................30

*Ericsson, Inc., v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ....................................................................................73

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  149 F. 3d 1309 (Fed. Cir. 1998) ...................................................................................27

*Eurand, Inc. v. Mylan Pharms., Inc. (In re Cyclobenzaprine Hydrochloride
  Extended-Release Capsule Pat. Litig.)*,
  676 F.3d 1063 (Fed. Cir. 2012) ..................................................................32, 38, 51, 56

*Evolved Wireless, LLC v. Apple Inc.*,
  2019 WL 1178517 (D. Del. March 13, 2019) ..............................................................72

*Exelis Inc. v. Cellco P'Ship*,
  No. 09-190-LPS, 2012 WL 6043494 (D. Del. Nov. 6, 2012) ......................................60

*Falkner v. Inglis*,
  448 F.3d 1357 (Fed. Cir. 2006) ....................................................................................43

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ....................................................................................72

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ....................................................................................71

*Fleming v. Escort Inc.*,
  774 F.3d 1371 (Fed. Cir. 2014) ....................................................................................36

*Galderma Labs. L.P. v. Tolmar, Inc.*,
  737 F.3d 731 (Fed. Cir. 2013) ......................................................................................61

*GE Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*,
  No. 1:14-CV-07080-LTS-SN, 2015 WL 7582967 (S.D.N.Y. Nov. 25, 2015) .................73

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983) ......................................................................................................76

*Genetics Inst. LLC v. Novartis Vaccines & Diagnostics, Inc.*,
  655 F.3d 1291 (Fed. Cir. 2011) ............................................................................56, 58, 59

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  867 F.3d 1229 (Fed. Cir. 2017) ....................................................................................30

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.
  1971) ........................................................................................................................70

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004)..........................................................................32

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)............................................................................................25

*Gorham Co. v. White*,
  81 U.S. 511 (1871)..............................................................................................23

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966)....................................................................................37, 45, 55

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999)..............................................................65, 68, 72

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
  339 U.S. 605 (1950)............................................................................................28

*Great N. Corp. v. Henry Molded Prods., Inc.*,
  94 F. 3d 1569 (Fed. Cir. 1996)...........................................................................26

*Halo Elecs., Inc. v. Pulse Elec., Inc.*,
  136 S. Ct. 1923 (2016).........................................................................29, 30, 73, 74

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Products, Inc.*,
  21 F.3d 1068, 30 U.S.P.Q.2d 1377 (Fed. Cir. 1994) .........................................62

*Hitzeman v. Rutter*,
  243 F.3d 1345 (Fed. Cir. 2001)..........................................................................35

*Holmwood v. Sugavanam*,
  948 F.2d 1236 (Fed. Cir. 1991)..........................................................................34

*In re Huai-Hung Kao*,
  639 F.3d 1057 (Fed. Cir. 2011)..........................................................................56

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367 (Fed. Cir. 1986)..........................................................................55

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  645 F.3d 1336 (Fed. Cir. 2011), *cert. denied*, 556 U.S. 1196 (2012)...................42

*Idenix Pharm. LLC v. Gilead Scis., Inc.*,
  No. 14-CV-846-LPS, 2018 WL 922125 (D. Del. Feb. 16, 2018)...........................71

*Impax Labs. Inc. v. Lannet Holdings, Inc.*,
   893 F.3d 1372 (Fed. Cir. 2018).................................................................52

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F. 3d 1363 (Fed. Cir. 2008)...............................................................48

*Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*,
   738 F.3d 1337 (Fed. Cir. 2013).................................................50, 51, 53

*Intel Corp. v. U.S. Intern. Trade Com'n*,
   946 F.2d 821 (1991).................................................................................63

*Intendis GMBH v. Glenmark Pharm. Inc., USA*,
   822 F.3d 1355 (Fed. Cir. 2016)...............................................................26

*Intendis GMBH v. Glenmark Pharm. Ltd.*,
   117 F. Supp. 3d 549 (D. Del. 2015), *aff'd*, 822 F.3d 1355 (Fed. Cir. 2016) ........................26

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)...............................................................43

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   Nos. 18-452-WCB-18-826.......................................................................31

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N. V.*,
   315 F. Supp. 2d 589 (D. Del. 2004).........................................................69

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
   106 F.3d 1563 (Fed. Cir. 1997)...............................................................61

*Johns Hopkins Univ. v. CellPro, Inc.*,
   152 F.3d 1342 (Fed. Cir. 1998).................................................40, 41, 73

*Jurgens v. CBK, Ltd.*,
   80 F.3d 1566 (Fed. Cir. 1996).................................................................74

*Kao Corp. v. Unilever U.S., Inc.*,
   441 F.3d 963 (Fed. Cir. 2006).................................................................58

*Karsten Mfg. Corp. v. Cleveland Golf Co.*,
   242 F.3d 1376 (Fed. Cir. 2001)...............................................................54

*Kearns v. Chrysler Corp.*,
   32 F. 3d 1541 (Fed. Cir. 1994).................................................................66

*King Instruments Corp. v. Perego*,
   65 F.3d 941 (Fed. Cir. 1995)...................................................................65

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
    381 F.3d 1142 (Fed. Cir. 2004)......................................................................39

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)...................................................................37, 48, 49

*In re Kubin*,
    561 F.3d 1351 (Fed. Cir. 2009)......................................................................46

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
    545 F. 3d 1340 (Fed. Cir. 2008)......................................................................63

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983)...............................................65, 67, 75, 76

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    2011 WL 197869 (E.D. Tex. Jan. 20, 2011)......................................................72

*Leo Pharm. Prods., Ltd. v. Rea*,
    726 F. 3d 1346 (Fed. Cir. 2013)......................................................47, 51

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    798 F. Supp. 2d 541 (D. Del. 2011)......................................................................31

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006)......................................................................31

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005)......................................................................39

*Long Lane Ltd. P'ship v. Bibb*,
    159 F. App'x 189 (Fed. Cir. 2005) (per curiam) ...............................................32

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...............................................................25, 70

*Mahurkar v. C.R. Bard, Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996)......................................................................33

*Medichem, S.A. v. Rolabo, S.L.*,
    437 F.3d 1157 (Fed. Cir. 2006)......................................................................50

*Medinol Ltd. v. Guidant Corp.*,
    341 F. Supp. 2d 301 (S.D.N.Y. 2004)......................................................................45

*Medtronic, Inc. v. Intermedics, Inc.*,
    799 F.2d 734 (Fed. Cir. 1986)......................................................................57

*Mentor Graphics Corporation v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017)..........................................................................66, 67, 69

*Merck & Co. v. Teva Pharm. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005)................................................................................60

*Metabolite Labs. Inc. v. Lab. Corp. of Am. Holdings*,
370 F. 3d 1354 (Fed. Cir. 2004)...............................................................................24

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
103 F.3d 1538 (Fed. Cir. 1997)................................................................................46

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011)....................................................................................................32

*Miles Labs., Inc. v. Shandon Inc.*,
997 F.2d 870 (Fed. Cir. 1993)..................................................................................57

*Minco, Inc. v. Combustion Engineering, Inc.*,
95 F.3d 1109 (Fed. Cir. 1996)..................................................................................66

*Mintz v. Dietz & Watson, Inc.*,
679 F. 3d 1372 (Fed. Cir. 2012)...............................................................................45

*Mitsubishi Chem. Corp. v. Barr Labs, Inc.*,
718 F. Supp. 2d 382 (S.D.N.Y. 2010).....................................................................53

*Moba, B.V. v. Diamond Automation, Inc.*,
325 F.3d 1306 (Fed. Cir. 2003)................................................................................41

*Mobil Oil Corp. v. Amoco Chems. Corp.*,
915 F. Supp. 1333 (D. Del. 1994)............................................................................71

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
139 F.3d 877 (Fed. Cir. 1998)..................................................................................60

*Muniacution, Inc. v. Thomson Corp.*,
532 F.3d 1318 (Fed. Cir. 2008), *overruled in part on other grounds by Akamai
Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015).............55

*nCUBE Corp. v. SeaChange Int'l, Inc.*,
313 F. Supp. 2d 361 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) ..........76

*Neptune Generics, LLC v. Eli Lilly & Co.*,
921 F.3d 1372 (Fed. Cir. 2019)................................................................................61

*Neutrino Dev. Corp. v. Sonosite, Inc.*,
410 F. Supp. 2d 529 (S.D. Tex. 2006) .....................................................................40

*Nevro Corp. v. Stimwave Techs., Inc.*,
  No. 19-325-CFC, 2019 WL 3322368 (D. Del. July 24, 2019) ..........................................52, 54

*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,
  298 F. 3d 1290 (Fed. Cir. 2002)..................................................................................................64

*In re O'Farrell*,
  853 F.2d 894 (Fed. Cir. 1988)......................................................................................................49

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)......................................................................................................75, 77, 78

*In re Oetiker*,
  977 F.2d 1443 (Fed. Cir. 1992)....................................................................................................38

*Open Text S.A. v. Box, Inc.*,
  Case No. 13-cv-04910-JD, 2015 WL 428365 (N.D. Cal. 2015) ..............................................63

*Orion IP, LLC v. Hyundai Motor Am.*,
  605 F. 3d 967 (Fed. Cir. 2010)....................................................................................................35

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
  520 F.3d 1358 (Fed. Cir. 2008)....................................................................................46, 49, 52, 55

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
  678 F.3d 1280 (Fed. Cir. 2012)....................................................................................................46

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007)....................................................................................................27

*Palmer v. Dudzik*,
  481 F.2d 1377 (C.C.P.A. 1973) ...................................................................................................36

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
  575 F.2d 1152 ........................................................................................................................67, 68

*In re Paoli R.R. Yard PCB Litig.*,
  221 F. 3d 449 (3d Cir. 2000)........................................................................................................77

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
  745 F.2d 11 (Fed. Cir. 1984)........................................................................................................65

*Plaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998)........................................................................................................................44

*Plantronics, Inc. v. Aliph, Inc.*,
  724 F.3d 1343 (Fed. Cir. 2013)....................................................................................................58

*Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.,*
    387 F. Supp. 3d 404 (D. Del. 2018)........................................................................29

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
    585 F. Supp. 2d 568 (D. Del. 2008)........................................................................33

*Power-One, Inc. v. Artesyn Techs., Inc,*
    599 F.3d 1343 (Fed. Cir. 2010)..............................................................................62

*PowerOasis, Inc. v. TMobile USA, Inc.,*
    522 F.3d 1299 (Fed. Cir. 2008)..............................................................................33

*PPG Indus., Inc. v. Guardian Indus. Corp.,*
    75 F.3d 1558 (Fed. Cir. 1996)................................................................................40

*Presidio Components, Inc. v. American Technical Ceramics Corp.,*
    875 F.3d 1369 (Fed. Cir. 2017)..............................................................................67

*Pressure Prods. Med. Supplies, Inc. v. Greatbach Ltd.,*
    599 F.3d 1308 (Fed. Cir. 2010)..............................................................................61

*Prism Techs. LLC v. Sprint Spectrum L.P.,*
    849 F.3d 1360 (Fed. Cir. 2017)........................................................................71, 72

*Procter & Gamble Co. v. Team Techs., Inc.,*
    No. 1:12-cv-552-TSB, 2014 WL 12656554 (S.D. Ohio July 3, 2014)...................47

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.,*
    566 F.3d 989 (Fed. Cir. 2009)....................................................................... *passim*

*R.R. Dynamics, Inc. v. A. Stucki Co.,*
    727 F.2d 1506 (Fed. Cir. 1984)..............................................................................73

*Read Corp. v. Portec, Inc.,*
    970 F.2d 816 (Fed. Cir. 1992)..........................................................................74, 75

*Reckitt Benckiser Pharm. Inc. v. Watson Labs., Inc.,*
    Nos. 13-1674-RGA & 14-442-RGA, 2015 WL 6456551 (D. Del. Oct. 26,
    2015) ......................................................................................................................47

*Regents of Univ. of Cal. v. Broad Inst., Inc.,*
    903 F.3d 1286 (Fed. Cir. 2018)........................................................................59, 60

*Regents of the Univ. of Cal. v. Eli Lilly & Co.,*
    119 F.3d 1559 (Fed. Cir. 1997)..............................................................................43

*Richardson v. Suzuki Motor Co. Ltd.*,
  868 F.2d 1226 (Fed. Cir. 1989), *abrogated on other grounds, eBay Inc. v.
  MercExchange, L.L.C.,* 547 U.S. 388 (2006) ...................................................................31, 74

*Rite-Hite Corp. v. Kelley Co., Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995)....................................................................................................65

*Rolls-Royce, PLC v. United Techs. Corp.*,
  603 F.3d 1325 (Fed. Cir. 2010)...........................................................................................37, 59

*Sanofi v. Watson Labs. Inc.*,
  875 F.3d 636 (Fed. Cir. 2017)....................................................................................................25

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*,
  748 F. 3d 1354 (Fed. Cir. 2014)..................................................................................................47

*Sanofi-Synthelabo v. Apotex, Inc.*,
  550 F.3d 1075 (Fed. Cir. 2008)...................................................................................................34

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991), *overruled in part* by *Abbott Labs. v. Sandoz,
  Inc.*, 566 F.3d 1282 (Fed. Cir. 2009) ........................................................................................34

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech., Ltd.*,
  396 F. Supp. 3d 323 (S.D.N.Y. 2019)..................................................................................29, 30

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
  330 F. Supp. 3d 574 (D. Mass. 2018) .......................................................................................30

*Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991)............................................................................................64, 70

*In re Soni*,
  54 F.3d 746 (Fed. Cir. 1995).....................................................................................................58

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
  511 F.3d 1186 (Fed. Cir. 2008)..................................................................................................45

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
  953 F.2d 1360 (Fed. Cir. 1991)..................................................................................................68

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  655 F.3d 1364 (Fed. Cir. 2011)............................................................................................52, 54

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  883 F.2d 1573 (Fed. Cir. 1989)........................................................................................65, 68, 69

xv

*Story Parchment Co. v. Paterson Paper Co.*,
    282 U.S. 555 (1931) ........................................................................................65

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983) .....................................................................55

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    96 F.3d 1409 (Fed. Cir. 1996) .................................................................67, 68

*Symbol Techs., Inc. v. Opticon, Inc.*,
    935 F.2d 1569 (Fed. Cir. 1991) ...............................................................61, 63

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*,
    492 F.3d 1350 (Fed. Cir. 2007) .....................................................................32

*Takeda Pharm. Co. v. Handa Pharm., LLC*,
    C.A. No. 11-840-JCS, 2013 WL 9853725 (N.D. Cal. Oct. 17, 2013) ...................57

*Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
    785 F. 3d 625 (Fed. Cir. 2015) ......................................................................24

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    132 S. Ct. 1997 (2012) ..................................................................................77

*Tec Air, Inc. v. Denso Mfg. Mich., Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999) .....................................................................53

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) .....................................................................24

*TQP Dev. LLC v. 1-800-Flowers.com, Inc.*,
    120 F. Supp. 3d 600 (E.D. Tex. 2015) ...........................................................36

*TQP Dev., LLC v. Intuit Inc.*,
    No. 2:12-cv-180-WCB, 2014 WL 2809841 (E.D. Tex. June 20, 2014) ................36

*Transclean Corp. v. Bridgewood Servs., Inc.*,
    290 F.3d 1364 (Fed. Cir. 2002) .....................................................................35

*Transmatic, Inc. v. Gulton Indus., Inc.*,
    180 F.3d 1343 (Fed. Cir. 1999) .....................................................................76

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012) ...................................................54, 57, 62, 70

*True Position Inc. v. Andrew Corp.*,
    611 F. Supp. 2d 400 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) ...................76

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
    813 F.2d 1207 (Fed. Cir. 1987)...................................................................................60

*Underwater Devices, Inc. v. Morrison- Knudsen Co.*,
    717 F.2d 1380 (Fed. Cir. 1983)...................................................................................76

*Unigene Labs., Inc. v. Apotex, Inc.*,
    655 F.3d 1352 (Fed. Cir. 2011)............................................................................48, 49

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    308 F.3d 1167 (Fed. Cir. 2002)...................................................................................38

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    837 F.2d 1044 (Fed. Cir. 1988)...................................................................................46

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995).......................................................................................71

*United States v. Adams*,
    383 U.S. 39 (1966).......................................................................................................61

*Univ. of Cal. v. Hansen*,
    No. CIV S98-715, 1999 WL 33268423 (E.D. Cal. Nov. 8, 1999)...........................25

*Utter v. Hiraga*,
    845 F.2d 993 (Fed. Cir. 1988).....................................................................................44

*Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*,
    887 F. 3d 1117 (Fed. Cir. 2018)..................................................................................24

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)........................................................................70, 71, 72

*W.L. Gore & Assocs. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983)...................................................................................53

*W.R. Grace & Co.-Conn. v. Intercat, Inc.*,
    60 F. Supp. 2d 316 (D. Del. 1999)..............................................................................65

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988)................................................................................40, 42

*Wang Labs., Inc. v. Toshiba Corp.*,
    993 F. 2d 858 (Fed. Cir. 1993)....................................................................................38

*Warner Lambert Co. v. Teva Pharms. USA, Inc.*,
    2007 WL 4233015 (D.N.J. 2007) ...............................................................................42

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)...........................................................................................27

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005)..............................................................39, 40

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016).......................................................... *passim*

*WCM Indus., Inc. v. IPS Corp.*,
    721 Fed App'x 959 (Fed. Cir. 2018).......................................................29

*Whitserve, LLC v. Comput. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012)....................................................................74

*Winner Int'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000)...............................................................53

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
    231 F.3d 1339 (Fed. Cir. 2000)...............................................................46

*In re Young*,
    927 F.2d 588 (Fed. Cir. 1991)..................................................................54

*Zimmer Surgical, Inc. v. Stryker Corp.*,
    365 F. Supp. 3d 466 (D. Del. 2019).........................................................30

**Statutes**

28 U.S.C. § 1920.............................................................................................77

35 U.S.C. § 102..................................................................................... *passim*

35 U.S.C. § 103.............................................................................37, 45, 46

35 U.S.C. § 112..................................................................................... *passim*

35 U.S.C. § 119.............................................................................................64

35 U.S.C. § 271.........................................................................24, 25, 73

35 U.S.C. § 282..................................................................................32, 36

35 U.S.C. § 284.....................................................................65, 69, 73, 74

35 U.S.C. § 285.....................................................................75, 77, 78

Exhibit 4

Plaintiffs' Statement of Issues of Law

## I.      INFRINGEMENT

### A.      Infringement of the Patents-in-Suit

1.      Only issues of fact remain with respect to a determination of patent infringement. Any disputes regarding application of the law to infringement in this case will be resolved by the Court in connection with finalizing jury instructions.

### B.      Whether Autel Directly Infringes Claims 1-11 and 14 of the '617 Patent

2.      DJI will prove by a preponderance of the evidence that Autel directly infringes one or more of claims 1-11 and 14 of the '617 patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products.

### C.      Whether Autel Directly Infringes Claims 1-13, 15, 16-24 and 26-30 of the '049 Patent

3.      DJI will prove by a preponderance of the evidence that Autel directly infringes one or more of claims 1-13, 15, 16-24 and 26-30 of the '049 patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products.

### D.      Whether Autel Directly Infringes Claims 1-13 and 16-28 of the '530 Patent

4.      DJI will prove by a preponderance of the evidence that Autel directly infringes one or more of claims 1-13 and 16-28 of the '530 patent either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products.

     **E.**    **Whether Autel Directly Infringes the Claim and Figures of the 'D514 Patent**

5.      DJI will prove by a preponderance of the evidence that Autel directly infringes the claim and the figures of the 'D514 patent by making, using, selling, offering for sale, and/or importing into the United States its X-Star and X-Star Premium products.

     **F.**    **Whether Autel Directly Infringes Claims 16-18, 21-24, 26-28 and 30 of the 'x' '049 Patent**

6.      DJI will prove by a preponderance of the evidence that Autel directly infringes one or more of claims 16-18, 21-24, 26-28, and 30 of the '049 patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States its EVO product.

     **G.**    **Whether Autel Indirectly Infringes Claims 1-11 and 14 of the '617 Patent**

7.      DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '617 patent, either literally or under the doctrine of equivalents.

8.      DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '617 patent, either literally or under the doctrine of equivalents, by actively inducing the direct infringement of the '617 patent by the customers, resellers, retailers, and end users of the X-Star and X-Star Premium products.

9.      DJI will prove by a preponderance of the evidence that Autel indirectly infringe the asserted claims of the '617 patent, either literally or under the doctrine of equivalents, by contributing to the direct infringement of the '617 patent by the customers, resellers, retailers, and end users of the X-Star and X-Star Premium products.

**H.**   **Whether Autel Indirectly Infringes Claims 1-13, 15, 16-24 and 26-30 of the '049 Patent**

10.   DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '049 patent, either literally or under the doctrine of equivalents.

11.   DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '049 patent, either literally or under the doctrine of equivalents, by actively inducing the direct infringement of the '049 patent by the customers, resellers, retailers, and end users of the X-Star and X-Star Premium products.

12.   DJI will prove by a preponderance of the evidence that Autel indirectly infringe the asserted claims of the '049 patent, either literally or under the doctrine of equivalents, by contributing to the direct infringement of the '049 patent by the customers, resellers, retailers, and end users of the X-Star and X-Star Premium products.

**I.**   **Whether Autel Indirectly Infringes Claims 1-13 and 16-28 of the '530 Patent**

13.   DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '530 patent, either literally or under the doctrine of equivalents.

14.   DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '530 patent, either literally or under the doctrine of equivalents, by actively inducing the direct infringement of the '530 patent by the customers, resellers, retailers, and end users of the X-Star and X-Star Premium products.

15.   DJI will prove by a preponderance of the evidence that Autel indirectly infringe the asserted claims of the '530 patent, either literally or under the doctrine of equivalents, by contributing to the direct infringement of the '530 patent by the customers, resellers, retailers, and end users of the X-Star and X-Star Premium products.

3

**J.**     **Whether Autel Indirectly Infringes Claims 16-18, 21-24, 26-28 and 30 of the '049 Patent (EVO)**

16.     DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '049 patent, either literally or under the doctrine of equivalents.

17.     DJI will prove by a preponderance of the evidence that Autel indirectly infringes the asserted claims of the '049 patent, either literally or under the doctrine of equivalents, by actively inducing the direct infringement of the '049 patent by the customers, resellers, retailers, and end users of the EVO products.

18.     DJI will prove by a preponderance of the evidence that Autel indirectly infringe the asserted claims of the '049 patent, either literally or under the doctrine of equivalents, by contributing to the direct infringement of the '049 patent by the customers, resellers, retailers, and end users of the EVO products.

**K.**     **Legal Principles Relevant to Infringement**

**1.     Literal Infringement**

19.     A patentee may prove literal infringement by showing that all of the limitations of any asserted claim are found in the accused product.  *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F. 3d 1575, 1583 (Fed. Cir. 1995).

**2.     Design Patent Infringement – Ordinary Observer**

20.     The standard for assessing design patent infringement is whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871).  "[M]inor differences" should not prevent a finding of infringement.  *Id.*  at 517.  "[W]hen the claimed and accused designs are not plainly

4

dissimilar, resolution of the question whether the ordinary observer would consider the two

designs to be substantially the same will benefit from a comparison of the claimed and accused

designs with the prior art[.]"  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 Fed. Cir.

2008) (*en banc*).  "[I]f the accused infringer elects to rely on the comparison [to] prior art as part

of its defense against the claim of infringement, the burden of production of that prior art is on

the accused infringer."  *Id*. at 678-79.

### 3.      Induced Infringement

21.      "Whoever actively induces infringement of a patent shall be liable as an

infringer."  35 U.S.C. § 271(b).  To establish inducement, a patentee must prove "'specific intent

and action to induce infringement.'"  *Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785

F. 3d 625, 631 (Fed. Cir. 2015) (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348,

1364 (Fed. Cir. 2003)).  Under that standard, a manufacturer is liable for inducement of a method

claim if the manufacturer's labeling "encourage[s]," "recommend[s]," or "promote[s]"

infringement of that claim.  *See id.* at 631 (citing *Metro-Goldwyn-Mayer Studios Inc. v.

Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1365

(Fed. Cir. 2012); *Metabolite Labs. Inc. v. Lab. Corp. of Am. Holdings*, 370 F. 3d 1354, 1365

(Fed. Cir. 2004.  A person can be liable for inducing an infringing use of a product even if the

product has substantial noninfringing uses.  *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*,

887 F. 3d 1117, 1133 (Fed. Cir. 2018).

22.      Circumstantial evidence can support a finding of specific intent to induce

infringement.  *See AstraZeneca LP v. Apotex, Inc.*, 633 F. 3d 1042, 1060 (Fed. Cir. 2010) (citing

*Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)).  Thus, a manufacturer's

specific intent to induce infringement of a method claim may be inferred from testimony

concerning the contents of the manufacturer's product labeling and how that labeling would be understood by end-users. *See Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 646 (Fed. Cir. 2017). Further, intent can be inferred if an infringer was willfully blind to the infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.").

23.     Belief in invalidity is not a defense to induced infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015). "The scienter element for induced infringement concerns infringement; that is a different issue than validity." *Id.* at 1928. "[B]ecause infringement and validity are separate issues under the Act, belief regarding validity cannot negate the scienter required under § 271(b)." *Id.*

### 4.     Contributory Infringement

24.     A party is liable for contributory infringement if: (1) there is direct infringement; (2) the accused infringer had knowledge of the patent at issue; (3) the component has no substantial noninfringing uses; and (4) the component is a material part of the invention. *Bone Care Int'l, L.L.C. v. Roxane Labs, Inc.*, No. 09-cv-285-GMS, 2012 WL 2126896, at *10 (D. Del. June 11, 2012) (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)); *Lucent Techs., Inc.*, 580 F.3d at 1320; 35 U.S.C. § 271(c). A product is a material component of a composition when it is the sole physical object necessary to practice the method claim. *Braintree Labs, Inc. v. Novel Labs, Inc.*, No. 11-1341, 2013 WL 211252, at *13 (D.N.J. Jan. 18, 2013), *vacated and remanded on other grounds by* 249 F.3d 1349 (Fed. Cir. 2014). The Defendant bears the burden of proving substantial non-infringing uses. *Univ. of Cal. v. Hansen,* No. CIV S98-715, 1999 WL 33268423 (E.D. Cal. Nov. 8, 1999).

### 5.     Doctrine of Equivalents

25.     A patentee may prove infringement under the doctrine of equivalents by showing "on an element-by-element basis that 'the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'" *Intendis GMBH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1360 (Fed. Cir. 2016) (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F. 3d 1308, 1312 (Fed. Cir. 2009)).  With respect to the "function" prong of this test, a patent need not specify the function of a particular claim limitation. *Id.* at 1362.  When a patent does not specify a function, the Court looks to what the person of ordinary skill in the art ("POSA") would understand the function of the patented product to be, and in doing so may rely on extrinsic evidence. *Id.* The "way" prong refers to the means or mechanism by which the invention operates.  *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 312 F. App'x 326, 332 (Fed. Cir. 2009).  In evaluating the "result" prong, courts look to whether the allegedly infringing product offers the same advantage(s) of the invention as described in the patent.  *See Intendis GMBH v. Glenmark Pharm. Ltd.*, 117 F. Supp. 3d 549, 576-77 (D. Del. 2015), *aff'd*, 822 F.3d 1355 (Fed. Cir. 2016).  "Each prong of the function-way-result test is a factual determination." *Intendis GMBH*, 822 F.3d at 1361.

26.     A patentee may also prove infringement under the doctrine of equivalents by showing, on an element-by-element basis, that "there exist only insubstantial differences between the claimed and accused products."  *Great N. Corp. v. Henry Molded Prods., Inc.*, 94 F. 3d 1569, 1574 (Fed. Cir. 1996).  Whether a difference is "insubstantial" is evaluated from the perspective of the POSA and depends on the context of the patent, the prior art, and the particular circumstances of the case.  *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F. 3d

1342, 1347-48 (Fed. Cir. 2013); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F. 3d

1309, 1318 (Fed. Cir. 1998) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S.

605, 609 (1950)).

27.     To establish infringement by equivalence, the patentee must provide

particularized testimony and argument linking the features of the limitation in the asserted claim

with the allegedly equivalent element of the accused product such that the finder of fact has a

sufficient basis upon which to evaluate the insubstantiality of differences.  *Paice LLC v. Toyota*

*Motor Corp.*, 504 F.3d 1293, 1307 (Fed. Cir. 2007).  "Equivalence, in the patent law, is not the

prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require

complete identity for every purpose and in every respect."  *Warner-Jenkinson Co. v. Hilton*

*Davis Chem. Co.*, 520 U.S. 17, 24-25 (1997) (internal quotation marks omitted).  The entire

objective of the doctrine is to extend the scope of a patent claim to reach ingredients that are *not*

literally identical—structurally or otherwise—to the claimed ingredient.  As the Federal Circuit

has underscored, "any analysis of infringement under the doctrine of equivalents *necessarily*

deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a

claim."  *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir.

1998).  To that end, the Supreme Court has explained that, "'[i]n determining equivalents, things

equal to the same thing may not be equal to each other and, by the same token, things for most

purposes different may sometimes be equivalents.  *Consideration must be given to the purpose*

*for which an ingredient is used in a patent, the qualities it has when combined with the other*

*ingredients, and the function which it is intended to perform.*'"  *Warner-Jenkinson*, 520 U.S. at

25 (emphasis added) (quoting *Graver Tank*, 339 U.S. at 609).

28.     The functional context of the claimed invention is central to any analysis of equivalence: the way a potential equivalent might work generally or in unrelated contexts is irrelevant.  Only the context of the actual inventions at issue matters.  *Boehringer Ingelheim Vetemedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1351 (Fed. Cir. 2003).  For example, in *Boehringer*, the accused infringer argued that the structural differences between the two potential equivalents—in that case, two viruses with 73 nucleotide differences—precluded a finding equivalence.  The Federal Circuit rejected such an argument.  As the Court explained, "the uncontroversial fact that even a single nucleotide or amino acid substitution may drastically alter the function of a gene or protein is not evidence of anything at all.  The mere possibility that a single mutation could affect biological function cannot as a matter of law preclude an assertion of equivalence, and Schering made no showing that any of these substitutions *actually* affected any property of the virus *relevant to the claim at hand*."  *Id.* at 1352 (emphases added).

29.     In assessing the equivalence, the finder of fact may consider both evidence from the patent, as well as evidence outside the patent.  As the Supreme Court has noted, "[w]hat constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case."  *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Biosci., Inc. v. Mayne Pharma USA Inc.*, 467 F.3d 1370, 1380 (Fed. Cir. 2006) (finding that, in determining equivalence, the district court properly considered both statements in the patent specification and the accused infringers' own statements to the FDA).  "Proof [of equivalence] can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art."  *Graver Tank*, 339 U.S. at 609.

9

### 6.    Willful Infringement

30.    Establishing willful infringement requires the patentee to prove that that the defendant "actually knew *or should have known* that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal quotation marks omitted).  Willful infringement must be shown by a preponderance of the evidence.  *Halo Elecs., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1927 (2016).  Evidence that a defendant copied the infringing product can show willfulness, with or without a "smoking gun," if evidence supports a reasonable infererence of copying.  *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F. Supp. 3d 505, 532-33 (D.N.J. 2020); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech., Ltd.*, 396 F. Supp. 3d 323, 334 (S.D.N.Y. 2019) (holding Defendant's choice to hire an employee from plaintiff who took confidential files with him was evidence which supported a jury finding of willfulness); *WCM Indus., Inc. v. IPS Corp.*, 721 Fed App'x 959, 970 (Fed. Cir. 2018) (affirming finding of willfulnes where evidence was presented of a "culture of copying").  Additionally, in relevant cases, a "defendant's willful blindness demonstrates the same level of culpability as if the defendant copied the product with actual knowledge of the patent."  *Ansell Healthcare Products LLC v. Reckitt Benckiser LLC*, No. 15-CV-915-RGA, 2018 WL 620968, at *7 (D. Del. Jan. 30, 2018);

31.    To sustain its claim of willful infringement, a "patentee need only prove 'subjective willfulness alone.'"  *Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 421 (D. Del. 2018) (quoting *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016)).  "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to

10

whether his infringement was objectively reckless." *Halo Elecs., Inc.*, 136 S. Ct. at 1933. "Proof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

      32.    A jury may find that a Defendants' infringement has been willful without egregious or shocking infringement behavior. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *9 (E.D. Tex. May 10, 2018); *Deere & Co. v. AGCO Corp.*, No. 18-1827-CFC, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019); *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 448 (D. Del. 2018); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 342 (S.D.N.Y. 2019). Knowledge of a patent before litigation and a lack of evidence of a pre-litigation belief in invalidity can be evidence of willfulness. *Arctic Cat Inc.*, 876 F.3d at 1371 (affirming willfulness finding where infringer "knew about the patents before they issued, conducted only a cursory analysis of the patents, [and] waited years before seeking advice of qualified and competent counsel"); *see also Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245 (Fed. Cir. 2017); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609-10 (D. Mass. 2018); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, No. 17-1041 WJ/SCY, 2019 WL 1517584, at *4 (D.N.M. Apr. 8, 2019); *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, No. CV 07-8108, 2018 WL 6190604, at *23 (C.D. Cal. Nov. 4, 2018).

      33.    A jury may also find willful infringement where the defendant "had a less desirable non-infringing alternative it could have quickly adopted, but chose not to." *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017); *see also Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 492 (D. Del. 2019) (denying motion for summary

11

judgment on willfulness where infringer "continues to infringe [and] has failed to undertake efforts to design around" the asserted patent).

34.     Even in the absence of evidence of pre-suit willfulness, continued sales of an infringing product after litigation begins can support a finding of post-suit willful infringement. *See, e.g.*, *Deere*, 2019 WL 668492, at *5; *IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452-WCB-18-826 & 2019 WL 330515, at *8 (D. Del. Jan. 25, 2019) (Bryson, C.J.) (same); *Apple Inc. v. Samsung Elecs.,* 258 F. Supp. 3d 1013, 1029 (N.D. Cal. 2017) ("post-filing conduct alone can serve as the basis of a jury's willfulness finding and an award of enhanced damages").

35.     Because of the factual nature of the willfulness inquiry the Federal Circuit has held that determining willfulness is a question for the jury.  *Richardson v. Suzuki Motor Co. Ltd.,* 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Willfulness of behavior is a classical jury question of intent.  When trial is had to a jury, the issue should be decided by the jury."), *abrogated on other grounds, eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).  "By its nature," willful infringement "hinges both on the fact finder's assessments of the credibility of witnesses and on the fact finder drawing inferences from the evidence presented to it."  *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 557 (D. Del. 2011).  As such, the "intent-implicating question [of] willfulness" is "peculiarly within the province of the fact finder that observed the witnesses." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (internal quotation marks omitted).

## II.   **VALIDITY**

### A.   **Whether Autel Can Overcome the Asserted Claims' Presumption of Validity with Clear and Convincing Evidence**

36.   Autel cannot prove, by clear and convincing evidence, that the asserted claims of the Patents-in-Suit are invalid.

37.   Every issued patent claim is presumed valid.  35 U.S.C. § 282.  The presumption of validity "exists at every stage of the litigation."  *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).  A challenger bears the burden of establishing the invalidity of each asserted claim.  *Id.*; *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

38.   Invalidity must be proven by clear and convincing evidence.  *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007); *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004).  Accordingly, each claim of the patents-in-suit is presumed to be valid unless Defendants prove by clear and convincing evidence that it is invalid.  That burden remains on Defendants, as the patent challenger, at all times.  *Eurand, Inc. v. Mylan Pharms., Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.)*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012).

39.   The clear-and-convincing evidence standard is meant to convey a significant additional burden for the party challenging validity.  *Buildex, Inc. v. Kason Indus., Inc.*, 849 F. 2d 1461, 1463 (Fed. Cir. 1988).  The Federal Circuit has likened the standard to "well-nigh irrefragable" proof, which is "evidence that cannot be refuted or disproved; incontrovertible, incontestable, indisputable, irrefutable, undeniable."  *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002) (internal quotation marks omitted); *see also Long*

*Lane Ltd. P'ship v. Bibb*, 159 F. App'x 189, 193 (Fed. Cir. 2005) (per curiam) (characterizing *Am-Pro Protective Agency* as "equating" the two standards).

40.     When invalidity is asserted on the basis of a reference that was considered by the PTO during prosecution of the patent, it is "especially difficult" to overcome the presumption of validity.  *Glaxo Grp.*, 376 F.3d at 1348.  The party asserting invalidity has "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents."  *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984), *abrogated on other grounds by Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); *see also PowerOasis, Inc. v. TMobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008).

41.     A patent challenger bears the burden of persuading the trier of fact that a reference is prior art, and can only meet that burden with clear and convincing evidence of the reference's prior art status.  *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996).

42.     To demonstrate that a reference that is alleged by a defendant to be prior art under certain sections of pre-AIA 35 U.S.C. § 102 is not actually prior art to the asserted claims, the patent holder "bears the burden of producing evidence supporting an invention date earlier than the ostensible prior art reference," but "the burden of proof remains on the defendant to establish by clear and convincing evidence that the patentee's invention date does not precede the date of the ostensible prior art reference."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 575-76 (D. Del. 2008).

43.     A patentee can meet its burden of production through testimony showing that the inventor conceived of and reduced the invention to practice before the date of the alleged prior art reference.  *See Mahurkar*, 79 F.3d at 1576.  "An inventor's testimony on conception can be corroborated through several pieces of evidence, even though no one piece of evidence independently proves conception, and even circumstantial evidence, so long as the evidence supports that the 'inventor's story is credible.'"  *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1076 (Fed. Cir. 2019) (quoting *NFC Tech., LLC v. Matal*, 871 F.3d 1367, 1372 (Fed. Cir. 2017)).  "'There is no particular formula' required for corroboration, and instead, a 'rule of reason' analysis applies to the evaluation of all pertinent evidence."  *Id.* (quoting *Singh v. Brake*, 317 F.3d 1334, 1341 (Fed. Cir. 2003)).  The same requirement for evidence that corroborates inventor testimony on conception also applies to the reduction to practice determination.  *See Holmwood v. Sugavanam*, 948 F.2d 1236, 1238-39 (Fed. Cir. 1991) (stating that the court must apply a "'rule of reason' standard" and evaluate all pertinent evidence "when weighing the credibility of an inventor's story" as to reduction to practice).

## B.    Whether the Asserted Claims Are Invalid As Anticipated

44.     Autel cannot prove by clear and convincing evidence that the Asserted Claims of the Patents-in-Suit are anticipated under 35 U.S.C. § 102.

45.     Invalidation by anticipation requires that every claim limitation be expressly or inherently disclosed in a single prior art reference.  *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008).  The anticipating reference must be enabling.  *Id*.

46.     "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue

15

experimentation." *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991), *overruled in part* by *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009).

47.     Inherent anticipation can only be found "when the reference discloses prior art that must necessarily include the unstated limitation." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002). Inherent anticipation cannot "be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991) (internal quotation marks omitted). Anticipation must be established by clear and convincing evidence. *Orion IP, LLC v. Hyundai Motor Am.*, 605 F. 3d 967 (Fed. Cir. 2010).

48.     Anticipation may be established by proving that the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress, or conceal the invention. 35 U.S.C. § 102(g).

49.     The party challenging the patent bears the burden of proving by clear and convincing evidence clear and convincing evidence that the prior invention disclosed each and every element of all of the claims of the patent that it contends is invalid. *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1037 (Fed. Cir. 2001). In establishing conception, "a party must show possession of every feature recited in the count, and that every limitation of the count must have been known to the inventor at the time of the alleged conception." *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985); *Hitzeman v. Rutter*, 243 F.3d 1345, 1357 (Fed. Cir. 2001). "[A]n inventor who failed to appreciate the claimed inventive features of a device at the time of alleged

conception cannot use his later recognition of those features to retroactively cure his imperfect conception." *Hitzeman*, 243 F.3d at 1358-59 (citing *Heard v. Burton*, 333 F.2d 239, 242-44 (C.C.P.A. 1964)).

50.     Once the challenging party meets its initial burden of proving prior conception and reduction to practice, "the burden of production shifts to the patentee to produce evidence sufficient to create a genuine issue of material fact as to whether the prior inventor has suppressed or concealed the invention.  However, in accordance with the statutory presumption in 35 U.S.C. § 282, the ultimate burden of persuasion remains with the party challenging the validity of the patent." *Apotex*, 254 F.3d at 1037-38 (citing *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994)).  "Once the patentee has satisfied its burden of production, the party alleging invalidity under § 102(g) must rebut any alleged suppression or concealment with clear and convincing evidence to the contrary."  *Id.* at 1038.

51.     "Abandonment, suppression, or concealment may be shown by proof of the prior inventor's active efforts to do so or 'may be inferred based upon the prior inventor's unreasonable delay in making the invention publicly known.'"  *Fleming v. Escort Inc.*, 774 F.3d 1371, 1378 (Fed. Cir. 2014) (quoting *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001)).  Establishing that an invention is publicly known requires evidence that "the public has gained *knowledge of the invention* which will *insure its preservation* in the public domain."  *Palmer v. Dudzik*, 481 F.2d 1377, 1387 (C.C.P.A. 1973).  In addition, "[w]hen the 'inner workings' are the essence of the invention, it is those 'inner workings' that must not be suppressed or concealed in order for the invention to be prior art under section 102(g)."  *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-cv-180-WCB, 2014 WL 2809841, at *6 (E.D. Tex. June 20, 2014).  Where "the parties involved in the [alleged prior invention] . . . took affirmative steps to

17

ensure that the prior invention was *not* made publicly known," § 102(g) will not invalidate the patent. *TQP Dev. LLC v. 1-800-Flowers.com, Inc.*, 120 F. Supp. 3d 600, 612 (E.D. Tex. 2015), *aff'd per curiam sub nom. TQP Dev. LLC v. Newegg, Inc.*, 677 F. App'x 683 (Fed. Cir. 2017).

        **C.**      **Whether the Asserted Claims Are Invalid As Obvious**

      52.      Autel cannot prove by clear and convincing evidence that the asserted claims of the Patents-in-Suit would have been obvious under 35 U.S.C. § 103(a).

      53.      A patent claim is invalid under 35 U.S.C. § 103 only "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a) (2006).

      54.      Obviousness is a question of law based on several underlying issues of fact: (1) the level of skill of the person of ordinary skill in the art; (2) the scope and content of the prior art; (3) the differences between the claimed invention and the teachings of the prior art; and (4) objective indicia of nonobviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1338 (Fed. Cir. 2010). A determination of obviousness requires consideration of all four factors, "and it is error to reach a conclusion of obviousness until all those factors are considered." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016) (en banc) (citing *Eurand, Inc. v. Mylan Pharms., Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.)*, 676 F.3d 1063, 1075-76 (Fed. Cir. 2012)).

      55.      To overcome a patent's statutory presumption of validity and meet its statutory burden of proof, a patent challenger must prove each of the preceding factors by clear and convincing evidence. *Beckson Marine, Inc. v. NFM Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002).  If

the party succeeds in doing so, the party must generally also prove "by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d at 1068-69 (Fed. Cir. 2012) (citing *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)).

56.     For a reference to qualify as prior art for an obviousness determination, it must be "analogous to the claimed invention." *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004).  To qualify as analogous art, the reference must be: (1) from the same field of endeavor, or (2) if not from the same field of endeavor, reasonably pertinent to the particular problem with which the inventor is involved. *In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992).  In determining pertinence, "it is necessary to consider the reality of the circumstances—in other words, common sense—in deciding in which fields a person of ordinary skill would reasonably be expected to look for a solution to the problem facing the inventor." *In re Oetiker*, 977 F.2d 1443, 1447 (Fed. Cir. 1992) (citation and internal quotation marks omitted).  References sharing general characteristics that do not relate to a problem in the particular context addressed by the invention are not reasonably pertinent. *See, e.g.*, *Wang Labs., Inc. v. Toshiba Corp.*, 993 F. 2d 858, 864-65 (Fed. Cir. 1993); *Oetiker*, 977 F.2d at 1447.

### D.     Whether the Asserted Claims Are Invalid For Lack of Enablement

57.     Autel cannot prove by clear and convincing evidence that the asserted claims of the Patents-in-Suit are not enabled under 35 U.S.C. § 112.

58.     An enabling specification requires the patent to "teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Union*

*Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1185 (Fed. Cir. 2002) (internal quotation marks omitted); *Teva*, 664 F. Supp. 2d at 469.  The specification need not spell out every detail of the invention, otherwise "patent specifications would turn into production specifications, which they were never intended to be."  *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004) (quoting *In re Gay*, 309 F.2d 769, 774 (C.C.P.A. 1962)); *accord LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("[I]t is unnecessary to spell out every detail of the invention in the specification . . . .").  The challenging party bears the burden of proving, by clear-and-convincing evidence, that the asserted patent is invalid for lack of enablement. *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013).

59.    A patentee is entitled to claim an invention generally, so long as the invention as a whole is adequately enabled.  *See Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1214 (Fed. Cir. 1991) ("In affirming the district court[] . . ., we do not intend to imply that generic claims to genetic sequences cannot be valid where they are of a scope appropriate to the invention disclosed by an applicant.  That is not the case here, where Amgen has claimed every possible analog of a gene containing about 4,000 nucleotides, with a disclosure only of how to make EPO and [] very few analogs.").  Although "disclosure of one or two species *may* not enable a broad genus," such a genus is enabled if the POSA would have been able to bridge the gaps between the disclosures and the claim breadth without undue experimentation.  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1336-37 (Fed. Cir. 2003) (emphasis in original).

60.    In assessing whether "undue experimentation" is required, "[t]he key word is 'undue,' not experimentation."  *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1336-37 (Fed. Cir. 2005) (quoting *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988)).  Factors

to be considered in determining whether a disclosure requires undue experimentation include "(1) the quantity of the experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d at 737.

61.     In practicing the full scope of the claim, the POSA is presumed to follow, rather than ignore or violate, the guidance in the specification—including any examples provided therein. *See, e.g.*, *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 542 (S.D. Tex. 2006).

62.     "[T]he specification need only teach those aspects of the invention that one skilled in the art could not figure out without undue experimentation." *Warner-Lambert Co.*, 418 F.3d at 1337 (citing *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196-97 (Fed. Cir. 1999)); *Wands*, 858 F.2d at 736-37 ("Enablement is not precluded by the necessity for some experimentation such as routine screening."). "That some experimentation is necessary does not preclude enablement; the amount of experimentation, however, must not be unduly extensive." *DeGeorge v. Bernier*, 768 F.2d 1318, 1323 (Fed. Cir. 1985) (quoting *Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984)) (internal quotation marks omitted). Even extensive experimentation will not render the experiments undue when the experiments involve repetition of known or commonly used techniques. *Cephalon*, 707 F.3d at 1339; *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998). Thus, the focus "is not merely quantitative, since a considerable amount of experimentation is permissible, if it is merely routine . . . ." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996) (citation and quotation omitted).

21

63.    *Ipse dixit* statements by experts that performing the particular experimentation

would be "difficult" or "complicated" are not sufficient to constitute clear and convincing

evidence that undue experimentation would be required.  *Cephalon, Inc.*, 707 F.3d at 1338

(citing *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 294 (Fed. Cir.

1985)) ("Lack of factual support for expert opinion going to factual determinations, however,

may render the testimony of little probative value in a validity determination.").  Undue

experimentation is determined based on the evidence of the actual amount of experimentation

necessary to practice the invention; it is not based on the expectation of experimentation.  *See id.*

at 1339 (party challenging validity has "the burden to show by way of testimony or documentary

evidence the amount of experimentation needed to calculate a formulation"); *Moba, B.V. v.

Diamond Automation, Inc.*, 325 F.3d 1306, 1321 (Fed. Cir. 2003) (upholding finding that patent

was enabled because there was no "record evidence recounting the amount of experimentation

one of skill in the art would require to develop" the invention).

64.    Data, experiments, and other information arising after the priority date can be

used to show that a claim was enabled as of its priority date.  *See, e.g.*, *Amgen Inc. v. Hoechst

Marion Roussel, Inc.*, 126 F. Supp. 2d 69, 162 (D. Mass. 2001) ("The extent of the enabling

disclosure is also demonstrated by a series of post-filing publications that describe the creation

[of embodiments of the invention] using the techniques taught in the . . . specification."), *aff'd in

rel. part*, 314 F.3d 1313, 1336-37 (Fed. Cir. 2003); *Johns Hopkins Univ.*, 152 F.3d at 1361

("[Defendant's expert] was able to produce [embodiments of the invention], which, if anything,

suggests that the disclosure . . . in the patent was sufficient to enable those of ordinary skill to

produce [embodiments of the invention].");  *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 657 F.

Supp. 2d 967, 1009 (S.D. Ind. 2009) ("[E]ven though the results of the [study] were not available

until . . . after the priority filing date of the [patent] . . . those results are available to overcome

the doubts as to the asserted utility since they pertain to the accuracy of a statement set out in the

claim specification and go to prove that the disclosure was in fact enabling . . . when filed.").

65.     To be enabling, a patent does not need to guarantee that all embodiments of the

invention will be operative.  *See Atlas Powder*, 750 F.2d at 1576 ("It is not a function of the

claims to specifically exclude . . . possible inoperative substances . . . ." (quoting *In re Dinh-*

*Nguyen*, 492 F.2d 856, 858-59 (C.C.P.A. 1974))); *Warner Lambert Co. v. Teva Pharms. USA,*

*Inc.*, 2007 WL 4233015, at *15 (D.N.J. 2007) ("A patent can support extremely broad claims

even if some of the embodiments are inoperative.").  Thus, the fact that certain embodiments

failed in practice does not demonstrate non-enablement.  *See, e.g.*, *In re Wands*, 858 F.2d at 739

n.29 ("Even if we were to accept the PTO's 2.8% success rate, we would not be required to reach

 a conclusion of undue experimentation.").

### E.     Whether the Asserted Claims Are Invalid For Lack of Description

66.     Autel cannot prove by clear and convincing evidence that the asserted claims of

the Patents-in-Suit are insufficiently described under 35 U.S.C. § 112.

67.     To meet the written-description requirement of 35 U.S.C. § 112(a), the patent

must sufficiently convey to the POSA that the inventors possessed the subject matter of the

claims as of the priority date.  *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336

(Fed. Cir. 2011), *cert. denied*, 556 U.S. 1196 (2012).  "[T]he party challenging validity[] ha[s]

the burden to prove by clear and convincing evidence that the written description requirement

[is] not met."  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1338 (Fed. Cir. 2016).

68.     "[P]ossession" does not mean actual, physical possession of the claimed

invention; the specification need only "describe an invention understandable to [the] skilled

artisan and show that the inventor actually invented the invention claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). "Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date." *Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006).

69.     "[T]he written description requirement does not demand either examples or an actual reduction to practice." *Ariad Pharms.*, 598 F.3d at 1352. Rather, the invention can be complete even where it has not actually been reduced to practice. *Falkner v. Inglis*, 448 F. 3d 1357, 1366-67 (Fed. Cir. 2006). There is thus no requirement that a patent specification contain data demonstrating that the invention works or otherwise proving that the inventor had made the invention. *Alcon Research*, 745 F.3d at 1191.

70.     Section 112 does not require the patentee to describe unrecited elements or all compositions comprising the claimed invention; the patent's specification need only allow the POSA to recognize that the inventor possessed the claimed invention, not all potential infringing products. *In re Application of Wakefield*, 422 F.2d 897, 903 (C.C.P.A. 1970); *see also Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1189 (Fed. Cir. 2014).

71.     Where a patent claims a genus of inventions, "every species in a genus need not be described." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997) (citing *Utter v. Hiraga,* 845 F.2d 993, 998-99 (Fed. Cir. 1988)). In such circumstances, a patent need only describe "a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Ariad Pharms.*, at 598 F.3d at 1350 (quoting *Regents of the Univ. of Cal.*, 119 F.3d at 1568-69). Thus, even a single representative embodiment can provide written description support for a genus. *See Invitrogen Corp. v.*

24

*Clontech Labs., Inc.*, 429 F.3d 1052, 1073 (Fed. Cir. 2005); *Bilstad v. Wakalopulos,* 386 F.3d 1116, 1124-25 (Fed. Cir. 2004).  Moreover, because a generic description do not necessarily qualify as a disclosure for the purposes of anticipation or obviousness, there is "no inconsistency in awarding a generic [claim] to one inventor, while awarding a patentably distinct species [claim] to another."  *Utter*, 845 F.2d at 998 (citing *Hester v. Allgeier*, 687 F.2d 464 (C.C.P.A. 1982)).

72.    As with other validity issues, a party alleging insufficient written description must provide factual support for its legal allegations. Thus, general or conclusory expert testimony is not enough to support a finding of insufficient written description.  *See, e.g.*, *WBIP*, 829 F.3d at 1339 (citing *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004)).

### F.    Whether the Asserted Claims Are Invalid By Operation of the On-Sale-Bar

73.    Autel cannot prove by clear and convincing evidence that the asserted claims of the Patents-in-Suit are invalid because of the "on-sale bar."  35 U.S.C. § 102.

74.    The on-sale bar applies "when two conditions are satisfied before the critical date." *Plaff v. Wells Elecs., Inc.*, 525 U.S. 55, 65 (1998).  "First, the product must be the subject of a commercial offer for sale."  *Id*. at 67-68.  "Second, the invention must be ready for patenting.  That condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."  *Id*.

G. **Legal Principles Relevant to Validity**

1. **Establishing Prior Art Status, Enablement, and Priority Date**

75.     To qualify as a "printed publication" under Section 102, a reference "must have been sufficiently accessible to the public interested in the art." *Id.*  This so called "public accessibility" is deemed as "the touchstone in determining whether a reference constitutes a 'printed publication' bar" under 35 U.S.C. § 102.  *Blue Calypso, LLC v. Groupon, Inc.,* 815 F. 3d 1331, 1348 (Fed. Cir. 2016) (citing *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986)).  A reference will be considered publicly accessible if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it."  *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F. 3d 1340, 1350 (Fed. Cir. 2008).  Public accessibility of an online reference, for example, may be demonstrated by the evidence showing that "the website at which the [reference] was located was indexed and there by findable by an internet search engine."  *Blue Calypso*, 815 F. 3d at 1349 (internal citation omitted); *see also Open Text S.A. v. Box, Inc.*, Case No. 13-cv-04910-JD, 2015 WL 428365, *2 (N.D. Cal. 2015) (granting summary judgment that a computer program could not be used as evidence of prior art because accused infringer failed to authenticate evidence it relied on to show that website containing the program was indexed to make the program accessible to the public).

76.     "To render a claim obvious, the prior art, taken as a whole, must enable a skilled artisan to make and use the claimed invention."  *Raytheon Techs. Corp. v. General Elec. Co.*, 993 F.3d 1374, 1380 (Fed. Cir. 2021) (citing *In re Kumar*, 418 F.3d 1361, 1368 (Fed. Cir. 2005). "Whether a prior art reference is enabling is a question of law based upon underlying factual findings." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). "In

26

the absence of such other supporting evidence to enable a skilled artisan to make the claimed

invention, a standalone § 103 reference must enable the portions of its disclosure being relied

upon." *Raytheon*, 993 F.3d at 1381.

77.     In order to show that a U.S. patent document is prior art as of the filing date of a

provisional application to which that reference claims priority, i.e. that a purportedly prior art

reference is entitled to the filing date of its provisional application, the patent challenger must

show (1) that one or more claims in the allegedly prior art patent document are supported by the

provisional application, i.e, the allegedly prior art patent document makes a valid priority claim,

and (2) that the provisional application contains the disclosure in the allegedly prior art patent

document relied upon by the patent challenger to claim invalidity.  *See Dynamic Drinkware, LLC

v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1381-82 (Fed. Cir. 2015); *Godo Kaisha IP Bridge 1 v.

TCL Commc'n Tech. Holdings Ltd.*, No. CV 15-634-JFB, 2019 WL 1879984, at *4, n.3 (D. Del.

Apr. 26, 2019).

78.     For a prior art reference to claim priority from the filing date of its provisional

application, it must satisfy 35 U.S.C. § 119(e)(1) (2006), which provides that:

> An application for patent filed under section 111(a) or section 363 of this title for an
> invention disclosed in the manner provided by the first paragraph of section 112 of this
> title in a provisional application filed under section 111(b) of this title, by an inventor or
> inventors named in the provisional application, shall have the same effect, as to such
> invention, as though filed on the date of the provisional application filed under section
> 111(b) of this title. . . .

"In other words, the specification of the provisional must 'contain a written description of the

invention and the manner and process of making and using it, in such full, clear, concise, and

exact terms,' 35 U.S.C. § 112 ¶ 1, to enable an ordinarily skilled artisan to practice the invention

claimed in the non-provisional application."  *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,

298 F. 3d 1290, 1294 (Fed. Cir. 2002) (emphases in original); *see Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F. 3d 1375, 1378 (Fed. Cir. 2015).

### 2.      Obviousness is Determined from the Perspective of the Person of Ordinary Skill in the Art

79.      Obviousness is determined as of the effective filing date of the claimed invention, from the viewpoint of a hypothetical person of ordinary skill in the art ("POSA").  35 U.S.C. § 103.

80.      The factors relevant to determining the attributes of the POSA are the "'(1) educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field.'"  *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256-58 (Fed. Cir. 2007) (quoting *Envt'l Designs, Ltd. v. Union Oil Co.*, 713 F. 2d 693, 696 (Fed. Cir. 1983)).

81.      The POSA may possess skills and experience from multiple disciplines, and may have the attributes of a team of people working together.  *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1193 (Fed. Cir. 2008); *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 321 (S.D.N.Y. 2004).

### 3.      The Obviousness Inquiry Cannot Involve Hindsight

82.      Courts must be careful not to "slip[] into use of hindsight" in evaluating the claimed invention.  *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966) (internal quotation marks omitted); *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F. 3d at 997; *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-72 (Fed. Cir. 2000).  "[T]he proper analysis requires a form of amnesia that 'forgets' the invention and analyzes the prior art and understanding of the

problem at the date of invention." *Mintz v. Dietz & Watson, Inc.*, 679 F. 3d 1372, 1379 (Fed. Cir. 2012).

83.     For that reason, it would be improper to assess obviousness from the starting point of the claimed invention and then asking whether each of the limitations of the claim existed in the prior art. *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) (holding that the defendant did not meet its burden because its expert "simply retraced the path of the inventor with hindsight"); *see also Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000); *In re Kubin*, 561 F.3d 1351, 1359 (Fed. Cir. 2009); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1051 (Fed. Cir. 1988) (holding that the district court erred by using hindsight to reconstruct the invention from prior art, rather than viewing the invention from the perspective of the POSA at the time the invention was made).

84.     The "inventor's own path itself never leads to a conclusion of obviousness; that is hindsight." *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012); *see also* 35 U.S.C. § 103(a) (pre-AIA) ("Patentability shall not be negatived by the manner in which the invention was made."). "In retrospect, [the inventor's] pathway to the invention, of course, seems to follow the logical steps to produce these properties, but at the time of invention, the inventor's insights, willingness to confront and overcome obstacles, and yes, even serendipity, cannot be discounted." *Ortho-McNeil Pharm., Inc.*, 520 F.3d at 1364.

85.     However, the inventors' own difficulties in arriving at the claimed invention may suggest that the invention was not obvious. *See, e.g.*, *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997) (finding the inventor's "extensive efforts to solve the problem" relevant in determination of nonobviousness); *In re Dow Chem. Co.*, 837 F. 2d 469,

473 (Fed. Cir. 1988) (finding years of research by the patentee that preceded the claimed invention to be "entitled to fair evidentiary weight" in determining nonobviousness).

86.    Where there is a "considerable time lapse" between the prior art relied upon to prove obviousness and the patent's filing date, this suggests that the claimed invention would not have been obvious and that the alleged evidence depends impermissibly on hindsight.  *See Leo Pharm. Prods., Ltd. v. Rea*, 726 F. 3d 1346, 1356 (Fed. Cir. 2013) ("The elapsed time between the prior art and the '013 patent's filing date evinces that the '013 patent's claimed invention was not obvious to try.  Indeed this considerable time lapse suggests instead that the Board only traverses the obstacles to this inventive enterprise with a resort to hindsight."); *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552-TSB, 2014 WL 12656554, at *23 (S.D. Ohio July 3, 2014) ("[T]he age of the Saffir reference is strong evidence that the challenged claims are not obvious based on the combination of Saffir and Gaglio.").

87.    References published after the priority date of a claimed invention cannot be used to prove that the invention would have been obvious. However, certain information published after the priority date may be considered as evidence of non-obviousness.  *See, e.g.*, *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*, *USA*, 748 F. 3d 1354, 1360 (Fed. Cir. 2014) ("'[T]here is no requirement that an invention's properties and advantages were fully known before the patent application was filed, or that the patent application contains all of the work done in studying the invention, in order for that work to be introduced into evidence in response to litigation attack.'" (quoting *Knoll Pharm. Co. v. Teva Pharm USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004) (per curiam))); *Reckitt Benckiser Pharm. Inc. v. Watson Labs., Inc.*, Nos. 13-1674-RGA & 14-442-RGA, 2015 WL 6456551, at *1-2 (D. Del. Oct. 26, 2015)

("[R]eferences are not irrelevant simply by virtue of having been published after the patent priority date.").

### 4.    The POSA Must Have Had a Reason to Make the Claimed Invention

88.    For a claim to be obvious, the POSA must "have been motivated to combine the teachings of the prior art references to achieve the claimed invention." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d at 994 (internal quotation marks omitted); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007); *Innogenetics, N.V. v. Abbott Labs.*, 512 F. 3d 1363, 1373-74 (Fed. Cir. 2008).

89.    "[T]o establish a prima facie case of obviousness based on a combination of elements in the prior art, the law requires a motivation to select the references and to combine them in the particular claimed manner to reach the claimed invention." *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1379 (Fed. Cir. 2006).  In other words, the party alleging obviousness must prove that the POSA would have had an affirmative reason to both select particular features of the prior art and to modify or combine those features to achieve those inventions.  *See, e.g.*, *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011) ("In this case, the patent claims a new composition or formulation to deliver an FDA-approved active ingredient.  Thus, the claimed invention is not obvious if [the POSA] would not select and combine the prior art references to reach the claimed composition or formulation."); *Endo Pharm. Sols., Inc. v. Custopharm Inc.*, 894 F.3d 1374, 1380 (Fed. Cir. 2018) ("To meet its burden, Custopharm needed to do more than merely show that the prior art does not preclude lowering the dose of TU.  Custopharm needed to affirmatively demonstrate that a skilled artisan would have been motivated to lower the dose of TU despite no clear evidence of overdosing under the FDA Guidelines.").

31

90.     Merely because something is "known" in the literature does not mean that the POSA would have been motivated to pursue or incorporate it.  *See Unigene Labs.*, 655 F.3d at 1360 ("Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination.").  Because "inventions in most, if not all, instances rely upon building blocks long since uncovered," "it can be important to identify a reason that would have prompted" the POSA to select and combine the knowledge in the field as it existed on the priority date.  *See KSR*, 550 U.S. at 418; *Bristol-Myers Squibb Co. v. Teva-Pharms. USA, Inc.*, 752 F.3d 967, 973 (Fed. Cir. 2014); *Alcon, Inc. v. Teva Pharm. USA, Inc.*, 664 F. Supp. 2d 443, 462 (D. Del. 2009).

91.     An expectation that a certain modification of the prior art may be successful is not sufficient to establish obviousness.  The POSA must have a concrete reason to make that change—for example, to solve a recognized problem in the art.  *See KSR*, 550 U.S. at 421; *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d 1368, 1378 (Fed. Cir. 2012).

92.     An invention is "obvious to try" only if there is a reason to do so (for example, market pressure) and there are "a finite number of identified, predictable solutions" to be tried.  *KSR*, 550 U.S. at 421 (internal quotation marks omitted).  An invention is not obvious to try when "the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful."  *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988). "When a field is 'unreduced by direction of the prior art,' and when prior art gives 'no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful,' an invention is not obvious to try."  *Unigene Labs.*, 655 F. 3d at 1361 (citation omitted); *see also Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,

32

520 F. 3d 1358, 1364 (Fed. Cir. 2008) (stating the number of options must be "finite (and small in the context of the art)").

93.     "'Obvious to try'" does not always equate to obviousness, particularly when "the prior art provided at most general motivation to conduct trial and error experimentation in a decidedly unpredictable field." *Cephalon, Inc. v. Watson Labs., Inc. (In re Armodafinil Patent Litig.)*, 939 F. Supp. 2d 456, 501 (D. Del. 2013). "Merely asserting . . . that the POSA 'would have arrived at the claimed invention through routine optimization does not demonstrate obviousness." *Alcon Research, Ltd. v. Watson Labs., Inc.*, No. 15-1159-GMS, 2018 WL 1115090, at \*23 (D. Del. Mar. 1, 2018) (quoting *In re Stepan Co.*, 868 F.3d 1342, 1346 (Fed. Cir. 2017)).

### 5.     The POSA Must Have Had a Reasonable Expectation of Success

94.     A showing of obviousness also requires proof, by clear and convincing evidence, that the POSA at the time of the priority date would have had a reasonable expectation of success in arriving at the claimed invention. *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*, 738 F.3d 1337, 1345-46 (Fed. Cir. 2013).  To have a reasonable expectation of success in combining the teachings of the prior art references, the POSA "must be motivated to do more than merely to 'vary all [of the] parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful.'" *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) (quoting *In re O'Farrell*, 853 F.2d at 903).  Similarly, the POSA must have been motivated to do more than "to pursue a 'general approach that seemed to be a promising field of experimentation, where the

prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it.'" *Id.* (citation omitted).

95.      Even where the prior art would have motivated the POSA to perform experiments that would ultimately have resulted in the claimed invention, the invention would not have been obvious if the POSA would not have had a reasonable expectation that such experiments would succeed in yielding the claimed properties. *See Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir. 2013) ("There is no indication in the prior art which of these possible formulations would be the most promising to try. . . . Without a reasonable expectation of success or clues pointing to the most promising combinations, an artisan could have spent years experimenting without success."); *In re Cyclobenzaprine*, 676 F.3d at 1070 ("While it may have been obvious to experiment with the use of the same PK profile when contemplating an extended-release formulation, there is nothing to indicate that a skilled artisan would have had a reasonable expectation that such an experiment would succeed in being therapeutically effective.").

96.      As with the POSA's reason for modifying or combining the prior art, the POSA's expectation of success must be assessed with respect to the actual needs in the pertinent art. *See Institut Pasteur*, 738 F.3d at 1345-46.  Thus, in assessing whether the POSA would have had a reasonable expectation of success, a fact finder must determine whether the POSA would have believed that the invention would succeed based on the goals that the POSA would have had, regardless of whether those goals are reflected in particular claim limitations. *See, e.g.*, *id.* (finding that the POSA would not have had a reasonable expectation of practicing a method of manipulating a living cell based on prior art references stating that such a method would be toxic to the cell, even though the claims did not expressly require that the cell remain viable).

6.     **The Obviousness Inquiry Requires Evaluation of the Prior Art as a Whole**

97.     To guard against the use of hindsight, obviousness must be assessed based on the prior art as a whole. *Discovision Assocs. v. Disc Mfg., Inc.*, 25 F. Supp. 2d 301, 345 (D. Del. 1998); *Carl Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 785 (Fed. Cir. 1983); *see also Ortho-McNeil*, 520 F.3d at 1364 (rejecting obviousness challenge on the basis that challenger's expert "discounted the number and complexity of the alternatives"); *Alcon Research, Ltd.*, 2018 WL 1115090, at *23 (rejecting obviousness challenge where defendants had failed to show that the POSA "would have made the many necessary modifications" to obtain the claimed invention where the POSA would have "face[d] an array of decisions"). Thus, evidence showing that the POSA would *not* have been motivated or had reason to make or use the claimed invention must be considered. *See, e.g.*, *Impax Labs. Inc. v. Lannet Holdings, Inc.*, 893 F.3d 1372, 1380-81 (Fed. Cir. 2018); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1375 (Fed. Cir. 2011) (citing *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006)); *Nevro Corp. v. Stimwave Techs., Inc.*, No. 19-325-CFC, 2019 WL 3322368, at *13 (D. Del. July 24, 2019).

98.     Similarly, each prior art reference must be considered in its entirety; a party may not cherry-pick portions of references based on their relevance to the claim. It is improper to "'pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one skilled in the art.'" *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F. 2d 443, 448 (Fed. Cir. 1986) (quoting *In re Wesslau*, 353 F.2d 238, 241 (C.C.P.A. 1965)).

99.     References that teach away from pursuing the invention at issue undermine purported obviousness. *Procter & Gamble Co.*, 566 F.3d at 994; *Star Scientific, Inc. v. R.J.*

35

*Reynolds Tobacco Co.*, 655 F.3d 1364, 1376 (Fed. Cir. 2011).  A reference teaches away from the invention "when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant . . . [or] if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1359-60 (Fed. Cir. 1999) (alterations in original) (internal quotation marks omitted); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1327 (Fed. Cir. 2009).  The reference need not specifically address an aspect of the invention recited in the claim to teach away from the invention. *Institut Pasteur*, 738 F.3d at 1345-46.

100.     "[W]here the prior art 'teaches away' from the claimed invention rather than motivating a person of ordinary skill in the art to do what the patentee has done, the claimed invention is nonobvious."  *Mitsubishi Chem. Corp. v. Barr Labs, Inc.*, 718 F. Supp. 2d 382, 426 (S.D.N.Y. 2010) (citing *In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986)), *aff'd*, 435 F. App'x 927 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009) ("An inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements."); *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1552-53 (Fed. Cir. 1983).

101.     A prior art reference that teaches away "alone can defeat [an] obviousness claim." *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349-50 (Fed. Cir. 2000).

### 7.    A Patentee May Negate Prima Facie Obviousness

102.    To rebut an allegation of obviousness, a patentee may refute the elements of the

*prima facie* case.  Thus, even where the prior art discloses each of the claimed elements, a

patentee can establish that the invention would not have been *prima facie* obvious by showing

that the POSA would have been motivated or had reason *not* to make the invention or that the

POSA would have expected the invention *not* to be successful *Star Scientific*, 655 F.3d at 1375;

*DyStar Textilfarben*, 464 F.3d at 1360; *Nevro*, 2019 WL 3322368, at *13.

103.    The patentee may also refute the *prima facie* case through evidence of secondary

considerations of non-obviousness.  *See Transocean Offshore Deepwater Drilling, Inc. v.*

*Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1348 (Fed. Cir. 2012) (affirming jury's decision

finding claims non-obvious, despite it having been established as a matter of law that the prior

art taught "every limitation of the asserted claims and provide[d] a motivation to combine their

respective teachings," because the patentee "presented compelling objective evidence of

nonobviousness").

104.    Moreover, even where the prior art would have provided the POSA with some

positive reason or expectation, a patentee can demonstrate that the prior art *as a whole* would not

have provided that the POSA with that reason or expectation.  *See Karsten Mfg. Corp. v.*

*Cleveland Golf Co.*, 242 F.3d 1376, 1385 (Fed. Cir. 2001) ("conflicting teachings cannot

reasonably be viewed as suggesting their combination" where the only possible reason to

combine those references is "the hindsight knowledge" of the claimed invention); *In re Young*,

927 F.2d 588, 591 (Fed. Cir. 1991) ("When prior art contains apparently conflicting references,

the Board must weigh each reference for its power to suggest solutions to an artisan of ordinary

skill. . . . The Board, in weighing the suggestive power of each reference, must consider the

degree to which one reference might accurately discredit another."). For example, a patentee can show that the party alleging obviousness "discounted" the "number and complexity of the alternatives" in conducting its analysis. *See Ortho-McNeil Pharm.*, 520 F. 3d at 1364.

### 8. Objective Indicia of Nonobviousness Must be Considered

105. "Objective indicia of nonobviousness must be considered in every case where present." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d at 1048. A court's reliance on objective indicia of nonobviousness helps "guard against slipping into use of hindsight." *Graham*, 383 U.S. at 36 (internal quotation marks omitted). Objective indicia, such as "commercial success, failure of others, long-felt need, and unexpected results," "must be considered *before* a conclusion on obviousness is reached and is not merely 'icing on the cake.'" *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir. 1986). Evaluating objective indicia "is not just a cumulative or confirmatory part of the obviousness calculus." *Ortho-McNeil Pharm.*, 520 F.3d at 1365. Rather, objective indicia are "independent evidence of nonobviousness." *Id.* Indeed, objective indicia "may often be the most probative and cogent evidence" of nonobviousness. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983).

106. For "the evidence to be given substantial weight in an obviousness decision," there must be "a nexus between the merits of the claimed invention and" the objective indicia of nonobviousness. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327 (Fed. Cir. 2008) (quotation marks and citation omitted), *overruled in part on other grounds by Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015). "[I]f the marketed product embodies the claimed features, and is coextensive with them, then a nexus is presumed and the burden shifts to the party asserting obviousness to present evidence to rebut the presumed

nexus." *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). The patent challenger bears the burden of clearly and convincingly proving the obviousness of the claimed invention in light of all the evidence, including objective indicia of nonobviousness. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d at 1077-79.

107. In order for secondary considerations to have substantial weight, a nexus must be established between the evidence and the merits of the claimed invention. *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011). There is a presumption of a nexus when the patentee shows "that the asserted objective evidence is tied to a specific product and that product is 'the invention disclosed and claimed in the patent.'" *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016) (citations omitted). For purposes of evaluating objective indicia of nonobviousness, the product may be shown to be an embodiment of a claim under the doctrine of equivalents. *Dome Patent, L.P. v. Rea*, 59 F. Supp. 3d 52, 83-84 (D.D.C. 2014), *aff'd*, 799 F.3d 1372 (Fed. Cir. 2015). Thus, when the differences between the embodiment and the claims are "insignificant," the features and performance of the equivalent product "can shed light on the patent's obviousness." *See id.* at 84.

108. Relevant objective indicia of nonobviousness may arise after the filing of the patent, and need not be described in the specification. *See Genetics Inst. LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1307-08 (Fed. Cir. 2011) ("[I]t would be error to prohibit a patent applicant or patentee from presenting relevant indicia of nonobviousness, whether or not this evidence was available or expressly contemplated at the filing of the patent application.").

109.    The Federal Circuit has consistently held that any objective indicia of nonobviousness presented by a patentee can only strengthen, not weaken, a conclusion of nonobviousness, since such evidence is not a requirement for patentability.  *See Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 878 (Fed. Cir. 1993) ("[The patentee] did not show objective indicia of non-obviousness.  Such evidence, if present, would weigh in favor of non-obviousness, although the lack of such evidence does not weigh in favor of obviousness."); *Custom Assocs., Inc. v. Jeffrey Allan Indus, Inc.*, 807 F.2d 955, 960 (Fed. Cir. 1986) ("[T]he absence of objective evidence does not preclude a holding of nonobviousness because such evidence is not a requirement for patentability."); *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 739 n.13 (Fed. Cir. 1986) ("Though the absence of objective evidence is a neutral factor, if present it 'may often establish that an invention appearing to have been obvious in light of the prior art was not.'" (quoting *Stratoflex*, 713 F.2d 1538); *Takeda Pharm. Co. v. Handa Pharm., LLC*, C.A. No. 11-840-JCS, 2013 WL 9853725, at *66 (N.D. Cal. Oct. 17, 2013) ("[T]he absence of secondary considerations does not prove obviousness.").  The lack of objective indicia of non-obviousness is thus a "neutral factor."  *Custom Assocs., Inc.*, 807 F.2d at 960; *Medtronic, Inc.*, 799 F.2d at 739 n.13.

### 9.    Copying Indicates Non-Obviousness

110.    "Copying may indeed be another form of flattering praise for inventive features." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1311 (Fed. Cir. 2010).  The fact that a competitor copied technology suggests how it is nonobvious.  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1336 (Fed. Cir. 2016); *see also Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1054 (Fed. Cir. 2016); *Transocean*, 699 F.3d at 1352 (internal communications referencing need to incorporated patented "efficiency improvement features" contributed to secondary

considerations sufficient to overcome *prima facie* obviousness case).  Evidence of copying relevant to secondary considerations of non-obviousness may be shown, for example, evidence that the competitor analyzed the strengths of the patented design in comparison to its own approach and opted to copy the patented design.  *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1356-57 (Fed. Cir. 2013).

### 10.    Unexpected Properties Indicate Non-Obviousness

111.    A patentee can make a showing of unexpected properties by demonstrating "that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected."  *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995); *see also Procter & Gamble*, 566 F.3d at 994, 997-98 (holding that test data showing that the claimed composition possessed "unexpectedly improved properties or properties that the prior art does not have" supported finding of nonobviousness) (internal quotation marks omitted).  Almost by definition, "that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious."  *In re Soni*, 54 F.3d at 750.  Thus, unexpected properties alone can rebut a *prima facie* case of obviousness.  *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006) (citing *In re De Blauwe*, 736 F.2d 699, 706 n.8 (Fed. Cir. 1984)).  Whether properties of an invention are unexpected is evaluated by comparing the invention to prior art.  *See id.* at 970.

112.    "[E]vidence of unexpected results may be used to rebut a case of *prima facie* obviousness even if that evidence was obtained after the patent's filing or issue date."  *Genetics Inst.*, 655 F.3d at 1307.

113.    An invention's properties were "unexpected" if the invention exhibited "substantially improved results" over the prior art.  *Bristol-Myers Squibb Co. v. Teva Pharm.*

41

*USA, Inc.*, 769 F.3d 1339, 1344 (Fed. Cir. 2014) (per curiam) (emphasis and internal quotation marks omitted).  Although under some circumstances unexpected "differences in kind" can be more persuasive than "differences in degree," courts should make a fact-specific determination as to whether an invention resulted in unexpected properties by "consider[ing] the substantiality of the differences between the properties of the prior art and those of the invention to determine the significance of those differences."  *See id.*

114.    Unexpected results need not have "absolute identity of scope" with the asserted claims, and a showing of unexpected results is not undermined by a single failed embodiment. *Genetics Inst.*, 655 F.3d at 1308-09.  Rather, the unexpected results inquiry requires examination of the "claimed subject matter as a whole."  *Id.* at 1309 (internal quotation marks omitted).

### 11.    Satisfaction of a Long-Felt Need Indicates Non-Obviousness

115.    Evidence that the patented invention satisfied a long-felt but unmet need that existed when the patentee filed the patent application may also support a finding of nonobviousness.  *Procter & Gamble Co. v. Teva Pharma. USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009); *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1339 (Fed. Cir. 2010).  A long-felt need arises when there is "an articulated identified problem [as of the patent's filing date] and evidence of efforts to solve that problem."  *AstraZeneca Pharm. LP v. Anchen Pharm., Inc.*, Nos. 10-cv-1835 et al., 2012 WL 1065458, at *48 (D.N.J. Mar. 29, 2012) (alteration in original) (internal quotation marks omitted), *aff'd, per curiam* 498 F. App'x 999 (Fed. Cir. 2013).

116.    "[E]vidence of simultaneous invention cannot alone show obviousness."  *Regents of Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1295-96 (Fed. Cir. 2018).  Rather, such evidence must be weighed "in light of all the circumstances," and only weighs in favor of

obviousness (and against a finding of long-felt but unmet need and failure of others) if it "*solved the [long-felt] need.*" *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 883-84 (Fed. Cir. 1998); *see also Regents*, 903 F.3d at 1296 ("'[E]ach case must be decided in its particular context, including the characteristics of the science or technology, its state of advance, the nature of the known choices, the specificity or generality of the prior art, and the predictability of results in the area of interest.'" (quoting *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1352 (Fed. Cir. 2008)).  Moreover, while simultaneous invention may be evidence of a motivation to combine prior art references, it does not necessarily indicate an expectation of success prior to the completion of experimentation.  *See Regents*, 903 F.3d at 1296.

### 12.    Commercial Success Indicates Non-Obviousness

117.    "Commercial success is relevant because the law presumes an idea would successfully have been brought to market sooner, in response to market forces, had the idea been obvious to persons skilled in the art." *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005); *Exelis Inc. v. Cellco P'Ship*, No. 09-190-LPS, 2012 WL 6043494, at *13 (D. Del. Nov. 6, 2012) (citing *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997) (public and commercial response to invention is factor to be considered in determining obviousness and is entitled to fair weight)).  Evidence of commercial success can be the most probative evidence of nonobviousness in the record. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) (citing *Stratoflex*, 713 F.2d at 1538) ("[T]he commercial success of a patented invention is clearly important.  That evidence is 'secondary' in time does not mean that it is secondary in importance.").

118.    "A *prima facie* case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing . . . that is commercially successful is the

43

invention disclosed in and claimed in the patent." *Demaco Corp. v. F. von Langsdorff Licensing, Ltd.*, 851 F.2d 1387,1392 (Fed. Cir. 1998).  Once the patentee has established a *prima facie* case of nexus, "the burden of coming forward with evidence in rebuttal shifts to the challenger."  *Id.* at 1393 (holding that challenger did not rebut *prima facie* case); *see also J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) ("If a patentee makes the requisite showing of nexus between commercial success and the patented invention, the burden shifts to the challenger to prove that the commercial success is instead due to other factors extraneous to the patented invention, such as advertising or superior workmanship.").

119.    Commercial success is "usually shown by significant sales in a relevant market." *Galderma Labs. L.P. v. Tolmar, Inc.*, 737 F.3d 731, 740 (Fed. Cir. 2013); *see also Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1579 (Fed. Cir. 1991).

### 13.    Skepticism Indicates Non-Obviousness

120.    Evidence of skepticism also supports a conclusion of non-obviousness.  *See United States v. Adams*, 383 U.S. 39, 52 (1966); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1344 (Fed. Cir. 2016).  "If industry participants or skilled artisans are skeptical about whether or how a problem could be solved or the workability of the claimed solution, it favors non-obviousness. Doubt or disbelief by skilled artisans regarding the likely success of a combination or solution weighs against the notion that one would combine elements in references to achieve the claimed invention."  *WBIP*, 829 F.3d at 1344.  Such skepticism need not be premised on whether the claimed invention is "technically infeasible," "unworkable," or "impossible" to be relevant. *Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1378 (Fed. Cir. 2019).

121.    Skepticism may also include "economic skepticism," such as decisions by members of the industry not to invest in a product.  *Pressure Prods. Med. Supplies, Inc. v.*

44

*Greatbach Ltd.*, 599 F.3d 1308, 1319 (Fed. Cir. 2010) (affirming a finding of skepticism based on the fact that "other medical device companies initially turned down the opportunity to license the Lee patents because they did not believe that the invention would work"); *UCB, Inc. v. Accord Healthcare Inc.*, 201 F. Supp. 3d 491, 516-17 (D. Del. 2016) (citing as evidence of skepticism a potential development partner's decision not to invest in developing the patented invention because they "had 'other initiatives . . . that seem[ed] more attractive'").

### 14.  Industry Praise Indicates Non-Obviousness

122.  "Evidence that the industry praised a claimed invention or a product that embodies the patent claims weighs against an assertion that the same claimed invention would have been obvious."  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1053-54, (Fed. Cir. 2016).  "Industry participants, especially competitors, are not likely to praise an obvious advance over the known art."  *Id.*; *Transocean*, 699 F.3d at 1352 ("We conclude that the district court erred by determining that the jury lacked substantial evidence to find that industry praise and unexpected results support nonobviousness."); *Power-One, Inc. v. Artesyn Techs., Inc*, 599 F.3d 1343, 1352 (Fed. Cir. 2010) ("evidence of praise in the industry that specifically related to features of the patented invention" supported jury's verdict of non-obviousness).

### 15.  Failure of Others Indicates Non-Obviousness

123.  Evidence that other parties attempted but failed to develop solutions similar to the patentees can support the non-obviousness of a challenged patent.  The Federal Circuit has recognized that "[l]itigation argument that an innovation is really quite ordinary carries diminished weight when offered by those who had tried and failed to solve the same problem, and then promptly adopted the solution that they are now denigrating."  *Heidelberger Druckmaschinen AG v. Hantscho Comm. Prods., Inc.*, 21 F.3d 1068, 1072, 30 U.S.P.Q.2d 1377

45

(Fed. Cir. 1994); *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578-79 (Fed. Cir. 1991) ("Nonobviousness is suggested by the failure of others to find a solution to the problem which the patents in question purport to solve. Such evidence shows indirectly the presence of a significant defect in the prior art, while serving as a simulated laboratory test of the obviousness of the solution to a skilled artisan."); *Intel Corp. v. U.S. Intern. Trade Com'n*, 946 F.2d 821 (1991).

## III.   REMEDIES

124.   DJI will prove that it is entitled to compensatory relief in the form of lost profits and/or a reasonable royalty, enhanced damages, attorneys' fees, an award of prejudgment and postjudgment interest, and costs as a result of Autel's infringement of the Patents-in-Suit.

### A.   Remedies Generally

125.   "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). "Full compensation includes any foreseeable lost profits the patent owner can prove." *Id.*

126.   Upon a finding of infringement of valid patent claims, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The patent statute "imposes no limitation on the types of harm resulting from infringement that the statute will redress. The section's broad language awards damages for any injury as long as it resulted from the infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995). "The phrase 'damages *adequate to*

*compensate'* means full compensation for 'any damages' [the patent owner] suffered as a result of the infringement." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).

127.    "[T]he Supreme Court has interpreted [§ 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653 (1983)).  A patentee need not prove its damages with absolute certainty.  *See W.R. Grace & Co.-Conn. v. Intercat, Inc.*, 60 F. Supp. 2d 316, 321 (D. Del. 1999) (citing *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983)). "[I]t will be enough if the evidence show [sic] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Story Parchment Co. v. Paterson Paper Co.*, 282 U.S. 555, 563 (1931).  Moreover, "[a]ny doubt about the correctness [of damages] is resolved against the infringer." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Lam*, 718 F.2d at 1064; *W.R. Grace*, 60 F. Supp. 2d at 321. "[F]undamental principles of justice require us to throw the risk of any uncertainty upon the wrongdoer instead of upon the injured party." *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984).

128.    "The Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit calculation." *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *accord, Mentor Graphics Corp. v. EVE-USA, Inc.,* 851 F.3d 1275, 1286 (Fed. Cir. 2017) ("[I]t is quite common to see damage awards where, as in this case, the patentee proves entitlement to lost profits for some of its sales, but not others.  For sales in which the patentee cannot prove the

47

elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales.  In those circumstances, the patentee obtains its lost profits on the sales where it can prove all the *Panduit* factors and a reasonable royalty on the other infringing sales.").

### B.   <u>Lost Profits</u>

105.    If infringement is found, a plaintiff is entitled to recover as damages the profits it asserts it lost as a result of the infringement, if the patentee can prove that there was a reasonable probability that "but for" the infringement, it would have made the infringer's sales.  *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326-27 (Fed. Cir. 1987) ("In order to recover lost profits a patentee must show a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer."); *Kearns v. Chrysler Corp.*, 32 F. 3d 1541, 1551 (Fed. Cir. 1994) ("A lost profits award is appropriate only if the patent owner can prove there was a reasonable probability that 'but for' the infringement, it would have made the infringer's sales.").

106.    "The determination of a damage award is not an exact science, and 'the amount need not be proven with unerring precision.'"  *Del Mar*, 836 F.2d at 1326.  "The patentee is not obliged to negate every possibility that a purchaser might not have bought the patentee's product instead of the infringing one, or might have foregone the purchase altogether."  *Id.*  In other words, "[i]n proving his damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonable probability."  *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

105.    "There is no particular required method to prove but for causation.  One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the *Panduit*

test first articulated by the Sixth Circuit." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284–85 (Fed. Cir. 2017) (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). Under the *Panduit* test, a patentee is entitled to lost profit damages if it can establish four things: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made. *Panduit*, 575 F.2d at 1156.

106.    "The first factor—demand for the patented product—considers demand for the product as a whole." *Mentor Graphics*, 851 F.3d at 1285 (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330–31 (Fed. Cir. 2009)).

107.    "The second factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention." *Mentor Graphics*, 851 F.3d at 1285. "To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time [of infringement]." *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F.3d 1369, 1380-82 (Fed. Cir. 2017). To be an acceptable alternative, the alternative must have the advantages of the patented product and the same level of performance such that the demand of consumers would be satisfied by the alternative. *Id.* at 1361; *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 (Fed. Cir. 1996) ("[A] product on the market which lacks the advantages of the patented product can hardly be termed an acceptable substitute.").

108.    The Federal Circuit has explained the relationship between the first two *Panduit* factors. "Together, requiring patentees to prove demand for the product as a whole and the

49

absence of non-infringing alternatives ties lost profit damages to specific claim limitations and ensures that damages are commensurate with the value of the patented features." *Id.* (citing *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012) ("[P]roducts lacking the advantages of the patented invention can hardly be termed a substitute acceptable to the customer who wants those advantages." (quotations omitted)); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F. 3d 1341, 1354 (Fed. Cir. 1999) (holding that customers would have found a particular claim limitation "irrelevant," so the patentee could not rely on that limitation for the second *Panduit* factor); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) ("If purchasers are motivated to purchase because of particular features available only from the patented product, products without such features–even if otherwise competing in the marketplace—would not be acceptable noninfringing substitutes.").

109.     A strict application of the *Panduit* factors may deny a patentee the right to recover any lost profit damages where acceptable noninfringing alternatives exist, even though doing so may not fairly approximate what would have occurred in the market in the absence of infringement.  To avoid such an outcome, the Federal Circuit has approved awarding lost profits in an amount equal to the patentee's share of the market.  *See Mor-Flo*, 883 F. 2d 1573.  The Federal Circuit held that if a patentee can show, despite the presence of acceptable noninfringing alternatives, that it has an established share of the market, then a court may award lost profits for diverted sales in an amount equal to the patentee's share of the market.  *Id.*; *see also Mentor Graphics*, 851 F. 3d at 1286 n.5 ("In a complex market with numerous competitors, a patentee may be awarded lost profit[s] damages calculated using its market share among its competitors."); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1379-80 (Fed.

Cir. 2015) (holding that patentee was entitled to lost profits under market share theory); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 362 (D. Del. 2006) (denying motion for partial summary judgment on lost profits and noting "damages for lost profits may be awarded, even where there are non-infringing alternatives, based on a patentee's previous share of the market.  Thus, even if [a competitor] did produce a product that was a non-infringing alternative, it is possible for [the patentee] to be awarded lost profits damages based on the market share it held prior to [the infringer's] entrance into the market."); *Izumi Prods. Co. v. Koninklijke Philips Elecs. N. V.*, 315 F. Supp. 2d 589, 614 (D. Del. 2004) ("[A]warding lost profits based on market share is proper if the patentee shows an established market share in lieu of the absence of acceptable noninfringing alternatives").

105.     A patentee can do so because "[i]n the reality of the market-place [with multiple competitors], if the infringing product did not exist, it is usually likely that the patent owner would pick up some of those customers."  *Id.*  When allocating lost sales based on market share, "the presence or absence of acceptable noninfringing alternatives does not matter."  *Id.* at 1578.

### C.     <u>Reasonable Royalty</u>

129.     If infringement is found, a plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interests and costs as fixed by the court."  35 U.S.C. § 284.  The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty."  *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) (citing 35 U.S.C. § 284); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) ("The requirement to determine actual damages is not diminished by difficulty of determination.").  "Indeed, if the record evidence does

not fully support either party's royalty estimate, the fact finder must still determine what constitutes a reasonable royalty from the record evidence." *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014) (citing *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167 (Fed. Cir. 1991), *overruled on other grounds by Williamson v. Citrix Online*, *LLC*, 792 F.3d 1339 (Fed. Cir. 2015). "[T]he factual determination of a reasonable royalty, however, need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party . . . . [T]he district court may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence." *SmithKline Diagnostics*, 926 F.2d at 1167-68.

130.    "A reasonable royalty may be . . . , and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a royalty rate." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).  The reasonable royalty may be based on a determination of "the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began" the "hypothetical negotiation." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012); *Virnetx*, 767 F.3d at 1326.  In determining a reasonable royalty, courts apply the fifteen factors enunciated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).  *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 n.7 (Fed. Cir. 1995) (citing *Georgia-Pacific* factors).  "[I]n conducting the hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the infringement began." *Mobil Oil Corp. v. Amoco Chems.*

52

*Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994) (citing *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988)).

131.    When a patentee relies on licenses to establish a reasonable royalty, those licenses must be sufficiently comparable to the hypothetical license at issue in suit.  *See Virnet*, 767 F.3d at 1330.  The finder of fact must account for differences in technologies and the economic circumstances of the contracting parties to other licenses used in the reasonable royalty analysis. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010).  However, licenses that involve other technologies, patents, and/or assets may still be used when the differences between those licenses and the hypothetical negotiation are explained.  *See Virnetx*, 767 F.3d at 1330-31; *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Idenix Pharm. LLC v. Gilead Scis., Inc.*, No. 14-CV-846-LPS, 2018 WL 922125, at *5-6 (D. Del. Feb. 16, 2018).

132.    The presence or absence of "non-infringing alternatives" is a "core economic question" in hypothetical negotiation.  *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) ("In hypothetical negotiation terms, the core economic question is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical conditions, would have anticipated the profit-making potential of use of the patented technology to be, compared to using noninfringing alternatives."); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015) ("[I]f avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater").  In *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017), the Federal Circuit reasoned that the "requirement for valuing the patented technology can be met if the patentee adequately shows that the defendant's infringement allowed it to avoid taking a different, more

53

costly course of action" and that "a price for a hypothetical license may appropriately be based on consideration of the 'costs and availability of non-infringing alternatives' and the potential infringer's 'cost savings.'" *Id.*

133.    The non-infringing alternative the infringer identifies "must be available or on the market at the time of infringement." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). For an alternative to be considered available, "there must be evidence that it can be implemented." *Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1178517, at *6 (D. Del. March 13, 2019). Substitutes that are only "theoretically possible" are not sufficient. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011). The Federal Circuit has recognized that the high cost of a necessary material can render a proposed non-infringing alternative "unavailable" to the infringer. *Grain Processing*, 185 F. 3d at 1354.

134.    When evaluating multi-component products, damages can be calculated on the basis of the smallest identifiable technical component as well as the smallest saleable unit. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309-10 (Fed. Cir. 2018). If the smallest identifiable technical component or smallest saleable unit still contains non-infringing features, further apportionment is required. *Id.*; *see also Virnetx, Inc.*, 767 F.3d at 1327-28 ("Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . . , the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology."). The "ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc., v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

135.    35 U.S.C. § 271(a) "states a clear definition of what conduct Congress intended to

reach—making *or* using *or* selling in the United States *or* importing into the United States, even

if one or more of those activities also occur abroad." *Carnegie Mellon Univ. v. Marvell Tech.

Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015), *reh'g en banc denied in part*, 805 F.3d 1382

(Fed. Cir. 2015).  Goods made in the United States and sold abroad are properly included in the

royalty base.  *R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984); *see GE

Healthcare Bio-Scis. AB v. Bio-Rad Labs., Inc.*, No. 1:14-CV-07080-LTS-SN, 2015 WL

7582967, at *1 (S.D.N.Y. Nov. 25, 2015) ("Long-established Federal Circuit precedent

recognizes that, when an allegedly infringing product is produced in the United States and

subsequently sold by the manufacturer to foreign buyers, the foreign sales are relevant to the

determination of damages suffered as a result of the domestic act of infringement") (citing *R.R.

Dynamics*, 727 F.2d at 1509 (Fed. Cir. 1984)).

### D.    Enhanced Damages

136.    35 U.S.C. § 284 states in pertinent part that "the court may increase the damages

up to three times the amount found or assessed."  The Court may enhance damages, up to

trebling the actual damages, upon a finding of willful infringement.  *Johns Hopkins Univ. v.

CellPro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998).  "The subjective willfulness of a patent

infringer, intentional or knowing, may warrant enhanced damages, without regard to whether

[the] infringement was objectively reckless."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct.

1923, 1933 (2016).

137.    DJI bears the burden of proving Defendants' willfulness by a preponderance of

the evidence.  *Id.* at 1934.  The jury should decide Autel's willfulness.  *See Richardson v. Suzuki

Motor Co.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Willfulness of behavior is a classical jury

question of intent."); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("We do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury.").

138.     "Once willful infringement is found, the question of enhancement is firmly committed to the sound discretion of the district court.  *See Halo*, 136 S. Ct. at 1931; *see also Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) (once fact-finder determines that infringer is "guilty of conduct upon which increased damages may be based[,] . . . the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances").  "Enhancement of damages often follows a finding of willful infringement.  In fact, the Federal Circuit has instructed that, upon such a finding, 'courts should provide reasons for not increasing a damages award' under § 284." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 198 F. Supp. 3d 1343, 1348-50 (S.D. Fla. 2016) (citing *Jurgens*, 80 F.3d at 1572 (holding that, in light of a willful infringement verdict, the trial court abused its discretion in refusing to enhance damages without explaining any mitigating factors).).  "An act of willful infringement satisfies th[e] culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012) (reversing denial of enhanced damages).

139.     The essential determinant for enhancing damages is the egregiousness of defendant' conduct.  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).  The *Read* court identified numerous factors that are relevant to the enhancement inquiry.  *Id.* at 827.  These factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of

the patent and formed a good-faith belief that it was invalid or that it was no infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) the infringer's remedial action; (8) the infringer's motivation for harm; and (9) whether the infringer tried to conceal its misconduct. *Id.*

### E.   <u>Attorneys' Fees</u>

140.   The patent statute authorizes the Court "in exceptional cases" to award reasonable attorney fees to the prevailing party.  35 U.S.C. § 285.  "This text is patently clear.  It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases."  *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014).  An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id.* at 1756.  A "district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Id.* at 1757.  Entitlement to fees under Section 285 is established by the preponderance of the evidence.  *Id.* at 1758.

### F.   <u>Interest</u>

141.   "Prejudgment interest is awarded to compensate for the delay in payment of the damages, and not to punish the infringer."  *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) (citation omitted).  Prejudgment interest "should ordinarily be awarded."  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-57 (1983).

142.     The applicable interest rate is left to the discretion of the Court; however, in exercising its discretion, the Court "must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'"  *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983)).

143.     Post-judgment interest "is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement.  *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).  Regional circuit law governs the availability of post-judgment interest.  *Id.* at 1348.  Courts in this district routinely award post-judgment interest in patent cases.  *See, e.g.*, *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006); *True Position Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010).

## G.     Costs

144.     "Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties."  *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2001 (2012).  Under Federal Rule 54(d)(l), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(l) "uses the word 'costs' as a term of art, rather than to refer to all expenses a prevailing party may incur in a given action."  *In re Paoli R.R. Yard PCB Litig.*, 221 F. 3d 449, 458 (3d Cir. 2000).  The categories of costs that are taxable are established by 28 U.S.C. § 1920, which provides for the taxation of the following items as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3)

58

fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

145.    In addition to awarding costs, "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party."  35 U.S.C. § 285.  An "'exceptional' case is . . . one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  The District Court "may determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances."  *Id.* Further, the prevailing party must prove its entitlement to attorneys fees under § 285 by a preponderance of the evidence.  *Id.* at 557.

*          *          *

DJI incorporates by reference into this Statement of the Issues of Law that Remain to be Litigated ("Statement") any issues of law set forth in its responsive papers to any comparable material filed by Autel.  The citation of authorities is not exhaustive.  DJI reserves the right to rely on additional authorities in support of its claims and defenses and intended proofs.

DJI reserves the right to modify or supplement this Statement to the extent necessary to reflect any future rulings by the Court.  DJI also reserves the right to modify or supplement this Statement to fairly respond to any new issues that Defendants may raise.  By submitting this Statement, DJI in no way waives its right to amend or supplement this submission after it

59

considers Autel's submissions, whether made part of this Pretrial Order or otherwise made apparent in pretrial proceedings, trial, or any post-trial briefing.

If any of these issues of law is deemed an issue of fact rather than an issue of law, DJI incorporates the issues by reference into Plaintiffs' Statement of Contested Facts (Exhibit 2P). Conversely if any issue in Plaintiffs' Statement of Contested Facts is deemed an issue of law, DJI incorporates the issues by reference into this Statement.

Exhibit 5
Defendants' Statement of Contested Issues of Law

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SZ DJI TECHNOLOGY CO., LTD. AND DJI EUROPE B.V., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 16-706-LPS **(CONSOLIDATED)** |
| AUTEL ROBOTICS USA LLC AND AUTEL AERIAL TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Defendants. | ) ) | |
| AUTEL ROBOTICS USA LLC AND AUTEL AERIAL TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| SZ DJI TECHNOLOGY CO., LTD., DJI EUROPE B.V., AND DJI TECHNOLOGY INC., | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**EXHIBIT 5**

**DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF LAW
<u>THAT REMAIN TO BE LITIGATED</u>**

1

Exhibit 5
Defendants' Statement of Contested Issues of Law

Defendants Autel Robotics USA LLC and Autel Aerial Technology Co., Ltd. (n/k/a Autel Robotics Co., Ltd.) (collectively, "Autel") identify the following issues of law that remain to be litigated in this case. Autel's identification of these issues is based on the pleadings and discovery to date and its current understanding of the arguments and evidence that Plaintiffs DJI Technology, Inc., SZ DJI Technology Co., Ltd., and DJI Europe B.V. (collectively, "Plaintiffs" or "DJI") are likely to present at trial.

Should the Court determine that any issue identified in this list is more properly an issue of fact, Autel incorporates those issues by reference into Autel's Statement of Contested Issues of Fact that Remain to Be Litigated. By identifying an issue in this statement, Autel does not concede that the issue is not factual and does not require trial by jury.

Autel reserves the right to supplement, amend, or modify this list, for example to respond to any new issues, arguments, or evidence from DJI, or in the event of any Court ruling. Autel further reserves the right to supplement, amend, or modify this list to address any additional issues, arguments, evidence, or other developments in the case, including meet and confers or other negotiations between the parties, and pending and anticipated motions. Autel further reserves the right to supplement, amend, or modify this statement to rebut or otherwise address DJI's identification of contested issues of law or fact and any revisions thereto. By including an issue on this list, Autel does not assume the burden of proof with respect to that issue.

The Court's decision on various motions, including pending motions for summary judgment, and motions *in limine*, may change these issues, and Autel reserves the right to amend or supplement this statement. If Plaintiffs attempt to introduce or introduce different or additional legal arguments to those identified below, Autel reserves its right to contest those legal arguments and to present rebuttal evidence.

2

# TABLE OF CONTENTS

I.    ALLEGED PATENT INFRINGEMENT..................................................................... 1

    A.    Issues of Law (Phase 1) ................................................................................ 1

        1.    Whether Autel has directly infringed any asserted claims of the patents-in-suit....................................................................................1

        2.    Whether Autel has literally infringed any asserted claims of the patents-in-suit....................................................................................1

        3.    Whether, in the absence of expert testimony or evidence on infringement under the doctrine of equivalents, Plaintiffs have any legally viable claim regarding infringement under a doctrine of equivalents theory.................................................................................2

        4.    Whether, if Plaintiffs have asserted a viable claim for infringement under the doctrine of equivalents, Autel has infringed under the doctrine of equivalents. .........................................................................2

        5.    Whether Plaintiff have asserted any viable claim for contributory infringement. ..............................................................................2

        6.    Whether, if Plaintiffs have asserted a viable claim for contributory infringement, Autel has contributorily infringed any of the asserted claims of the patents- in-suit. .................................................................2

        7.    Whether, if Plaintiff have asserted any viable claim for induced infringement, Autel has induced infringement of any of the asserted claims of the patents- in-suit. ................................................................3

        8.    Which features of the asserted design of the D'514 are ornamental.......3

        9.    Which features of the asserted design of the D'514 are functional.........4

        10.   Which features, if any, of the asserted design of the D'514 are entitled to protection...................................................................................4

    B.    Issues of Law (Phase 2) ................................................................................ 4

        1.    Whether, if Autel is found to infringe any asserted claims of the patents-in-suit in Phase 1, Autel has willfully infringed those claims. ...4

    C.    Legal Authority ............................................................................................. 4

        1.    Direct Infringement .................................................................................4

        2.    Design Patent – Scope & Infringement ...................................................8

        3.    Indirect Infringement - Induced Infringement.......................................10

        4.    Indirect Infringement - Contributory Infringement...............................11

        5.    Willful Infringement...............................................................................12

II.   PATENT INVALIDITY ...................................................................................... 13

    A.    Issues of Law ............................................................................................... 14

28400774.2

i

Exhibit 5
Defendants' Statement of Contested Issues of Law

1.   Whether the asserted claim of the D'514 patent is invalid...................14

2.   Whether the asserted D'514 patent claim is entitled to a priority date earlier than the filing date of the D'514 patent. ....................................14

3.   Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the D'514 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the D'514 patent. .............................................................14

4.   Whether the asserted claims of the '617 patent are invalid..................14

5.   Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the '617 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the '617 patent. ..............................................................15

6.   Whether the asserted claims of the '049 patent are invalid..................15

7.   Whether the asserted '049 patent claims are entitled to a priority date earlier than the filing date of the '049 patent. .......................................16

8.   Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the '049 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the '049 patent. ..............................................................16

9.   Whether the asserted claims of the '530 patent are invalid..................16

10.  Whether the asserted '530 patent claims are entitled to a priority date earlier than the filing date of the '530 patent. .......................................16

11.  Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the '530 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the '530 patent. ..............................................................16

B.   Legal Authority ...............................................................................17

1.   Presumption of Validity .................................................17

2.   What Constitutes Prior Art .............................................18

3.   Claiming Priority to Foreign Applications...........................20

4.   Anticipation ...................................................................21

5.   Obviousness....................................................................23

6.   Prior Art Under 35 U.S.C. § 102(e)....................................27

7.   Written Description .........................................................28

8.   Lack of Enablement.........................................................29

Exhibit 5
Defendants' Statement of Contested Issues of Law

9.   Indefiniteness...................................................................30

10.  Improper Inventorship ....................................................31

11.  Design Patent – Invalidity .............................................31

**III.  PATENT DAMAGES AND REMEDIES**.........................................**36**

A.   Issues of Law ........................................................................ 36

1.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to monetary damages and the amount of damages based upon a reasonable royalty.36

2.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether the Federal Rules of Evidence and the entire market value rule prohibit presentation of evidence to the jury of Autel's total revenues or profits of the accused products. ...............37

3.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether, in the absence of expert testimony applying the *Panduit* factors, DJI has any legally viable claim to lost profits...................................................................................37

4.   Whether DJI may recover any alleged lost profits sustained by DJI. ...37

5.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether DJI has a legally viable claim to damages for induced infringement under 35 § U.S.C. 271(b) absent correlation of inducement-related damages to a claim of Autel's alleged first knowledge of and intent for such inducement. ............................37

6.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to any pre-suit damages pursuant to 35 U.S.C. § 287. ..................................................37

7.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to a finding that this case is exceptional under 35 U.S.C. § 285 and whether Plaintiffs are entitled to an award of attorneys' fees............................................37

8.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed and Autel is found to have willfully infringed one or more of the asserted claims of the patents-in-suit, whether Plaintiffs are entitled to enhanced damages. .........................................37

9.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to injunctive relief.................................................................................37

B.   Legal Authority ..................................................................... 37

1.   Lost Profits ........................................................................38

2.   Once a defendant posits a non-infringing alternative, the burden is on the patentee to prove that it is not acceptable. *Zygo Corp. v. Wyko*

Exhibit 5
Defendants' Statement of Contested Issues of Law

*Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996).Reasonable Royalty Damages ............................................................................40

3. Apportionment.......................................................................42

4. Injunctive Relief ...................................................................42

5. Pre-Suit Damages .................................................................43

6. Enhancement Under 35 U.S.C. § 284 ..................................43

7. Attorneys' Fees Under 35 U.S.C. § 285................................45

8. Interest ...................................................................................46

**IV. EXPERT TESTIMONY ................................................................ 47**

A. Issues of Law ........................................................................ 47

1. Whether expert testimony that was not fully disclosed pursuant to Federal Rule of Civil Procedure 26 may be presented at trial..............47

2. Whether expert testimony from experts that are not qualified pursuant to Federal Rules of Evidence 702 and 703 may be presented at trial; and/or....................................................................................47

3. Whether testimony from rebuttal experts that is not proper rebuttal pursuant to Federal Rule of Civil Procedure 26 may be presented at trial.......................................................................................47

B. Legal Authority ..................................................................... 47

Exhibit 5
Defendants' Statement of Contested Issues of Law

# I.   ALLEGED PATENT INFRINGEMENT

## A.   Issues of Law (Phase 1)

### 1.   Whether Autel has directly infringed any asserted claims of the patents-in-suit.

a.   Whether Autel has directly infringed any asserted claims of the U.S. Patent No. D691,514 (the "D'514 patent"), U.S. Patent No. 9,016,617 (the "'617 patent"), U.S. Patent No. 9,284,049 (the "'049 patent"), and U.S. Patent No. 9,321,530 (the "'530 patent") (collectively, the "patents-in-suit") by making, using, selling, offering for sale, or importing into the United States its X-Star products.

b.   Whether Autel has directly infringed any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its X-Star Premium products.

c.   Whether Autel has directly infringed any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its EVO products.

### 2.   Whether Autel has literally infringed any asserted claims of the patents-in-suit.

a.   Whether Autel has literally infringed any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its X-Star products.

b.   Whether Autel has literally infringed any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its X-Star Premium products.

Exhibit 5
Defendants' Statement of Contested Issues of Law

    c.    Whether Autel has literally infringed any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its EVO products.

**3.    Whether, in the absence of expert testimony or evidence on infringement under the doctrine of equivalents, Plaintiffs have any legally viable claim regarding infringement under a doctrine of equivalents theory.**

**4.    Whether, if Plaintiffs have asserted a viable claim for infringement under the doctrine of equivalents, Autel has infringed under the doctrine of equivalents.**

    a.    Whether, if Plaintiffs have asserted a viable claim for infringement under the doctrine of equivalents, Autel has infringed under the doctrine of equivalents, any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its X-Star products.

    b.    Whether Autel, if Plaintiffs have asserted a viable claim for infringement under the doctrine of equivalents, has infringed, under the doctrine of equivalents, any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its X-Star Premium products.

    c.    Whether, if Plaintiffs have asserted a viable claim for infringement under the doctrine of equivalents, Autel has infringed, under the doctrine of equivalents, any asserted claims of the patents-in-suit by making, using, selling, offering for sale, or importing into the United States its EVO products.

**5.    Whether Plaintiff have asserted any viable claim for contributory infringement.**

**6.    Whether, if Plaintiffs have asserted a viable claim for contributory infringement, Autel has contributorily infringed any of the asserted claims of the patents- in-suit.**

Exhibit 5
Defendants' Statement of Contested Issues of Law

a.     Whether, if Plaintiffs have asserted a viable claim for contributory infringement, Autel has contributorily infringed any of the asserted claims of the patents-in-suit by contributing to infringement by others, in connection with its X-Star products.

b.     Whether, if Plaintiffs have asserted a viable claim for contributory infringement, Autel has contributorily infringed any of the asserted claims of the patents-in-suit by contributing to infringement by others, in connection with its X-Star Premium products.

c.     Whether, if Plaintiffs have asserted a viable claim for contributory infringement, Autel has contributorily infringed any of the asserted claims of the patents-in-suit by contributing to infringement by others, in connection with its EVO products.

**7.     Whether, if Plaintiff have asserted any viable claim for induced infringement, Autel has induced infringement of any of the asserted claims of the patents- in-suit.**

a.     Whether, if Plaintiff have asserted any viable claim for induced infringement, Autel has actively induced others to infringe any of the asserted claims of the patents-in-suit in connection with its X-Star products.

b.     Whether, if Plaintiff have asserted any viable claim for induced infringement, Autel has actively induced others to infringe any of the asserted claims of the patents-in-suit in connection with its X-Star Premium products.

c.     Whether, if Plaintiff have asserted any viable claim for induced infringement, Autel has actively induced others to infringe any of the asserted claims of the patents-in-suit in connection with its EVO products.

**8.     Which features of the asserted design of the D'514 are ornamental.**

3

Exhibit 5
Defendants' Statement of Contested Issues of Law

**9.      Which features of the asserted design of the D'514 are functional.**

**10.     Which features, if any, of the asserted design of the D'514 are entitled to protection.**

**B.     Issues of Law (Phase 2)**

**1.      Whether, if Autel is found to infringe any asserted claims of the patents-in-suit in Phase 1, Autel has willfully infringed those claims.**

a. If Autel is found to have infringed a valid claim of the D'514 patent, whether the infringement was willful.

b. If Autel is found to have infringed a valid claim of the '617 patent, whether the infringement was willful.

c. If Autel is found to have infringed a valid claim of the '049 patent, whether the infringement was willful.

d. If Autel is found to have infringed a valid claim of the '530 patent, whether the infringement was willful.

**C.     Legal Authority**

Although infringement is a question of fact, limitations on the applicability of the doctrine of equivalents as well as whether indirect infringing theories can be properly asserted are questions of law.

**1.     Direct Infringement**

"[I]t is axiomatic that the *patentee* bears the burden of proving infringement." *Ultra-TexSurfaces, Inc. v. Hill Bros. Chem.* Co., 204 F.3d 1360, 1364 (Fed. Cir. 2000) (emphasis in original). Infringement must be proven by a preponderance of the evidence. *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). To determine whether a patentee has met this burden, courts apply a two-part test: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly

Exhibit 5
Defendants' Statement of Contested Issues of Law

construed must be compared to the accused device or process." *Ethicon Endo-Surgery, Inc. v. US Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted).

"To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). The patentee fails to carry its burden "when two scenarios are equally likely" because "no jury could determine which one was more likely than not." *Mosel Vitelic Corp. v. Micron Tech., Inc.*, C.A. No. 98-449-GMS, 2000 WL 1728346, at *2 (D. Del. Mar. 14, 2000).

### a.    Literal Infringement

Literal infringement requires the presence of each limitation, exactly as written in the claim. *See DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly." (internal quotation marks and citation omitted)). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (citation omitted).

### b.    Infringement Under the Doctrine of Equivalents

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1312 (Fed. Cir. 2008); *see also Toro Co. v. White Consol. Indus, Inc.*, 266 F.3d 1367, 1370

Exhibit 5
Defendants' Statement of Contested Issues of Law

(Fed. Cir. 2001) ("To infringe a claim under the doctrine of equivalents, an accused device must include an equivalent for each literally absent claim limitation."). To prove equivalence, the patentee must "show [] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result" as the corresponding limitation claimed in the patent. *Id.* The doctrine of equivalents must be applied to each individual element of a claim, not to the invention as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

A patentee must present "particularized testimony and linking argument" to support a theory of infringement under the doctrine of equivalents. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1338-39 (Fed. Cir. 2011).

Prosecution history estoppel stands "as a legal limitation on the doctrine of equivalents." *Warner-Jenkinson*, 520 U.S. at 30. Prosecution history estoppel "prevents a patentee from recapturing through the doctrine of equivalents the subject matter that the applicant surrendered during prosecution." *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013). Prosecution history estoppel may bar the patentee from relying on the doctrine of equivalents if, during prosecution, the patentee made a narrowing amendment to satisfy any requirement of the Patent Act. "[A] narrowing amendment made for a reason of patentability" creates a presumption that the patentee has "surrender[ed] the entire territory between the original claim limitation and the amended claim limitation." *Festa Corp. v. Shoketsu Kinzoku*

6

Exhibit 5
Defendants' Statement of Contested Issues of Law

*Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003) (*en banc*). The patentee may

overcome that presumption only by demonstrating that "the equivalent would have been

unforeseeable at the time of the amendment," "the rationale underlying the amendment bore no

more than a tangential relation to the equivalent in question," or "there was some other reason

suggesting that the patentee could not reasonably be expected to have described the

insubstantial substitute in question." *Id.* (alterations in original).

Similarly, a patentee may be barred from relying on the doctrine of equivalents if,

during prosecution, the patentee made arguments that effectively narrowed the scope of the

patent claims. "[A]rguments made during prosecution without amendments to claim

language—if sufficient to evince a clear and unmistakable surrender of subject matter—may

estop an applicant from recapturing that surrendered matter under the doctrine of equivalents."

*Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817,828 n.3 (Fed. Cir. 1999); *see also*

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997)

("Arguments and amendments made to secure allowance of a claim, especially those

distinguishing prior art, presumably give rise to prosecution history estoppel."); *Hoganas AB v.*

*Dresser Indus., Inc.*, 9 F.3d 948, 951-52 (Fed. Cir. 1993) ("The essence of prosecution history

estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents,

coverage of subject matter that was relinquished during prosecution to procure issuance of the

patent.")

The doctrine of equivalents also may not be relied on if a finding of infringement by

equivalents "would entirely vitiate a particular claim element." *Warner-Jenkinson,* 520 U.S. at

39 n.8; *see also Moore US.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir.

2000) (explaining that "all claim limitations are not entitled to an equal scope of equivalents . . .

Exhibit 5
Defendants' Statement of Contested Issues of Law

[and] many limitations warrant little, if any, range of equivalents" and holding that allowing a

"minority . . . to be equivalent to a majority would vitiate the ['majority'] requirement");

*Impulse Tech. Ltd. v. Microsoft Corp.*, C.A. No. 11-586-RGA, 2015 WL 5568616, at *3 (D.

Del. Sept. 22, 2015) (applying claim vitiation where "[t]he accused product operates in

essentially the opposite fashion of that described in the claims").

Additionally, the doctrine of "[e]nsnarement bars a patentee from asserting a scope of

equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine, Inc. v. Medtronic*

*Sofamor Danek, Inc.,* 567 F.3d 1314, 1322 (Fed. Cir. 2009). If a hypothetical patent claim,

constructed on the basis of the patentee's doctrine of equivalents theory to literally cover the

accused device, would be unpatentable as anticipated or obvious, then "the patentee has

overreached, and the accused device is noninfringing as a matter of law." *Interactive Pictures*

*Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001). "[T]he burden of

persuasion that the hypothetical claim does not ensnare the prior art remains with the patentee."

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999). Ensnarement is

a question of law to be decided by the Court, not the jury. *DePuy Spine*, 567 F.3d at 1324.

### 2.     Design Patent – Scope & Infringement

A design patent must be original.  *See* 35 U.S.C. § 103.  *See also  Int'l Seaway Trading*

*Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1238 (Fed. Cir. 2009) ("The purpose of incorporating

an originality requirement is unclear; it likely was designed to incorporate the copyright concept

of originality—requiring that the work be original with the author . . . ."). If a design patent

contains both functional and ornamental elements, the scope of the claims then "must be limited

to the ornamental aspects of the design."  *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316,

1320 (Fed. Cir. 2016).   In this situation, the claim scope "does not extend to the broader general

Exhibit 5
Defendants' Statement of Contested Issues of Law

design concept." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015).  Furthermore,

> [i]f . . . a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the design.  The patentee must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental.

*OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

To determine whether an accused product infringes a claimed design, the ordinary observer test is applied to a comparison of the two designs.  *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871).  In *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (2008), the Federal Circuit remediated the previous two-part analysis set forth in *Litton Systems v. Whirlpool Corp.* 728 F.2d 1423 (Fed.Cir. 1984), by returning to the one-part ordinary observer test used in *Gorham*.  In doing so, the court stated that the "'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." *Id.* at 678.

The ordinary observer test is a one-part test that requires two steps or levels of analysis.  First, the accused product and the claimed design will be compared to determine whether the two are "sufficiently distinct" and could not be "substantially the same" to the ordinary observer. *Egyptian Goddess*, 543 F.3d at 672–74.  If the comparison shows that the two are substantially the same, a second step or level of analysis will occur.  However, if the comparison shows that the two designs are sufficiently distinct, the inquiry will end, and no infringement will be found.  The second step or level of analysis requires a comparison of the accused product and claimed design to the prior art. *Id.* at 678.  A comparison to the prior art may identify differences between the product design and claimed design, especially in the instance where the claimed design and the prior art are very similar. *Id.*

9

Exhibit 5
Defendants' Statement of Contested Issues of Law

The ordinary observer test queries whether two designs are substantially the same "in the eye of an ordinary observer, giving such attention as a purchaser usually gives" such that the ordinary observer would be deceived into believing that the accused product is the same as the claimed design and be induced into purchasing the accused product believing it to be the claimed design. *Gorham*, 81 U.S. at 528.  Infringement, then, will not be found "unless the accused article 'embod[ies] the patented design or any colorable imitation thereof.'" *Id.*  The comparison between the accused article and the patented design occurs from the point of view of an "ordinary observer familiar with the prior art" such "that the perspective of the ordinary observer can be informed by a comparison of the patented design and the accused design in light of the prior art." *Egyptian Goddess*, 543 F.3d at 672–74.  This ordinary observer test also serves as the sole test for anticipation.  *Int'l Seaway Trading Corp.*, 589 F.3d at 1240.

The Federal Circuit has further clarified that this test for infringement does not require identity between the accused product and claimed design "but rather <u>sufficient similarity</u>" between the two. *Pacific Coast Marine Windshields Ltd. v. Malibu Boats*, 739 F.3d 694, 701 (Fed. Cir. 2014).  Additionally, the Federal Circuit has stated that since the primary question of infringement is based on an <u>examination of the article as a whole</u>, it is important to avoid inadvertently converting the test into an "element-by-element comparison" when factoring out the functional aspects of the design.  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).  Thus, it would be proper for a court to <u>lay out the significant differences in the two designs</u>' ornamental features, but the primary question is whether an ordinary observer would take in the accused product as a whole and be deceived into thinking it was the claimed design. *Id.*

**3.      Indirect Infringement - Induced Infringement**

Exhibit 5
Defendants' Statement of Contested Issues of Law

"A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990) (emphasis original). Induced infringement requires proof of actual infringement by a third party. Thus, "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002) (citations omitted). This requires showing that the alleged infringer had "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *see also Cammil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1928 (2015) (explaining that indirect infringement "requires proof the defendant knew the [accused] acts were infringing"). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*) (citing *Metro- Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005)). "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer . . . intended to induce infringement of the patent." 35 U.S.C. § 298.

### 4.      **Indirect Infringement - Contributory Infringement**

Section 271(c) defines the acts that constitute contributory infringement as the sale, offer to sell, or import of a product that can be used in a patented method if the product is "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. §

Exhibit 5
Defendants' Statement of Contested Issues of Law

271(c). To establish liability for contributory infringement, a patentee must prove the following four elements: (1) the accused infringer sold or offered to sell in the United States, or imported into the United States, a component of a patented device of composition, or a material or apparatus that is a component for use in practicing a patented process; (2) the component is a material part of the invention; (3) the accused party knew that the component was especially made or adapted for use in a manner that would infringe the patent when the party sold, offered, or imported the component; and (4) the component is not a staple article of commerce capable of substantial non-infringing use. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Contributory infringement requires proof of direct infringement by a third party and also requires that the accused product has "no use except through practice of the patented method." *Sony Corp. of Am. v. Universal Int'l City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except through practice of the patented method, the patentee has no right to claim that its distribution constitutes contributory infringement.") (citation and internal quotation marks omitted). "[A] violator of § 27l(c) must know 'that the combination for which his component was especially designed was both patented and infringing." *Global-Tech,* 563 U.S. at 763 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

### 5. Willful Infringement

In order to demonstrate willful infringement, Plaintiffs must prove by a preponderance of the evidence that Autel infringed "deliberate[ly], in a "consciously wrongful" manner, and "without any reason to suppose [its] conduct [was] arguably defensible." *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1932-33 (2016); *see also WBIP, LLC v. Kohler Co.,* 829 F.3d

Exhibit 5
Defendants' Statement of Contested Issues of Law

1317, 1341 (Fed. Cir. 2016) (willful infringement is a question of fact). "To determine whether

an accused infringer's conduct was subjectively willful, the Court must 'measure[] the accused

infringer's culpability . . . against the knowledge of the actor at the time of the challenged

conduct." *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. Nos. 09-80-LPS, 11-742-LPS,

2016 WL 6542726, at *15 (D. Del. Oct. 31, 2016) (citations omitted.). An accused infringer's

conduct may only be found to amount to willful infringement if it is "willful, wanton, malicious,

bad- faith, deliberate, consciously wrongful, flagrant, or-indeed-characteristic of a pirate." *Halo

Elecs.,* 136 S.Ct. at 1392.

Awareness of the patents-in-suit, without more, cannot establish willful infringement.

*See Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 331 (D. Del. 2016) ("Vehicle

IP does not identify other evidence, beyond pre-suit knowledge of the patent, that could show

that the TCS Defendants' infringement was 'egregious,' 'deliberate,' 'wanton,' or otherwise

characteristic of the type of infringement that warrants the Court exercising its discretion to

impose the 'punitive' sanction of enhanced damages."); *Greatbatch Ltd. v. AVX Corp.*, C.A.

No. 13-723-LPS, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) ("[A] party's pre-suit

knowledge of a patent is not sufficient, by itself, to find 'willful misconduct' of the type that

may warrant an award of enhanced damages."); *see also Norian Corp. v. Stryker Corp.*, 363

F.3d 1321, 1332–33 (Fed. Cir. 2004) (affirming JMOL of no willfulness despite stipulation that

defendant had knowledge of the asserted patents); *Ajinomoto Co. v. Archer-Daniels-Midland

Co.*, 228 F.3d 1338, 1351–52 (Fed. Cir. 2000) (affirming finding of no willfulness despite

defendant's knowledge of asserted patent).

## II.    PATENT INVALIDITY

Exhibit 5
Defendants' Statement of Contested Issues of Law

**A.     Issues of Law**

**1.     Whether the asserted claim of the D'514 patent is invalid**

     a.     Whether the asserted D'514 patent claim is indefinite.

     b.     Whether the asserted D'514 patent claim is enabled.

     c.     Whether the asserted D'514 patent claim satisfies the written description requirement.

     d.     Whether the asserted D'514 patent claim is invalid as anticipated.

     e.     Whether the asserted D'514 patent claim is invalid because the alleged invention was obvious to one of ordinary skill in the art at the time of the invention.

     f.     Whether the asserted D'514 patent claim is invalid because the alleged inventions was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the alleged invention.

     g.     Whether the D'514 patent identifies the proper inventors of the alleged invention.

**2.     Whether the asserted D'514 patent claim is entitled to a priority date earlier than the filing date of the D'514 patent.**

**3.     Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the D'514 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the D'514 patent.**

**4.     Whether the asserted claims of the '617 patent are invalid.**

     a.     Whether the asserted '617 patent claims are indefinite.

     b.     Whether the asserted '617 patent claims are enabled.

     c.     Whether the asserted '617 patent claims satisfy the written description requirement.

     d.     Whether the asserted '617 patent claims are invalid as anticipated.

14

Exhibit 5
Defendants' Statement of Contested Issues of Law

      e.      Whether the asserted '617 patent claims are invalid because the alleged inventions were obvious to one of ordinary skill in the art at the time of the alleged invention.

      f.      Whether the asserted '617 patent claims are invalid because the inventions were patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

      g.      Whether the '617 patent identifies the proper inventors of the alleged invention.

      h.      Whether the asserted '617 patent claims are entitled to a priority date earlier than the filing date of the '617 patent.

**5.      Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the '617 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the '617 patent.**

**6.      Whether the asserted claims of the '049 patent are invalid.**

      a.      Whether the asserted '049 patent claims are indefinite.

      b.      Whether the asserted '049 patent claims are enabled.

      c.      Whether the asserted '049 patent claims satisfy the written description requirement.

      d.      Whether the asserted '049 patent claims are invalid as anticipated.

      e.      Whether the asserted '049 patent claims are invalid because the alleged inventions were obvious to one of ordinary skill in the art at the time of the alleged invention.

      f.      Whether the asserted '049 patent claims are invalid because the alleged inventions were patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the alleged invention.

Exhibit 5
Defendants' Statement of Contested Issues of Law

      g.     Whether the '049 patent identifies the proper inventors of the alleged invention.

**7.**     **Whether the asserted '049 patent claims are entitled to a priority date earlier than the filing date of the '049 patent.**

**8.**     **Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the '049 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the '049 patent.**

**9.**     **Whether the asserted claims of the '530** patent **are invalid.**

      a.     Whether the asserted '530 patent claims are indefinite.

      b.     Whether the asserted '530 patent claims are enabled.

      c.     Whether the asserted '530 patent claims satisfy the written description requirement.

      d.     Whether the asserted '530 patent claims are invalid as anticipated.

      e.     Whether the asserted '530 patent claims are invalid because the alleged inventions were obvious to one of ordinary skill in the art at the time of the alleged invention.

      f.     Whether the asserted '530 patent claims are invalid because the alleged inventions were patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

      g.     Whether the '530 patent identifies the proper inventors of the alleged invention.

**10.**     **Whether the asserted '530 patent claims are entitled to a priority date earlier than the filing date of the '530 patent.**

**11.**     **Whether Plaintiffs meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims of the '530 patent, and have established a nexus between those secondary considerations and the alleged inventions of the claims of the '530 patent.**

16

Exhibit 5
Defendants' Statement of Contested Issues of Law

**B.      Legal Authority**

**1.      Presumption of Validity**

A patent is presumed to be valid. 35 U.S.C. § 282. This presumption places the burden of persuasion on the party challenging validity. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011).  Patent invalidity must be proven by "clear and convincing" evidence.  *Microsoft,* 564 U.S. at 95. However, "new evidence supporting an invalidity defense may 'carry more weight' in an infringement action than evidence previously considered by the PTO." *Id.* at 110. "Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force." *Id.* at 111.  The presumption of validity and the clear and convincing burden of proof are "static and in reality different expressions of the same thing—a single hurdle to be cleared." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004) (citations omitted).  Thus, the presumption of validity "does not constitute 'evidence' to be weighed against the challenger's evidence." *Id.* at 1258–59 (quoting *Avia,* 853 F.2d at 1562).

While Section 282 requires an invalidity defense to be proven by clear and convincing evidence, "the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain" when a party relies on prior art that was not put before the Patent Office during prosecution.  *Microsoft*, 564 U.S. at 111; *see also SIEJA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355–56 (Fed. Cir. 2000) (explaining that "[w]hile the presentation at trial of a reference that was not before the examiner does not change the presumption of validity, the alleged infringer's burden may be more easily carried because of this additional reference"). The Supreme Court has recognized that "if the PTO did not have all material facts before it, its considered judgment may lose significant force." *Microsoft,* 564 U.S.at 111.

Exhibit 5
Defendants' Statement of Contested Issues of Law

## 2.      What Constitutes Prior Art

Whether an allegedly invalidating reference is prior art is "a question of law based on underlying facts." *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1376 (Fed. Cir. 2003); *see also TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("Whether a reference was published prior to the critical date, and is therefore prior art, is a question of law based on underlying fact questions.").

The public use and public knowledge requirements to qualify as prior art under §§ 102 (a) and (b) are not demanding standards. *See Nat'l Research Dev. Corp. v. Varian Assocs., Inc.*, 822 F.Supp. 1121, 1129 (D.N.J. 1993), *aff'd in part, vacated in part,* 17 F.3d 1444 (Fed. Cir. 1994) ("[i]t does not take much to trigger the 'public use' statutory bar to a patent"); *see also New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002) ("The statutory phrase 'public use' does not necessarily mean open and visible in the ordinary sense."). Indeed, public use includes "any use" of a device "by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1058 (Fed. Cir. 1996) (holding use of centrifuge in a laboratory where co-workers and visitors saw it in operation qualified as "public use"); *see also Clock Spring, L.P. v. Wrapmaster, Inc.,* 560 F.3d 1317, 1328 (Fed. Cir. 2009) (holding public use requirement satisfied where "during the 1989 demonstration, all elements of the repair method in claim 1 of the[] Patent were performed"); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1372 (Fed. Cir. 2007) (display of bracket at "1994 Florida trade show" is public use); *Beachcombers v. WildeWood Creative Prods., Inc.,* 31 F.3d 1154, 1159–60 (Fed. Cir. 1994) (displaying an invention at a dinner party is public use).

18

Exhibit 5
Defendants' Statement of Contested Issues of Law

While § 102(b) uses slightly different language (*i.e.*, "public use"), the same standard governs whether a reference is "known or used by others" under § 102(a). *See Ormco Corp.*, 463 F.3d at 1305–06 (reversing finding of no "use by others" under § 102(a) because "Dr. Truax promoted his system to other orthodontists through seminars and clinics and distributed his instruction sheet at those clinics").

The Supreme Court in *Helsinn* "determine[d] that Congress did not alter the meaning of 'on sale' when it enacted the AIA, [and held] that an inventor's sale of an invention to a third party who is obligated to keep the invention confidential can qualify as prior art under [AIA 35 U.S.C.] § 102(a)." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 630 (2019). Thus, a sale or offer for safe that does not disclose the subject matter of an invention or make the invention available to the general public may nevertheless qualify as prior art in an anticipation or obviousness rejection, regardless of whether the application or patent under consideration is subject to the FITF provisions of the AIA or the first to invent provisions of pre-AIA law, and the phrase "on sale" in AIA 35 U.S.C. § 102(a)(l) is treated as having the same meaning as "on sale" in pre-AIA 35 U.S.C. § 102(b). *Id*; *see also* MPEP 2133.03(b).

Dissemination and public accessibility are the touchstones to the legal determination of whether a prior art reference is a printed publication. *See Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1364 (Fed. Cir. 2014). "A given reference is 'publicly accessible' upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *Id.* (quoting *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008)). Dissemination and public accessibility, however, are not distinctly

Exhibit 5
Defendants' Statement of Contested Issues of Law

required, either individually or as a pair, for a printed publication reference. *See Suffolk,* 752 F.3d at 1365 (finding that "a printed publication need not be easily searchable after publication if it was sufficiently disseminated at the time of its publication"). And the Federal Circuit has found that "the question to be resolved in a 'printed publication' inquiry is the extent of the reference's accessibility to at least the pertinent part of the public, of a perceptible description of the invention, in whatever form it may have been recorded." *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004).

### 3. Claiming Priority to Foreign Applications

To claim the benefit of a filing date of a foreign patent application, the foreign patent application "must have been filed by the inventor named in the U.S. application or by an entity who, at the time the foreign patent application was filed, was acting on behalf of the named inventor." *Boston Scientific Scimed, Inc. v. Medtronic Vascular, Inc.*, 497 F.3d 1293, 1297-98 (Fed. Cir. 2007). But such a claim is available only to the extent the disclosure in the foreign patent application meets the § 112 requirements. *See Goeddel v. Sugano*, 617 F.3d 1350, 1353–54 (Fed. Cir. 2010) (An invention for which the priority of a foreign patent application is available in accordance with treaty and statute may rely on the content of the foreign application for constructive reduction to practice, *provided that the requirements of § 112 are met*.") (emphasis added); *In re Ziegler*, 992 F.2d 1197, 1200, 26 U.S.P.Q.2d 1600 (Fed. Cir. 1993) ("A foreign patent application must meet the requirements of 35 U.S.C.A. § 112, first paragraph, in order for a later filed United States application to be entitled to the benefit of the foreign filing date under 35 U.S.C.A. § 119.").

Section § 119(a) also requires that the U.S. counterpart application must be filed within 12 months of the earliest foreign priority application relied upon. *See Stevens v. Tamai*, 366 F.3d

Exhibit 5
Defendants' Statement of Contested Issues of Law

1325, 1331 (Fed. Cir. 2004) ("Section 119(a) of title 35 precludes relying on a foreign

application for priority benefit when that application was filed more than one year before the

filing of the corresponding U.S. application.").

### 4.    Anticipation

An alleged invention must be new to satisfy the requirements of patentability. *See C.R.*

*Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998). A patent is not new or novel,

however, if it was disclosed in a Section 102 prior art reference. *See generally* 35 U.S.C. § 102.

A reference anticipates if it is shown "that each element of the claim in issue is found, either

expressly or under principles of inherency, in a single prior art reference, or that the claimed

invention was previously known or embodied in a single prior art device or practice." *Minn.*

*Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir.

1992). "Under the principles of inherency, if the prior art necessarily functions in accordance

with, or includes, the claims limitations, it anticipates." *Leggett & Platt, Inc. v. VUTEk, Inc.*,

537 F.3d 1349, 1354 (Fed. Cir. 2008) (internal quotation marks omitted). "Inherent anticipation

does not require that a person of ordinary skill in the art at the time would have recognized the

inherent disclosure [of the prior art reference]." *Abbott Labs. v. Baxter Pharm. Products, Inc.*,

471 F.3d 1363, 1368 (Fed. Cir. 2006) (internal  quotation  marks omitted).  The Federal Circuit's

"cases have consistently held that a reference may anticipate even when the relevant properties

of the thing disclosed were not appreciated at the time.") *Id.* at 1367.

"The disclosure in an assertedly anticipating reference must be adequate to enable

possession of the desired subject matter." *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. &*

*Research,* 346 F.3d 1051, 1055 (Fed. Cir. 2003). "For a prior-art reference to be enabling, it need

not enable the claim in its entirety, but instead the reference need only enable a single

Exhibit 5
Defendants' Statement of Contested Issues of Law

embodiment of the claim." *In re Morsa*, 803 F.3d 1374, 1377 (Fed. Cir. 2015). Anticipatory

enablement is a less demanding standard than enablement under Section 112. In particular,

anticipatory enablement does not require "actual performance" of the enabling disclosure. *Novo*

*Nordisk Pharms., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005); *In re*

*Antor Media Corp.*, 689 F.3d 1282, 1290 (Fed. Cir. 2012); *Schering Corp. v. Geneva Pharm.*,

339 F.3d 1373, 1380 (Fed. Cir. 2003) (explaining that "[a]nticipation does not require the actual

creation or reduction to practice of the prior art subject matter" and "information arising after the

critical date may show that the claimed subject matter, as disclosed in a prior art reference, 'was

in the public's possession.'" (quoting *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246

F.3d 1368, 1379 (Fed.Cir.2001)). "Rather, anticipation only requires that those suggestions be

enabled to one of skill in the art." *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d

1376, 1383 (Fed. Cir. 2015) (quoting *Novo Nordisk*, 424 F.3d at 1355). The "knowledge of the

art" at the critical or priority dates of the '687 and '367 patents is relevant to that inquiry. *Iovate*

*Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.,* 586 F.3d 1376, 1383 (Fed.

Cir. 2009); *see also Novo Nordisk*, 424 F.3d at 1356 (finding anticipatory enablement based on

what "would have been understood by one of ordinary skill in the art"). Even assuming a

disclosure is not enabling, and thus fails to anticipate, the "disclosure can still qualify as prior art

in determining obviousness under 35 U.S.C. § 103, *independent of enablement." In re Antor*,

689 F.3d at 1292 (emphasis added); *see also Symbol Techs. Inc. v. Opticon Inc.*, 935 F.2d 1569,

1578 (Fed. Cir. 1991) ("[A] non-enabling reference may qualify as prior art for the purpose of

determining obviousness under § 103.").

A district court should presume that prior art printed publications, as well as patents, are

enabled. *Lambda Optical Sols. LLC v. Alcatel Lucent USA Inc.*, C.A. No. 10-487-RGA, 2015

Exhibit 5
Defendants' Statement of Contested Issues of Law

WL 5734427, at *1 (D. Del. Sept. 30, 2015); *see also Robocast, Inc. v. Apple Inc.*, 39 F. Supp.

3d 552, 565 (D. Del 2014) (holding that "a district court should presume that a prior art printed

publication is enabled"). The patentee bears the "burden of proving the nonenablement"of the

prior art, which means the patentee must overcome the presumption of enablement by a

preponderance of the evidence. *See Lambda Optical Sols. LLC v. Alcatel-Lucent USA, Inc.*,

C.A. No. 10-487-RGA-CJB, 2017 WL 4002148, at *4 (D. Del. Mar. 31, 2017) report and

recommendation adopted, C.A. No. 11-487-RGA-CJB, 2017 WL 4002141 (D. Del. Sept. 11,

2017) (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir.

2003)); *Cubist Pharms., Inc. v. Hospira, Inc.*, 75 F. Supp. 3d 641, 661, 661 n.10 (D. Del.

2014). Finally, "both claimed and unclaimed materials disclosed in a [prior art] patent are

presumptively enabling." *In re Antor Media Corp.*, 689 F.3d at 1287; *see also Cubist Pharms.,

Inc. v. Hospira, Inc.*, 75 F. Supp. 3d 641, 661 n.10 (D. Del. 2014); *Robocast, Inc.*, 39 F. Supp. 3d

at 565.

### 5.    Obviousness

Section 103 of the Patent Act (pre-AIA) provides:

> A patent may not be obtained though the invention is not identically
> disclosed or described as set forth in section 102 of thistitle, if the differences
> between the subject matter sought to be patented and the prior art are such
> that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said
> subject matter pertains.

35 U.S.C. § 103(a). "[O]bviousness is a matter of law based on findings of underlying fact."

*Sanoji-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008). The underlying

factual considerations include:

> the scope and content of the prior art are to be determined; differences between the
> prior art and the claims at issue are to beascertained; and the level of ordinary skill

23

Exhibit 5
Defendants' Statement of Contested Issues of Law

> in the pertinent art resolved. Against this background, the obviousness or
> nonobviousness of the subject matter is determined. Such secondary considerations
> as commercial success, long felt but unsolved needs, failure of others, etc., might
> be utilized to give light to the circumstances surrounding the origin of the subject
> matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)); *see also ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1357 (Fed. Cir. 2015). Obviousness can be established by noting that "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, 550 U.S. at 419–20. Furthermore, it is not only the specific problem motivating the patentee that is relevant, but rather "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* In addition, because "[a] person of ordinary skill is also a person of ordinary creativity," he will be able to "fit the teachings of multiple patents together like pieces of a puzzle," regardless of whether each piece of prior art was designed to solve the problem at hand. *Id.* at 420–21; *see also Leapfrog Enters., Inc. v. Fischer-Price, Inc.*, 485 F.3d 1157, 1161–62 (Fed. Cir. 2007).

Obviousness is to be judged under "an expansive and flexible approach" driven by "common sense," and a non-obvious combination requires "more than the predictable use of prior art elements according to their established functions." *KSR*, 550 U.S. at 415–18. This flexible standard expands the obviousness analysis beyond just "published articles and the explicit content of issued patents." *Id.* at 419. As the Supreme Court has articulated, a patent that merely combines "familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416 (recognizing that when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for

Exhibit 5
Defendants' Statement of Contested Issues of Law

another known in the field, the combination must do more than yield a predictable result).

Similarly, where a person of ordinary skill in the art simply pursues "known options" from a "finite number of identified, predictable solutions," obviousness under Section 103 results. *Id.* at 421.

Secondary considerations, if present, are also relevant to the obviousness analysis. *ABT*, 797 F.3d at 1361. Simultaneous or near-simultaneous invention by others is a particularly important secondary consideration that supports holding the claimed invention obvious. *See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305–06 (Fed. Cir. 2010) ("Independently made, simultaneous inventions, made 'within a comparatively short space of time,' are persuasive evidence that the claimed apparatus 'was the product only of ordinary . . . skill.'") (quoting *Concrete Appliances Co. v. Gomery*, 269 U.S. 177, 184 (1925)). Other secondary considerations include commercial success, licensing, praise, long-felt but unmet need, failure of others, unexpected results, teaching away, and copying. *See KSR*, 550 U.S. at 406 ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." (quoting *Graham,* 383 U.S. at 17–18)). In order for these objective indicia of non-obviousness "to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *SIEJA Neurosciences*, 225 F.3d at 1359 (quoting *In re GPAC Inc.,* 57 F.3d 1573, 1580 (Fed. Cir. 1995)).

Exhibit 5
Defendants' Statement of Contested Issues of Law

However, even if secondary considerations exist, they cannot overcome a "strong prima facie case of obviousness." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).

One consideration that is not relevant to the obviousness inquiry is enablement. Even "[a] non-enabling reference may qualify as prior art for the purpose of determining obviousness,'" *ABT*, 97 F.3d at 1360 n.2 (quoting *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991)), "and even 'an inoperative device . . . is prior art for all that it teaches.'" *Id.* (quoting *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989)); *see also Antor Media*, 689 F.3d at 1292.

Obviousness is judged from the perspective of a person having ordinary skill in the art at the time the alleged invention was made. *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1354–55 (Fed. Cir. 2007) ("An invention is not patentable, *inter alia,* 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'") (quoting 35 U.S.C. § 103(a)). A person of ordinary skill is a hypothetical person who is "presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448,454 (Fed. Cir. 1985).

### a.      Simultaneous Invention

"[T]he possibility of near simultaneous invention by two or more equally talented inventors working independently … may or may not be an indication of obviousness when considered in light of all the circumstances." *Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000). "Independently made, simultaneous inventions, made within a

Exhibit 5
Defendants' Statement of Contested Issues of Law

comparatively short space of time, are persuasive evidence that the claimed apparatus was the

product only of ordinary mechanical or engineering skill. *Geo. M. Martin Co. v. All. Mach. Sys.*

*Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010) (*citing Concrete Appliances Co. v. Gomery*, 269

U.S. 177, 184 (1925).

Simultaneous invention "may bear upon the obviousness analysis in two ways. First, it is

evidence of the level of skill in the art. Second, it constitutes objective evidence that persons of

ordinary skill in the art understood the problem and a solution to that problem. *Regents of Univ.*

*of California v. Broad Inst., Inc.*, 903 F.3d 1286, 1295 (Fed. Cir. 2018) (*citing Monarch Knitting*

*Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 883 (Fed. Cir. 1998). A reference need not to

be qualifying prior art to be considered as evidence of simultaneous invention, as it could be

"strong evidence of what constitutes the level of ordinary skill in the art." *Geo. M. Martin*, 618

F.3d at 1305-06.

### 6.      Prior Art Under 35 U.S.C. § 102(e)

The Federal Circuit has addressed the requirements that must be met in order for an

issued patent to claim the benefit of the filing date of an earlier-filed provisional application for

prior art purposes in *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375,

1378 (Fed. Cir. 2015). For a patent to claim priority from the filing date of its provisional

application, it must satisfy 35 U.S.C. § 119(e)(l), which provides that "[a]n application for patent

filed under section 11l(a) or section 363 for an invention disclosed in the manner provided by

section 112(a)[] in a provisional application filed under section 111(b), by an inventor or

inventors named in the provisional application, shall have the same effect, as to such invention,

as though filed on the date of the provisional application  filed under  section 11l(b)." 35 U.S.C.

27

Exhibit 5
Defendants' Statement of Contested Issues of Law

§ 119(e)(l). In other words, for purposesof prior art under Section 102(e), a prior art reference needs to have one claim supported in its provisional application in order to be entitled to the provisional filing date. *See Dynamic Drinkware*, 800 F.3d at 1378.

### 7. Written Description

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention. Section 112 of the Patent Act provides that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same." 35 U.S.C. § 112(a). The written description must reasonably convey "to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Specifically, the written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Id.* (citation omitted); *see also In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("[The written description] must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed."). In determining whether a specification contains an adequate written description, "one must make an 'objective inquiry into the four comers of the specification from the perspective of a person of ordinary skill in the art.'" *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (citing *Ariad*, 598 F.3d at 1351). "A broad claim is invalid [for lack of adequate written description] when the entirety of the specification clearly indicates that the

28

Exhibit 5
Defendants' Statement of Contested Issues of Law

invention is of a much narrower scope." *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*, 541

F.3d 1115, 1127 (Fed. Cir. 2008) (quoting *Cooper Cameron Corp. v. Kvaerner Oilfield Prods.,*

*Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002)); *see also Atlantic Res. Mktg. Sys., Inc. v. Troy*,

659 F.3d 1345, 1354-55 (Fed. Cir. 2011) (invalidating claims covering gun accessory without

"receiver sleeve attachment point" because specification disclosed only accessory with such an

attachment point); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1378 (Fed. Cir.

2009) ("[A] person of skill in the art would not understand the inventor ... to have invented a

spikeless medical valve."); *LizardTech*, 424 F.3d at 1345 (invalidating a claim that was "directed

to creating a seamless array of DWT coefficients generically" because the specification taught

only "a particular method" of creating such a seamless array). Whether a patent claim satisfies

the written description requirement is a question of fact. *Ariad*, 598 F.3d at 1351.

###    8.    Lack of Enablement

The specification of a patent "shall contain a written description of the invention, and of

the manner and process of making and using it, in such full, clear, concise, and exact terms as to

enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112(a).  This

requirement of enablement enforces the essential "quid pro quo of the patent bargain" by

requiring a patentee to teach the public how "to practice the full scope of the claimed invention."

*AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003).

Once the precise scope of the claimed invention is defined, the question is whether undue

experimentation is required to make and use the full scope of embodiments of the invention

claimed. *See Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167,

1186 n.9 (Fed. Cir. 2002) ("Evidence of unsuccessful experimentation without any link to the

Exhibit 5
Defendants' Statement of Contested Issues of Law

claims at issue is not evidence of a lack of enablement."). Whether undue experimentation is

required "is not a single, simple factual determination, but rather is a conclusion reached by

weighing many factual considerations." *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940

(Fed. Cir. 2010) (*citing In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)).

## 9.   Indefiniteness

Through the patent claims, an applicant must particularly point out and distinctly claim

the subject matter which he regards as his invention.  35 U.S.C § 112(b).  "[T]he language of the

claims must make it clear what subject matter they encompass." *PPG Industries, Inc. v.*

*Guardian Industries Corp.*, 75 F.3d 1558, 1562 (Fed. Cir. 1996).  "The requirement that the

claims particularly point out and distinctly claim the invention is met when a person experienced

in the field of the invention would understand the scope of the subject matter that is patented

when the claim is read in conjunction with the rest of the specification.  *S3, Inc. v. Nvidia Corp.*,

259 F.3d 1364, 1367 (Fed. Cir. 2001).

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

U.S. 898, 901 (2014).  To determine whether a claim is indefinite, the Court looks to "the patent

record—the claims, specification, and prosecution history—to ascertain if they convey to one of

skill in the art with reasonable certainty the scope of the invention claimed."  *Teva Pharms. USA,*

*Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015).  In some circumstances, it is proper

for the jury to determine the issue of indefiniteness.  *See Bombardier Recreational Prod. Inc. v.*

*Arctic Cat Inc.*, 785 F. App'x 858, 867 (Fed. Cir. 2019) (*citing BJ Servs. Co. v. Halliburton*

Exhibit 5
Defendants' Statement of Contested Issues of Law

*Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003) ("We have held that indefiniteness "is amenable to resolution by the jury where the issues are factual in nature.").

### 10.     Improper Inventorship

The patent laws require that a patent application be filed in the name of the inventor(s). 35 U.S.C. § 111.  "Inventorship" focuses solely on who conceived the claimed subject matter in such complete and operative detail that one of ordinary skill in the art could construct the invention without unduly extensive research or experimentation.  *See C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998) ("The 'inventor,' in patent law, is the person or persons who conceived the patented invention. . . . Thus facts relevant to inventorship are those showing the conception of the invention, for others may provide services in perfecting the invention conceived by another without becoming an 'inventor' by operation of law."); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376, (Fed. Cir. 1986) ("Conception is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.").

The conception must include every feature of the claimed subject matter.  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  One who works on reducing the invention to practice is not an inventor unless he or she performed some inventive acts.  *See id.*; *Sewall v. Walters*, 21 F.3d 411, 416, (Fed. Cir. 1994) ("Sewall has failed to persuade us that the Board clearly erred in finding that Sewall's design of circuits to carry out [the inventor's] idea was simply the exercise of the normal skill expected of an ordinary chip designer, which did not involve any inventive acts on the part of Sewall.").

### 11.     Design Patent – Invalidity

Exhibit 5
Defendants' Statement of Contested Issues of Law

A design patent must be original.  *See* 35 U.S.C. § 103.  *See also  Int'l Seaway Trading Corp.*, 589 F.3d at 1238  ("The purpose of incorporating an originality requirement is unclear; it likely was designed to incorporate the copyright concept of originality—requiring that the work be original with the author . . . ."). A design patent is for only the visible ornamental features of the design, and is invalid if the claimed design is dictated solely by functional considerations. "As the statute indicates, a design patent is directed to the appearance of an article of manufacture. If the patented design is primarily functional rather than ornamental, the patent is invalid." *PHG Techs., LLC v. St. John Companies, Inc*., 469 F.3d 1361, 1366 (Fed. Cir. 2006). "A design or shape that is entirely functional, without ornamental or decorative aspect, does not meet the statutory criteria of a design patent."  *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).

The design of a useful article is deemed to be functional when "the appearance of the claimed design is dictated by the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1123 (Fed. Cir. 1993). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id*. "[T]he determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc*., 122 F.3d 1452, 1455 (Fed. Cir. 1997). This means "if the design claimed in a design patent is dictated solely by the function of the article of manufacture, the patent is invalid because the design is not ornamental." *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996).

      a.       **Anticipation of design patents**

Exhibit 5
Defendants' Statement of Contested Issues of Law

A design patent is invalid if it has been disclosed in a publication or in use under the provisions of § 102. "In determining whether a design patent is invalid based on a description in a printed publication, 35 U.S.C. § 102(a), the factual inquiry is the same as that which determines anticipation by prior publication of the subject matter of a utility patent." *Hupp*, 122 F.3d at 1461.

In determining whether a design patent has been anticipated by the prior art, the court uses the ordinary observer test. *See Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1343 (Fed. Cir. 2019) ("Because we use the same test for determining infringement and anticipation, the ordinary observer test is now the sole controlling test for determining anticipation of design patents too."); *Int'l Seaway Trading Corp.*, 589 F.3d at 1240 ("[W]e now conclude that the ordinary observer test must logically be the sole test for anticipation as well."); *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1324 (Fed. Cir. 2001) ("The tests for infringement and anticipation are very similar, and that which would *literally* infringe if later in time anticipates if earlier than the date of invention.").

Anticipation is found if "the two designs must be substantially the same." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313–14 (Fed. Cir. 2001); *see also Gorham Mfg. Co.*, 81 U.S. 511, 528 (1871). "Two designs are substantially the same if their resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other. *Door-Master*, 256 F.3d at 1313–14. "In making this comparison, the court must focus on the protected features of the design, and determine whether those common features would deceive the ordinary observer." *Id.*

   **b.    Obviousness**

33

Exhibit 5
Defendants' Statement of Contested Issues of Law

The nonobviousness requirements of 35 USC § 103 apply to design patents. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380 (Fed. Cir. 2009) ("Design patents are subject to the nonobviousness requirement of 35 U.S.C. § 103."); *OddzOn Prod., Inc.*, 122 at 1404  ("The design must also be non-obvious."); *In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996) ("Design patents are subject to the same conditions on patentability as utility patents, including the nonobviousness requirement of 35 U.S.C. § 103.").

"The ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). This includes analyzing "whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design," and that "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design." *Id.*; *see also L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) ("In applying the law of § 103 to the particular facts pertinent to the patented design, obviousness *vel non* is reviewed from the viewpoint of a designer of ordinary skill or capability in the field to which the design pertains."). "When the patented design is a combination of selected elements in the prior art, a holding of obviousness requires that there be some teaching or suggestion whereby it would have been obvious to a designer of ordinary skill to make the particular selection and combination made by the patentee." *Id.*

In analyzing obviousness of a design patent, the first step is determining "whether there is a reference to something in existence, the design characteristics of which are basically the same as the claimed design, in order to support a holding of obviousness." *L.A. Gear, Inc.*, 988 F.2d at 1124.  Once this primary reference is found, other secondary references "may be used to modify

Exhibit 5
Defendants' Statement of Contested Issues of Law

it to create a design that has the same overall visual appearance as the claimed design." *High*

*Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1311 (Fed. Cir. 2013).  In searching for

a primary reference, the court is to:

> (1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates 'basically the same' visual impression.  In comparing the patented design to a prior art reference, the trial court judge may determine almost instinctively whether the two designs create basically the same visual impression.

*Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

"Slight differences" in the designs do not preclude a finding of obviousness. *MRC*

*Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 (Fed. Cir. 2014) ("[O]n numerous

occasions we have invalidated design patents despite the inclusion of ornamental features that

were entirely absent from prior art designs."); *see 3form, Inc. v. Lumicor, Inc.*, 678 F. App'x

1002, 1011 (Fed. Cir. 2017) ("The obviousness inquiry . . .  asks whether a designer would have

combined *teachings* of the prior art to create the same overall visual appearance as the claimed

design, not merely the figures or illustrations.").

Secondary considerations are relevant to the obviousness inquiry. *High Point Design LLC*

*v. Buyers Direct, Inc.*, 730 F.3d 1301, 1314 (Fed. Cir. 2013). The patentee, however, must

establish a nexus between the secondary consideration at issue and the ornamental features of the

design, and not other factors. *See  MRC Innovations, Inc.*, 747 F.3d at 1336 ("As the patentee, it

was MRC's burden of production to demonstrate a nexus between the claimed design and the

secondary considerations. . . . [E]ven construing the evidence in the light most favorable to

MRC, MRC had not established a nexus between the secondary considerations and the claimed

design that was sufficient to overcome the other evidence of obviousness."); *Sealy Tech., LLC v.*

*SSB Mfg. Co.*, 825 F. App'x 801, 808 (Fed. Cir. 2020) (rejecting assertion of commercial success

Exhibit 5
Defendants' Statement of Contested Issues of Law

and industry praise as secondary considerations because the patentee did not explain "how the commercial success was the direct result of the claimed design[]" and did not explain "how the industry praise it cites in its briefing is the direct result of the claimed design."); *see MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1263–64 (Fed. Cir. 2012) (finding no error in a district court's failure to explicitly mention secondary considerations "when the record establishes that the evidence was properly before and considered by the court").

Allegations of copying by the accused infringer may not be sufficient to overturn a finding of obviousness. *See Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 795, 800–01 ("We disagree that the comparatively limited discussion of 'copying' alone constitutes a sufficient basis to disturb the Board's overall determination of obviousness."); *Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 801, 808 (Fed. Cir. 2020) ("Having considered the evidence, the examiner determined 'that there is nothing about copying the '088 design that makes it less obvious in view of the prior art.  We see no error in the treatment of 'copying' in this case.").

### c.   On-sale bar, public use

Design patents are subject to the on-sale bar of 35 U.S.C. § 102(b).  *See* 35 U.S.C. § 171 ("The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.").  A design need not be used in its "natural and intended way" to constitute a public use.  *In re Mann*, 861 F.2d 1581, 1581 (Fed. Cir. 1988) ("The only use possible for an ornamental design is its embodiment, exhibition, and observation.").

## III.   PATENT DAMAGES AND REMEDIES

### A.   Issues of Law

**1.   If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to monetary damages and the amount of damages based upon a reasonable royalty.**

36

Exhibit 5
Defendants' Statement of Contested Issues of Law

    **2.**      **If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether the Federal Rules of Evidence and the entire market value rule prohibit presentation of evidence to the jury of Autel's total revenues or profits of the accused products.**

    **3.**      **If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether, in the absence of expert testimony applying the *Panduit* factors, DJI has any legally viable claim to lost profits.**

    **4.**      **Whether DJI may recover any alleged lost profits sustained by DJI.**

    **5.**      **If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether DJI has a legally viable claim to damages for induced infringement under 35 § U.S.C. 271(b) absent correlation of inducement-related damages to a claim of Autel's alleged first knowledge of and intent for such inducement.**

    **6.**      **If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to any pre-suit damages pursuant to 35 U.S.C. § 287.**

    **7.**      **If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to a finding that this case is exceptional under 35 U.S.C. § 285 and whether Plaintiffs are entitled to an award of attorneys' fees.**

    **8.**      **If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed and Autel is found to have willfully infringed one or more of the asserted claims of the patents-in-suit, whether Plaintiffs are entitled to enhanced damages.**

    **9.**      **If one or more of the asserted claims of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to injunctive relief.**

    **B.**      **Legal Authority**

Upon a finding of patent infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The amount of a prevailing patentee's damages is a finding of fact on which the patentee bears the burden of proof by a preponderance of the evidence. *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002); *see also SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). "[A] patentee may not claim, as its own damages, the lost profits of a related company." *Warsaw Orthopedic, Inc. v.*

Exhibit 5
Defendants' Statement of Contested Issues of Law

*NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed.Cir.2015), *vacated on other grounds, Medtronic*

*Sofamor Danek USA, Inc. v. NuVasive, Inc.*, -U.S.--, 136 S.Ct. 893, 193 L.Ed.2d 785 (2016).

Related companies "may not enjoy the advantages of their separate corporate structure and, at

the same time, avoid the consequential limitations of that structure—in this case, the inability of

the patent holder to claim the lost profits of its non-exclusive licensee." *Poly-Am.,*

*L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1307 (Fed. Cir. 2004).

### 1.      Lost Profits

The availability of lost profits damages under 35 U.S.C. § 284 is a question of law. *See*

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (*en banc*). "To recover lost

profits, the patentee bears the burden of proof to show a reasonable probability that, 'but for'

infringement, it would have made the sales that were made by the infringer." *Presidio*

*Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017); *see also*

*BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("An award of lost

profits may not be speculative. Rather the patent owner must show a reasonable probability that,

absent the infringement, it would have made the infringer's sales."). "[T]he patentee needs to

have been selling some item, the profits of which have been lost due to infringing sales, in order

to claim damages consisting of lost profits." *Poly–Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d

1303, 1311 (Fed. Cir. 2004). Plaintiffs cannot rely merely on its ownership and control of a

subsidiary company to prove that the subsidiary's profits flow inexorably to the parent. *See*

*Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008). "[A] patentee may not

claim, as its own damages, the lost profits of a related company." *Warsaw Orthopedic, Inc. v.*

*NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015), *vacated on other grounds sub nom.*

*Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893 (2016). The Federal

Exhibit 5
Defendants' Statement of Contested Issues of Law

Circuit stated more generally that "[t]o be entitled to lost profits, we have long recognized that the lost profits must come from the lost sales of a product or service the patentee itself was selling." *Warsaw*, 778 F.3d at 1376. The *Poly-Am.* court further explained that companies "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure." 383 F.3d at 1311. Therefore, because the patentee's parent had chosen to form the patentee and its sister company as separate entities "to suit its own goals and purposes," the court held that the patentee was limited to recovery of its own lost profits and not those of its sister company. *Id.*

In general, under the *Panduit* test, a patent owner must prove causation in fact by showing the so-called *Panduit* factors: "(1) demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit [the patent owner] would have made." *Rite-Hite Corp.*, 56 F.3d at 1545. The "but for" test requires the patentee to establish "an absence of acceptable, noninfringing alternatives" by proving "that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio*, 875 F.3d at 1380; *Grain Processing Corp.* v. *Am. Maize-Prod. Co.*, 185 F.3d 1341, 1352-53 (Fed. Cir. 1999) ("[M]arket sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost profits").

"[I]f there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017). "For example, if the customer would have bought the infringing product without the patented feature or with a different, non-infringing alternative to the patented feature, then the patentee cannot establish

39

Exhibit 5
Defendants' Statement of Contested Issues of Law

entitlement to lost profits for that particular sale. And this determination is made on a customer-by-customer basis." *Id*. For acceptability, the "correct inquiry . . . is whether a non-infringing alternative would be acceptable compared to the patent owner's product, not whether it is a substitute for the infringing product." *Presidio*, 875 F.3d at 1380. Even if there is a two supplier market, courts must still consider whether there is "another available, noninfringing substitute" because "customers may have selected the infringer's available, noninfringing alternative over the patented invention." *Micro Chem., Inc. v. Lextron*, 318 F.3d 1119, 1125 (Fed. Cir. 2003).

**2.      Once a defendant posits a non-infringing alternative, the burden is on the patentee to prove that it is not acceptable. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996).Reasonable Royalty Damages**

A reasonable royalty is the amount that the defendant would have paid for a license to the asserted patents if the parties had negotiated a license at the time of first alleged infringement. *See LaserDynamics, Inc. v. Quanta Comput., Inc.,* 694 F.3d 51, 60 & n.2 (Fed. Cir. 2012). This is often referred to as the "hypothetical negotiation." *See, e.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon the fifteen factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *St. Clair Intell. Prop. Consultants, Inc. v. Canon, Inc.*, C.A. No. 03-241 JJF, 2004 WL 2213562, at *2 (D. Del. Sept. 28, *2004), see also Ericsson, Inc. v. D-LinkSys., Inc.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014). A reasonable royalty must be calculated as of the date infringement began, but the Court may consider events and facts that occurred after the infringement began. *St. Clair Intell. Prop. Consultants*, 2004 WL 2213562, at *2.

"[A] reasonable royalty analysis requires a court to hypothesize, not to speculate." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "At all times, the damages

Exhibit 5
Defendants' Statement of Contested Issues of Law

inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention . . . Thus, the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *Id.; see also Ericsson,* 773 F.3d at 1226 ("What is taken from the owner of a utility patent (for purposes of assessing damages under § 284) is only the patented technology, and so the value to be measured is only the value of the infringing features of an accused product.").

"The entire market value rule is an expression of the requirement of apportionment. The rule 'is designed to account for the contribution of the patented feature to the entire product.'" *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 514 (D. Del. 2017) (citation omitted). Under this rule, the ultimate finding of a royalty rate "must reflect the value attributable to the infringing features of the product, and no more." *Id.* (citing *Ericsson*, 773 F.3d at 1226). "Thus, the entire market value rule ordinarily prohibits the presentation of evidence to a jury that uses the entire market value of a multi-component product, which includes both patented and unpatented features, as the royalty base in calculating royalty damages." *Id.* at 514–15 (citation omitted). Accordingly, "[the patentee] must separate [the patented improvement's] results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated." *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.,* 809 F.3d 1295, 1302 (Fed. Cir. 2015).

The second justification is based on the "important evidentiary principle that care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product." *Id.* (citation omitted). As the Federal Circuit noted, admissibility of opinions under Rule 702 "does not, however, imply that it would be proper for [an expert] to publish the entire revenue or profit or an accused device to the jury at trial." *Core Wireless Licensing S.A.R.L. v. LG Elecs.,*

Exhibit 5
Defendants' Statement of Contested Issues of Law

*Inc.,* Nos. 2:14-cv-911-JRG-RSP, 2:14-cv-912-JRG-RSP, 2016 WL 4523883, at *4 (E.D. Tex.,

Aug. 26, 2016). "While it is appropriate for [the expert] to use entire revenue and profit figures

to calculate profit margins in his expert report, it may be inappropriate as an evidentiary matter

for him to present these figures to the jury." *Id.*

### 3.    Apportionment

Under Title 35, Section 284 of the United States Code, damages awarded for patent

infringement "must reflect the value attributable to the infringing features of the product, and no

more." *Ericsson*, 773 F.3d at 1226. "When the accused infringing products have both patented

and unpatented features, measuring [the value of the patented technology] requires a

determination of the value added by such features The essential requirement is that the ultimate

reasonable royalty award must be based on the incremental value that the patented invention

adds to the end product." *Id.* "No matter what the form of the royalty, a patentee must take care

to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys.,*

*Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

"Where small elements of multi-component products are accused of infringement,

calculating a royalty on the entire product carries a considerable risk that the patentee will be

improperly compensated for non-infringing components of that product." *LaserDynamics*, 694

F.3d at 67. Thus, a reasonable royalty must be based not on the entire product, but instead on the

"smallest salable patent-practicing unit." *Id.* This principle-called apportionment-is "the

governing rule" "where multi-component products are involved." *Ericsson,* 773 F.3d at 1226.

### 4.    Injunctive Relief

To obtain a permanent injunction, a patent holder must show "(1) that it has suffered an

irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that

Exhibit 5
Defendants' Statement of Contested Issues of Law

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "An injunction should not be granted lightly . . . because it is a 'drastic and extraordinary remedy.'" *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, C.A. No. 11-484-RGA, 2014 WL 4695765, at *3 (D. Del. Sept. 12, 2014) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). "Indeed, if the plaintiff's injury can be adequately redressed with a less severe remedy, 'recourse to the additional and extraordinary relief of an injunction' is not warranted." *Id.* (quoting *Monsanto*, 561 U.S. at 166); *see also Riverbed Tech., Inc.*, 2014 WL 4695765, at *14 (denying request for injunctive relief despite three of the four *eBay* factors).

## 5. Pre-Suit Damages

Under 35 U.S.C. § 287, a patentee "making, offering for sale, or selling within the United States any patented article or importing any patented article into the United States," may recover "no damages" unless (1) the accused infringer "was notified of the infringement and continued to infringe thereafter," or (2) the patentee marked any articles covered by the patents-in-suit in compliance with the statute's marking requirements. Otherwise, a patentee may only recover pre-suit damages if it has never made, sold, offered for sale, or imported any articles covered by the patent-in-suit. The patentee bears the "burden of pleading and proving at trial that [it] complied with the statutory requirements" of 35 U.S.C. § 287. *Maxwell v. J Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996.)

## 6. Enhancement Under 35 U.S.C. § 284

Under certain circumstances where the defendant has engaged in reprehensible behavior or bad faith, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. As the Supreme Court recently clarified in *Halo Electronics,* 136

43

Exhibit 5
Defendants' Statement of Contested Issues of Law

S.Ct. 1923, the only sort of "willful misconduct" that can warrant enhanced damages is conduct that is "egregious"; for example, "the 'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." *Id.* at 1932, 1936 (explaining that enhanced damages are "not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior"). "The district court has the discretion to decide whether the case is sufficiently egregious to warrant enhancing damages and to decide the amount of enhancement that is warranted (up to the statutory limit of treble damages)." *WBIP LLC*, 829 F.3d at 1342. Even "a finding of willfulness does not require an award of enhanced damages; it merely permits it." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc), *abrogated on other grounds, Halo Elecs.*, 136 S.Ct. 1923; *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999); *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1376–77 (Fed. Cir. 2010) (affirming denial of enhanced damages after a jury finding of willfulness); *Greatbatch Ltd.,* 2016 WL 7217625, at *6 ("A finding of willfulness may be necessary—but is not a sufficient—condition to permit the Court to exercise its discretion.") Enhanced damages represent a "'punitive' or 'vindictive' sanction" reserved for "egregious" or "malicious" misdeeds. *Halo Elecs.,* 136 S.Ct. at 1392.

Courts consider several factors when determining whether an infringer has acted in bad faith and whether damages should be increased. They include:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; . . . (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) 'remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.

Exhibit 5
Defendants' Statement of Contested Issues of Law

*Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citations

omitted). The Supreme Court has "eschew[ed] any rigid formula for awarding enhanced

damages under § 284." *Halo Elecs.,* 136 S.Ct. at 1934.

To show willfulness, a patentee must prove that the alleged infringer acted without a

"reasonable basis for believing it had a right to do the acts." *Stickle v. Heublein, Inc.*, 716 F.2d

1550, 1565 (Fed. Cir. 1983) ("[M]ore is necessary to support a finding of 'willfulness' than that

the infringing acts were not inadvertent. The court must determine that the infringer acted in

disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a

right to do the acts.") A party's pre-suit knowledge of a patent is not sufficient, by itself, to find

"willful misconduct" of the type that may warrant an award of enhanced damages. *Vehicle IP*,

227 F. Supp. 3d at 331.

> Nor is there a universal rule that to avoid willfulness one must cease manufacture
> of a product immediately upon learning of a patent, or upon receipt of a patentee's
> charge of infringement, or upon the filing of suit. Exercising due care, [a] party
> may continue to manufacture and may present what in good faith it believes to be
> a legitimate defense without risk of being found on that basis alone a willful
> infringer.

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) (citation

omitted.)

### 7.      Attorneys' Fees Under 35 U.S.C. § 285

The court in exceptional cases may award reasonable attorneys' fees to the prevailing

party. 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with

respect to the substantive strength of a party's litigating position (considering both the governing

law and the facts of the case) or the unreasonable manner in which the case was litigated."

*Blackbird Tech LLC v. Health in Motion LLC*, 944 F.3d 910, 914 (Fed. Cir. 2019) (citing *Octane*

*Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Exhibit 5
Defendants' Statement of Contested Issues of Law

District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). A prevailing party must establish its entitlement to fees under Section 285 by a preponderance of the evidence. *Id.* at 1758.

Under 35 U.S.C. § 285, "in exceptional cases [the Court] may award reasonable attorney fees to the prevailing party." The purpose of § 285 is to provide discretion where it would be grossly unjust that the winner be left to bear the burden of its own counsel fees, which prevailing litigants normally bear. *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990). Inequitable conduct, either alone or in conjunction with trial conduct, may constitute the basis for an award of attorney fees under 35 U.S.C. §285. *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1312 (Fed. Cir. 1988); see *also Nilssen v. Osram Sylvania Inc.*, 528 F.3d 1352, 1357 (Fed. Cir. 2008); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1370 (Fed. Cir. 1999). Inequitable conduct must, as a matter of law, be taken into account in deciding a request for attorney fees. *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 182 F.3d 1356, 1360 (Fed. Cir. 1999).

## 8.    Interest

The court may award prejudgment interest from the date of infringement through the date of judgment.  *See* 35 U.S.C. § 284.  Prejudgment interest is not, however, available to any award of enhanced damages for willful infringement. *See Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1580–81 (Fed. Cir. 1991) ("[P]rejudgment interest may be based only on the compensatory portion of the damages award . . .  and not on the enhanced additional damages.").  Furthermore, prejudgment interest may not be added to a portion of a damage award providing for projected or future lost profits as the patent holder has suffered no delay in obtaining that money or its use. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996).

46

Exhibit 5
Defendants' Statement of Contested Issues of Law

Post-judgment interest must be calculated at a rate "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). A rate of post-judgment interest in excess of the statutory rate is not permitted. *Goodwall Const. Co. v. Beers Const. Co.*, 991 F.2d 751, 759 (Fed. Cir. 1993).

## IV.   EXPERT TESTIMONY

### A.   Issues of Law

**1.**      Whether expert testimony that was not fully disclosed pursuant to Federal Rule of Civil Procedure 26 may be presented at trial.

**2.**      Whether expert testimony from experts that are not qualified pursuant to Federal Rules of Evidence 702 and 703 may be presented at trial; and/or

**3.**      Whether testimony from rebuttal experts that is not proper rebuttal pursuant to Federal Rule of Civil Procedure 26 may be presented at trial.

### B.   Legal Authority

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D), parties must disclose expert testimony "at the times and in the sequence that the court orders." Rebuttal expert testimony is limited to "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). If a party "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," it must supplement or correct its disclosure. Fed. R. Civ. P. 26(e)(l)(A). "However, parties may not use their obligation to supplement as an excuse to violate the clear terms of a Scheduling Order, unilaterally buying themselves additional time to make disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a

Exhibit 5
Defendants' Statement of Contested Issues of Law

case." *Abbott Labs. v. Lupin Ltd.,* C.A. No. 09-152-LPS, 2011 WL 1897322, at *3 (D. Del. May 19, 2011). When expert testimony is not timely disclosed, the court has the authority to exclude it from evidence. *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990).

Exclusion of expert opinion and testimony may occur under Rules 37 or 16(f). Under Rule 16(f), the court may impose sanctions if, *inter alia*, a party or its attorney "fails to obey a scheduling order or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Under Rule 37(c)(1), a party that fails to comply with Rule 26(a) or (e) (regarding failure to disclose or supplement) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Courts in the Third Circuit consider five factors when deciding whether to preclude evidence under Rule 37: (1) the prejudice to or surprise of the party against whom the evidence is offered; (2) the ability of that injured party to cure the prejudice; (3) the likelihood of disruption of trial; (4) the bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the proffering party ("the Pennypack factors"). *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods HomeOwnership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). "Courts must . . . be mindful that the 'exclusion of critical evidence is an "extreme" sanction, not normally to be imposed absent a showing of willful deception or "flagrant disregard" of a court order by the proponent of the evidence.'" *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506 (D. Del. 2005) (citation omitted).

The admissibility of expert evidence is governed by Rules 702 and 703 of the Federal Rules of Evidence. "Rule 702 was amended in response to *Daubert* and cases applying it,

Exhibit 5
Defendants' Statement of Contested Issues of Law

including *Kumho Tire.*" *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir.

2003) (emphasis in original) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 119 S.Ct. 1167, 1175

(1999)).

      Rule 702 states: "A witness who is qualified as an expert by knowledge, skill, experience,

training, or education may testify in the form of an opinion or otherwise if:

      (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of

      fact to understand the evidence or to determine a fact in issue;

      (b)  the testimony is based on sufficient facts or data;

      (c)  the testimony is the product of reliable principles and methods; and

      (d)  the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.

      Rule 703 states:

      An expert may base an opinion on facts or data in the case that the expert has
      been made aware of or personally observed. If experts in the particular field
      would reasonably rely on those kinds of facts or data in forming an opinion on the
      subject, they neednot be admissible for the opinion to be admitted. But if the facts
      or data would otherwise be inadmissible, the proponent of the opinion may
      disclose them to the jury only if their probativevalue in helping the jury evaluate
      the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

      Under these rules, a district court may exclude evidence that is based upon unreliable

principles or methods, legally insufficient facts and data, or where the reasoning or methodologyis

not sufficiently tied to the facts of the case. *See, e.g., Kumho Tire*, 119 S.Ct. at 1175 (the gate-

keeping inquiry must be tied to the particular facts of the case); *i4i Ltd. P'ship v. Microsoft

Corp.*, 598 F.3d 831, 857 (Fed. Cir. 2010) (stating that *"Daubert* and Rule 702 are safeguards

against unreliable or irrelevant opinions, not guarantees of correctness" (emphasis in original)).

Exhibit 5
Defendants' Statement of Contested Issues of Law

But the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014), *overruled en banc on other grounds, Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 113 S.Ct. 2786, 2798 (1993).